**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| **DEPARTMENT OF JUSTICE,** | ) ) | |
| Defendant. | ) ) ) | |

### PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65, plaintiff Electronic Privacy Information Center respectfully moves for entry of a preliminary injunction to enjoin defendant Department of Justice's unlawful attempts to impede plaintiff's efforts to obtain agency records concerning  the Administration's policy of conducting surveillance of domestic communications without the prior authorization of the Foreign Intelligence Surveillance Court.  Plaintiff seeks an order requiring defendant to expedite the processing of plaintiff's Freedom of Information Act request for records concerning the warrantless surveillance program and to complete the processing of plaintiff's request within 20 days.

The grounds for this motion are set forth in the accompanying memorandum of points and authorities.  Plaintiff asks that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this application for a preliminary injunction at the Court's earliest convenience.

Respectfully submitted,


_____
DAVID L. SOBEL
D.C. Bar No. 360418

MARCIA HOFMANN
D.C. Bar. No. 484136

MARC ROTENBERG
D.C. Bar. No. 422825


ELECTRONIC PRIVACY INFORMATION
CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| **DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR A PRELIMINARY INJUNCTION**

Plaintiff Electronic Privacy Information Center ("EPIC") respectfully submits this

memorandum of points and authorities in support of its motion for a preliminary

injunction.

**Preliminary Statement**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, seeking the expedited processing and release of agency records concerning the

Administration's policy of conducting surveillance of domestic communications without

the prior authorization of the Foreign Intelligence Surveillance Court.  Defendant

Department of Justice ("DOJ") has acknowledged that the requested information fits

squarely within the narrow category for which Congress has mandated expedited

processing and, on December 21, 2005, purported to grant EPIC's request for such

expeditious treatment.   Nonetheless, in violation of the FOIA and its own regulations,

defendant DOJ has failed to process plaintiff's request even within the 20 working day

time frame for processing a standard FOIA request not entitled to expedited treatment.

3

DOJ's failure to process plaintiff's request — or to even identify a date by which it expects to complete its processing — clearly violates the law.  Because time is at the essence of plaintiff's rights and DOJ's obligations, and because the information at issue concerns a matter of extraordinary public interest, plaintiff seeks the Court's expedited consideration of this matter and entry of an order compelling defendant DOJ to process and disclose the requested records within 20 days.

**Statement of Facts**

**A.   Warrantless Electronic Surveillance Conducted Within the United States and DOJ's Role in That Activity**

On December 16, 2005, the *New York Times* reported on its front page that "after the Sept. 11 attacks, President Bush secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying."  James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, NY Times, Dec. 15, 2005 (attached hereto as Exhibit 1) at A1.  The *Times* further reported that the purported legal justification for the warrantless surveillance had been developed by DOJ attorneys and officials, and that DOJ "audited the NSA program" and "expanded and refined a checklist to follow in deciding whether probable cause existed to start monitoring someone's communications."  *Id*.

One day after the publication of the *Times* article, on December 17, 2005, President Bush confirmed the existence of the warrantless surveillance program. President's Radio Address, December 17, 2005 (attached hereto as Exhibit 2) ("Yesterday the existence of this secret [surveillance] program was revealed in media

4

reports . . . .").  The President highlighted the role of the Attorney General and DOJ in overseeing the program:

> The activities I authorized are reviewed approximately every 45 days.  . . . The review includes approval by our nation's top legal officials, including the Attorney General . . . .

> The NSA's activities under this authorization are thoroughly reviewed by the Justice Department and NSA's top legal officials . . .

*Id.*

Two days later, on December 19, 2005, Attorney General Gonzales held a press briefing to discuss the Administration's legal rationale for the surveillance program. Press Briefing by Attorney General Alberto Gonzales and General Michael Hayden, Principal Deputy Director for National Intelligence, December 19, 2005 (attached hereto as Exhibit 3)   ("I'm only going to be talking about the legal underpinnings for what has been disclosed by the President.").  On December 22, 2005, Assistant Attorney General William E. Moschella sent a five-page letter to the leadership of the Senate and House intelligence committees "to provide an additional brief summary of the legal authority supporting the NSA activities described by the President."  Letter from William E. Moschella to Hon. Pat Roberts, *et al.*, December 22, 2005 (attached hereto as Exhibit 4) at 1.

