# Exhibit 7

*Electronic Privacy Information Center v. Department of Justice*

Plaintiff's Motion for a Preliminary Injunction

# epic.org

1718 Connecticut Ave NW

Suite 200

Washington DC 20009

USA

+1 202 483 1140 [tel]

+1 202 483 1248 [fax]

www.epic.org

December 16, 2005

VIA FACSIMILE — (202) 307-6777

Melanie Ann Pustay, Deputy Director
Office of Information and Privacy
Department of Justice
Suite 570, Flag Building
Washington, DC 20530-0001

      RE:    <u>Freedom of Information Act Request and Request for Expedited<br>Processing</u>

Dear Ms. Pustay:

This letter constitutes an expedited request under the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice ("DOJ")
Office of the Attorney General on behalf of the Electronic Privacy Information Center
("EPIC").

We are seeking agency records (including but not limited to electronic records) from
September 11, 2001 to the present concerning a presidential order or directive
authorizing the National Security Agency ("NSA"), or any other component of the
intelligence community, to conduct domestic surveillance without the prior
authorization of the Foreign Intelligence Surveillance Court ("FISC").

The existence of such an order and the DOJ's familiarity with it was reported in an
article entitled *Bush Lets U.S. Spy on Callers Without Courts* that appeared on the
front page of the New York Times this morning (see attached article). The records
requested by EPIC include (but are not limited to) the following items mentioned in
this article:

1. an audit of NSA domestic surveillance activities;

2. guidance or a "checklist" to help decide whether probable cause exists to
   monitor an individual's communications;

3. communications concerning the use of information obtained through NSA
   domestic surveillance as the basis for DOJ surveillance applications to the
   FISC; and

4. legal memoranda, opinions or statements concerning increased domestic surveillance, including one authored by John C. Yoo shortly after September 11, 2001 discussing the potential for warrantless use of enhanced electronic surveillance techniques.

Request for Expedited Processing

This request clearly meets the standard for expedited processing under applicable Department of Justice regulations because it involves a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). In addition, this request pertains to a matter about which there is an "urgency to inform the public about an actual or alleged Federal government activity," and the request is made by "a person primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). A copy of this request has been provided to the Director of Public Affairs as required by 28 C.F.R. § 16.5(d)(2).

The government activity at issue here — President Bush's authorization of warrantless domestic surveillance, and the DOJ's knowledge of and relationship to such surveillance — raises serious legal questions about the government's intelligence activity and has received considerable media attention in the past few hours. The New York Times reported on its front page this morning:

> Months after the Sept. 11 attacks, President Bush secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying, according to government officials.

> Under a presidential order signed in 2002, the intelligence agency has monitored the international telephone calls and international e-mail messages of hundreds, perhaps thousands, of people inside the United States without warrants over the past three years in an effort to track possible "dirty numbers" linked to Al Qaeda, the officials said.

> *        *        *

> In mid-2004, concerns about the program expressed by national security officials, government lawyers and a judge prompted the Bush administration to suspend elements of the program and revamp it.

> For the first time, the Justice Department audited the N.S.A. program, several officials said. And to provide more guidance, the Justice Department and the agency expanded and refined a checklist to follow in deciding whether probable cause existed to start monitoring someone's communications, several officials said.

2

A complaint from Judge Colleen Kollar-Kotelly, the federal judge who oversees the Federal Intelligence Surveillance Court, helped spur the suspension, officials said. The judge questioned whether information obtained under the N.S.A. program was being improperly used as the basis for F.I.S.A. wiretap warrant requests from the Justice Department, according to senior government officials. While not knowing all the details of the exchange, several government lawyers said there appeared to be concerns that the Justice Department, by trying to shield the existence of the N.S.A. program, was in danger of misleading the court about the origins of the information cited to justify the warrants.

One official familiar with the episode said the judge insisted to Justice Department lawyers at one point that any material gathered under the special N.S.A. program not be used in seeking wiretap warrants from her court.

*       *       *

[S]enior Justice Department officials worried what would happen if the N.S.A. picked up information that needed to be presented in court. The government would then either have to disclose the N.S.A. program or mislead a criminal court about how it had gotten the information.

