# Exhibit 15

*Electronic Privacy Information Center v. Department of Justice*

Plaintiff's Motion for a Preliminary Injunction

The New York Times
nytimes.com

January 12, 2006

# In Shift, Bush Says He Welcomes Inquiry on Secret Wiretaps

By DAVID E. SANGER

LOUISVILLE, Ky., Jan. 11 - President Bush said Wednesday that he would welcome a Congressional investigation of whether he had the authority to order the National Security Agency to monitor communications in the United States without warrants.

Until now, the White House had opposed public hearings, which are scheduled to begin next month in the Senate. But on Wednesday, answering questions from a friendly crowd in Louisville in a conference center decorated with signs that said "Winning the War on Terror," Mr. Bush appeared ready to make the best of a political necessity.

In his campaign-style meeting, he was repeatedly applauded for authorizing the wiretaps, a decision that some of his political aides said they believed would ultimately help rebuild his approval ratings by demonstrating the lengths to which he would go to prevent another terrorist attack inside the United States.

Asked whether his administration was going to "go after the media" for revealing operations like the domestic wiretapping, Mr. Bush instead defended his decision to authorize the surveillance. "I did so because the enemy still wants to hurt us," he said. "And it seems like to me that if somebody is talking to Al Qaeda, we want to know why."

His order enabled the National Security Agency to monitor the international phone calls and e-mail messages of people in the United States suspected of links to Al Qaeda.

Singling out Americans and others in the United States for such surveillance would normally require a warrant under the Foreign Intelligence Surveillance Act, although the act also allows the attorney general to authorize a wiretap if it is reported to the court within 72 hours.

"Now, I - look, I understand people's concerns about government eavesdropping," Mr. Bush said. "And I share those concerns, as well. So obviously I had to make the difficult decision between balancing civil liberties and, on a limited basis - and I mean limited basis - try to find out the intention of the enemy."

The president never directly addressed the question of why he avoided the existing system, although his legal advisers and intelligence aides have said it was too cumbersome.

"There will be a lot of hearings to talk about that, but that's good for democracy," Mr. Bush said. "Just so long as the hearings, as they explore whether or not I had the prerogative to make the decision I made, doesn't tell the enemy what we're doing. See, that's the danger."

Mr. Bush said some key members of Congress had been briefed on the program several years ago and "we gave them a chance to express their disapproval or approval," brushing past the claims of some Democrats that their questions about the program's legality were never resolved.

The president's statement that he was willing to see public hearings go forward was a change from his stance at a news conference at the White House just before Christmas. At the time, he said, "Any public hearings on programs will say to the enemy, 'Here's what they do - adjust.' "

Senator Arlen Specter, a Pennsylvania Republican and the chairman of the Senate Judiciary Committee, has scheduled open hearings, and the Senate Intelligence Committee has said it plans closed hearings.

The president's legal justification for the N.S.A. program has gotten mixed reviews, ranging from enthusiastic to skeptical to scathing.

This week, Representative Jane Harman of California, the top Democrat on the House Intelligence Committee, released a 14-page legal analysis she had requested from a former C.I.A. general counsel, Jeffrey H. Smith, now a Washington lawyer.

Although recognizing the president's assertion that his power as commander in chief justifies warrantless surveillance, Mr. Smith called that case "weak" in light of the language and documented purpose of the Foreign Intelligence Surveillance Act of 1978, which requires warrants.

Mr. Smith also wrote that the Congressional resolution authorizing military force against those who carried out the Sept. 11, 2001, terrorist attacks "does not, in my view, justify warrantless electronic surveillance of United States persons in the United States."

"The president was correct in concluding that many of our laws were not adequate to deal with this new threat," Mr. Smith wrote. "He was wrong, however, to conclude that he is therefore free to follow the laws he agrees with and ignore those with which he disagrees."

*Scott Shane contributed reporting from Washington for this article.*