Westlaw.

2005 WL 3360884                                                                  Page 1
--- F.Supp.2d ----, 2005 WL 3360884 (D.D.C.)
**(Cite as: 2005 WL 3360884 (D.D.C.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, District of Columbia.
LEADERSHIP CONFERENCE ON CIVIL RIGHTS,
Plaintiff,
v.
Alberto GONZALES, [FN1] Attorney General, et al.,
Defendants.
**No. Civ.A. 04-1664(RCL).**

Dec. 9, 2005.

**Background:** Requester, a nonpartisan coalition formed to promote enactment and enforcement of effective civil rights legislation and policy brought action against the United States Attorney General and Department of Justice (DOJ), alleging that defendants improperly withheld information, which concerned records of communications transmitted by the Department of Justice relating to monitoring of federal elections, it had requested under the Freedom of Information Act (**FOIA**). Defendants moved for partial summary judgment and for a stay of proceedings as to the remainder of the case. Requester moved for partial summary judgment on its request for **expedited processing**.

**Holdings:** The District Court, Lamberth, J., held that:
(1) draft of training manual for prosecution of election offenses was not "inter-agency or intra-agency" communication, and, thus, was not protected from disclosure under the deliberative process privilege of **FOIA** exemption for materials normally privileged from discovery in civil litigation against agency;
(2) names and telephone extension numbers of DOJ paralegals were not exempt from disclosure;
(3) documents consisting of local police arrest reports, bail bond information, and affidavits by and concerning private individuals that were filed in court were protected from disclosure;
(4) defendants failed to show that exceptional circumstances existed, or that they acted with due diligence, and, thus, they were not entitled to stay; and
(5) **expedited processing** of requester's **FOIA** requests was warranted.
Motions granted in part and denied in part.

**[1] Federal Civil Procedure ⚷2509.8**

170Ak2509.8 Most Cited Cases
For defendants to prevail on a summary judgment motion in a Freedom of Information Act (**FOIA**) case, they must demonstrate two elements: (1) defendants must demonstrate that they conducted an adequate search which was reasonably calculated to uncover all relevant documents, and (2) materials that are withheld fall within a **FOIA** statutory exemption. 5 U.S.C.A. § 552.

**[2] Records ⚷62**
326k62 Most Cited Cases
To withhold documents responsive to a Freedom of Information Act (**FOIA**) request, an agency must show that the withheld documents fall within one of the statutory exemptions to **FOIA**; to make such a showing, an agency may submit affidavits and declarations describing the documents withheld and the statutory basis for the withholdings. 5 U.S.C.A. § 552.

**[3] Records ⚷62**
326k62 Most Cited Cases

**[3] Records ⚷65**
326k65 Most Cited Cases
For the sake of efficiency, the agency's burden of showing that withheld documents fall within one of the statutory exemptions to Freedom of Information Act (**FOIA**) may be satisfied by submission of a "Vaughn Index" and supporting declarations, which must provide a court with an adequate description of documents that are being withheld from production pursuant to a specified **FOIA** exemption and the justification for the applicability of the exemption invoked. 5 U.S.C.A. §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3360884
--- F.Supp.2d ----, 2005 WL 3360884 (D.D.C.)
**(Cite as: 2005 WL 3360884 (D.D.C.))**

Page 2

552.

**[4] Records** ⚷62
326k62 Most Cited Cases
Exemptions to disclosure pursuant to the Freedom of Information Act (**FOIA**) may not be justified by mere conclusory and generalized allegations. 5 U.S.C.A. § 552.

**[5] Records** ⚷62
326k62 Most Cited Cases
Under the Freedom of Information Act (**FOIA**), any reasonably segregable portions of requested records must be disclosed once the exempt portions have been redacted. 5 U.S.C.A. § 552.

**[6] Records** ⚷57
326k57 Most Cited Cases
The deliberative process privilege of Freedom of Information Act (**FOIA**) exemption for materials normally privileged from discovery in civil litigation against agency may not be used to create secret agency law. 5 U.S.C.A. § 552(b)(5).

**[7] Records** ⚷57
326k57 Most Cited Cases
Freedom of Information Act (**FOIA**) exemption for materials normally privileged from discovery in civil litigation against agency, and the deliberative process privilege, operate to protect the decision-making processes of government agencies and encourage open discussion of legal and policy issues. 5 U.S.C.A. § 552(b)(5).

**[8] Witnesses** ⚷216(1)
410k216(1) Most Cited Cases
The main purpose of the deliberative process privilege is to protect the quality of agency decisions.

**[9] Records** ⚷57
326k57 Most Cited Cases
Appropriate application of the deliberative process privilege of Freedom of Information Act (**FOIA**) exemption for materials normally privileged from discovery in civil litigation against agency demands that the documents being withheld meet two requirements; the documents must be both pre-decisional and deliberative. 5 U.S.C.A. § 552(b)(5).

**[10] Records** ⚷57
326k57 Most Cited Cases
For purposes of the deliberative process privilege of Freedom of Information Act (**FOIA**) exemption for materials normally privileged from discovery in civil litigation against agency, a document is pre-decisional if: (1) it was prepared in assistance of agency decision-making, as opposed to supporting, post hoc, a decision that predates creation of the document, and (2) it reflects the discourse that occurred during the decision-making process, and that discourse is of the type that would be discouraged absent the ability to withhold. 5 U.S.C.A. § 552(b)(5).

