# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>         Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>         Defendant. | Civil Action No. 06-0096 (HHK) |
| AMERICAN CIVIL LIBERTIES UNION, *et al.*,<br><br>         Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>         Defendant. | Civil Action No. 06-0214 (HHK) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S EXPEDITED MOTION
FOR RELIEF FROM THE COURT'S ORDER OF FEBRUARY 16, 2006**

By memorandum opinion and order dated February 16, 2006 ("February 16 order"), the Court granted the motion of plaintiff Electronic Privacy Information Center ("EPIC") for a preliminary injunction requiring defendant Department of Justice ("DOJ") to expedite its processing of EPIC's Freedom of Information Act ("FOIA") requests for records concerning the Bush Administration's policy of conducting warrantless surveillance of domestic communications. Specifically, the Court ordered DOJ to 1) complete the processing of EPIC's requests and "produce or identify all responsive records" by March 8, 2006; and 2) provide EPIC with "a document index and declaration,

as specified in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), stating its justification for the withholding of any documents responsive to EPIC's requests" by March 20, 2006. February 16 order at 19.

On March 7, just hours before it was required to comply with the Court's order to complete its processing of EPIC's requests, DOJ filed the instant motion, seeking relief from the order. Defendant's Expedited Motion for Relief from the Court's Order of February 16, 2006 ("Def. Mot.").[1] Specifically, DOJ seeks 1) "an extension of 120 days time in which to complete the processing of any potentially responsive" classified documents; 2) "relief from the obligation to provide [by March 20] declarations in support of the reasons for withholding the unclassified documents;" and 3) "relief from the obligation to provide [by March 20] either an index or a declaration in support of the reasons for withholding any responsive classified documents." *Id*. at 1. In support of its motion, DOJ filed under seal two classified declarations. *Id*. at 2, n.2. For the reasons set forth below, plaintiffs oppose DOJ's motion.[2]

---

[1] The lateness of DOJ's request for relief – on the 19th day of a 20-day compliance period – required the Department to seek a stay of the Court's February 16 order. In the interest of allowing the Court to consider DOJ's motion in an orderly fashion, and to eliminate the possibility of emergency proceedings in the court of appeals (which counsel for DOJ represented the government might initiate), EPIC hesitantly consented to a brief stay on the condition that DOJ's motion for relief be resolved expeditiously. Defendant's Unopposed Motion for a Partial Stay of the Court's February 16, 2006, Order Pending Resolution of the Defendant's Forthcoming Motion Seeking Relief from that Order at 3.

[2] This opposition is submitted on behalf of the plaintiffs in the two consolidated, captioned cases. Although the Court's February 16 order states that it is "concerned solely with EPIC's motion for a preliminary injunction," February 16 order at 2, n.1, DOJ has subsequently represented that "to the extent the requests at issue in [Civil Action No. 06-0214] were directed at the same [DOJ] components as in the EPIC case, the response times identified in [DOJ's relief motion] and the extensions sought [t]herein appl[y] to the

### I. **Defendant DOJ's *Ex Parte* Submissions Should be Excluded**

As noted, DOJ seeks to rely entirely upon *ex parte*, classified affidavits in support of its motion. The use of *ex parte* materials is highly disfavored, and the circumstances here do not come within any of the limited exceptions to that rule. For that reason, plaintiffs respectfully urge the Court to exclude the classified declarations from its consideration of DOJ's motion.

