# Exhibit 2

*Electronic Privacy Information Center v. Department of Justice*,
No. 06-0096 (HHK)

*American Civil Liberties Union et al. v. Department of Justice*,
No. 06-214 (HHK)

Opposition to Defendant's Expedited Motion for Relief From the
Court's Order of February 16, 2006

LEXSEE 2005 U.S. DIST. LEXIS 20042

**THE WILDERNESS SOCIETY, et al., Plaintiffs, v. UNITED STATES DEPARTMENT OF THE INTERIOR, et al., Defendants.**

**Civil Action No. 04-0650 (CKK)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2005 U.S. Dist. LEXIS 20042*

**September 12, 2005, Decided**

**COUNSEL:** [*1] For WILDERNESS SOCIETY, Plaintiff: James Stuart Angell, Edward B. Zukoski, EARTHJUSTICE, Denver, CO; Leslie L. Jones, THE WILDERNESS SOCIETY, Washington, DC.

For SOUTHERN UTAH WILDERNESS ALLIANCE, Plaintiff: James Stuart Angell, Edward B. Zukoski, EARTHJUSTICE, Denver, CO.

For UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF LAND MANAGEMENT, GALE NORTON, in her capacity as Secretary for the Interior of the United States, KATHLEEN CLARKE, in her capacity as Director of the Bureau of Land Management, ELAINE ZIELINSKI, in her capacity as Director of the Bureau of Land Management's Arizona Office, Defendants: Oliver W. McDaniel, U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA, CIVIL DIVISION, Washington, DC.

**JUDGES:** COLLEEN KOLLAR-KOTELLY, United States District Judge.

**OPINIONBY:** COLLEEN KOLLAR-KOTELLY

**OPINION:**

### MEMORANDUM OPINION

Plaintiffs, The Wilderness Society and the Southern Utah Wilderness Alliance, brought this action for declaratory and injunctive relief against the United States Department of the Interior, Bureau of Land Management, and various members of the Department of the Interior ("the Department") in their official capacities for failure to produce records as [*2] requested pursuant to the Freedom of Information Act, *5 U.S.C. ß 552* ("FOIA"). Plaintiffs, non-profit environmental organizations that seek to protect America's wilderness and promote sensible land management, seek records held by the Department that relate to the Department's passage of certain amendments to the "Disclaimer Rule" on January 6, 2003 -- a policy shift which enables states, counties, and interest groups to wrest title from the United States in order to build highway rights-of-way across federal lands pursuant to a Civil War-era law generally known as R.S. 2477. *See* 43 C.F.R. Part 1864, *68 Fed. Reg. 494-503* (Jan. 6, 2003); Act of July 26, 1866, ß 8, 14 Stat. 251, 253, formerly ß 2477 of the Revised Statutes, later *43 U.S.C. ß 932*, *repealed by* Pub. L. No. 94-579, Title VII ß 706(a) (1976).

Currently before the Court are two motions: (1) Defendants' Motion to Dismiss or, in the Alternative, for a Six-Month *Open America* Stay, to which Plaintiffs have filed an Opposition; and (2) Plaintiffs' Motion for Summary Judgment, to which Defendants have filed an Opposition, and Plaintiffs have filed a Reply [*3] and two Notices of Supplemental Authority. Upon a searching examination of the parties' motions, the attached exhibits, the relevant case law, and the entire record herein, the Court shall deny Defendants' Motion to Dismiss or, in the Alternative, for a Six-Month *Open America* Stay, deny without prejudice Plaintiffs' Motion for Summary Judgment, and shall require the parties to file a Joint Status Report with this Court by September 28, 2005 setting out information as detailed in this Memorandum Opinion. *See infra* Section III(B).

### I: BACKGROUND

Over the past two decades, the State of Utah and various counties within Utah -- as well as other counties and special interest groups across the West -- have declared their intention to claim thousands of highway rights-of-way across federal lands in order to promote transportation and development pursuant to a Civil War-era law known as R.S. 2477. Environmental groups have opposed these claims, arguing that they traverse some of the most scenic and environmentally sensitive public lands in the country, including proposed wilderness, fed-

Case 1:06-cv-00096-HHK    Document 15-3    Filed 03/15/2006    Page 3 of 11

Page 2
2005 U.S. Dist. LEXIS 20042, *

eral wilderness study areas, national parks, and national monuments. As Plaintiffs contend, [*4] "recognition of such rights-of-way could lead to the construction of ecologically destructive highways across these lands." Pls.' Mot. for Summ. J. at 5.