It is clear that the Administration's purported legal rationale for the warrantless surveillance program will be the focus of great controversy and public debate in the coming weeks and months.  Within hours of the publication of the *New York Times* report, Senator Arlen Specter, Chairman of the Senate Judiciary Committee, said that the surveillance program is "wrong, clearly and categorically wrong  . . . .   This will be a matter for oversight by the Judiciary Committee as soon as we can get to it in the new

year — a very, very high priority item." *Specter Says Senate to Probe Report U.S. Broke Law on Spying,* Bloomberg.com, Dec. 16, 2005 (attached hereto as Exhibit 5). Sen. Specter has asked Attorney General Gonzales "to testify publicly on the legality of warrantless eavesdropping on telephone conversations between suspected terrorists and people in the United States." Douglass K. Daniel, *Specter Seeks AG's Testimony on Spying*, Associated Press, Jan. 8, 2006 (attached hereto as Exhibit 6). Other members of the Judiciary Committee, on both sides of the aisle, have also questioned the legality of the surveillance program; for instance, "[a] prominent conservative on the committee [Sen. Sam Brownback] said he is troubled by the legal arguments the Bush administration has presented for establishing the National Security Agency program." *Id.* "He said he was 'troubled by . . . the grounds that the administration says that they did these on, the legal basis, and I think we need to look at that far more broadly and understand it a great deal.'" *Id.*[1]

### B. Plaintiff's FOIA Requests and Request for Expedited Processing

By letters dated December 16, 2005, to four DOJ components – the Office of the Attorney General, Office of Intelligence Policy and Review, Office of Legal Counsel, and Office of Legal Policy – plaintiff cited that morning's *New York Times* report and requested under the FOIA agency records "concerning a presidential order or directive authorizing the National Security Agency ('NSA'), or any other component of the

---

[1] The Congressional Research Service ("CRS") recently issued a memorandum assessing the legality of the warrantless surveillance program. Congressional Research Service, *Presidential Authority to Conduct Warrantless Electronic Surveillance to Gather Foreign Intelligence Information*, January 5, 2006 (*available at* http://www.fas.org/sgp/crs/intel/ m010506.pdf). CRS noted that "[t]he Administration's views have been the subject of debate," *id.* at 3, and concluded that "the Administration's legal justification . . . does not seem to be as well-grounded [as the Justice Department has suggested]," *id.* at 44.

intelligence community, to conduct domestic surveillance without the prior authorization

of the Foreign Intelligence Surveillance Court ('FISC')." Exhibits 7, 8, 9 & 10 (attached

hereto).[2] Plaintiff stated that the records it sought included (but were not limited to) the

following items:

    a.   an audit of NSA domestic surveillance activities;

    b.   guidance or a "checklist" to help decide whether probable cause exists
        to monitor an individual's communications;

    c.   communications concerning the use of information obtained through
        NSA domestic surveillance as the basis for DOJ surveillance
        applications to the FISC; and

    d.   legal memoranda, opinions or statements concerning increased
        domestic surveillance, including one authored by John C. Yoo shortly
        after September 11, 2001 discussing the potential for warrantless use of
        enhanced electronic surveillance techniques.

     In its letters to the DOJ components, plaintiff asked that the processing of its

FOIA requests be expedited because they 1) involve a "matter of widespread and

exceptional media interest in which there exist possible questions about the government's

integrity which affect public confidence," 28 C.F.R. § 16.5(d)(1)(iv); and 2) pertain to a

matter about which there is an "urgency to inform the public about an actual or alleged

Federal government activity," and the requests were made by "a person primarily engaged

in disseminating information," 5 U.S.C. § 552(a)(6)(E)(v)(II). *Id.*[3]

---

[2] Plaintiff transmitted its letters to the four DOJ components by facsimile on December
16, 2005. Plaintiff received transmission confirmations indicating that of all of the
referenced letters were received by the designated recipients on that day. Declaration of
Marcia Hofmann ("Hofmann Decl.") (attached hereto), ¶ 7.