*       *.       *

The legal opinions that support the N.S.A. operation remain classified, but they appear to have followed private discussions among senior administration lawyers and other officials about the need to pursue aggressive strategies that once may have been seen as crossing a legal line, according to senior officials who participated in the discussions.

For example, just days after the Sept. 11, 2001, attacks on New York and the Pentagon, Mr. [John C.] Yoo, the Justice Department lawyer, wrote an internal memorandum that argued that the government might use "electronic surveillance techniques and equipment that are more powerful and sophisticated than those available to law enforcement agencies in order to intercept telephonic communications and observe the movement of persons but without obtaining warrants for such uses."

James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, NY Times, Dec. 15, 2005 at A1.

The matter has raised serious questions about the constitutionality of the NSA's domestic surveillance activities. According to the New York Times article, "some officials familiar with the continuing operation have questioned whether the surveillance has stretched, if not crossed, constitutional limits on legal searches." The article also states that "nearly a dozen current and former officials, who were granted anonymity because of the classified nature of the program, discussed it with reporters for The New York Times because of their concerns about the operation's legality and oversight. Furthermore, the Washington Post reported, "Congressional sources familiar with limited aspects of the

program would not discuss any classified details but made it clear there were serious questions about the legality of the NSA actions." Dan Eggen, *Bush Authorized Domestic Spying*, Washington Post, Dec. 16, 2005, at A01 (attached hereto).

In addition, this subject has unquestionably been the subject of widespread and exceptional media interest. In addition to the New York Times and Washington Post, hundreds of local and national media organizations reported on this matter throughout the United States this morning.  In fact, a Google News search identified approximately 316 news stories on the NSA's domestic surveillance (Google News results attached hereto).

Furthermore, at least one congressional committee will be investigating the NSA's domestic surveillance activities in the coming days.  Senator Arlen Specter, Chairman of the Senate Judiciary Committee, said that the surveillance at issue is "wrong, clearly and categorically wrong . . . This will be a matter for oversight by the Judiciary committee as soon as we can get to it in the new year — a very, very high priority item.'" *Specter Says Senate to Probe Report U.S. Broke Law on Spying, Bloomberg*.com, Dec. 16, 2005 (attached hereto).  It is critical for Congress and the public to have as much information as possible about the DOJ's role in this surveillance to fully consider and determine its propriety.

The purpose of EPIC's request is to obtain information directly relevant to the DOJ's knowledge of and relationship to the NSA's domestic intelligence activities.  The records requested therefore clearly meet both standards for expedited processing.

Further, as I explain below in support of our request for "news media" treatment, EPIC is "primarily engaged in disseminating information."

Request for "News Media" Fee Status

EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public.  This is accomplished through several means. First, EPIC maintains a heavily visited Web site (www.epic.org) that highlights the "latest news" concerning privacy and civil liberties issues.  The site also features scanned images of documents EPIC obtains under the FOIA.  Second, EPIC publishes a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets.  The newsletter reports on relevant policy developments of a timely nature (hence the bi-weekly publication schedule).  It has been published continuously since 1996, and an archive of past issues is available at our Web site.  Finally, EPIC publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues.  A list of EPIC publications is available at our Web site.

For the foregoing reasons, EPIC clearly fits the definition of "representative of the news media" contained in the FOIA.  Indeed, the U.S. District Court for the District of Columbia has specifically held that EPIC is "primarily engaged in disseminating information" for the purposes of expedited processing, *American Civil Liberties*

*Union v. Department of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004), and is a
"representative of the news media" for fee waiver purposes, *Electronic Privacy
Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003).
Based on our status as a "news media" requester, we are entitled to receive the
requested records with only duplication fees assessed. Further, because disclosure of
this information will "contribute significantly to public understanding of the
operations or activities of the government," as described above, any duplication fees
should be waived.

Thank you for your consideration of this request. As the FOIA provides, I will
anticipate your determination on our request for expedited processing within ten (10)
calendar days. Should you have any questions about this request, please feel free to
call me at (202) 483-1140 ext. 112.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the
best of my knowledge.

Sincerely,

Marcia Hofmann
Director, Open Government Project

Enclosures

5