**[11] Records** ⚷57
326k57 Most Cited Cases
In determining whether a document is pre-decisional, for purposes of the deliberative process privilege of Freedom of Information Act (**FOIA**) exemption for materials normally privileged from discovery in civil litigation against agency, courts generally look to whether the document was generated before the adoption of an agency policy and whether the document reflects the give-and-take of the consultative process. 5 U.S.C.A. § 552(b)(5).

**[12] Records** ⚷57
326k57 Most Cited Cases
Draft of training manual for prosecution of election offenses was not "inter-agency or intra-agency" communication, and, thus, was not protected from disclosure under the deliberative process privilege of Freedom of Information Act (**FOIA**) exemption for materials normally privileged from discovery in civil litigation against agency, where draft manual was used at a ballot integrity symposium that was attended by people from outside the executive branch. 5 U.S.C.A. § 552(b)(5).

**[13] Records** ⚷57
326k57 Most Cited Cases
Draft of training manual for prosecution of election offenses was not deliberative, for purposes of the deliberative process privilege of Freedom of Information Act (**FOIA**) exemption for materials

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3360884
--- F.Supp.2d ----, 2005 WL 3360884 (D.D.C.)
**(Cite as: 2005 WL 3360884 (D.D.C.))**

Page 3

normally privileged from discovery in civil litigation against agency, where it was given to non-agency attendees of ballot integrity symposium as informal guidance, and it was substantively final. 5 U.S.C.A. § 552(b)(5).

[14] Records €⇒58
326k58 Most Cited Cases
To fall within the scope of Freedom of Information Act (**FOIA**) exemption for personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, a record must first satisfy the threshold requirement of being a "similar file" to medical and personnel files; once the threshold requirement has been established, the focus turns to whether the disclosure of the records would constitute a clearly unwarranted invasion of privacy. 5 U.S.C.A. § 552(b)(6).

[15] Records €⇒60
326k60 Most Cited Cases

[15] Records €⇒64
326k64 Most Cited Cases
The privacy interest of those protected by Freedom of Information Act (**FOIA**) exemption for documents revealing the identities of suspects and others of investigatory interest who are identified in agency records in connection with law enforcement investigations must be balanced against the public interest, if any, that would be served by disclosure; as with other exemptions that require balancing, the only relevant public interest is that interest central to **FOIA**, i.e., the public interest in shedding light on an agency's performance of its statutory duties. 5 U.S.C.A. § 552(b)(7)(C).

[16] Records €⇒58
326k58 Most Cited Cases
Names and telephone extension numbers of Department of Justice (DOJ) paralegals were not similar to medical and personnel files, for purposes of Freedom of Information Act (**FOIA**) exemption for personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; name and work numbers was not personal or intimate information, withholding such information did not serve a "significant" or "substantial" privacy interest, and there was strong public interest in information sought. 5 U.S.C.A. § 552(b)(6).

[17] Records €⇒58
326k58 Most Cited Cases
A name and work telephone number is not personal or intimate information, such as a home address or a social security number, that normally would be considered protected information under Freedom of Information Act (**FOIA**) exemption for personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C.A. § 552(b)(6).

[18] Records €⇒60
326k60 Most Cited Cases

[18] Records €⇒66
326k66 Most Cited Cases
Documents consisting of local police arrest reports, bail bond information, and affidavits by and concerning private individuals that were filed in court were protected from disclosure under Freedom of Information Act (**FOIA**) exemption for documents revealing the identities of suspects and others of investigatory interest who are identified in agency records in connection with law enforcement investigations, where they were compiled for law enforcement purposes, withholding information redacted from those documents served privacy interest of individuals subjected to law enforcement actions, and public interest in release of such information was outweighed by strong privacy interest implicated. 5 U.S.C.A. § 552(b)(7)(C).

[19] Records €⇒60
326k60 Most Cited Cases
Individuals subject to law enforcement actions have an obvious privacy interest under Freedom of Information Act (**FOIA**) exemption for documents revealing the identities of suspects and others of investigatory interest who are identified in agency records in connection with law enforcement investigations, and agencies may withhold the names of these individuals as a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3360884
--- F.Supp.2d ----, 2005 WL 3360884 (D.D.C.)
**(Cite as: 2005 WL 3360884 (D.D.C.))**

Page 4

"categorical matter." 5 U.S.C.A. § 552(b)(7)(C).

**[20] Records** ⛬60
326k60 Most Cited Cases
Law enforcement officers who work on criminal investigations, and individuals who provide information to the law enforcement authorities, have a privacy interest protected from disclosure under Freedom of Information Act (**FOIA**) exemption for documents revealing the identities of suspects and others of investigatory interest who are identified in agency records in connection with law enforcement investigations. 5 U.S.C.A. § 552(b)(7)(C).

**[21] Records** ⛬60
326k60 Most Cited Cases
Private citizens who may be mentioned in investigatory files, witnesses, and informants enjoy a privacy interest protected from disclosure under Freedom of Information Act (**FOIA**) exemption for documents revealing the identities of suspects and others of investigatory interest who are identified in agency records in connection with law enforcement investigations. 5 U.S.C.A. § 552(b)(7)(C).

**[22] Records** ⛬62
326k62 Most Cited Cases
United States Attorney General and Department of Justice (DOJ) failed to show that exceptional circumstances existed, or that they acted with due diligence, and, thus, they were not entitled to stay for additional time to complete review of their records in response to Freedom of Information Act (**FOIA**) request, although agencies claimed that large backlog of pending **FOIA** requests created personnel and project management difficulties, where such a backlog was predictable. 5 U.S.C.A. § 552(a)(6)(C)(I).