Consideration of the declarations defendant submitted *ex parte* would violate fundamental principles of due process. As the Supreme Court has explained, "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring). Courts thus generally prohibit the use of secret evidence. The D.C. Circuit recognized "the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte, in camera* submissions." *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986). *See also Vining v. Runyon*, 99 F.3d 1056, 1057 (11th Cir. 1996) ("Our adversarial legal system generally does not tolerate *ex parte* determinations on the merits of a civil case.") (quoting *Application of Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. Unit B Sept. 1981)); *Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 67 (1st Cir. 1984) ("Our system of justice does not encompass *ex parte* determinations on the merits of cases in civil

---

[American Civil Liberties Union and the National Security Archive Fund] requests as well. Def. Mot. at 4 n.4. As such, all plaintiffs would be adversely affected by the "relief" DOJ seeks.

litigation.") (quoting *Kinoy v. Mitchell*, 67 F.R.D. 1, 15 (S.D.N.Y. 1975)).[3]

To ensure fairness in the administration of justice, disputes must be resolved openly through the adversary system. "It is a hallmark of our adversary system that we safeguard party access to the evidence tendered in support of a requested court judgment. The openness of judicial proceedings serves to preserve both the appearance and the reality of fairness in the adjudications of United States courts." *Abourezk*, 785 F.2d at 1060-61. *See also Allende v. Shultz*, 605 F. Supp. 1220, 1226 (D. Mass. 1985) ("[T]he very nature of the adversary system demands that both parties be given full access to any information which may form the basis for a judgment."). Our system of justice depends on "open adversarial guidance by the parties." *United States v. Zolin*, 491 U.S. 554, 571 (1989).

Thus, in chiding a lower court for relying on *ex parte* evidence "for the purpose of assisting it to make factual determinations or to evaluate other evidence," the Ninth Circuit explained that use of the *ex parte* evidence "violated principles of due process upon which our judicial system depends to resolve disputes fairly and accurately." *Lynn v. Regents of Univ. of California*, 656 F.2d 1337, 1346 (9th Cir. 1981). "The system functions properly and leads to fair and accurate resolutions, only when vigorous and informed argument is possible. Such argument is not possible, however, without disclosure to the parties of the evidence submitted to the court." *Id.*; *see also American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995) ("the very foundation of the adversary process

---

[3] It is clear that the issue raised in defendant's motion is related to the merits of this case. Indeed, the Court's February 16 order granted a preliminary injunction on the ground that plaintiffs are "likely to prevail on the merits." February 16 order at 14. The D.C. Circuit has recognized that an agency's response to a FOIA request that is entitled to expedition raises a merits issue. *Edmonds v. FBI*, 417 F.3d 1319, 1325 (D.C. Cir. 2005) ("expedited processing was not just a means but an end sought by the plaintiff").

4

assumes that use of undisclosed information will violate due process because of the risk of error").

The D.C. Circuit has recognized only limited instances in which *ex parte* evidence may be considered on the merits, which are "both few and tightly contained." *Abourezk*, 785 F.2d at 1061. FOIA authorizes the consideration of *ex parte*, *in camera* information only to support an *exemption* claim. *Abourezk*, 785 F.2d at 1061; 5 U.S.C. § 552(a)(4)(B) (permitting courts to "examine the contents of [withheld] agency records in camera to determine whether such records or any part thereof shall be withheld under any of the [statutory] exemptions."). Here, DOJ seeks to rely upon classified declarations not to justify its invocation of an exemption (which itself is disfavored in this context), but rather to justify a delay in the processing of responsive records. Such a procedure is not authorized under FOIA and is clearly improper. Further, none of the other exceptions to the rule excluding *ex parte* evidence in determining the merits of a dispute applies here. *See, e.g.*, *In re Sealed Case*, 151 F.3d 1059, 1070 (D.C. Cir. 1998) (holding that evidence may be introduced *ex parte* in order to protect the integrity of the grand jury process); *Abourezk*, 785 F.2d at 1061 (holding that a court may ultimately dismiss a plaintiff's case if the government properly invokes the state secrets privilege to deny plaintiff access to documents necessary to prove her case); *Holy Land Found. For Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (demonstrating that evidence may also be introduced *ex parte* pursuant to a statutory or regulatory scheme that itself balances considerations of due process against the government's interest in protecting classified information, and discussing 50 U.S.C. § 1702(c), a provision of the International Emergency Economic Powers Act governing the designation of foreign terrorist organizations).