On January 6, 2003, the Department of the Interior passed several amendments to the so-called "Disclaimer Rule" in order to facilitate the ability of states, counties, and interest groups to wrest title from the United States of these claimed rights-of-way and spur development. *See* Pls.' 2nd Am. Compl. P 17 (citing 43 C.F.R. Part 1864, *68 Fed. Reg. 494-503* (Jan. 6, 2003)). The Disclaimer Rule implements a provision of the Federal Land Policy and Management Act ("FLPMA") that allows the federal government to disclaim its interest in lands. *Id.* P 18. Among other things, the 2003 revised rule allows states, counties, local governments, and special interest groups to obtain disclaimers regardless of whether they have ever been recognized as owners of record, which the Disclaimer Rule had previously required. *Id.* Moreover, the new rule also exempts states and local governments from the statute-of-limitations requirement that applies to all other property owners seeking a disclaimer, and allows the Department to [*5] recognize R.S. 2477 claims within national parks and wildlife refuges, even over the objections of the National Park Service or the U.S. Fish and Wildlife Service. *Id.* After the adoption of the 2003 revised rule, the Department secretly negotiated a Memorandum of Understanding ("MOU") with the State of Utah, signed on April 11, 2003, that specifies how the Disclaimer Rule will be used to recognize potentially tens of thousands of miles of claimed highways through public lands in Utah. Pls.' Stmt. of Facts P 9, n.1; Pls.' 2nd Am. Compl. P 20. On January 14, 2004, the State of Utah submitted its first request for a right-of-way under R.S. 2477 pursuant to the MOU, with at least nineteen other submissions planned. Pls.' 2nd Am. Compl. P 22.

In an effort to garner information regarding the Department's policy shifts and to determine the new policy's potential impact on public lands, Plaintiffs submitted separate FOIA requests via facsimile and email with three government offices on September 26, 2003 -- one with the Department of the Interior, one with the Bureau of Land Management's Washington, D.C., headquarters office, and one with the Arizona State Office of the Bureau of Land [*6] Management. *Id.* P 23; Pls.' Stmt. of Facts P 9; Pl.'s Mot. for Summ. J., Exs. 2-4. Plaintiffs requested:

> **all records** (including but not limited to documents, information, faxes, letters, comments, emails, summaries of tele-

phone conversations, handwritten notes, meeting minutes, or any other materials) generated, modified, or acquired by . . . [each agency] **relating to or otherwise concerning** the following:

> . implementation of revisions to regulations concerning Recordable Disclaimers of Interest, 43 C.F.R. Part 1860, adopted January 6, 2003;

> . submission of requests for recordable disclaimers;

> . memoranda of understanding (MOUs) or other agreements concerning recordable disclaimers of interest and/or rights-of-way under Revised Statute (R.S.) 2477, including but not limited to the MOU entered into between the Interior Department and the State of Utah on April 9, 2003;

> . policy, rules, legislation, or guidance relating to R.S. 2477;

> . any and all individual R.S. 2477 claims or assertions; and

> . any and all R.S. 2477 potential claims or potential assertions.

Pls.' 2nd Am. Compl. P 23; Pls.' Stmt. of Facts P [*7] 9; Exs. 2-4 at 1 (emphasis in original).

Nearly two months after Plaintiffs submitted their three FOIA requests to Defendants, the Department sent Plaintiffs a letter on November 19, 2003, that simply acknowledged its receipt of Plaintiffs' various FOIA requests. Pls.' Stmt. of Facts P 11. The Department's November 19, 2003 letter did not provide Plaintiffs with any of the requested information, and did not inform Plaintiffs of their appeal rights. *Id.* However, the November 19, 2003 letter did indicate that the Department was then "in the process of issuing a determination on

2005 U.S. Dist. LEXIS 20042, *

[Plaintiffs'] request for a fee waiver." Pls.' Corrected Op-p'n, Ex. 4 at 1. On December 10, 2003, the Department informed Plaintiffs that it had made a "decision to deny your request for a waiver of FOIA processing fees for the entirety of your request." Pls.' Stmt. of Facts P 12; Pls.' Mot. for Summ. J., Ex. 6 at 3. The December 10, 2003 letter stated that Plaintiffs could appeal the "decision to deny your request for a waiver of FOIA processing fees for the entirety of your request," Pls.' Corrected Opp'n, Ex. 5 at 3, or -- rather than appeal -- Plaintiffs could (1) limit their request to documents already [*8] available to the public and receive such at no cost; (2) specify an amount that they were willing to pay so that the Department could process the request to the extent that the agreed amount covered the Department's costs; or (3) agree to pay the full costs of processing the entire request, *id.* at 4-5. The December 10, 2003 letter did not provide an estimate of the costs associated with processing Plaintiffs' FOIA requests. *See id.*

Plaintiffs administratively appealed the Department's denial of their fee waiver petition on December 19, 2003. Pls.' Stmt. of Facts P 13; Pls.' Mot. for Summ. J., Ex. 8. In their appeal, Plaintiffs asserted that they were entitled to a waiver of fees pursuant to *5 U.S.C. ß 552(a)(4)(A)(iii)* and 43 C.F.R. ß 2.19, and also appealed the Department's failure to determine and announce what documents it would release or withhold as required by *5 U.S.C. ß 552(a)(6)(A)(i)*. *Id.* The Department did not address Plaintiffs' appeal until April 6, 2004, upon which it issued a decision that did not grant the requested fee waiver and did not respond to Plaintiffs' appeal of the Department's alleged failure to promptly [*9] provide the requested records. Pls.' Stmt. of Facts PP 13-14; Pls.' Mot. for Summ. J., Ex. 9 at 1.