[3] By letter dated December 16, 2005, plaintiff provided copies of its four request letters to
DOJ's Director of Public Affairs, who, pursuant to 28 C.F.R. § 16.5(d)(2), is responsible

In support of its requests for expedited processing, plaintiff noted that the NSA surveillance program "raises serious legal questions about the government's intelligence activity and has received considerable media attention," and that "hundreds of local and national media organizations reported on this matter throughout the United States this morning." Exhibits 7, 8, 9 & 10.  Plaintiff also noted the pendency of Congressional hearings on NSA's warrantless domestic surveillance and stated that, "[i]t is critical for Congress and the public to have as much information as possible about the DOJ's role in this surveillance to fully consider and determine its propriety."  *Id.*

## C. DOJ's Responses to Plaintiff's Request for Expedited Processing and Subsequent Failure to Timely Comply With Plaintiff's FOIA Requests

By letter dated December 21, 2005, DOJ's Office of Information and Privacy ("OIP") responded to plaintiff's December 16 letters "on behalf of the Offices of the Attorney General and Legal Policy."  Exhibit 12 (attached hereto).  In its letter, OIP advised plaintiff of its determination that "your request for expedited processing under [28 C.F.R. § 16.5(d)(1)(ii)] should be granted."  *Id.*  Notwithstanding that determination, OIP further stated that "we will be unable to comply with the [statutory] twenty-working-day time limit in this case, as well as the ten additional days provided in the statute."  *Id.* OIP did not inform plaintiff of an anticipated date for the completion of the processing of plaintiff's FOIA requests.

By letter dated January 6, 2006, the Office of Intelligence Policy and Review ("OIPR") responded to plaintiff's December 16 letter and stated that "the Office of Public Affairs granted your request for expedited treatment."  Exhibit 13 (attached hereto).

---

for making expedition determinations under the standard set forth at 28 C.F.R. § 16.5(d)(1)(iv).  Exhibit 11 (attached hereto).

OIPR further stated that "your request will be reviewed ahead of others routinely processed on a first-in, first-out basis," *id.*, but did not inform plaintiff of an anticipated date for the completion of the processing of plaintiff's FOIA request.[4]

Notwithstanding defendant DOJ's purported decision to expedite the processing of plaintiff's FOIA requests, to date, none of the DOJ components to whom the requests were directed has completed the processing of plaintiff's FOIA requests or informed plaintiff of an anticipated date for the completion of the processing of the requests. Not only has DOJ failed to expedite the processing of plaintiff's requests; it has also exceeded the generally applicable twenty-day deadline for the processing of *any* FOIA request. 5 U.S.C. § 552(a)(6)(A).

## ARGUMENT

The issue raised in this motion is simple and straightforward. Although defendant DOJ acknowledged plaintiff's legal entitlement to expedited processing almost a month ago, the agency has failed to comply with not only the FOIA's provisions for expedited processing, but also the statute's mandated time frame of twenty working days for responding to a standard, non-expedited request. The agency's failure to process plaintiff's requests constitutes a continuing impediment to plaintiff's (and the public's) ability to examine the Justice Department's role in the warrantless surveillance program and to participate in the debate over the legality of that activity. The agency's action is clearly unlawful and should be enjoined.

---

[4] To date, plaintiff has received no communications concerning its FOIA requests directly from the Office of Legal Counsel or the Director of Public Affairs. Hofmann Decl., ¶ 10.

## I.  **The Court has Jurisdiction to Grant the Requested Relief**

The Court's jurisdiction to consider this matter and grant appropriate relief is

clear.  The FOIA provides, in pertinent part:

> On complaint, the district court of the United States . . . in the District of
> Columbia, has jurisdiction to enjoin the agency from withholding agency
> records and to order the production of any agency records improperly
> withheld from the complainant.  In such a case the court shall determine
> the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B).  *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001). The

statute further provides that

> [a]ny person making a request to any agency for records . . . shall be
> deemed to have exhausted his administrative remedies with respect to such
> request if the agency fails to comply with the applicable time limit
> provisions of this paragraph.

5 U.S.C. § 552(a)(6)(C).  *See Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir.

1990) ("If the agency has not responded within the statutory time limits, then . . . the

requester may bring suit.").

Here, notwithstanding its agreement to "expedite" plaintiff's requests, defendant

DOJ has failed to respond within the generally applicable twenty-working-day time limit

established by 5 U.S.C. § 552(a)(6)(A).  Plaintiff's claim is thus ripe for adjudication, as

all applicable administrative remedies have been exhausted.