**[23] Records** ⛬62
326k62 Most Cited Cases
An agency must show more than a great number of requests to establish exceptional circumstances sufficient to entitle it to stay for additional time to complete review of its records in response to Freedom of Information Act (**FOIA**) request. 5 U.S.C.A. § 552(a)(6)(C)(I).

**[24] Records** ⛬62
326k62 Most Cited Cases
Requester, a nonpartisan coalition formed to promote enactment and enforcement of effective civil rights legislation and policy, showed that it was primarily engaged in disseminating information, and that there existed an urgency to inform the public concerning actual or alleged federal government activity, as required for **expedited processing** of its Freedom of Information Act (**FOIA**) requests for information concerning records of communications transmitted by the Department of Justice relating to monitoring of federal elections; requester, whose mission was to serve as site of record for relevant and up-to-the minute civil rights news and information, was monitoring election law reform and coordinating legislative campaign to re-authorize provisions of the Voting Rights Act due to expire in 2007. 5 U.S.C.A. § 552(a)(6)(E)(v)(II); Voting Rights Act of 1965, § 2 et seq., 42 U.S.C.A. § 1973 et seq.

Eleanor Huske Smith, Zuckerman Spaeder LLP, Washington, DC, for Plaintiff.

Kathleen M. Konopka, Claire M. Whitaker, U.S. Attorney's Office, Washington, DC, for Defendants.

*MEMORANDUM OPINION*

LAMBERTH, District Judge.

*1 This matter comes before the Court on defendants' motion [16] for partial summary judgment and for a stay of proceedings as to the remainder of the case, pursuant to *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.Cir.1976). In opposition, plaintiff filed a motion [29] for partial summary judgment on its request for **expedited processing**. Upon consideration of the motions, the applicable law and the records in this case, defendants' motion [16] for partial summary judgment and stay of proceedings is granted in part and denied in part and plaintiff's motion [29] for partial summary judgment on its request for **expedited processing** will be granted in part and denied in part.

*BACKGROUND*
On May 24, 2004, plaintiff, Leadership Conference on

Civil Rights, [FN2] submitted six requests addressed to the Department of Justice's Criminal Division Freedom of Information Act ("**FOIA**") Unit. The requests concerned records of communications transmitted by the Department of Justice relating to the monitoring of federal elections in any jurisdiction from 1988 to the present. (Defs.' Mot. 2.)

Under the Freedom of Information Act, plaintiff seeks access to records of communications by the Department of Justice regarding (1) actual or alleged intimidation of racial, ethnic or language minority voters or suppression of minority votes and (2) monitoring of federal elections by federal observers or Department of Justice representatives, for federal elections from 1988 to the present. (Pl.'s Mot. 1.) The Leadership Conference **FOIA** requests include not only records of action initiated by the Justice Department but also any response by the Department of Justice to these inquiries.

Plaintiff dispatched six requests identifying the records which it was seeking to obtain. The first requested all of defendant's communications related to the monitoring by federal observers or representatives of federal elections. (Defs.' Mot. 2.) The second letter asked for documents related to alleged or actual use of video cameras and/or still cameras at polling places in federal elections. (*Id.*) The third request wanted documents referring to or relating to the alleged or actual videotaping and/or photographing of voters at polling paces in federal elections. (*Id.*) The fourth letter requested copies of documents referring to alleged or actual 'ballot security' procedures or programs at polling places in federal elections including all procedures or programs intended to discover, deter, prevent or remedy voter fraud. (*Id.*) The fifth letter requested documents concerning any alleged or actual intimidation and/or harassment of African-American, Hispanic, or other racial or ethnic minority voters at polling places in federal elections. (*Id.* at 3.) The final request was for documents referring to allegations of actual intimidation and/or harassment of language minority voters at polling places in federal elections. (*Id.*)

*2 On August 4, 2004, plaintiff was notified by the Criminal Division's **FOIA**/PA Unit that a search for records would be conducted that encompassed only Criminal Division records and that the Voting Section of the Civil Rights Division may also maintain records responsive to its request. (*Id.*) On September 28, 2004, plaintiff instituted this action. On October 6, 2004, plaintiff issued a subpoena to the Attorney General of the United States for a Fed.R.Civ.P. 30(b)(6) witness to testify at a deposition in reference to the requested records by plaintiff. Plaintiff also requested expedited consideration of its claims by this Court. Defendants filed a motion to quash said subpoena and on October 20, 2004, the Court held an emergency motion hearing on the matter.

At the hearing, it was asked if plaintiff's requests could be narrowed in order to receive materials before the General Election on November 4, 2004. Plaintiff indicated that training materials from 2002 through 2004, as well as policy directives issued by the Election Crimes Section to the district election officers in the field would satisfy them initially. Defendants agreed to search for records identified by this narrowed request and provide them to plaintiff on an expedited basis before the General Election.

From October 26, 2004 to December 9, 2004, defendants released documents in response to plaintiff's narrowed request. But not all documents were released. Plaintiff was notified that the certain records were withheld pursuant to **FOIA** Exemptions 5, 6, and 7(C), as set forth in 5 U.S.C. 552(b). (McIntrye Decl. at ¶ 6). Plaintiff also advised that other documents had been referred to the Department of Defense, the Civil Rights Division and the Office of Information and Privacy for processing. (*Id.*)

**FOIA** Exemption 5 was asserted to withhold a draft of the proposed *7th Edition of Federal Prosecution of Election Officials,* prepared by the Department of Justice. (McIntyre Decl. at ¶ 10.) **FOIA** Exemptions 6 and 7(C) were asserted to withhold the names and telephone extension numbers of paralegals of the Public Integrity Section that appeared in some of the documents, (*id.* at ¶ 20.) and to withhold training materials that included local police arrest reports, bail bond information and affidavits concerning private individuals that were in 1997 court filings. (*Id.* at ¶ 22.)