Where courts are not deciding the *merits* of a dispute, they may consider *ex parte* evidence in civil disputes only where deciding the applicability of an evidentiary privilege. If a party refuses to provide material responsive to a discovery request based on a claim of privilege, either party may then submit material *ex parte* for review by the court *in camera* to support or refute the claim of privilege. *See, e.g.*, *Abourezk*, 785 F.2d at 1061. The courts have recognized that the use of *ex parte* evidence to determine the merits of a claim is fundamentally distinct from the use of such evidence to resolve claims of privilege in discovery disputes. As the D.C. Circuit explained in *Abourezk*, "inspection of materials by a judge isolated in chambers may occur when a party seeks to *prevent use* of materials in the litigation," not when the party seeks to use it affirmatively. 785 F.2d at 1061. *See also Naji v. Nelson*, 113 F.R.D. 548, 552 (N.D. Ill. 1986) ("While it is not unusual for a court to engage in the inspection of *in camera* materials when a party seeks to *prevent* the use of materials in litigation, reliance on *ex parte* evidence to decide the merits of a dispute can be permitted in only the most extraordinary of circumstances."). DOJ's submission of *ex parte* affidavits is clearly improper here because the government seeks to rely on them affirmatively to support its argument for extension.[4]

---

[4] As discussed above, the government is not entitled to submit *ex parte* evidence here. However, if the Court finds it appropriate for the government to introduce the proffered *ex parte* affidavits, plaintiffs must be given as much detail as possible about the classified evidence, in accordance with procedures used in other FOIA contexts. *See Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976). However, plaintiffs submit that such a procedure is likely to be unnecessary here because, as we show *infra*, the public record demonstrates that, notwithstanding whatever representations may be contained in DOJ's *ex parte* submissions, the agency has failed to demonstrate its entitlement to the relief it seeks.

## II. DOJ Has Failed to Establish its Entitlement to the Substantial Extension of Time that it Seeks

The Court's February 16 order was premised upon a finding that "[u]nless the [FOIA] requests are processed without delay, EPIC's [statutory] right to expedition will be lost." February 16 order at 16. The Court further found that "EPIC will also be precluded . . . from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program." *Id.* In support of its request for more than a *seven-fold increase* in the amount of time the Court has granted it for compliance with its obligation to expedite its processing of plaintiffs' FOIA requests, DOJ does not challenge the validity of the Court's findings. Rather, the government belatedly asserts, based upon *ex parte*, classified affidavits, that "it is not practicable" to complete the processing of classified documents responsive to plaintiffs' requests within the time period directed by the Court. Def. Mot. at 2.

As we have noted, plaintiffs' ability to address DOJ's assertions is seriously – and uniquely – hampered by the government's complete reliance upon *ex parte* submissions that purportedly explain why it would be impractical to comply with the Court's order in a period of time shorter than 150 days.[5] Furthermore, it is difficult to imagine why facts

---

[5] We note that by the time briefing on DOJ's motion has been completed on March 20, more than 30 days will already have passed since the Court issued its preliminary injunction order. As such, DOJ is seeking a period of time in excess of 150 days beyond the issuance of the Court's initial order. *See* DOJ's proposed order ("DOJ shall have a period of 120 days from the date of this Order" in which to complete processing). Such an extension of time would stretch DOJ's processing of these *expedited* FOIA requests almost seven months beyond the dates on which the requests were submitted to the agency.

relevant only to the timing of DOJ's document review and production cannot be shared with the plaintiffs. Plaintiffs are unaware of any other case litigated in the 40-year history of the FOIA where an agency has sought to rely upon *ex parte* evidence in support of a request for additional processing time, and DOJ has cited no authority supporting such a procedure. Plaintiffs will nonetheless seek to set forth the legal standard that DOJ must satisfy in order to carry its burden of demonstrating its entitlement to the very substantial extension of time that it asks the Court to allow.[6]