Meanwhile, on February 6, 2004, the Department provided a partial, incomplete response to Plaintiffs' three FOIA requests. Pls.' Stmt. of Facts P 15; Pls.' Mot. for Summ. J., Ex. 11. This February 6 response acknowledged the it was "limited" to a subset of the requested records -- namely, the external correspondence and final agency documents for which Plaintiffs would have qualified for a full fee waiver -- from one of the Department's offices, as it was "still awaiting file search results" from the other two offices to which Plaintiffs had directed their requests. *Id.* The letter accompanying this production noted that the Department was enclosing copies of fifty-three (53) documents, and that "redactions will be clearly identified and labeled." Pls.' Corrected Opp'n, Ex. 10 at 2. On March 22, 2004, Plaintiffs appealed this February 6, 2004 partial response, reiterating their December 19, 2003 challenge to the Department's alleged failure to respond by providing all responsive records in a timely manner and expanding their challenge to "unlawful" redactions in several of the fifty-three [*10] documents

provided in the February 6, 2004 partial response. Pls.' Corrected Opp'n, Ex. 11 at 2. On April 27, 2004, the Department notified Plaintiffs that their appeal was "awaiting legal review," that a response would be provided "as soon as possible," and that Plaintiffs had the right to "treat the delay in responding . . . as a final denial" of their appeal. Pls.' Corrected Opp'n, Ex. 12 at 1.

In response to the delays encountered, Plaintiffs filed a Complaint before this Court on April 22, 2004. Plaintiffs amended their original complaint on June 9, 2004, and -- with Defendants' consent -- submitted a Second Amended Complaint on July 27, 2004. Plaintiffs' Second Amended Complaint contends that the Department's actions violated the strictures of the FOIA in three separate ways: (1) Defendants failed to provide Plaintiffs with all of the information requested in their September 2003 FOIA requests in a timely manner; (2) Defendants failed to grant Plaintiffs a waiver of fees with respect to the information requested; and (3) Defendants failed to make a determination on Plaintiffs' appeal of the denial of the fee waiver requested in their September 26, 2003 FOIA request letters. [*11] *See* 2nd Am. Compl. at 12. On July 29, 2004, after ten months of effectively denying Plaintiffs their fee waiver request, personnel of the Department signed a declaration stating that "upon careful consideration, the Department has reversed its earlier decision to deny Plaintiff [sic] request for fee waivers" and that with this reversal, the Department considers "the fee waiver issue to be resolved." Defs.' Mot. to Dismiss, Ex. 1 (7/29/04 Decl. of Ms. Sue Ellen Sloca) at P 3.

Defendants, on August 10, 2004, filed a Motion to Dismiss or, in the Alternative, for a Six-Month *Open America* Stay. Defendants argue that dismissal is warranted under *Rules 12(b)(1)* and *12(b)(6)* of the Federal Rules of Civil Procedure for two reasons: (1) because -- according to Defendants -- "Plaintiffs here have advanced a pure challenge to the Department's refusal to grant a fee-waiver without any component challenging the underlying policy associated with the fee waiver," "Plaintiffs' fee waiver challenge is mooted by the Department's decision to grant the fee waiver," Defs.' Mot. to Dismiss at 3; and (2) Plaintiffs failed to exhaust their administrative remedies as required, *id.* at 4-5. In [*12] the alternative, Defendants request a six-month *Open America* stay. *Id.* at 5-9. After simply setting forth the case law relevant to such a stay, Defendants assert *in toto:*

> As should be apparent now, Defendants, by regulation could not fully process Plaintiffs' FOIA request until the fee-waiver issue has been resolved. Now that it has been resolved by the Department's

reversing its decision, the DOI can now fully process the request. Because Plaintiffs effectively concede that they were given the opportunity to limit their request, but refused to do so, instead filing suit, both exceptional circumstances and due diligence should be found to exist[.]

Defs.' Mot. to Dismiss at 8-9. In their motion, Defendants do not specifically identify the due diligence exercised as to Plaintiffs' requests, nor do they explicate the exceptional circumstances necessitating the delay, nor do they attach any affidavits attesting to such alleged facts. *See generally* Defs.' Mot. to Dismiss.