## II.  **Plaintiff is Entitled to Entry of a Preliminary Injunction**

In considering plaintiff's request for the entry of a preliminary injunction

compelling defendant DOJ to expeditiously complete the processing of plaintiff's FOIA

requests, the court must assess "[t]he familiar factors affecting the grant of preliminary

injunctive relief — 1) likelihood of success on the merits, 2) irreparable injury to the

plaintiff, 3) burden on . . . others' interests, and 4) the public interest." *Jacksonville Port*

*Auth. v. Adams*, 556 F.2d 52, 57 (D.C. Cir. 1977) (citing *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958), and *A Quaker Action Group v. Hickel*, 421 F.2d 1111, 1116 (D.C. Cir. 1969)).  Consideration of these factors in this case firmly establishes plaintiff's entitlement to injunctive relief.

### A. **Plaintiff is Likely to Prevail on the Merits**

Given the clarity of plaintiff's statutory entitlement to the expedited processing of its requests, plaintiff's likelihood of prevailing on the merits is extremely high.  In assessing plaintiff's likelihood of success, the Court must consider the merits of one discrete issue: whether defendant has processed plaintiff's FOIA request in an expedited manner within the time frame provided in the FOIA and DOJ regulations.  Plaintiff is likely to prevail on this issue.

According to the FOIA and DOJ regulations, the agency is generally required to "determine within 20 days (except Saturdays, Sundays, and legal public holidays) after the receipt of . . . [a] request whether to comply with such request and shall immediately notify the person making such request of such determination[.]"  5 U.S.C. § 552(a)(6)(A)(i); *see also* 28 CFR § 16.6(b).  If the agency grants expedited treatment, the agency is obligated to process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii); 28 CFR § 16.5(d)(4).

Here, DOJ determined that plaintiff's requests were entitled to expedited processing.  Exhibit 12 ("I have determined that your request for expedited processing . . . should be granted."); Exhibit 13 ("the Office of Public Affairs granted your request

11

for expedited treatment").[5]  There is no indication in the record, however, that DOJ has done anything more than pay lip service to plaintiff's statutory and regulatory entitlement to expedition.   In fact, the only statement that DOJ has made with respect to the anticipated timing of its response to plaintiff's FOIA requests suggests the likelihood of open-ended delay:

> Because the records you seek require a search in other Offices, our staff has not yet been able to complete a search to determine whether there are records within the scope of your request.  Accordingly, we will be unable to comply with the twenty-working-day time limit in this case, as well as the ten additional days provided in the statute.

Exhibit 12.[6]

Although it is undisputed that plaintiff's requests are legally entitled to expedited treatment, the agency has failed to comply with the time frame required by the FOIA and DOJ regulations for issuing a determination on a *standard* FOIA request.  Plaintiff clearly

---

[5] DOJ's letters to plaintiff indicate that the agency determined that plaintiff is entitled to expedited processing under two distinct legal standards.  The first, cited by OIP in its letter of December 21 (Exhibit 12), is statutorily mandated and set forth in DOJ's regulations.  It requires expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."  28 C.F.R. § 16.5(d)(1)(ii).  The second standard is unique to DOJ and requires expedition for requests that involve a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).  Determinations of eligibility under the latter standard are made by DOJ's Office of Public Affairs ("OPA").  *Id.*, § 16.5(d)(2).  In its January 6 letter (Exhibit 13), OIPR stated that OPA had granted plaintiff's request for expedited processing.

[6]  OIP's assertion that processing delays will result from the fact that plaintiff's requests "require a search in other Offices" is puzzling.  DOJ's website contains a list of "Department Components" and the addresses to which FOIA requests to those components should be sent.  USDOJ: FOIA: Department Components, *at* http://www. usdoj.gov/04foia/04_4.html (attached hereto as Exhibit 14).  According to that published guidance, requests for both the Office of the Attorney General and the Office of Legal Policy should be sent to OIP.  Plaintiff acted in accordance with that guidance.

is entitled to the immediate processing and release of the requested records.

**B. Plaintiff Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief**

Unless DOJ's unlawful failure to comply with its obligation to expedite the processing of plaintiff's FOIA request is immediately enjoined, plaintiff will suffer irreparable harm.[7]  The very nature of the right that plaintiff seeks to vindicate in this action — expedited processing — depends upon timeliness.  The courts have recognized that the requisite injury is present, and preliminary injunctive relief is appropriate, in cases where "time is of the essence." *See, e.g.*, *United States v. BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).  Under the statutory scheme Congress established in the FOIA, it is clear that "time is of the essence" here and that any further delay in the processing of plaintiff's request will cause irreparable injury. Unless defendant DOJ is ordered to process plaintiff's request immediately, plaintiff's right to expedition under the FOIA will be irretrievably lost.