Plaintiff contends that defendants' exemptions are meritless and therefore should release all records withheld in the initial processing.

Defendants now move for partial summary judgment on their assertions of **FOIA** exemptions for the records from the 2004 production, and for relief from further disclosure of records responsive to plaintiff's **FOIA** requests until August, 2008. Plaintiff counters with a motion for partial summary judgment on its request for **expedited processing** of its **FOIA** requests.

## *LEGAL STANDARD*

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the motion papers, affidavits, and other submitted evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Whether a fact is "material" is determined in light of the applicable substantive law invoked by the action. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In light of the applicable substantive law, a "genuine issue of material fact" is a fact that is determinative of a claim or defense, and therefore, affects the outcome of the case. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The moving party bears the initial burden of demonstrating that no genuine issues of material fact are in dispute. Upon such a showing, the burden then shifts to the non-moving party to demonstrate that genuine issues of material fact are in dispute. The Court is precluded from weighing evidence or finding disputed facts and must draw all inferences and resolve all doubts in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## *DISCUSSION*

*3 [1] For defendants to prevail on their partial summary judgment motion in a **FOIA** case, they must demonstrate two elements. First, defendants must demonstrate that they conducted an adequate search which was reasonably calculated to uncover all relevant documents. *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983). Second, materials that are withheld must fall within a **FOIA** statutory exemption. *Id.* Plaintiff contests both the initial search's adequacy and the propriety of withholdings under **FOIA's** three exemptions.

### I. *Adequacy of the Narrowed Search*

At the October 20, 2004 hearing, both parties consented to a narrowed search for records so that a response to plaintiff's request could be given before the General Election on November 2, 2004. Plaintiff's counsel defined its narrowed request as: "training manuals and the instructions to the U.S. Attorneys." Tr. 14 (Hr'g, Oc.20, 2004) The adequacy of the narrowed search is not in dispute. The Court finds that defendants' declarations demonstrate a thoughtful, comprehensive initial search that satisfies the requirements of the **FOIA.**

As to the initial search, the Court will not further address this issue at this time since both parties agreed to the narrowed search.

### II. *FOIA Exemptions*

[2][3][4][5] To withhold documents responsive to a **FOIA** request, an agency must show that the withheld documents fall within one of the statutory exemptions to **FOIA.** *Weisberg,* 705 F.2d at 1351. To make such a showing, an agency may submit affidavits and declarations describing the documents withheld and the statutory basis for the withholdings. *See Judicial Watch, Inc. v. United States Postal Service,* 297 F.Supp.2d 252, 256 (D.D.C.2004); *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973). For the sake of efficiency, the agency's burden may be satisfied by submission of a "Vaughn Index" and supporting declarations, which must provide a court with an adequate description of documents that are being withheld from production pursuant to a specified **FOIA** exemption and the justification for the applicability of the exemption invoked. *See Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C.Cir.1979); *Vaughn,* 484 F.2d *passim.* Exemptions may not be justified by mere "conclusory and generalized allegations." *Vaughn,* 484 F.2d at 826. Any reasonably segregable portions of

2005 WL 3360884
--- F.Supp.2d ----, 2005 WL 3360884 (D.D.C.)
(Cite as: 2005 WL 3360884 (D.D.C.))

requested records must be disclosed once the exempt portions have been redacted, *Oglesby v. United States Dep't of the Army,* 79 F.3d 1172, 1176 (D.C.Cir.1996).

A. *Exemption 5*

[6] Exemption 5 permits an agency to withhold documents constituting "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Withholdings under this exemption may include documents "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 148, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *see also Martin v. Office of Special Counsel,* 819 F.2d 1181, 1185 (D.C.Cir.1987). However, the deliberative process privilege of Exemption 5 may not be used to create secret agency law. *Tax Analysts v. Internal Revenue Service,* 117 F.3d 607, 617 (D.C.Cir.1997); *Evans v. U.S. Office of Personnel Management,* 276 F.Supp.2d 34, 41 (D.D.C.2003) ("stating an agency will not be permitted to develop a body of 'secret law.' "). Here, defendant contends that the withheld documents fall within the deliberative process privilege.

*1. Deliberative Process Privilege*

\*4 [7][8][9] Exemption 5 and the deliberative process privilege operate to protect the decision-making processes of government agencies and encourage open discussion of legal and policy issues. The main purpose of the deliberative process privilege is to protect the "quality of agency decisions." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). However, appropriate application of the deliberative process privilege demands that the documents being withheld meet two requirements. The documents must be both pre-decisional and deliberative. *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1537 (D.C.Cir.1993) (internal citations and quotes omitted).

[10][11] First, a document is pre-decisional if it was prepared in assistance of agency decision-making, as opposed to supporting, post hoc, a decision that predates creation of the document. *See Petroleum Info.* *Corp. v. U.S. Dep't of Interior,* 976 F.2d 1429, 1434 (D.C.Cir.1992). Second, a document is deliberative if it reflects the discourse that occurred during the decision-making process, and that discourse is of the type that would be discouraged absent the ability to withhold. *See Id.* In general, courts look to whether the document was generated before the adoption of an agency policy and whether the document reflects the give-and-take of the consultative process. *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866-68 (D.C.Cir.1980). "The government has the burden of showing that the materials were 'generated before the adoption of an agency policy' and 'reflect[ ] the give-and-take of the consultative process.' " *Tax Analysts,* 117 F.3d at 616 (quoting *Coastal States,* at 866).