### A. The Mere Fact that Responsive Material is Classified is Not an Adequate Basis for an Extension of Processing Time

In support of its motion, DOJ relies upon the Court's recognition that processing deadlines may be extended "if the agency presents credible evidence that disclosure within [the statutory 20-day timeframe] is truly not practicable." Def. Mot. at 2, *quoting* February 16 order at 13. DOJ also asserts that "FOIA always provides the Court with authority to extend deadlines where the agency provides evidence that it is 'exercising due diligence in exceptional circumstances.'" Def. Mot. at 2, *citing* February 16 order at 13 n.8 (other citation omitted). Attempting to meet its burden, DOJ appears to rely exclusively upon the "classified nature of the potentially responsive documents." *Id*. at 5. That factor, however, is an inadequate basis for the relief the government seeks.

---

[6] As the Court has already held, "[b]ecause Congress *imposed a burden* on agencies to account for any delay in the processing of standard FOIA requests, it stands to reason that an agency may also be held to account for delays in expedited processing." February 16 order at 13 n.8 (emphasis added).

8

The "exceptional circumstances-due diligence" standard derives from two sources: the statute itself, 5 U.S.C. § 552(a)(6)(C)(i)-(iii); and the D.C. Circuit's opinion in *Open America v. Watergate Special Prosecution Force*, 547 F. 2d 605 (D.C. Cir. 1976), which construed the statutory provision.[7]  This Court recently recognized that

> [u]nder D.C. Circuit law, a stay pursuant to [the statute] and the *Open America* doctrine may be granted "(1) when an agency is burdened with an unanticipated number of FOIA requests; and (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; and (3) when the agency shows that it is exercising 'due diligence' in processing the requests; *and* (4) the agency shows reasonable progress in reducing its backlog of requests."

*The Wilderness Society v. Dep't of the Interior*, No. 04-0650, 2005 U.S. Dist. LEXIS 20042, at **31-32 (D.D.C. Sept. 12, 2005) (citations omitted; emphasis in original) (attached hereto as Exhibit 2).[8]  *See also Elec. Privacy Info. Ctr. v. Dep't of Justice*, No.

---

[7] It is not altogether clear whether the statute even contemplates *Open America*-type extensions of time in cases requiring expedited processing, where the agency must process the request "as soon as practicable," 5 U.S.C. § 552(a)(6)(E)(iii).  At least one decision of this Court states unequivocally that "a stay is not appropriate where the request is necessary and urgent." *Edmond v. United States Attorney*, 959 F. Supp. 1, 3 (D.D.C. 1997) (citations omitted).  *See also Edmonds v. FBI*, No. 02-1294, 2002 U.S. Dist. LEXIS 26578 ** 6, 12-13 (D.D.C. Dec. 3, 2002) (finding that the FBI satisfied the "exceptional circumstances-due diligence" standard, yet denying a stay where FOIA request was entitled to expedited processing) (attached hereto as Exhibit 1).  At the very least, it is clear that an agency seeking to delay processing of an *expedited* request must, at a minimum, satisfy the "exceptional circumstances-due diligence" test applicable to standard requests.  As the Court has already recognized in this case, "[a]ny reading of the statutory language that allows the agency more time than allowed in standard requests would . . . run counter to the clear meaning of the words used in the expedited processing provision."  February 16 order at 12 n.7.  As we show, DOJ has failed to satisfy that standard.

[8] The court noted in *Wilderness Society* that

> [p]ursuant to the 1996 amendments, Congress *tightened the standard* for obtaining a stay by defining the term "exceptional circumstances" so as to exclude any "delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of requests."  5 U.S.C. § 552(a)(6)(C)(ii).

02-0063, 2005 U.S. Dist. LEXIS 18876, at **10-11 (D.D.C. 2005) (same) (attached hereto as Exhibit 3).