In addition to opposing Defendants' motion, n1 Plaintiffs filed a Motion for Summary Judgment pursuant to *Federal Rule of Civil Procedure 56* on October 4, 2004, in which they assert that [*13] summary judgment in their favor is appropriate due to the fact that the Department "has failed for more than a full year to comply with a statutory deadline requiring a response to [Plaintiffs'] FOIA requests within 20 days" -- i.e., *5 U.S.C. ß 552(a)(6)(A)(i)*. *See* Pls.' Mot. for Summ. J. at 9. Plaintiffs also contend that the Department's "illegal failure to timely grant [Plaintiffs'] fee waiver cannot excuse the agency's failure to timely respond to [Plaintiffs'] requests." *Id.* at 8. n2

n1 "Due to an error of counsel," Plaintiffs' counsel "inadvertently mischaracterized Plaintiffs' Second Amended Complaint" in "several places" in its two initial Oppositions to Defendants' Motion to Dismiss. *See, e.g.*, Pls.' Unopposed Mot. to File a Corrected Opp'n at 1. As such, with Defendants consent, Plaintiffs filed two separate Unopposed Motions to File a Corrected Opposition, each of which the Court shall grant.

n2 Defendants failed to respond to Plaintiffs' Motion for Summary Judgment within the requisite time period. As such, on November 2, 2004, Plaintiffs filed a Motion to Treat as Conceded Plaintiffs' Motion for Summary Judgment. On November 4, 2004, Defendants filed with this Court a Motion for Leave to File an Opposition to Plaintiffs' Motion for Summary Judgment, which the Court granted *nunc pro tunc* on November 17, 2004. As such, Plaintiffs' Motion to Treat as Conceded Plaintiffs' Motion for Summary Judgment is denied as moot.

[*14]

In the time period subsequent to the parties' motions, the Department has provided Plaintiffs with two supplemental installments of documents responsive to their September 26, 2003 FOIA requests -- one of which arrived on April 8, 2005, and the other of which was provided on July 7, 2005. *See* Pls.' 5/20/05 Notice of Suppl. Auth. in Supp. of their Mot. for Summ. J.; Pls.' 8/18/05 Notice of Suppl. Auth. in Supp. of their Mot. for Summ. J. While certainly much more substantial than the first installment provided on February 6, 2004, Plaintiffs consider these responses "incomplete" due to the fact that Defendants have withheld numerous documents and "heavily-redacted" other records pursuant to FOIA Exemption 5 "without satisfying the most basic standards for invoking exemptions." Pls.' 5/20/05 Notice of Suppl. Auth. in Supp. of their Mot. for Summ. J. at 2. In support of *their* claim, Plaintiffs have highlighted several examples of "documents withheld in full or in part [which] are simply stamped Exemption 5' with absolutely no indication on them as to why they might be exempt from disclosure." Pls.' 8/18/05 Notice of Suppl. Auth. in Supp. of their Mot. for Summ. J. at 4. Defendants [*15] have not filed a response to Plaintiffs' supplemental notices, nor have they filed a *Vaughn* index detailing the withheld documents and relevant redactions.

## II: LEGAL STANDARDS

As noted previously, Defendants have moved to dismiss Plaintiffs' action pursuant to *Rules 12(b)(1)* and *12(b)(6)* of the Federal Rules of Civil Procedure and, in the alternative, have moved for a stay under the doctrine elicited in *Open America v. Watergate Special Prosecution Force, 178 U.S. App. D.C. 308, 547 F.2d 605 (D.C. Cir. 1976)*. In contrast, Plaintiffs have moved for summary judgment under *Rule 56 of the Federal Rules of Civil Procedure*. The Court shall discuss the relevant legal standards for each motion in turn.

### A. Defendants' Motion

#### 1. Rule 12(b)(1)

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to *Rule 12(b)(1)*. In general, a motion to dismiss under *Federal Rule of Civil Procedure 12(b)* should not prevail "unless plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." *Kowal v. MCI Commun. Corp., 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994)* (citations omitted). A court may appropriately dispose of a case [*16] under 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta, 357 U.S. App. D.C. 72, 333 F.3d 193, 198 (D.C. Cir. 2003)* (citations omitted); *see also Artis v. Greenspan,*

*223 F. Supp. 2d 149, 152 n.1 (D.D.C. 2002)* ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."); *Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999)* ("where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment") (citing *Greenberg v. The Life Ins. Co. of Virginia, 177 F.3d 507, 515 (6th Cir. 1999)*). At the stage in litigation when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. [*17] *EEOC v. St. Francis Xavier Parochial Sch., 326 U.S. App. D.C. 67, 117 F.3d 621, 624 (D.C. Cir. 1997); Leatherman v. Tarrant County Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).* In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency, 121 F. Supp. 2d 84, 90 (D.D.C. 2000); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 18 (D.D.C.1998).*

2. *Rule 12(b)(6)*

"In evaluating a *Rule 12(b)(6)* motion to dismiss for failure to state a claim, unlike resolving a motion under *Rule 12(b)(1)*, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *In re United Mine Workers of Am. Employee Benefit Plans Litig., 854 F. Supp. 914, 915 (D.D.C. 1994); see also Schuler v. United States, 199 U.S. App. D.C. 23, 617 F.2d 605, 608 (D.C. Cir. 1979)* ("The complaint must be liberally [*18] construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out in the complaint." *Kowal, 16 F.3d at 1276.* Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC, 328 U.S. App. D.C. 52, 132 F.3d 753, 762 (D.C. Cir. 1997).* The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See St. Francis Xavier Sch., 117 F.3d at 624; Marshall County Health Care Auth. v. Shalala, 300 U.S. App. D.C. 263, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).* Factual allegations in briefs of memoranda of law may not be considered when deciding a *Rule 12(b)(6)* motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy, 308 U.S. App. D.C. 36, 29 F.3d 682, 688 (D.C. Cir. 1994); cf.* [*19] *Behrens v. Pelletier, 516 U.S. 299, 309, 133 L. Ed. 2d 773, 116 S. Ct. 834 (1996)* (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