In addition to the loss of its clearly established statutory right, any further delay in

---

[7] Given the strength of plaintiff's position on the merits, even "a relatively slight showing of irreparable injury" is adequate to justify the issuance of a preliminary injunction.  As the D.C. Circuit has held:

> The test is a flexible one.  "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak."  We have often recognized that injunctive relief may be justified, for example, "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."

*CSX Transportation, Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005), quoting *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  Nonetheless, plaintiff's showing of harm here is substantial.

the processing of plaintiff's FOIA request will irreparably harm plaintiff's ability, and

that of the public, to obtain in a timely fashion information vital to the current and

ongoing debate surrounding the legality of the Administration's warrantless surveillance

program.  Hofmann Decl., ¶¶ 13-15.  That debate has already garnered extraordinary

public interest, and the issue is, according to Sen. Specter, "a very, very high priority

item" for the Senate Judiciary Committee, Exhibit 5, which is scheduled to begin

hearings on the controversy in February, Exhibit 6.  Indeed, the President has said that he

"understand[s] people's concerns about government eavesdropping," and noted that

"[t]here will be a lot of hearings to talk about that, but that's good for democracy."  David

E. Sanger, *In Shift, Bush Says He Welcomes Inquiry on Secret Wiretaps*, New York

Times, January 12, 2006 (attached hereto as Exhibit 15).  Likewise, the Vice President,

speaking several days after the existence of the surveillance program was confirmed,

said, "I'm sure there will be a debate.  It's an important subject."  And he appeared to

welcome the possible outcome of that debate: "I think when the American people look at

this, they will understand and appreciate what we're doing and why we're doing it."

Remarks by the Vice President to the Traveling Press, December 20, 2005, *at*

http://www.whitehouse.gov/news/releases/ 2005/12/20051220-9.html (attached hereto as

Exhibit 16).

    If there is to be a meaningful public debate on this issue, and if the American

people are going to "look at this" in a serious way, the examination cannot be based

solely upon information that the Administration voluntarily chooses to disseminate.

Indeed, the public oversight mechanism provided by the FOIA is central to open and

democratic debate on critical policy issues such as this.  As the Supreme Court has

observed, the Act is "a means for citizens to know 'what the Government is up to.' This phrase should not be dismissed as a convenient formalism. *It defines a structural necessity in a real democracy*." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-172 (2004) (emphasis added; citation omitted).

It is clear that the information plaintiff seeks, if it is to contribute to the public debate on warrantless surveillance, must be disclosed expeditiously. There is, as defendant DOJ was constrained to acknowledge, "an urgency to inform the public about" the Department's role in the surveillance program. Because time is of the essence in this matter, plaintiff will be irreparably harmed unless the Court acts now, "when it [is] still possible to grant effective relief," and before "all opportunity to grant the requested relief [is] foreclosed*." Local Lodge No. 1266, Int'l Ass'n of Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290 (7th Cir. 1981).[8]

### C. <u>Injunctive Relief Will Not Burden Others' Interests</u>

Defendant DOJ cannot be said to be "burdened" by a requirement that it comply with the law. The immediate relief plaintiff seeks will require nothing more of the government than what the law already mandates — the expedited processing of plaintiff's FOIA requests. Nor will the requested relief burden the interests of other parties who have submitted FOIA requests to the DOJ in any manner beyond that foreseen by Congress. In providing for expedited processing of qualifying requests, Congress intended that such requests would take precedence over those that do not qualify for such

---

[8] This Court has recognized that delay in the processing of FOIA requests "may well result in disclosing the relevant documents after the need for them in the formulation of national . . . policy has been overtaken by events." *Natural Resources Defense Council v. Department of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002) ("*NRDC*") (granting motion for release of documents).

treatment.  Fulfillment of the legislative intent cannot be characterized as a burden on any party's interests.