[12] In this case, plaintiff argues that Exemption 5 has been improperly asserted to the draft of the training manual entitled the *7th Edition of Federal Prosecution of Election Offenses.* Plaintiff argues that because the draft manual was used at a 2004 ballot integrity symposium that was attended by people from outside the executive branch, the document should not be exempt. (Pl.'s Mot. 50.) Plaintiff also asserts that the draft manual is duplicative, at least in part, of earlier published manuals and is neither pre-decisional nor deliberative. (*Id* at 51.) Finally, plaintiff submits that even if the deliberative process privilege applies, "all factual and previously disclosed information should be segregated and disclosed." (*Id.* at n. 28.) The Court finds that the 7th Edition of *Federal Prosecution of Election Officials* is neither pre-decisional nor deliberative.

With regard to plaintiff's contention that the draft manual has already been released to the public, there is evidence in the record that establishes that fact. The Ballot Access & Voting Integrity Symposium III ("symposium") was held on July 20-21, 2004 in Washington, D.C. The symposium held panels and had keynote speakers that spoke to federal prosecutors and others from across the United States and Mexico concerning ballot access and election fraud issues. Mr. Craig Donsanto, Director, Election Crimes Branch, was the point of contact for the symposium and was primarily in charge of all activities during the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

conference. At the symposium, defendants made available copies of the training manual to numerous people outside the executive branch. The symposium's agenda even identified participants from Mexico, the State of Kentucky and civil rights organizations.

*5 As set forth in the initial McIntyre declaration, dated December 9, 2004, the draft of the proposed 7th Edition of *Federal Prosecution of Election Officials* was "shared with other Department of Justice Attorneys [at the 2004 Justice Department training session]" but "never publicly disclosed." (McIntyre Decl. at ¶ 12.) Later in Mr. McIntyre's Supplemental Declaration, dated April 25, 2005, he admits:

> All of the individuals who participated, either as speakers or attendees, did so solely because of a conviction that their presence would be of benefit to and in furtherance of the purposes of the United States government. None of the handful of individuals who was not a federal employee can be regard as a curious member of the public or mere spectator [None of the additional speakers attended the substantive portions of the seminar]. Additionally, all of the individuals who received a copy of the draft manual accepted it under the conditions specified on the disclaimer by Mr. Donsanto that preceded it. There is no evidence that any of these individuals has disseminated the draft manual to the public. In the case of the several Mexican officials, the draft manual's value and any inclination to further disseminate it, would obviously be limited by virtue of being in draft form, requiring translation into Spanish for wide-spread use, and being concerned exclusively with matters governed by U.S. law.
> (McIntyre Supplemental Declaration at ¶ 19.)

Mr. McIntyre's supplemental declaration is inadequate as is defendants' argument. Moreover, Mr. McIntyre's initial declaration is inconsistent with his supplemental declaration. The training manual was handed out to non-Justice Department attorneys during the symposium as well. In fact, the disclaimer offered by Mr. Donsanto does not state that the draft manual could not be made available to the public. Furthermore, Mr. Donsanto cannot recall to whom at the symposium copies of the training manual were given. (*Id.* at ¶ 18.) Because the 2004 training manual was made available to individuals not associated with the executive branch, it cannot be "inter-agency or intra-agency" communication, and thus does not satisfy the requirements for application of the deliberative process privilege of Exemption 5.

[13] Defendants' exemption 5 claim also fails because the 2004 training manual has been adopted as guidance. To be deliberative, information must "bear on the formulation or exercise of agency policy-oriented judgment." *Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1435 (D.C.Cir.1992). But information is no longer deliberative if the materials have been "adopted formally or informally, as the agency position on an issue" or "used by the agency in its dealings with the public." *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257-58 (D.C.Cir.1982). In this case, the 2004 training manual has been given to the symposium attendees as informal guidance and as stated earlier has also been given to the public. The 2004 manual was not distributed to the symposium attendees to generate suggestions, additional input or recommendations before adoption of a final 7th Edition of the manual. Rather, the training manual was distributed as updated guidance for the attendees. Furthermore, defendants have proffered no evidence that the 2004 training manual was not provided as guidance, to those attending the symposium. The Court agrees with plaintiff that the 2004 training manual is at a minimum the policy of the Director of the Election Crimes Branch if not the Department of Justice. [FN3]

*6 Furthermore, the 2004 training manual fails to fall under **FOIA** Exemption 5 because the record shows that the manual is substantively final and that it was used by the Department of Justice at the 2004 training symposium. Though defendants argue that they labeled the manual as a "Draft," this mere label is not dispositive. As stated in *Judicial Watch v. U.S. Postal Serv.*, "drafts are not presumptively privileged." 297 F.Supp.2d 252, 261 (D.D.C.2004), (citing *Arthur Andersen & Co. v. IRS*, 679 F.2d at 257). Except for professional proofing, Mr. Donsanto's disclaimer indicates that the training manual was in essence the final product. Moreover, the Justice Department established the finality of the 2004 training manual when they decided to use it to train federal prosecutors

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3360884
--- F.Supp.2d ----, 2005 WL 3360884 (D.D.C.)
**(Cite as: 2005 WL 3360884 (D.D.C.))**

Page 9

for the 2004 national election. (McIntyre Decl. at ¶ 10.)