It is thus clear that the factor DOJ relies upon here – the "classified nature of the potentially responsive documents" – cannot, in and of itself, satisfy an agency's burden of meeting the "exceptional circumstances-due diligence" test.[9] Although plaintiffs have been denied the ability to review the evidence submitted by the government in support of its motion, it seems apparent that DOJ is *not* asserting that the two components at issue, the Office of Legal Counsel ("OLC") and the Office of Intelligence Policy and Review ("OIPR") are "burdened with an unanticipated number of FOIA requests," have "inadequate" resources to process the requests they receive, are exercising "due diligence" in processing FOIA requests, or are making "reasonable progress in reducing [their] backlog of requests." Such assertions, if they were made, could not properly be classified, as demonstrated by the scores of *Open America* motions that have been openly litigated over the past decades. It is thus apparent that DOJ relies solely upon the classified status

---

*Id*. at *31 (emphasis added).

[9] DOJ quotes *Wilderness Society* for the proposition that "circumstances, such as . . . the amount of classified material, (and) . . . the resources being devoted to the declassification of classified material of public interest . . . are relevant to a court's determination as to whether exceptional circumstances exist." Def. Mot. at 2-3 (citation omitted). That language adds little to the Court's consideration of the matter. First, the quoted language in no way suggests that the existence of classified material, standing alone, can be deemed to establish "exceptional circumstances." Second, the question of "resources being devoted to declassification of classified material," when read in the context of the *Open America* standard, appears to relate to a determination of whether the agency can show "reasonable progress in reducing its backlog of requests." Plaintiffs can only assume that DOJ's classified affidavits do not assert that the agency is devoting adequate resources to the declassification process, as it is impossible to fathom how such information could properly be classified.

of the responsive records and the "extraordinary circumstances" that purportedly result from the sensitive nature of the records.[10]  Def. Mot. at 3.  But "extraordinary circumstances" is a well-defined term of art, and regardless of how difficult or time-consuming the processing of the responsive material may assertedly be, DOJ has clearly not met the standard as construed in this Circuit.

### B. The DOJ Components at Issue Here are not Burdened With a High Volume of FOIA Requests

The DOJ components whose processing abilities are at issue here – OLC and OIPR – are clearly not experiencing the sort of circumstances that justify a substantial extension of time, even for processing standard, non-expedited requests.  "In the D.C. Circuit, courts generally have granted extensions when presented with evidence of an *overburdened* agency following necessary procedures." *Elec. Privacy Info. Ctr.*, 2005 U.S. Dist. LEXIS 18876, at *10 (quoting *Ferguson v. FBI*, 722 F. Supp. 1137, 1140 (S.D.N.Y. 1989)) (emphasis added).

As the Court has already found, based upon official DOJ statistics for 2004, "the DOJ components at issue in this case carry relatively small FOIA caseloads."  February 16 order at 17.  The processing statistics for fiscal year 2005, which were recently published by DOJ, confirm that finding.  OLC received a total of 85 requests during the year, one of which qualified for expedition.  OIPR received a total of 52 requests, two of which

---

[10] Defendant asserts that courts have "recognized that FOIA processing can take additional time beyond the twenty days stated in the statute," Def. Mot. at 7, but fails to cite any caselaw that squarely addresses the question before the Court here: whether the presence of classified material alone constitutes an "exceptional circumstance."

11

qualified for expedition. U.S. Department of Justice, Freedom of Information Act Report for Fiscal Year 2005, Compliance with Time Limits/Status of Pending Requests, http://www.usdoj.gov/oip/ annual_report/2005/05foiapg7.htm (attached hereto as Exhibit 4). At the end of the fiscal year, OLC had two requests still pending, and OIPR had ten. *Id*. It is thus clear that OLC and OIPR fall far short of showing the kind of burden that has always been at the heart of the "exceptional circumstances" test. *See Open America*, 547 F. 2d at 616 ("exceptional circumstances" exist when an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress . . ."). *See also Appleton v. FDA*, 254 F. Supp. 2d 6, 9 (D.D.C. 2003) (granting a stay where the agency had a backlog of 14,193 pending requests in fiscal year 2001); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 02-0063, 2005 U.S. Dist. LEXIS 18876, *13 (granting a stay where the FBI had a backlog of 1,763 pending requests in August 2004); *Steinberg v. Dep't of Justice*, No. 93-2409, 1994 U.S. Dist. LEXIS 6053, *2 (D.D.C. May 4, 1994) (granting a partial stay where the FBI had a backlog of more than 10,000 requests) (attached hereto as Exhibit 5).