3. *Open America Stay*

Under *Section 552 (a)(6)(C)(i) of FOIA, the Government* may obtain a stay of proceedings "if the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." *5 U.S.C. β 552(a)(6)(C)(i).* In *Open America,* the D.C. Circuit addressed *Section 552(a)(6)(C)(i)* and found that an agency is entitled to additional time under FOIA's "exceptional circumstances" provision when the agency:

> is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

*547 F.2d at 616* (quoting *5 U.S.C. β 552 (a)(6)(C)*). Effective October 2, 1997, as part of the Electronic Freedom of Information Amendments of 1996, Congress added [*20] the following two subsections to *Section 552(a)(6)(C)*:

> (ii) For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

> (iii) Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

*5 U.S.C. β 552 (a)(6)(C)(ii), (iii)*. The legislative history of the 1996 amendments reveals that Congress, having considered the decision in *Open America*, intended the amendments to be "consistent with the holding in *Open America*," and sought only to "clarify that routine, predictable agency backlogs for FOIA requests do not constitute exceptional circumstances." H.R. Rep. 104-795 at 24 (1996), *reprinted in* 1996 U.S.C.C. [*21] A.N. 3448, 3467. However, the amendments clearly contemplate that other circumstances, such as an agency's efforts to reduce the number of pending requests, the amount of classified material, the size and complexity of other requests processed by the agency, the resources being devoted to the declassification of classified material of public interest, and the number of requests for records by courts or administrative tribunals, are relevant to the courts' determination as to whether exceptional circumstances exist. *Id.*

When considering a request for an *Open America* stay, "agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. Secs. & Exch. Comm'n, 288 U.S. App. D.C. 324, 926 F.2d 1197, 1200 (D.C. Cir. 1991)* (citations and internal quotation marks omitted).

*B. Plaintiffs' Motion*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See Fed. R. Civ. P. 56(c)*; [*22] *Tao v. Freeh, 307 U.S. App. D.C. 185, 27 F.3d 635, 638 (D.C. Cir. 1994)*. Under the summary judgment standard, Defendants, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)*. Plaintiffs, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, designate' specific facts showing that there is a genuine issue for trial." *Id. at 324* (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v.*

*Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)*. To be material, [*23] the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy, 259 U.S. App. D.C. 115, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987)*; *Liberty Lobby, 477 U.S. at 251, 106 S.Ct. 2505* (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby, 477 U.S. at 249-50, 106 S.Ct. 2505* (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan, 938 F. Supp. 46, 49 (D.D.C. 1996)*. The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)*. [*24] Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with specific facts showing that there is a *genuine issue for trial.'" Id. at 587, 106 S.Ct. 1348* (citing *Fed. R. Civ. P. 56(e)*) (emphasis in original).

**III: DISCUSSION**

Currently before the Court are Defendants' Motion to Dismiss or, in the Alternative, for a Six-Month *Open America* Stay Pursuant to *5 U.S.C. β 552(a)(6)(C)*, and Plaintiffs' Motion for Summary Judgment. The Court shall address each motion in turn.

*A. Defendants' Motion to Dismiss or for an Open America Stay*

1. Motion to Dismiss

Defendants make two arguments in favor of dismissal of Plaintiffs' Second Amended Complaint pursuant to *Rules 12(b)(1)* and *12(b)(6)* of the Federal Rules of Civil Procedure. First, Defendants claim that "Plaintiffs here have advanced a pure challenge to the Department's refusal to grant a fee-waiver without any component challenging the underlying policy associated with the fee waiver." Defs.' Mot. to Dismiss at 3. [*25] As such, given the fact that the July 29, 2004 Declaration of Ms. Sue Ellen Sloca, Office of the Secretary, Department of the Interior, noted that "the Department has reversed its earlier decision to deny Plaintiff's [sic] requests for fee waivers for te processing of the Requests," *see id.*, Ex. 1 (7/29/04 Decl. of Ms. Sue Ellen Sloca) at P 3, Defen-

dants assert that the claims within Plaintiffs' Second Amended Complaint are moot. *Id.* at 3 (citing *Better Gov't Ass'n v. Dep't of State, 250 U.S. App. D.C. 424, 780 F.2d 86, 91 (D.C. Cir. 1986)*; *Pub. Citizen v. Dep't of State, 349 U.S. App. D.C. 291, 276 F.3d 634, 641 (D.C. Cir. 2002))*. Second, Defendants contend that Plaintiffs have failed to exhaust their administrative remedies, an essential requirement before a party can seek judicial review. *Id.* at 4 (citing *Dettmann v. Dep't of Justice, 802 F.2d 1472, 1477, 256 U.S. App. D.C. 78 (D.C. Cir. 1986))*. Specifically, Defendants argue that because Plaintiffs failed to pay the required fees and appealed the decision denying the fee waiver, their "appeal was not effective as to the full processing of the FOIA request, since by regulation full processing could not occur before the fee issue had been [*26] resolved." *Id.* at 5.