### D. __The Public Interest Favors the Requested Relief__

The final criterion for the issuance of a preliminary injunction is clearly satisfied in this case.  The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate."  *Jacksonville Port Authr.*, 556 F.2d at 59 (D.C. Cir. 1977).  Likewise, it is "axiomatic that an 'agency is required to follow its own regulations.'"  *Edmonds v. FBI*, C.A. No. 02-1294, 2002 U.S. Dist. LEXIS 26578, at *9 n.3 (D.D.C. Dec. 3, 2002) (quoting *Cherokee National of Okla. v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997)).  Such adherence is all that plaintiff seeks here.  The public interest will also be served by the expedited release of the requested records, which will further the FOIA's core purpose of "shedding light on an agency's performance of its statutory duties."  *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989).  As this Court has noted, "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities.  *Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999).  The public interest favors the issuance of an order directing defendant DOJ to immediately process and release the requested information.

### III.  __The Court Should Order Defendant DOJ to Process Plaintiff's FOIA Requests Immediately__

While plaintiff recognizes that preliminary injunctive relief is not the norm in FOIA cases, plaintiff nonetheless submits that such relief is appropriate when, as in this case, an agency has paid lip service to, but failed to implement, a well-founded request

for expedited processing.  Congress expressly required agencies to make determinations

on requests for expedited processing within ten calendar days, 5 U.S.C. § 552(a)(6)

(E)(ii)(I), and provided for immediate judicial review of adverse determinations, 5 U.S.C.

§ 552(a)(6)(E)(iii), demonstrating an intent that the courts should act quickly to vindicate

the right to expedition.  *See, e.g., American Civil Liberties Union v. Department of

Justice*, 321 F. Supp. 2d 24, 28-29 (D.D.C. 2004) (complete exhaustion of administrative

remedies not a prerequisite to judicial review of agency expedition decisions).  The

legislative mandate that disputes concerning expedited processing should be quickly

resolved would be frustrated if aggrieved requesters were required to remain idle for

twenty days after initiating suit before moving for partial summary judgment.  Fed. R.

Civ. P. 56(a).  As such, claims involving entitlement to expedited processing are

appropriately addressed through motions for preliminary relief.

More than two years ago, in *Electronic Privacy Information Center v. Department

of Justice*, C.A. No. 03-2078 (D.D.C. Oct. 20, 2003) (order denying preliminary

injunction) (attached hereto as Exhibit 17), Judge Robertson denied plaintiff's motion for

a preliminary injunction, *sua sponte*, before the government had submitted a response.

Judge Robertson wrote that "[a]n injunction restraining the denial of a request . . . is a

writ of mandamus" and that "[t]he showing offered by plaintiff in support of its motion

does not address the quintessential element of mandamus, that the official act demanded

by the movant be nondiscretionary."

Plaintiff respectfully submits that the Court's conclusion was in error.  Although

the Court cited no authority in its brief order, the proposition that requests for mandatory

injunctions are generally judged by the same principles as requests for mandamus derives

from cases that are inapposite here.  *See, e.g., Swan v. Clinton*, 100 F.3d 973, 976 n.1

(D.C. Cir. 1996) ("a request for an injunction *based on the general federal question*

*statute* is essentially a request for a writ of mandamus") (emphasis added).  The FOIA

expressly provides for grants of injunctive relief, 5 U.S.C. § 552(a)(4)(B), and the D.C.

Circuit has held that agency denials of requests to expedite are subject to *de novo* review.

*Al-Fayed*, 254 F.3d at 308.  Indeed, the court of appeals in *Al-Fayed* applied a

preliminary injunction standard and never suggested that a mandamus standard should

apply to claims like the one plaintiff raises here.  *See also American Civil Liberties Union*

*v. Department of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004) ("*ACLU v. DOD*")

(recounts order issued after plaintiff moved for preliminary injunction).[9]

     Likewise, the appropriate form of relief is clear.  The applicable DOJ regulations

dictate the manner in which FOIA requests requiring expedition must be processed.  The

regulations provide that DOJ components "ordinarily shall respond to requests according

to their order of receipt," 28 C.F.R. § 16.5(a), but that requests "will be taken out of order

and given expedited treatment whenever it is determined that they [meet the criteria for

expedited processing]."  *Id.* § 16.5(d)(1).  "If a request for expedited treatment is granted,

the request shall be given priority and shall be processed as soon as practicable."  *Id.* §

16.5(d)(4).