The 2004 training manual is also not deliberative because portions of the manual do not show the give and take required by the deliberative process privilege. The 2004 manual unavoidably is taken from the Sixth Edition or the summary or supplement thereto. Therefore, factual or already public portions of the 2004 manual cannot be a part of the give and take process. It follows that defendants have failed to segregate and disclose all previously released information to plaintiff.

Accordingly, Exemption 5 does not apply to the 2004 training manual.

B. *Exemption 6 & 7(C)*

[14] **FOIA** Exemption 6 allows an agency to withhold documents containing "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(6). To fall within the scope of Exemption 6, a record must "first satisfy the threshold requirement of being a 'similar file' " to medical and personnel files. *N.Y. Times Co. v. NASA,* 920 F.2d 1002, 1004 (D.C.Cir.1990) (*en banc* ). This threshold requirement supports the primary purpose in drafting Exemption 6--"to provide for the confidentiality of personal matters." *United States Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 600, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) (internal quotation marks admitted). Once the threshold requirement has been established, the focus turns to whether the disclosure of the records "would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6).

[15] Like Exemption 6, Exemption 7(C) also protects against unwarranted invasions of privacy by allowing agencies to withhold documents revealing the identities of suspects and others of investigatory interest who are identified in agency records in connection with law enforcement investigations. *DOJ v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 780, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The privacy interest of those protected by this exemption, of course, must be balanced against the public interest, if any, that would be served by disclosure. *Albuquerque Publ'g Co. v. U.S. Dep't of Justice,* 726 F.Supp. 851, 855 (D.D.C.1989). As with other exemptions that require balancing, the only relevant public interest is that interest central to **FOIA**--the public interest in shedding light on an agency's performance of its statutory duties. *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. 1468.

*1. Paralegal Names and Work Numbers*

*7 [16] In this case, the defendants withheld the names and telephone extension numbers of paralegals employed by the Public Integrity Section that appear scattered throughout numerous documents. (McIntyre Decl. at ¶ 20.) This information appears to be withheld from emails from Craig Donsanto, the head of the Election Crimes Branch in the Criminal Division, that instruct federal prosecutors on compliance with Attorney General Ashcroft's voting integrity initiative and require them to provide records to the paralegal whose name and work telephone extension number are withheld. (Pl.'s Mot. 54.)

Defendant argues that an employee has a protectible interest to be protected from potential discovery. (Defs.' Opp'n 12-13.) Defendants also contend that since the name of the chief of the Election Fraud Unit has been identified, there is no compelling need to identify lower level employees. (*Id.*) Defendant suggests that knowing the name of the paralegal's name with the intent of "discovering" information about voter fraud and harassment, as suggested by plaintiff, could lead to unwarranted harassment of the paralegal. (*Id.*) The Court is not persuaded by defendants' contention.

[17] The Court does not consider the names and work telephone numbers of Justice Department paralegals to be similar to a "personnel" or "medical" file. A name and work telephone number is not personal or intimate information, such as a home address or a social security number, that normally would be considered protected information under **FOIA** Exemption 6. *Cf. Nat'l Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 875 (D.C.Cir.1989) (stating Exemption 6 would protect information such as "place of birth, date of birth, date of marriage, employment history, and comparable data"). Accordingly, defendants must disclose the

2005 WL 3360884                                                                                                   Page 10
--- F.Supp.2d ----, 2005 WL 3360884 (D.D.C.)
**(Cite as: 2005 WL 3360884 (D.D.C.))**

names and numbers of the paralegals because defendants have not met the threshold requirement of Exemption 6.

In addition, as the D.C. Circuit states in *Horner,* defendants must demonstrate that withholding serves a "significant" or "substantial" privacy interest. 879 F.2d at 877. The Court can find no privacy interest associated with the agency paralegals and their involvement with communications about plaintiff's **FOIA** requests. In fact, their names and work telephone numbers are already publicly available from the Office of Personnel Management. *See* 5 C.F.R. § 293.311 (2003); *See Davis v. United States Dep't of Justice,* 968 F.2d 1276, 1279 (D.C.Cir.1992) (**FOIA** exemptions cannot be used to shield information already in the "public domain").

Furthermore, there is strong public interest in this matter, *see United States Dep't of State v. Ray,* 502 U.S. 164 at 177, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), namely the interest in protecting minorities against voter intimidation. Because the Department of Justice has a significant role in this area, the public has a right to access those materials that evidence the manner in which the Department of Justice is conducting itself in this regard. *See The Nation Magazine,* 71 F.3d at 894 (D.C.Cir.1995) ("official information that sheds light on an agency's performance of its statutory duties falls squarely within the central purpose of **FOIA**" which is to "open agency action to the light of public scrutiny"); *see also Steinberg v. United States Dep't of Justice,* 179 F.R.D. 366, 370 (D.D.C.1998) ("there is a significant public interest in documents that concern substantive law enforcement policy").

*8 Finally, there is no evidence that the paralegal names and work numbers were compiled for law enforcement purposes. *See generally* McIntyre Decl. (Dec. 9, 2004). It appears to the Court that the references to paralegals' names and work numbers are made to identify to prosecutors the person to whom their voting integrity initiative reports and records should be sent at the Department of Justice. (Pl.'s Mot. 61). Accordingly, Exemption 7(C) does not apply to the paralegal names and work numbers.