### C. DOJ has not Exercised "Due Diligence" in its Processing of Plaintiffs' FOIA Requests

DOJ has also failed to satisfy the "due diligence" prong of the standard. The D.C. Circuit has recognized that FOIA's legislative history requires an agency to have exercised "due diligence" *from the outset* in order to qualify for the kind of relief DOJ seeks here. *Oglesby v. Department of the Army*, 920 F.2d 57, 62 n.3 (D.C. Cir. 1990) ("The court [has] authority to allow the agency additional time to examine requested records in exceptional

12

circumstances where the agency was exercising due diligence in responding to the request *and had been since the request was received*.") (quoting H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 11 (1974)) (emphasis added).

While plaintiffs are unable to address whatever assertions of "due diligence" DOJ may have included in its *ex parte* affidavits, the public record clearly establishes that the agency has not even approached the requisite showing in its handling of plaintiffs' requests to date. EPIC's requests were submitted to DOJ on December 16, 2005. Pl. Mot. Prelim. Inj. Exhibits 7, 8, 9 & 10.[11] On March 8, 2006, in partial compliance with the Court's order, the agency provided plaintiffs with its disclosure determination for most of the unclassified material that it has identified as responsive to the requests. Exhibits 6-17, attached hereto. In the 82 days since its receipt of the first of plaintiffs' requests, DOJ reviewed 254 pages, 148 of which were released in full, five of which were released in part, and at least 101 of which were withheld in their entirety. Exhibits 6-17.[12] Of the 153 pages

---

[11] The ACLU's FOIA request to DOJ was submitted on December 20, 2005, and the National Security Archive submitted its request on December 22, 2005. ACLU Mot. Consolidate Exhibits 1 & 2.

[12] Agencies are typically required to provide FOIA requesters with the number of pages processed in response to a request. Three of the four DOJ components that issued determinations in response to plaintiffs' requests followed this requirement.

The Office of Information and Privacy, responding on behalf of the Attorney General and Legal Policy have processed 187 pages, 100 of which have been withheld in full, 85 of which have been released in full, and two of which have been released in part. Exhibits 8, 12 & 13. The DOJ Civil Division processed one page, which was withheld in full. Exhibits 6, 10 & 14. The DOJ Criminal Division processed three pages, which were released in part. Exhibits 7, 11 & 15.

OLC, however, failed to state the number of pages processed, asserting only that it has processed a "large number of documents" responsive to plaintiffs' requests. Exhibits 9 &

released in full or part, the contents of 143 pages had already been previously made available to the public.[13] Furthermore, 56 pages released thus far by the DOJ are duplicative.[14]

It is thus clear that DOJ has, to date, utterly failed to exercise "due diligence" in its handling of even the *unclassified* material responsive to these *expedited* FOIA requests. By no stretch of the imagination can DOJ's response be deemed diligent "since the request was received," *Oglesby*, where it required 82 days to process and disclose 254 pages, the vast

---

13. The office released five documents, totaling 63 pages, but has not provided plaintiffs the number of pages withheld. Exhibits 9 & 13.