Each argument forwarded by Defendants is without merit. First, Defendants misconstrue the scope of Plaintiffs' Second Amended Complaint. Plaintiffs' Second Amended Complaint alleges at least two distinct violations of FOIA: (1) the Department's failure to make available the requested records and its failure to make a determination as to whether it would provide or withhold requested records within the stated twenty-day deadline; and (2) the Department's failure to make a determination concerning Plaintiffs' fee waiver request. *See* Pls.' 2nd Am. Compl. PP 31-40 & 12. Defendants' July 29, 2004 decision to grant Plaintiffs' fee petition, after nearly one year of obfuscation and various denials, only renders moot the second argument propounded by Plaintiffs in their Second Amended Complaint. Plaintiffs' first contention that "because the [Department] continues to violate FOIA's mandate to provide records promptly' and to make a determination as to whether [the Department] would provide or withhold requested records and to respond to a FOIA appeal within 20 days" remains in live controversy. *See* Pls.' Corrected Opp'n at 10. Given the broader [*27] scope of Plaintiffs' Second Amended Complaint and the issues still in controversy, it is clear that Defendants' assertion that the entire case is moot is certainly without foundation.

Second, federal case law makes plain the fact that Plaintiffs have exhausted their administrative remedies sufficient to establish jurisdiction in this case vis-a-vis their remaining claims. Before proceeding with this suit, Plaintiffs pursued a two-track administrative appeals process. For instance, Plaintiffs administratively appealed the Department's December 10, 2003 denial of their fee waiver petition by filing an appeal on December 19, 2003 in which they (1) asserted that they were entitled to a waiver of fees pursuant to *5 U.S.C. ß 552(a)(4)(A)(iii)* and 43 C.F.R. ß 2.19, and (2) appealed the Department's failure to determine and announce what

documents it would release or withhold as required by *5 U.S.C. ß 552(a)(6)(A)(i)*. Pls.' Stmt. of Facts P 13; Pls.' Mot. for Summ. J., Ex. 8. Next, Plaintiffs appealed Defendants' February 6, 2004 partial response with a filing on March 22, 2004 that reiterated their December 19, 2003 challenge to the Department's [*28] alleged failure to respond by providing all responsive records in a timely manner and expanded their challenge to the "unlawful" redactions in several of the fifty-three documents provided in the February 6, 2004 partial response. Pls.' Corrected Opp'n, Ex. 11 at 2. After these two appeals, the Department notified Plaintiffs on April 27, 2004 that their March 22, 2004 appeal was "awaiting legal review," that a response would be provided "as soon as possible," and that Plaintiffs had the right to "treat the delay in responding . . . as a final denial" of their appeal. Pls.' Corrected Opp'n, Ex. 12 at 1. In this April 27, 2004 letter, the Department specifically informed Plaintiffs that, given the delay they had experienced, Plaintiffs could now "seek judicial review in the United States District Court for the District in which you reside or have your principal place of business, the District in which the records subject to your appeal are located, or the United States District Court for the District of Columbia." *Id.*

Accordingly, it is clear that at every opportunity Plaintiffs administratively appealed the (1) Department's delays in processing their FOIA request and fee waiver [*29] petitions, (2) the Department's denial of their fee waiver petition, and (3) the Department's withholding of certain documents and redactions in other provided records. Importantly, Plaintiffs filed suit in this Court only after two events -- each separately sufficient to establish jurisdiction -- took place. First, the Department actually informed Plaintiffs on April 27, 2004 that they were free to seek judicial relief in order to resolve these three areas of contention. *See* Pls.' Corrected Opp'n, Ex. 12 at 1. Second, Plaintiffs ensured that they had made several administrative appeals of the Department's initial decision to refuse to waive the fees associated with the processing of their FOIA requests. The law of this Circuit demonstrates that no further exhaustion by Plaintiffs is required to pursue their claim that Defendants have unlawfully failed to respond to their FOIA requests. *See, e.g., Oglesby v. Dep't of the Army, 287 U.S. App. D.C. 126, 920 F.2d 57, 66 (D.C. Cir. 1990)* ("Exhaustion does not occur until the required fees are paid *or an appeal is taken from the refusal to waive fees*") (emphasis added); *Maydak v. Dep't of Justice, 254 F. Supp. 2d 23, 49 (D.D.C. 2003)* [*30] ("The payment or waiver of fees or an administrative appeal from the denial of a fee waiver request is a jurisdictional prerequisite to bringing suit on a FOIA claim in district court."); *Krese v. Executive Office of the President, Civ. A. No. 99-2415 (JR), 2000 U.S. Dist. LEXIS 14024, at * 3 (D.D.C. Sept. 25, 2000)* (same). As such, Defendants' allegation that Plaintiffs are

somehow attempting to "leapfrog" over the administrative appeal process is simply without merit. Given that a portion of Plaintiffs' Second Amended Complaint remains in controversy, and Plaintiffs properly exhausted their administrative remedies, Defendants' Motion to Dismiss must be denied.