     Application of those requirements here should not be unduly burdensome nor

result in further delay.  The four DOJ components at issue in this case carry relatively

small FOIA caseloads, and handle very few (if any) requests that require expedited

---

[9]  The earlier *EPIC* case is also distinguishable from the situation present here; in that
case, the agency had *denied* plaintiff's request for expedited processing, and preliminary
relief would have required the Court to reverse the agency's substantive determination as
to whether or not the FOIA request was legally entitled to expedition.

processing.  The most recently published DOJ statistics on FOIA processing (for fiscal

year 2004) report as follows:

> ◆ The Office of the Attorney General processed a total of 426
>   requests, of which two were accorded expedited processing;
>
> ◆ The Office of Intelligence Policy and Review processed a total
>   of 34 requests, none of which was accorded expedited
>   processing;
>
> ◆ The Office of Legal Counsel processed a total of 64 requests,
>   none of which was accorded expedited processing; and
>
> ◆ The Office of Legal Policy processed a total of 49 requests,
>   none of which was accorded expedited processing.

U.S. Department of Justice, Freedom of Information Act Report for Fiscal Year 2004,

Compliance with Time Limits/Status of Pending Requests, *at* http://www.usdoj.gov/oip/

annual_report/2004/04foiapg7.htm (attached hereto as Exhibit 18).[10]

    In several recent cases, this Court and others have imposed specific processing

deadlines on agencies, requiring the prompt delivery of non-exempt records to FOIA

requesters.  In *Judicial Watch, Inc*. *v*. *Department of Energy*, 191 F. Supp. 2d 138

(D.D.C. 2002), the Court ordered the Commerce Department and the Transportation

Department to process, respectively, 9000 and 6000 pages of material; to complete the

processing within 60 days; and to provide the requester with a *Vaughn* index within 72

days.  *Id.* at 141.  It is worth noting that the FOIA requests at issue in that case were *not*

claimed to be entitled to expedited processing.  Similarly, in *NRDC*, the Court ordered

the Energy Department to process 7500 pages of material; to complete the processing of

---

[10]  By way of comparison, other DOJ components handle a much larger volume of
requests.  The Bureau of Prisons, for instance, processed 15,744 requests; the FBI
processed 10,736 requests; and the Executive Office for U.S. Attorneys processed 4,967
requests.  *Id.*

the "vast majority" of the material within 32 days; to complete all processing within 48 days; and to provide the requester with a *Vaughn* index within 63 days.  191 F. Supp. 2d at 43-44.  Again, the FOIA request in *NRDC*, unlike the requests at issue here, had not been granted expedited treatment.

More recently, in *ACLU v. DOD*, a case involving an expedited request, the court ordered a variety of agencies to "produce or identify all responsive documents," and to provide the requesters with a *Vaughn* index, within 30 days.  339 F. Supp. 2d at 505. And in *Electronic Privacy Information Center v. Department of Justice*, Civ. No. 05-845 (D.D.C. Nov. 16, 2005) (memorandum order) (attached hereto as Exhibit 19), this Court ordered the FBI to "complete the processing of 1500 pages every 15 calendar days, and provide to Plaintiff all responsive non-exempt pages contained therein, until processing is complete," after the agency had granted a request for expedited processing but failed to produce any responsive records.  *Id.* at 4.

Recognizing the extraordinary public interest in the records at issue here, and in order to facilitate the informed participation of plaintiff, and the American people, in the current and ongoing debate on the propriety of the warrantless surveillance program, the Court should direct defendant DOJ to complete the processing of plaintiff's request, and produce or identify all responsive records, within 20 days of the issuance of the order plaintiff seeks.  The Court should further order defendant DOJ to serve on plaintiff a *Vaughn* index ten days later.[11]

---

[11] Judicial resolution of the expedited processing issue would not resolve all issues raised in the complaint.  Once the question of processing time is resolved, the Court would retain jurisdiction to review the completeness and propriety of DOJ's substantive determination of plaintiff's FOIA requests.  *See Open America v. Watergate Special Prosecution Force*, 547 F. 2d 605 (D.C. Cir. 1976).

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion for a preliminary injunction should be granted.  Plaintiff asks that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this motion at the Court's earliest convenience.


Respectfully submitted,


_____

DAVID L. SOBEL
D.C. Bar No. 360418

MARCIA HOFMANN
D.C. Bar. No. 484136

MARC ROTENBERG
D.C. Bar. No. 422825


ELECTRONIC PRIVACY INFORMATION
CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff

21

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2006, one copy of the foregoing motion for

preliminary injunction was served by hand on the United States Attorney, 555 4th Street, N.W.,

Washington, DC 20001.

_____

MARCIA HOFMANN