*2. Court Records and Filings*

Initially, defendants withheld documents consisting of local police arrest reports, bail bond information and affidavits by and concerning private individuals that were filed in court in 1997. (McIntyre Decl. at ¶ 22.) The documents consists of forty pages of material and only used to illustrate situations, not policy or guidance. (*Id.*) But as a result of plaintiff's desire for this material, defendants have released to plaintiff redacted copies of all pages previously withheld. (McIntyre Supplemental Decl. at ¶ 22.) Pursuant to Exemption 6 and 7(C), however, defendants have redacted information that could reasonably be expected to identify individuals involved to include names, court case numbers and geographic locations. (*Id.*)

[18][19][20][21] Plaintiff concedes that the publicly filed court records were compiled for law enforcement purposes. (Pl.s' Mot. 61.) However, plaintiff does dispute that defendants are entitled to withhold them in their entirety on claim of Exemption 7(C), and argues that defendants have not demonstrated that disclosure of this information would constitute any unwarranted invasion of personal privacy. (*Id.*) The Court credits the defendants' sworn declarations, and accordingly finds that these documents were compiled for law enforcement purposes. Additionally, the referenced information concerns private individuals who, if released, would be once again associated with criminal law enforcement investigations as either complainants or targets. (*Id.* at ¶¶ 22-23.) Furthermore, defendants have established that withholding the redacted information serves a privacy interest. Individuals subject to law enforcement actions have an obvious privacy interest under Exemption 7(C), *Dunkelberger v. Dep't of Justice,* 906 F.2d 779, 781 (D.C.Cir.1990), and agencies may withhold the names of these individuals as a "categorical matter." *Reporters Comm.,* 489 U.S. at 780, 109 S.Ct. 1468. Law enforcement officers who work on criminal investigations, and individuals who provide information to the law enforcement authorities, also have a privacy interest and their names have traditionally been protected from disclosure by Exemption 7(C). *Davis v. Dep't of Justice,* 968 F.2d 1276, 1281 (D.C.Cir.1992); *Computer Prof'ls for Social Responsibility v. Secret*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3360884
--- F.Supp.2d ----, 2005 WL 3360884 (D.D.C.)
(Cite as: 2005 WL 3360884 (D.D.C.))

_Service,_ 72 F.3d 897, 904 (D.C.Cir.1996). Also, private citizens who may be mentioned in investigatory files, witnesses, and informants enjoy a privacy interest. _Davis,_ 968 F.2d at 1281; _King v. Dep't of Justice,_ 830 F.2d 210, 233 (D.C.Cir.1987).

*9 Plaintiff claims that there is a substantial public interest in the release of this information because it reveals how and with what the agency trained federal prosecutors regarding election offenses. Plaintiff's public interest claim, however, does not outweigh the strong privacy interest implicated here. The Court concludes that withholding this information under **FOIA** Exemption 7(C) is justified as to these law enforcement records.

The Court also disagrees with plaintiff's challenge to defendants' Exemption 6 claim regarding the law enforcement material. Plaintiff asserts that because defendants did not redact the withheld documents before they were given to the symposium members--some of whom were not within the executive branch--the documents cannot be withheld. The Supreme Court has made clear that substantial privacy interests can exist in personal information even though the information has been made available to the general public. See _Reporters Committee,_ 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The Court holds that these documents fall under the category of "practical obscurity." _Id._ at 762, 780, 109 S.Ct. 1468. As stated in _Reporters Committee,_ if such items of information actually "were 'freely available,' there would be no reason to invoke **FOIA** to obtain access to" them. _Id._ at 764, 109 S.Ct. 1468. Thus, the Court concludes that defendants' Exemption 6 claim is valid as to these law enforcement records.

III. *Stay of Proceedings*

Defendants move for an _Open America_ stay as to the remaining requests in this law suit "pending such further order as the Court may issue." (Defs.' Opp'n 21.) Generally, an agency receiving a **FOIA** request must determine whether to comply with the request within 20 working days. 5 U.S.C. § 552(a)(6)(A)(I). However, the court may "allow the agency additional time to complete its review of the records" upon a showing that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." _Id._ § 552(a)(6)(C)(I).

Exceptional circumstances exist when an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of ... [5 U.S.C. § 552(a)(6)(A)], and when the agency can show that it 'is exercising due diligence' in processing the requests." _Open Am. v. Watergate Special Prosecution Force,_ 547 F.2d 605, 616 (D.C.Cir.1976) (internal quotation marks omitted). Also, "exceptional circumstances" include "any delays encountered in responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first out basis." _Appleton v. FDA,_ 254 F.Supp.2d 6, 9 (D.D.C.2003). Even so, "predictable agency workload of requests" does not constitute such an "exceptional circumstance" unless "the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii).