[13] *Compare, e.g.*, Dep't of Justice, "Transcript of Remarks by Attorney General Alberto R. Gonzales at the 'Innocence Lost' Initiative Press Conference" (Jan. 19, 2006) as disclosed by the Office of Information and Privacy (Exhibit 18, attached hereto), *with* Dep't of Justice, "Transcript of Remarks by Attorney General Alberto R. Gonzales at the 'Innocence Lost' Initiative Press Conference" (Jan. 19, 2006), posted at http://www.usdoj.gov/ag/speeches/2005/ag_speech_0512161.html; Dep't of Justice, "Legal Authorities Supporting the Activities of the National Security Agency Described by the President (Jan. 19, 2006), as disclosed by OLC and the Office of Information and Privacy (Exhibits 19 & 20, attached hereto) *with* Dep't of Justice, "Legal Authorities Supporting the Activities of the National Security Agency Described by the President (Jan. 19, 2006), posted on FindLaw at http://files.findlaw.com/news.findlaw.com/hdocs/docs/nsa/dojnsa11906wp.pdf. *Also compare* "Transcript of Attorney General Interview on CNN's 'American Morning' with Soledad O'Brien," (undated), as disclosed by the Office of Information and Privacy (Exhibit 21, attached hereto), *with* CNN.com, American Morning, "Domestic Spying; Fugitive Captured; 'Time' Persons of the Year" (Dec. 19, 2005), http://edition.cnn.com/TRANSCRIPTS/0512/19/ltm.04.html.

[14] *Compare* "Legal Authority for the Recently Disclosed NSA Activities" (undated), disclosed by OLC (Exhibit 22, attached hereto), and Office of Information and Privacy (Exhibit 23, attached hereto); Dep't of Justice, "Legal Authorities Supporting the Activities of the National Security Agency Described by the President" (Jan. 19, 2006), disclosed by OLC (Exhibit 19), and Office of Information and Privacy (Exhibit 20); Dep't of Justice, "Transcript of Conference Call with Seven G. Bradbury on Release of Detailed Legal Analysis of the NSA Activities Described by the President" (Jan. 19, 2006), disclosed by OLC (Exhibit 24, attached hereto) and Office of Information and Privacy (Exhibit 25, attached hereto).

majority of which contained material that was already publicly available and/or duplicative. Notwithstanding any representations that might be made in the government's *ex parte* submissions, it is beyond dispute that DOJ has failed to meet its burden of satisfying the "exceptional circumstances-due diligence" test.[15]

## CONCLUSION

For the foregoing reasons, defendant's expedited motion for relief from the Court's order of February 16, 2006, should be denied. Plaintiffs urge the Court to establish a briefing schedule requiring DOJ to file a motion for summary judgment or other dispositive motion with respect to the material it has already processed within 30 days of the Court's order on the pending motion.

Respectfully submitted,

/s/_____
DAVID L. SOBEL
DC Bar No. 360418

ARTHUR B. SPITZER
D.C. Bar No. 235960
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036
Phone: (202) 457-0800
Fax: (202) 452-1868

MARCIA HOFMANN
DC Bar No. 484136

MARC ROTENBERG
DC Bar No. 422825

Counsel for Plaintiff American
Civil Liberties Union of the National
Capital Area

ELECTRONIC PRIVACY
INFORMATION CENTER

---

[15] Plaintiffs submit that it is unnecessary for the Court to decide whether the government should file its *Vaughn* indices before the submission of its motion for summary judgment in this case. Given the expedited nature of this matter, plaintiffs urge the Court to establish a briefing schedule requiring the government to file its dispositive motion with respect to the material it has already processed within 30 days of the Court's order on the pending motion.

15

ANN BEESON
CATHERINE CRUMP
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
Phone: (212) 549-2500
Fax: (202) 452-1868

Counsel for Plaintiff American Civil
Liberties Union

MEREDITH FUCHS
The National Security Archive Fund, Inc.
The George Washington University
Gelman Library, Suite 701
2130 H Street, NW
Washington, DC 20037

Counsel for Plaintiff National Security
Archive Fund, Inc.

1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff Electronic Privacy
Information Center