2. Motion for a Six-Month *Open America* Stay

In the alternative, Defendants move for a six-month stay of these proceedings under *5 U.S.C. ß 552(a)(6)(C)(i)* and *Open America v. Watergate Special Prosecution Force, 547 F.2d at 616,* to allow them "an opportunity to fully prosecute Plaintiffs' FOIA requests as required." Defs.' Mot. to Dismiss at 5. According to Defendants, "a period of six months" is required, "depending upon the true scope of Plaintiffs' requests, [*31] to process them." *Id.* Defendants contend that Plaintiffs could have expedited their request previously given that they were provided the opportunity to limit their request, and assert that "both exceptional circumstances and due diligence should be found to exist." *Id.* at 8-9.

Defendants' Motion for an *Open America* stay must fail for two reasons. First, given that Defendants filed their motion on August 10, 2004, and provided Plaintiffs with supplemental documents pursuant to their FOIA requests on April 8, 2005 and July 7, 2005, it is clear from the record that any further extension of the production timeline is simply unwarranted. Second, Defendants fail to meet the standard for an *Open America* stay to extend their production timeline. Pursuant to the 1996 amendments, Congress tightened the standard for obtaining a stay by defining the term "exceptional circumstances" so as to exclude any "delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of requests." *5 U.S.C. ß 552(a)(6)(C)(ii).* Under D.C. Circuit law, a stay pursuant to this subsection and the [*32] *Open America* doctrine may be granted "(1) when an agency is burdened with an unanticipated number of FOIA requests; *and* (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; *and* (3) when the agency shows that it is exercising due diligence' in processing the requests; *and* (4) the agency shows reasonable progress' in reducing its backlog of requests." *Williams v. Fed. Bureau of Investigation,* Civ. A. No. 99-3378 *(AK), 2000 U.S. Dist. LEXIS 17493,* at * 4 (D.D.C. Nov. 30, 2000) (emphasis in original); *see also Summers v. Dep't of Justice, 288 U.S. App. D.C. 219, 925 F.2d 450, 452 n.2 (D.C. Cir. 1991)* (noting first three factors). Agency affidavits provide a critical insight into this process, and are often determinative. *See SafeCard Servs., 926 F.2d at 1200; Aguilera v. Fed. Bureau of Investigation, 941 F. Supp. 144, 149 (D.D.C. 1996)* (citing agency affidavits in addressing stay criteria).

Here, Defendants have failed to provide any evidence or make any allegations that would meet the standards necessary to support a stay. Defendants' Motion to Dismiss contains no [*33] specifics other than a bald assertion that "both exceptional circumstances and due diligence should be found to exist." Defs.' Mot. to Dismiss at 8-9. Defendants provide no analysis, statistics, affidavits, declarations or other sworn statements from agency personnel to support this contention. In Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, Defendants "expand" this argument by noting that the Department "proffers that it is inundated with a large volume of FOIA requests and that it is unable to process the request submitted by Plaintiffs within the statutorily commanded period of time." Defs.' Opp'n at 4. Once again, Defendants fail to support this claim with any analysis, statistics, agency affidavits, declarations, or other sworn statements. Accordingly, the factors relied upon by previous courts to make a finding of "exceptional circumstances" are conspicuously absent here. *See, e.g., Edmond v. United States Attorney, 959 F. Supp. 1, 3 (D.D.C. 1997)* (declarations filed by defendants providing explanations for backlog and describing attempts to remedy the delay by reassigning staff); *Jimenez v. Fed. Bureau of Investigation, 938 F. Supp. 21, 31 (D.D.C. 1996)* [*34] (agency submitted declarations detailing limited agency resources and FOIA response backlog); *Kuffel v. Bureau of Prisons, 882 F. Supp. 1116, 1127 (D.D.C. 1995)* ("The agencies have provided evidence in their affidavits. . . ."). Defendants do no more than allege that the Department faces a large but unspecified volume of requests; as such, they simply fail to establish (1) an unanticipated number of requests; (2) inadequate resources; (3) that they are exercising "due diligence"; and (4) that they are making "reasonable progress" in the reduction of their backlog of FOIA requests. Given that Defendants fail to meet the necessary standards, Defendants motion for an *Open America* stay must be denied.