*10 [22][23] Defendants have not demonstrated that exceptional circumstances exist nor that they are acting with due diligence. According to the declaration of Mr. McIntyre, there is a large backlog of pending **FOIA** requests, including 16 requests in the "project" category which take a much longer time to process than other requests. (McIntyre Decl. ¶ 11.) In addition, Mr. McIntyre states that the work of the unit has not only been disrupted by court orders requiring maximum manpower on an emergency basis to other litigation and cases but also personnel issues. (_Id._ ¶ 14.) The Court is in no position to determine which "projects" warrant an emergency treatment and which "projects" do not. Furthermore, the Court will not get involved in defendants' personnel and project management difficulties. Therefore, defendants have shown the existence of a predictable backlog of **FOIA** request. [FN4] See McIntyre Decl. (Dec. 1, 2004) ¶ 8. In addition, defendants have not convinced the Court that they are acting with due diligence to decrease their backlog. Accordingly, defendants' motion for an _Open America_ stay until August, 2008, is denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 3360884
--- F.Supp.2d ----, 2005 WL 3360884 (D.D.C.)
**(Cite as: 2005 WL 3360884 (D.D.C.))**

Page 12

IV. *Expedited Processing*

Plaintiff's motion for partial summary judgment asks for **expedited processing** of all records responsive to its six **FOIA** requests. The relief sought by plaintiff will move its requests to the front of the agency's processing queue, as provided by **FOIA**, and require that they be processed "as soon as **practicable**." 5 U.S.C. § 552(a)(6)(E)(iii).

The statute sets out the categories and requirements for **expedited processing** of **FOIA** requests: cases of "compelling need" and "other cases determined by the agency." *Id.* § 552(a)(6)(E)(i)(I) and (II). **FOIA** defines "compelling need" to include, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). In addition, pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(II), defendants have set standards for determining whether a requestor should be granted **expedited processing** of **FOIA** requests in 28 C.F.R. § 16.5(d)(1). The regulation provides, in relevant part, that a **FOIA** request may be expedited if it involves "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv) (2004).

Plaintiff contends that **expedited processing** of its **FOIA** requests is required by 5 U.S.C. § 552(a)(6)(E)(i)(I)(II) and 28 C.F.R. § 16.5(d)(1)(iv). Defendants argue that plaintiff has not shown the type of exceptional circumstances warranting **expedited processing**. Furthermore, defendants maintain that plaintiff cannot show a "compelling need" because there is no urgency at present to inform the public, as plaintiff's request focuses on issues related to election monitoring practices in the current administration and the recently completed federal election, rather than in future elections. The Court agrees with plaintiff.

**\*11** [24] The Court concludes that plaintiff is "primarily engaged in disseminating information," and that there exists an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). Plaintiff is primarily engaged in the dissemination of information regarding civil rights. Plaintiff's mission is to serve as the site of record for relevant and up-to-the minute civil rights news and information. *See* http://*www.civil rights.org/about/ lccr/; see also* Henderson Decl. ¶ 1. Plaintiff disseminates information regarding civil rights and voting rights to educate the public, promote effective civil rights laws, and ensure their enforcement by the Department of Justice. *See id.* Furthermore, the urgency element is met because of the upcoming expiration of the special provisions of the Voting Rights Act in 2007. Plaintiff is monitoring election law reform and coordinating the legislative campaign to re-authorize provisions of the Voting Rights Act that are due to expire in 2007. Plaintiff's **FOIA** requests could have a vital impact on development of the substantive record in favor of re-authorizing or making permanent the special provisions of the Voting Rights Act. (Pl.'s Reply 6.) In addition, the administrative record in this case is full of news reports and magazine articles regarding minority voter intimidation and vote suppression. (*See* Pl.'s Mot. 6-23 and 40-43.) The importance of this issue is paramount and expedition of these documents could advance the current debate over the Voting Rights Act.

Accordingly, defendants shall expedite processing plaintiff's **FOIA** requests and produce the requested records to plaintiffs as soon as **practicable,** but no later than September 28, 2006, two years from the date on which the complaint was initially filed.

*CONCLUSION*

For the foregoing reasons, defendants' motion [16] for summary judgment and an *Open America* Stay is granted in part and denied in part and plaintiff's motion [29] for partial summary judgment is granted in part and denied in part.

A separate Order shall issue this date.

> FN1. Substituted pursuant to Rule 25(d), Federal Rules of Civil Procedure.
>
> FN2. The Leadership Conference on Civil Rights is a nonpartisan coalition of over 180

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

national organizations representing men and women of all ethnic backgrounds and races. The Conference's mission is to promote the enactment and enforcement of effective civil rights legislation and policy. (Pl.'s Mot. 1.)

FN3. Craig Donsanto not only authored the 2004 manual but he also wrote earlier editions, supplements and summaries of the manual which remain in the public domain. (Pl.'s Mot. 52.)

FN4. An agency must show more than a great number of requests to established exceptional circumstances under the **FOIA.** *Fiduccia v. DOJ,* 185 F.3d 1035, 1041-42 (9th Cir.1999) (acknowledging a backlog of requests, denying a stay and remanding to the district court); *Hunter v. Christopher,* 923 F.Supp. 5, 8 (D.D.C.1996) (acknowledging backlog of requests, denying stay and ordering completion of plaintiff's requests within sixty days).

--- F.Supp.2d ----, 2005 WL 3360884 (D.D.C.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 1173449 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Support of its Motion for Partial Summary Judgment and in Opposition to Defendants' Motion for Partial Summary Judgment and for A Stay%n1%n (Mar. 04, 2005)

• 2004 WL 3334186 (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiff's Opposition to Defendant's Emergency Motion to Quash Plaintiff's Subpoena to Defendant-Return Date Oct 13, 2004 (Oct. 18, 2004)

• 2004 WL 3334185 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Emergency Motion for Protective Order and to Quash Subpoena to Defendant (Oct. 08, 2004)

• 1:04cv01664 (Docket) (Sep. 28, 2004)

• 2004 WL 3334193 (Trial Motion, Memorandum and Affidavit) Motion for Partial Summary Judgment and an Open America Stay on Plaintiff's Remaining Request (Jan. 01, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.