*B. Plaintiffs' Motion for Summary Judgment*

Plaintiffs, in their initial Motion for Summary Judgment, make the relatively straight-forward argument that they are entitled to summary judgment pursuant to *5 U.S.C. ß 552(a)(6)(A)(i),* 43 C.F.R. ß 2.12(a) -- the implementing regulations for FOIA that require the Department to have responded to Plaintiffs' September 26, 2003 FOIA requests by October 27, 2003. *See* Pls.' Mot. for Summ. J. at 6. [*35] Given that Defendants did not even acknowledge Plaintiffs' request until November 19, 2003, and did not provide Plaintiffs with any information concerning the content of their requests for more than a year following this communication, Plaintiffs contend that they are entitled to summary judgment. *Id.*

However, after Plaintiffs' filed their Motion for Summary Judgment, Defendants expanded their initial

February 6, 2004 partial production of documents and provided Plaintiffs with several hundreds of pages of material on both April 8, 2005 and July 7, 2005. *See* Pls.' 5/20/05 Notice of Suppl. Auth. in Supp. of their Mot. for Summ. J.; Pls.' 8/18/05 Notice of Suppl. Auth. in Supp. of their Mot. for Summ. J. In response, Plaintiffs have filed two "Notices of Supplemental Authority in Support of Their Motion for Summary Judgment" that discuss in depth these additional productions and assert that (1) the Department has failed to conduct a reasonable search for the requested documents, *see, e.g.*, Pls.' 8/18/05 Notice of Suppl. Auth. in Supp. of their Mot. for Summ. J. at 3; and (2) the Department's submission of some, heavily-redacted records does not satisfy with its obligation [*36] to comply with FOIA, *id.* Plaintiffs further argue that "for virtually all the redactions" the Department invokes FOIA Exemption Five but fails to satisfy its "heavy burden of showing how the specific privilege applies to each of the redacted or withheld records." *Id. at 3-4* (emphasis in original).

Upon a review, it is clear that Defendants' decision to produce requested documents to Plaintiffs and Plaintiffs' subsequent Notices of Supplemental Authority have significantly altered the parameters of Plaintiffs' initial Motion for Summary Judgment. Despite this material alteration, Defendants have provided no response to the assertions contained within Plaintiffs' Notices of Supplemental Authority, nor have they filed anything with the Court approximating a *Vaughn* index. Given the sheer lack of material before the Court at this time and the need for a new set of motions to accompany this new stage in the litigation, the Court shall deny without prejudice Plaintiffs' current Motion for Summary Judgment and shall grant Plaintiffs leave to refile an expanded motion at the appropriate time. Rather than proceed down the path to which this litigation has been drifting, the [*37] Court shall give the parties until September 28, 2005 to communicate and discuss (1) what materials have been provided, or are predicted to be provided (and when); (2) what materials have been withheld, or are predicted to be withheld (and when); and (3) what materials have been redacted, or are predicted to be redacted (and when). The parties are to meet and discuss whether they can come to an agreement over any areas in which they have a difference of opinion. If the parties are unable to reach an agreement, they shall provide this Court with a Joint Status Report on September 28, 2005 that sets out where the parties are in the current production phase and what disputes remain. In the Joint Status Report, the parties are also to propose dates to the Court for the filing of the *Vaughn* index in this case, and for the anticipated cross-motions for summary judgment to accompany the completion of the FOIA production process.

## IV: CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss or, in the Alternative, for a Six-Month *Open America* Stay is denied. Further, Plaintiffs' Motion for Summary Judgment is denied without prejudice. Moreover, Plaintiffs' two [*38] motions to amend or correct their Oppositions to Defendants' Motion to Dismiss are granted, and Plaintiffs' Motion to Treat as Conceded Plaintiffs' Motion for Summary Judgment is denied *nunc pro tunc*. Finally, Plaintiffs and Defendants are to meet and construct a Joint Status Report to be filed with this Court by September 28, 2005, in which they inform the Court of the status of the FOIA production and set out proposed dates for the filing of a *Vaughn* index and the anticipated cross-motions for summary judgment. An Order accompanies this Memorandum Opinion.

Date: September 12, 2005

COLLEEN KOLLAR-KOTELLY

United States District Judge

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is, this 12th day of September, 2005, hereby

**ORDERED** that [14] Defendants' Motion to Dismiss or, in the Alternative, Motion for an *Open America* Stay is DENIED; it is further

**ORDERED** that [19] Plaintiffs' Motion to Amend/Correct [18] Plaintiffs' Memorandum in Opposition to [14] Defendants' Motion to Dismiss or, in the Alternative, Motion for an *Open America* Stay is GRANTED; it is further

**ORDERED** that [20] Plaintiffs' Unopposed [*39] Motion to Amend/Correct [18] Plaintiffs' Memorandum in Opposition to [14] Defendants' Motion to Dismiss or, in the Alternative, Motion for an *Open America* Stay is GRANTED; it is further

**ORDERED** that [21] Plaintiffs' Motion for Summary Judgment is DENIED WITHOUT PREJUDICE; it is further

**ORDERED** that [23] Plaintiffs' Motion to Treat as Conceded [21] Plaintiffs' Motion for Summary Judgment is DENIED *nunc pro tunc;* it is further

**ORDERED** that the parties are to meet and confer, and provide the Court with a Joint Status Report by Wednesday, September 28, 2005 setting out the information and proposed dates as specified in this Court's accompanying Memorandum Opinion.

**SO ORDERED.**

2005 U.S. Dist. LEXIS 20042, *

COLLEEN KOLLAR-KOTELLY                         United States District Judge