**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                   )
ELECTRONIC PRIVACY                 )
     INFORMATION CENTER,           )
                                   )
          Plaintiff                )
                                   )   Civil Action No. 06-00096 (HHK)
     v.                            )
                                   )
UNITED STATES DEPARTMENT           )
     OF JUSTICE,                   )
                                   )
          Defendant.               )
_____)



_____
                                   )
AMERICAN CIVIL LIBERTIES           )
     UNION, et al.,                )
                                   )
          Plaintiff                )
                                   )   Civil Action No. 06-00214 (HHK)
     v.                            )
                                   )
UNITED STATES DEPARTMENT           )
     OF JUSTICE,                   )
                                   )
          Defendant.               )
_____)
```

## DECLARATION OF THOMAS J. McINTYRE

I, Thomas J. McIntyre, declare the following to be true and correct:

1.  I am an attorney, and the Chief of the Freedom of Information Act/Privacy Act (FOIA/PA) Unit, Criminal Division, United States Department of Justice.  In that capacity, I bear the ultimate responsibility for responding to all requests to the Criminal Division submitted under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act of 1974 (PA), 5 U.S.C. § 552a.  Consequently, I am thoroughly familiar with all aspects of the processing of such requests.  I have held my

present position for approximately seven years.  Previously, I was employed as an attorney with the Office of Information and Privacy, United States Department of Justice, for more than fifteen years.  In sum, my entire legal career has been devoted to the administration of two statutes, the Freedom of Information Act and the Privacy Act.  I make this declaration on the basis of my personal knowledge, review of the processing file compiled in response to this request, and on the basis of information provided to me by other members of the FOIA/PA Unit and by members of the Civil Division.

**BACKGROUND**

**AMERICAN CIVIL LIBERTIES UNION (ACLU)**

**CORRESPONDENCE AND SEARCH PROCEDURES**

**Correspondence**

2.  By a letter dated December 20, 2005, addressed to the Department of Justice's Justice Management Division (JMD), the plaintiff ACLU made a request for records concerning the National Security Agency's (NSA) "warrantless electronic surveillance and physical searches" in the United States from September 11, 2001 to the present.  *See* Exhibit 1.

3.  On February 24, 2006, JMD referred plaintiff's request to the Criminal Division's FOIA/PA Unit.  The referral was received by the FOIA/PA Unit four days later, on February 28, 2006.  *See* Exhibit 2.

4.  By a letter addressed to plaintiff dated May 10, 2006, the FOIA/PA Unit clarified that plaintiff's request of December 20, 2005, after some delay, had been referred by JMD to the Criminal Division's FOIA/PA Unit, and subsequently assigned case

2

number CRM-200600214F.  The letter further stated that upon
receipt of the plaintiff's request, the Criminal Division
searched its sections and determined that no record reflecting
warrantless physical searches in the United States had been
located; however, the Criminal Division did have copies of the
Justice Department's "Legal Authorities Supporting the Activities
of the National Security Agency" report dated January 19, 2006.
Also located were drafts of the report.  Plaintiff was notified
that the report was already publicly available and that the draft
versions of the report were identical to those being processed by
the Office of Legal Counsel in response to plaintiff's request.
The plaintiff was notified of its right to seek an administrative
appeal.  *See* Exhibit 3.

     5.  The May 10, 2006, letter, as discussed above, also
advised plaintiff that to the extent the Criminal Division should
maintain records pertaining to any of the nine subparts listed in
plaintiff's request, that information would have been compiled
solely in conjunction with investigations of unauthorized
disclosure of classified information concerning the Terrorist
Surveillance Program, or in connection with pending criminal
prosecutions or investigations.[1]  Moreover, the letter stated
that such information, should it exist, would pertain to pending
law enforcement investigations, and/or is the subject of a court

_____

     [1] The Declaration of Patrick Rowan, Office of the Deputy
Attorney General, which has also been filed in this case, asserts
the appropriate exemptions as to the latter category of records,
*i.e.*, those records compiled in connection with pending criminal
prosecutions or investigations.  My declaration principally
addresses exemptions asserted as to records compiled as part of
the Criminal Division's investigation into the unauthorized
disclosure of classified information.

sealing order, and that any responsive information would be withheld in full under Exemption 7(A) of the FOIA, which permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The letter also advised that FOIA Exemptions 1, 5, 6, (7)(C), and 7(D) may apply as overlapping exemptions to portions of the same material. *See* Exhibit 3.

### Searches for Responsive Records - ACLU Request

6. Upon receipt of plaintiff's request from JMD, as discussed in paragraph 3 above, the Criminal Division's FOIA/PA Unit immediately searched its components and sections for responsive records. In conducting such searches, the FOIA/PA Unit relies on its many years of experience in searching for records responsive to FOIA requests. Based on that expertise, a search slip with a copy of the plaintiff's request (Exhibit 1) is transmitted to all sections that may have records responsive to the plaintiff's request. Designated personnel employed by the pertinent sections undertake a search for responsive materials and report the results by means of individual, signed forms to the Criminal Division FOIA/PA Unit. Searches are to be undertaken in the same manner as if the Criminal Division were seeking the information for its own, official purposes. By this means, the Criminal Division aims to ensure that its searches fully meet the criteria established under the Freedom of Information Act and the Privacy Act and interpretative decisional

4

law.  In this case the FOIA/PA Unit requested that the Criminal
Division's Office of Enforcement Operations' Title III Unit, the
Counterterrorism Section, Domestic Security Section, and
Counterespionage Section search their files for responsive
records.  To assist in directing their search the FOIA/PA Unit
attached a copy of the plaintiff's request (Exhibit 1) to the
search slip.

      7.  I have personally reviewed all of the original, signed
search sheets in this case, and have verified that all of the
Criminal Division's sections which may have relevant records
searched their files and have each indicated the extent to which
it maintains (or does not maintain) records responsive to
plaintiff's request.

**ELECTRONIC PRIVACY INFORMATION CENTER (EPIC)**
**AND NATIONAL SECURITY ARCHIVE FUND (NSAF)**
**CORRESPONDENCE**

      8.  By a letter dated December 16, 2005, addressed to the
Department of Justice's Office of Information and Privacy (OIP),
the plaintiff (EPIC) made a request for records concerning
presidential orders or directives authorizing NSA to conduct
domestic surveillance without the prior authorization of the
Foreign Intelligence Surveillance Court (FISC), from September
11, 2001 to the present.  *See* Exhibit 4.  By a letter dated
December 22, 2005, also addressed to the Department of Justice's
OIP, the plaintiff (NSAF) made a request for records concerning
memoranda, legal opinion, directives or instructions of the
Attorney General, the Assistant Attorney General, or the Office
of Legal Counsel regarding the government's legal authority for

5

surveillance activity directed at communications to or from U.S. citizens. *See* Exhibit 5.[2]

9. By a memorandum dated March 2, 2006, OIP referred to the FOIA/PA Unit one record, consisting of three pages, which is of primary interest to the Criminal Division's Counterterrorism Section (CTS), for review and direct response to plaintiff. *See* Exhibits 6,7.

10. By separate letters dated March 8, 2006, the FOIA/PA Unit notified these plaintiffs that it had processed the three-page record and determined to release the document in part. The portions withheld are the names of numerous CTS attorneys and contacts in the field. Plaintiffs were advised that the portions withheld in part where done so pursuant to Exemptions 6 and (7)(C) of the FOIA, as set forth in 5 U.S.C. § 552(b). The letter further advised plaintiffs that although complaints in the United States District Court regarding these FOIA requests had already been filed, the FOIA/PA Unit is still obligated to inform plaintiff of its administrative appeal rights. Attached to the letter was a copy of the three-page record. *See* Exhibits 8,9.[3]

---

[2] There is no record of either EPIC or NSAF directing these requests to the Criminal Division FOIA/PA Unit. Consequently, no searches were undertaken by the Criminal Division in connection with these requests.

[3] The same three-page record was also the subject of a referral from OIP with respect to the ACLU FOIA request. *See* Exhibit 10. The FOIA/PA Unit processed the three-page record in an identical manner, releasing the document in part to the ACLU and withholding portions pursuant to Exemptions 6 and 7(C), on the same date as its response to EPIC and NSAF on the same document. *See* Exhibit 11.

I have been advised by counsel for the Government that none of these plaintiffs is challenging the minimal withholdings

(continued...)

## JUSTIFICATION FOR WITHHOLDING OF INFORMATION

### Exemption 7(A)

11.   FOIA exemption (7)(A) permits the withholding of:

> (7) records or information compiled for law
> enforcement purposes, but only to the extent
> that the production of such law enforcement
> records or information
>
>> (A) could reasonably be expected to
>> interfere with enforcement
>> proceedings . . . .

5 U.S.C. § 552(b)(7)(A).

12.   The records being withheld under Exemption 7(A) were
compiled in conjunction with an on-going investigation into the
unauthorized disclosure, or "leak," of classified information
concerning the Terrorist Surveillance Program, involving
allegations of violations of federal criminal law, specifically,
18 U.S.C. §§ 793 and 798, and related statutes.  Accordingly,
these record(s) meet Exemption 7's threshold requirement of
"records or information compiled for law enforcement purposes."

13.   In conducting its review of these records, the FOIA/PA
Unit also consulted with the Division sections having an interest
in these records.  The records withheld pursuant to Exemption
7(A) relate to matters in an on-going Criminal Division
investigation.  The attorneys in charge of these matters have
informed the FOIA/PA Unit that release of these records could
reasonably be expected to interfere with the on-going criminal
proceedings.  The expected interference with or harm to these
proceedings is discussed in greater detail in paragraph 18 of

---

[3](...continued)
pursuant to Exemptions 6 and 7(C) in the referred documents and
consequently they will not be further addressed herein.

7

this declaration.

14.    In consulting with the Criminal Division sections
having an interest in these records, it became clear that any
records in the possession of the Division that are responsive to
the ACLU's request for records concerning the NSA's "warrantless
electronic surveillance" — including "any presidential order(s)
authorizing the NSA to engage in warrantless electronic
surveillance" or "the policies, procedures and/or practices of
the NSA" — would only be incidental to the leak investigation.
In other words, to the extent the relevant Division sections have
compiled any records responsive to the ACLU's request, such
records are few in number and provide only the background for the
Division's investigation into the unauthorized disclosure of this
classified information.

15.    The records withheld under Exemption 7(A) were reviewed
for the purpose of identifying categories into which these
records would logically fall.  Every effort was made to identify
meaningful categories that would provide sufficient insight into
the nature of the information contained in the records falling
within a specific category, yet not so descriptive as to reveal
prematurely the very information that is statutorily protected.

16.    The records withheld in full pursuant to Exemption 7(A)
fall into three categories:

(1)    Classified copies of Federal Bureau of Investigation
       "302" Reports (specifically, reports and summaries of
       witness interviews), containing attorney notes, which
       further contain information related to potential
       subjects of the investigation and which would reveal

their identities as well as the focus of the investigation;

(2)    Unclassified documents relating to attorney work product and case development matters, specifically attorney notes containing discussions of prospective and investigative theories; discussions or analyses of individuals under investigation; and discussions and analyses of allegations and legal issues concerning the subject matter and areas of inquiry of the investigations, which would reveal (a) identities of subjects of the investigation; (b) facts relevant to the investigation; and (c) facts about the Terrorist Surveillance Program; and

(3)    A classified chronology of events related to the leak investigation, showing the history of events leading up to the investigation as well as the initial and developing focus of the investigation, and which also contains statements of potential witnesses or subjects of the investigation.[4]

17.    It is my understanding that an additional category of documents containing unclassified government documents about the Terrorist Surveillance Program — including the final copy of the "White Paper" — have already been disclosed to the ACLU by other

_____

[4] To the extent the Criminal Division's leak investigation files contain information that would not qualify for protection under Exemption 7(A) (typically, such items as media coverage that would not indicate the focus of the investigation or publicly filed materials), it has been determined that such information is not responsive to plaintiffs' requests.    Therefore such limited, segregable information is not, in this instance, subject to disclosure.

components involved in this litigation. Any copies of these
documents, which would have been compiled incidental to the leak
investigation, are identical to those already disclosed.

18.  The Criminal Division determined that disclosure of the
information contained in the categories of documents described in
paragraph 16 above could reasonably be expected to result in
interference with the on-going proceedings. For example,
prematurely disclosing documents relating to witnesses in on-
going inquiries and investigations could result in witness
tampering or intimidation; could lead to alteration, tailoring,
or construction of testimony; and could discourage the continued
cooperation of these witnesses as well as of other knowledgeable
individuals.  Likewise, disclosure of attorney work product and
other documents related either to the government's initial
inquiries or to the development of the government's cases could
prematurely reveal the direction, focus and scope of the
inquiries; the evidence developed to date and the reliance placed
by the government on that evidence; the government's strategies;
and the strengths and weaknesses of the government's cases.
Prematurely revealing such information could also provide the
targets and subjects with undue insight into the development of
the government's cases, could enable them to devise strategies to
counter prosecutorial efforts, and could impair the government's
ability to present its most effective case. Finally, disclosure
of evidentiary material obtained by the government could likewise
provide targets and subjects with insight into the government's
case against them; could enable such individuals to alter, tailor
or destroy evidence, as well as to fabricate alibis, or could

10

otherwise assist such individuals in circumventing the investigations.

19.    The Criminal Division has made every effort to provide clear and full descriptions of the categories of records being withheld pursuant to Exemption 7(A) and to identify the interference with or harm to the still pending proceeding that could reasonably be expected to occur from release of the information contained in these records.    However, any attempt to describe these records in greater detail would lead to disclosure of the very information sought to be protected.

## JUSTIFICATION FOR WITHHOLDING OF INFORMATION

### Exemptions 5, 6, (7)(C), and 7(D)[5]

20.    The categories of documents identified in paragraph 16 above have further been withheld pursuant to other FOIA exemptions, as identified in the paragraphs below.    As it is submitted that all of this information is currently fully protected pursuant to Exemption 7(A), as detailed above, these

---

[5] To the extent that the categories of documents identified in paragraph 16 are classified, FOIA exemption 1, 5 U.S.C. § 552(b)(1), provides further protection for these records. Exemption 1 protects information "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."   See 5 U.S.C. § 552(b)(1).   The Declaration of David Hardy, Federal Bureau of Investigation, formally asserts Exemption 1 as to these documents, which are principally comprised of classified FBI witness interviews.   To the extent that the classified chronology of events is derived from information classified by other intelligence agencies, the Declaration of John D. Negroponte, Director of National Intelligence, which is attached as an exhibit to the Declaration of Steven G. Bradbury, provides the justification for withholding such information under Exemption 1.

exemptions are included solely as additional bases for
withholding should the Court, for any reason, at any time
determine that such withheld information is not protected under
Exemption 7(A)

   21.  First, FOIA exemption 5 permits the withholding of:

> inter-agency or intra-agency
> memorandums or letters which would
> not be available by law to a party
> other than an agency in litigation
> with the agency . . . .

5 U.S.C. § 552(b)(5).

   22.  This exemption authorizes the withholding of
information that would not be subject to discovery in civil
proceedings.  Of the ordinary litigation privileges available to
DOJ, the deliberative process privilege and the attorney work
product doctrine are applicable here.

   23.  Documents covered by the deliberative process privilege
include those reflecting advisory opinions, recommendations and
deliberations comprising part of a process by which government
decisions and policies are formulated.  An agency record must
satisfy three conditions to qualify for the deliberative process
privilege. It must be "inter-agency or intra-agency," 5 U.S.C. §
552(b)(5), that is, its source must be a government agency; and
it must be both "predecisional" and "deliberative."

   24.  The attorney work product doctrine prevents the
disclosure of documents prepared in anticipation of foreseeable
litigation, even if no specific claim is contemplated.  It
applies so long as some articulable claim, likely to lead to
litigation, has arisen.  The doctrine, thus, protects information
generated by legal counsel where the document can fairly be said

12

to have been prepared or obtained because of the prospect of litigation. This privilege protects not only those materials prepared by attorneys, but extends to materials provided by others directly assisting attorneys in preparation for litigation.

25. All categories of documents identified in paragraph 16 constitute attorney work product. The classified FBI "302" reports with attorney notes, the unclassified attorney notes, and the classified chronology of events were all prepared in anticipation of foreseeable litigation, *i.e.*, the investigation and prosecution of the person or persons responsible for the unauthorized disclosure of classified information. As it is well settled that the attorney work product privilege protects all information, including factual information, no such information is required to be segregated for disclosure.

26. Many of the documents contained in the categories identified in paragraph 16 are also "intra-agency" records that reflect deliberations comprising part of a process by which government decisions about the leak investigation are being formulated. Thus, these records would also be properly protected by the deliberative process privilege.

27. Second, FOIA exemption 6 and (7)(C) permit the withholding of:

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ...

13

> (C)   could reasonably be expected to
>        constitute an unwarranted invasion
>        of personal privacy ...

5 U.S.C. §§ 562(b)(6) and (7)(C).

28.   These interrelated exemptions authorize withholding of
information which, if disclosed, would invade personal privacy.
Exemption 6 protects personnel and medical files and similar
files, the disclosure of which would constitute a clearly
unwarranted invasion of personal privacy.   5 U.S.C. § 552(b)(6).
Similarly, FOIA Exemption (7)(C) protects records or information
compiled for law enforcement purposes, production of which could
reasonably be expected to constitute an unwarranted invasion of
personal privacy. 5 U.S.C. § 55(b)(7)C).

29.   Exemptions 6 and (7)(C) further apply to aspects of the
documents identified by category in paragraph 16 to the extent
these records contain the names of individuals who are connected
with terrorism-related investigations and other related law
enforcement functions.

30.   Moreover, the overarching law enforcement purpose for
which these records were compiled was to investigate the
unauthorized disclosure of classified information, as previously
discussed.   As such, these items plainly also meet Exemption 7's
threshold requirement of "records or information compiled for law
enforcement purposes."

31.   Exemptions 6 and (7)(C) each requires a balancing of
the individuals' right to personal privacy against the public's
interest in shedding light on an agency's performance of its
statutory duties.   In undertaking this evaluation, the United

14

States Supreme Court has expressly instructed that a requester's purpose in making the request and proposed use of the requested information have no bearing on the balancing test.

32. It has long been recognized that individuals who are associated with federal criminal investigations — either as subjects or interviewees — have an inherent privacy interest in that fact not being publicly divulged. Additionally, identifying federal employees assigned to high profile criminal investigations, including law enforcement officers, could reasonably be expected to subject these individuals to harassment or reprisals as well as increase the difficulties of duties which require a low profile.

33. Revealing such information will add nothing to the public's understanding of how the Department of Justice works or how it performs its statutory duties, the only factors appropriately weighed on the public interest side of the balance. The FOIA/PA Unit has determined that the privacy interest that is protected by refusing to release the names and identifying information clearly outweighs the nonexistent public interest that might be served by disclosure. Since such disclosure would be "clearly unwarranted" as required by 5 U.S.C. § 552(b)(6), which is the higher of the two standards of invasion of privacy, the release of this information also would be "unwarranted" as required by 5 U.S.C. § 552(b)(7)(C).

34. Finally, FOIA exemption (7)(D) permits the withholding of:

> (7)  records or information compiled for law
>       enforcement purposes, but only to the extent that
>       the production of such law enforcement records or
>       information . . .

15

>   (D) could reasonably be expected to disclose the
>       identity of a confidential source, including
>       a State, local, or foreign agency or
>       authority or any private institution which
>       furnished information on a confidential
>       basis, and, in the case of a record or
>       information compiled by criminal law
>       enforcement authority in the course of a
>       criminal investigation or by an agency
>       conducting a lawful national security
>       intelligence investigation, information
>       furnished by a confidential source . . . .

5 U.S.C. § 552(b)(7)(D).

35.  Exemption 7(D) provides the most comprehensive
protection of all of the law enforcement exemptions in that it
exists to ensure that confidential sources are not lost through
retaliation against the sources for past disclosure or because of
the sources' fear of future disclosure.  In instances where no
express promise of confidentiality has been extended to sources,
the source's status as a confidential source depends on the
nature of the crime and the source's relation to it.

36.  Portions of the records identified in paragraph 16,
which as part of the leak investigation were compiled for law
enforcement purposes, also include the identities of confidential
sources, the disclosure of which could conceivably provoke
retaliation against the sources.  There can be no doubt that when
a criminal investigation is characterized as involving "a serious
issue" by a White House spokesperson, the nature of the crime is
of such consequence that anyone with relevant knowledge would
expect that their statements would not be publicly divulged
unless and until such disclosure is absolutely essential *for law
enforcement purposes*.  As noted, the identities of these sources
are also protected under Exemptions 6 and 7(C) on the basis of

16

their substantial privacy interests (and, presently, under Exemption 7(A), as well).

    37. As the Criminal Division's investigation into the unauthorized disclosure of classified information about the Terrorist Surveillance Program is plainly a lawful criminal investigation, all information furnished by any confidential source — regardless of whether or not it could lead to identification of the source — is also exempt from disclosure pursuant to Exemption 7(D).

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on: ___September 6, 2006___

THOMAS J. McINTYRE

17

ANN BEESON
ASSOCIATE LEGAL DIRECTOR



*401 200600239*

Office of Information and Privacy
Received
December 28, 2005

December 20, 2005

FOIA/PA Mail Referral Unit
Justice Management Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW.
Washington, DC 20530-0001.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2401
F/212.549.2451
ABEESON@ACLU.ORG
WWW.ACLU.ORG

Re:   <u>REQUEST UNDER FREEDOM OF INFORMATION ACT /</u>
      <u>Expedited Processing Requested</u>

Attention:

        This letter constitutes a request by the American Civil Liberties Union
and the American Civil Liberties Union Foundation ("ACLU") under the
Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Department of
Justice implementing regulations, 28 CFR § 16.11.[1]

I.      <u>The Request for Information</u>

        The ACLU seeks disclosure of any presidential order(s) authorizing
the NSA to engage in warrantless electronic surveillance[2] and/or warrantless
physical searches in the United States, created from September 11, 2001 to the
present.[3]

---

[1] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides
legal representation free of charge to individuals and organizations in civil rights and civil
liberties cases, and educates the public about civil rights and civil liberties issues. The
American Civil Liberties Union is a separate non-profit, non-partisan, 501(c)(4) membership
organization that educates the public about the civil liberties implications of pending and
proposed state and federal legislation, provides analyses of pending and proposed legislation,
directly lobbies legislators, and mobilizes its members to lobby their legislators.
[2] The term "electronic surveillance" includes but is not limited to warrantless acquisition of
the contents of any wire or radio communication by an electronic, mechanical, or other
surveillance device, and the warrantless installation or use of an electronic, mechanical, or
other surveillance device for monitoring to acquire information, other than from a wire or
radio communication.
[3] This request does not include surveillance authorized by 50 U.S.C. §§ 1802 or 1822(a).

1

EXHIBIT 1
McIntyre Declaration
EPIC v. DOJ, Civil Action No. 06-00096 (HHK)
ACLU v. DOJ, Civil Action No. 06-00214 (HHK)

In addition, the ACLU seeks disclosure of any record(s),[4] document(s), file(s), communications, memorandum(a), order(s), agreement(s) and/or instruction(s), created from September 11, 2001 to the present, about:

1. any presidential order(s) authorizing the NSA to engage in warrantless electronic surveillance and/or warrantless physical searches in the United States;

2. the policies, procedures and/or practices of the NSA:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

   a. for identifying individuals, organizations or entities to subject to warrantless electronic surveillance and/or warrantless physical searches in the United States, including but not limited to any "checklist to follow in deciding whether probable cause existed to start monitoring someone's communications,"[5] or a requirement that there be a "clear link" between terrorist organizations and individuals subject to such surveillance;[6]

   b. for gathering information through warrantless electronic surveillance and/or warrantless physical searches in the United States;

   c. governing the maintenance and/or storage of information described in paragraph 2(b) above;

   d. for analyzing and using information described in paragraph 2(b) above;

   e. for sharing information described in paragraph 2(b) above with other government agencies;

---

[4] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.
[5] James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, New York Times, Dec. 16, 2005, at A1, A16.
[6] Transcript, President Bush's Address, Dec. 17, 2005, available at http://www.nytimes.com/2005/12/17/politics/17text-bush.html

2

f.  for sharing information described in paragraph 2(b) above to be "used as the basis for F.I.S.A. warrant requests from the Justice Department,"[7] or any other form of warrant;

g.  for cross referencing information described in paragraph 2(b) above with information about other individuals, organizations, or groups;

h.  for cross-referencing information described in paragraph 2(b) above with information in any database;

i.  to suspend and/or terminate warrantless electronic surveillance and/or physical searches in the United States by the NSA;

j.  governing the destruction of information described in paragraph 2(b) above;

k.  for protecting the privacy of individuals who are subject to warrantless electronic surveillance and/or warrantless physical searches in the United States;

l.  for consulting with, or obtaining approval from, the Justice Department or other departments, agencies, and/or executive branch officials before engaging in warrantless electronic surveillance and/or warrantless physical searches in the United States;

m. any minimization procedure, as that term is defined in 50 U.S.C.§ 1801(h), for information described in paragraph 2(b) above;

3.  the name of other government agencies with whom the information described in part 2(b) above is shared;

4.  the date on which:

    a.  President Bush signed an order permitting the NSA to engage in warrantless electronic surveillance and/or warrantless physical searches in the United States;

---

[7] Risen and Lichtblau, Dec. 16., at A16.

3

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

    b.  the NSA began engaging in warrantless electronic surveillance and/or warrantless physical searches in the United States;[8]

5.  the constitutionality, legality, and/or propriety of warrantless electronic surveillance and/or warrantless physical searches in the United States;

6.  any Justice Department "legal reviews of the program and its legal rationale."[9]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

7.  any actual or potential violations of, or deviations from, any policy, procedure or practice related to warrantless electronic surveillance and/or warrantless physical searches in the United States by the NSA;

8.  any investigation, inquiry, or disciplinary proceeding initiated in response to any actual or potential violations of, or deviations from, any policy, procedure or practice related to warrantless electronic surveillance and/or warrantless physical searches in the United States by the NSA;

9.  any Department of Justice audit of any NSA program carrying out warrantless electronic surveillance and/or warrantless physical searches in the United States;[10]

10. the number of:

    a.  individuals who have been subjected to warrantless electronic surveillance in the United States by the NSA since September 11, 2001;

---

[8] It is unclear when the NSA began its domestic surveillance program and when the President provided written authorization for it to do so. On December 18, 2005, the New York Times reported that the NSA "first began to conduct warrantless surveillance on telephone calls and e-mail messages between the United States and Afghanistan months before President Bush officially authorized a broader version of the agency's special domestic collection program." Eric Lichtblau and James Risen, *Eavesdropping Effort Began Soon After Sept. 11 Attacks*, New York Times, Dec. 18, 2005.

[9] Eric Lichtblau and David E. Sanger, *Administration Cites War Vote in Spying Case*, New York Times, Dec. 20, 2005.

[10] Risen and Lichtblau, Dec. 16, at A16 (describing such an audit as taking place on or after 2004).

4

      b.  individuals who have been subjected to warrantless physical searches in the United States by the NSA since September 11, 2001;

      c.  organizations or entities that have been subjected to warrantless electronic surveillance in the United States by the NSA since September 11, 2001;

      d.  organizations or entities that have been subjected to warrantless physical searches in the United States by the NSA since September 11, 2001;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

11. the average and maximum[11] number of:

      a.  individuals who have been the target of warrantless electronic surveillance in the United States by the NSA at any one time since September 11, 2001;

      b.  individuals who have been the target of warrantless physical searches in the United States by the NSA at any one time since September 11, 2001;

      c.  organizations or entities that have been the target of warrantless electronic surveillance in the United States by the NSA at any one time since September 11, 2001;

      d.  organizations or entities that have been the target of warrantless physical searches in the United States by the NSA at any one time since September 11, 2001;

12. the number of individuals who have been subjected to warrantless electronic surveillance and/or warrantless physical searches in the United States by the NSA who are United States citizens, lawful permanent residents, recipients of non-immigrant visas, lawful visitors without visas, and undocumented immigrants, respectively;

13. the types of communications that have been subjected to warrantless electronic surveillance by the NSA, including but not limited to whether such communications were carried out via telephone, email,

---

[11] The New York Times reports that "officials familiar with [the program] say the N.S.A. eavesdrops without warrants on up to 500 people in the United States at any time." Risen and Lichtblau, Dec. 16, at A16.

instant messaging, chat, Voice Over IP, other Internet-based
communications technologies, or in-person conversation;

14. elements of the NSA's warrantless surveillance program in the United
States that were suspended or revamped after, "[i]n mid-2004,
concerns about the program [were] expressed by national security
officials, government lawyers and a judge"; [12]

15. concerns expressed by national security officials, government lawyers,
judges and others regarding the NSA's warrantless surveillance
program; [13]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

16. the number of instances in which the Attorney General has authorized
warrantless electronic surveillance and/or phsycial searches under
50 U.S.C. §§ 1802 or 1822(a), and copies of each certification; and

17. President Bush's periodic reauthorization of the NSA's warrantless
surveillance in the United States, including but not limited to the
frequency with which the President reviews the surveillance program,
the exact number of times the President has reauthorized the program,
the basis and/or criteria for continued authorization of the program,
and other government officials, departments, and/or agencies involved
in the review process. [14]

---

[12] Risen and Lichtblau, Dec. 16, at A16.
[13] *Id.*
[14] On December 17, 2005, President Bush said:
> The activities I authorized are reviewed approximately every 45 days. Each
> review is based on a fresh intelligence assessment of terrorist threats to the
> continuity of our government and the threat of catastrophic damage to our
> homeland. During each assessment, previous activities under the
> authorization are reviewed. The review includes approval by our nation's
> top legal officials, including the attorney general and the counsel to the
> president. I have reauthorized this program more than 30 times since the
> Sept. 11 attacks and I intend to do so for as long as our nation faces a
> continuing threat from Al Qaeda and related groups.

Transcript, President Bush's Address, December 17, 2005, available at
http://www.nytimes.com/2005/12/17/politics/17text-bush.html. *See also* David E. Sanger, *In
Address, Bush Says He Ordered Domestic Spying*, New York Times, December 18, 2005.

II.    Limitation of Processing Fees

The ACLU requests a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media . . .") and 28 C.F.R. §§ 16.11(c)(1)(i), 16.11(d)(1) (search and review fees shall not be charged to "representatives of the news media."). As a "representative of the news media," the ACLU fits within this statutory and regulatory mandate. Fees associated with the processing of this request should, therefore, be limited accordingly.

The ACLU meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." National Security Archive v. Department of Defense, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

The ACLU is a national organization dedicated to the defense of civil rights and civil liberties. Dissemination of information to the public is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes newsletters, news briefings, right-to-know documents, and other educational and informational materials that are broadly disseminated to the public. Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its heavily visited web site: http://www.aclu.org/. The web site addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The website specifically includes features on information obtained through the FOIA. See, e.g., www.aclu.org/patriot_foia; www.aclu.org/torturefoia; http://www.aclu.org/spyfiles. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail.

In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools and organizations through a variety of means including their own websites, publications and newsletters. Further, the ACLU makes archived

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

7

material available at the American Civil Liberties Union Archives, Public Policy Papers, Department of Rare Books and Special Collections, Princeton University Library. ACLU publications are often disseminated to relevant groups across the country, which then further distribute them to their members or to other parties.

Depending on the results of the Request, the ACLU plans to "disseminate the information" gathered by this Request "among the public" through these kinds of publications in these kinds of channels. The ACLU is therefore a "news media entity." Cf. Electronic Privacy Information Ctr. v. Department of Defense, 241 F.Supp.2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the media" for purposes of FOIA).

Finally, disclosure is not in the ACLU's commercial interest. The ACLU is a "non-profit, non-partisan, public interest organization." See Judicial Watch Inc. v. Rossotti, 326 F.3d 1309, 1310 (D.C. Cir. 2003). Any information disclosed by the ACLU as a result of this FOIA will be available to the public at no cost.

III.    Waiver of all Costs

The ACLU additionally requests a waiver of all costs pursuant to 5 U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA. See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

Disclosure of the requested information is in the public interest. This request will further public understanding of government conduct; specifically, the NSA's warrantless electronic surveillance and/or physical searches in the United States. This type of government activity concretely affects many individuals and implicates basic privacy, free speech, and associational rights protected by the Constitution.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

8

Moreover, disclosure of the requested information will aid public understanding of the implications of the President's decision to permit the NSA to engaging in warrantless electronic surveillance and/or physical searches in the United States and, consequently, to circumvent the judicial oversight required by the Foreign Intelligence Surveillance Act of 1978.[15] Congress passed this Act in response to scandalous revelations about widespread political surveillance by the FBI under the leadership of J. Edgar Hoover. Following those revelations, Congress convened hearings and established a commission to investigate the government's abuses and explore how best to prevent future excesses. The hearings, chaired by Idaho Senator Frank Church, revealed that the government had infiltrated civil rights and peace groups, had burglarized political groups to gain information about their members and activities, and had "swept in vast amounts of information about the personal lives, views, and associations of American citizens."[16] Understanding the current scope of the NSA's warrantless surveillance is, therefore, crucial to the public's interest in understanding the legality and consequences of the President's order and the NSA's current surveillance practices.

As a nonprofit 501(c)(3) organization and "representative of the news media" as discussed in Section II, the ACLU is well-situated to disseminate information it gains from this request to the general public and to groups that protect constitutional rights. Because the ACLU meets the test for a fee waiver, fees associated with responding to FOIA requests are regularly waived for the ACLU.[17]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[15] 50 U.S.C. § 1801 *et seq.*

[16] INTELLIGENCE ACTIVITIES AND THE RIGHTS OF AMERICANS, BOOK II: FINAL REPORT OF THE SELECT COMMITTEE TO STUDY GOVERNMENTAL OPERATIONS WITH RESPECT TO INTELLIGENCE ACTIVITIES. UNITED STATES SENATE. APRIL 26, 1976. *Available at* http://www.icdc.com/~paulwolf/cointelpro/churchfinalreportIIa.htm.

[17] For example, in May 2005, the United States Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with regard to a request submitted that month regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. Also, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in August of 2004. In addition, the Office of Science and Technology Policy in the Executive Office of the President said it would waive the fees associated with a FOIA request submitted by the ACLU in August 2003. In addition, three separate agencies – the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice – did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

9

The records requested are not sought for commercial use, and the requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described in Section II. As also stated in Section II, the ACLU will make any information disclosed as a result of this FOIA available to the public at no cost.

IV.     **Expedited Processing Request**

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Expedited processing is warranted because there is "[a]n urgency to inform the public about an actual or alleged federal government activity" by organizations "primarily engaged in disseminating information." 28 CFR § 16.5(d)(1)(ii).[18] This request implicates an urgent matter of public concern; namely, the NSA's potentially extensive warrantless electronic surveillance and/or physical searches in the United States. Such government activity may infringe upon the public's free speech, free association, and privacy rights, which are guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Requests for information bearing upon potential Constitutional violations require an immediate response so that any violations cease and future violations are prevented.

A requestor may also demonstrate the need for expedited processing by showing that the information sought relates to "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). The instant request clearly meets these standards as the request relates to possible violations of Constitutional rights by federal law enforcement officials. It took less than a day for Arlen Specter, the Republican chairman of the Senate Judiciary Committee, to pledge that the Senate would hold hearings to investigate the NSA's warrantless surveillance. Jennifer Loven, *Report of NSA Spying Prompts Call for Probe*, San Francisco Chronicle, Dec. 16, 2005. That the President chose to give a rare, live radio address providing additional information about the NSA's warrantless surveillance the day after it was revealed underscores the urgency of the ACLU's request. The urgent and time sensitive nature of the request is also apparent from the widespread and sustained media coverage the NSA's warrantless domestic surveillance activities have garnered. *See, e.g.,* James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, New

---

[18] The ACLU is "primarily engaged in disseminating information," as discussed in Sections II and III.

10

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

York Times, Dec. 16, 2005, at A1; Maura Reynolds and Greg Miller, *Congress Wants Answers About Spying on U.S. Citizens*, Pittsburgh Post-Gazette, Dec. 16, 2005; Steven Thomma, *Spying Could Create Backlash on Congress; Public Reaction Hinges on Identity of Targets*, San Jose Mercury News, Dec. 16, 2005; Christine Hauser, *Bush Declines to Discuss Report on Eavesdropping*, New York Times, Dec. 16, 2005; Katherine Shrader, *Lawmakers Say Reported Spy Program Shocking, Call For Investigations*, San Diego Union Tribune, Dec. 16, 2005; Caren Bohan and Thomas Ferraro, *Bush Defends Eavesdropping and Patriot Act*, ABC News, Dec. 17, 2005; Dan Eggan and Charles Lane, *On Hill, Anger and Calls for Hearing Greet News of Stateside Surveillance*, Washington Post, Dec. 17, 2005, at A1; Jennifer Loven, *Bush Defends Secret Spying in U.S.*, San Francisco Chronicle, Dec. 17, 2005; Barton Gellman and Dafna Linzer, *Pushing the Limits of Wartime Powers*, Washington Post, Dec. 18, 2005, at A1; John Diamond, *NSA's Surveillance of Citizens Echoes 1970s Controversy*, USA Today, Dec. 18, 2005; James Kuhnhenn, *Bush Defends Spying in U.S.*, San Jose Mercury News, Dec. 18, 2005; Fred Barbash and Peter Baker, *Gonzales Defends Eavesdropping Program*, Washington Post, Dec. 19, 2005; Todd J. Gillman, *Bush Assails Disclosure of Domestic Spying Program*, San Jose Mercury News, Dec. 19, 2005; David Stout, *Bush Says U.S. Spy Program is Legal and Essential*, New York Times, Dec. 19, 2005; James Gerstenzang, *Bush Vows to Continue Domestic Surveillance*, L.A. Times, Dec. 19, 2005; Terence Hunt, *Bush Says NSA Surveillance Necessary, Legal*, Washington Post, Dec. 19, 2005; George E. Condon, *Bush Says Spying Is Needed To Guard US*, San Diego Union Tribune, Dec. 20, 2005; Jeff Zeleny, *No 'Unchecked Power' In Domestic Spy Furor*, Chicago Tribune, Dec. 20, 2005; Michael Kranish, *Bush Calls Leak of Spy Program Shameful*, Boston Globe, Dec. 20, 2005; Craig Gordon, *For Bush, 9/11 Justifies Eavesdropping*, Newsday, Dec. 20, 2005; Terence Hunt, *Bush Defends Domestic Spying Program as Effective Tool in War on Terror*, Detroit Free Press, Dec. 19, 2005.

Finally, pursuant to applicable regulations and statute, the ACLU expects the determination of this request for expedited processing within 10 calendar days and the determination of this request for documents within 20 days. *See* 28 CFR § 16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i).

If this request is denied in whole or in part, we ask that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or to deny a waiver of fees.

11

Thank you for your prompt attention to this matter. Please furnish all applicable records to:

Ann Beeson
Associate Legal Director
American Civil Liberties Union
125 Broad Street, 18th floor
New York, NY 10004

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief.

Sincerely,

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Ann Beeson
Associate Legal Director
American Civil Liberties Union



**U.S. Department of Justice**
Justice Management Division

**Freedom of Information Act/Privacy Act
Referral/Action Slip**

| | |
|---|---|
| Clerk: E. White | Date: FEB 2 4 2006 |

Organization: JMD/FASS

Building & Room: LOC, 113

| To | From | | To | From |
|---|---|---|---|---|
| ☑ | ☐ Office of Information & Privacy | | ☐ | ☐ Immigration Review, Executive Office for |
| | The Attorney General | | ☐ | ☐ Inspector General, Office of |
| | | | ☐ | ☐ Intelligence Policy and Review, Office of |
| | | | ☐ | ☐ INTERPOL, U.S. National Central Bureau |
| ☐ | ☐ Antitrust Division | | ☐ | ☐ Justice Management Division Staff: _____ |
| ☐ | ☐ Bureau of Alcohol, Tobacco, Firearms and Explosives | | ☐ | ☐ Justice Programs, Office of |
| ☑ | ☐ Civil Division | | ☑ | ☐ Legal Counsel, Office of |
| ☑ | ☐ Civil Rights Division | | ☐ | ☐ National Drug Intelligence Center |
| ☐ | ☐ Community Relations Service | | ☐ | ☐ Pardon Attorney, Office of |
| ☐ | ☐ Community Oriented Policing Services | | ☐ | ☐ Professional Responsibility Advisory Office |
| ☑ | ☐ Criminal Division | | ☐ | ☐ Professional Responsibility, Office of |
| ☐ | ☐ Dispute Resolution, Office of | | ☐ | ☐ Solicitor General, Office of |
| ☐ | ☐ Drug Enforcement Administration | | ☐ | ☐ Tax Division |
| ☐ | ☐ Environment & Natural Resources Division | | ☑ | ☐ U.S. Attorneys, Executive Office for |
| ☐ | ☐ Federal Bureau of Prisons | | ☐ | ☐ U.S. Marshals Service |
| ☑ | ☐ Federal Bureau of Investigation | | ☐ | ☐ U.S. Parole Commission |
| ☐ | ☐ Federal Detention Trustee, Office of | | ☐ | ☐ U.S. Trustees, Executive Office for |
| ☐ | ☐ Foreign Claims Settlement Commission | | ☐ | ☐ _____ |

Requester: Ann Beeson

Ref: _____

Date of Request: December 20, 2005

Received By: FOIA/PA Mail Referral Unit          Type of Request: FOIA

Remarks: Requester advised of this referral.

**EXHIBIT 2**
McIntyre Declaration
EPIC v. DOJ, Civil Action No. 06-00096 (HHK)
ACLU v. DOJ, Civil Action No. 06-00214 (HHK)

FORM JMD-481
Rev. Mar. 2004



**U.S. Department of Justice**

Criminal Division
Office of Enforcement Operations

---

*(202) 616-0307*                                          *Washington, D.C.  20530*

CRM-200600214F                        MAY 1 0 2006          **FILE**

Ms. Ann Beeson
Associate Legal Director
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, N.Y. 10004

Dear Ms. Beeson:

     This is in response to your Freedom of Information Act
request of December 20, 2005, for access to materials relating to
the authorization of, and policies, procedures and certain other
information regarding "warrantless electronic surveillance and
warrantless physical searches" conducted by the National Security
Agency.  I interpret your request to be for materials pertaining
to the program President Bush mentioned in his December 17, 2005,
radio address (the "Terrorist Surveillance Program").  Your
request was referred by the Justice Management Division (after
some delay) to this Office for response.  Your request has been
assigned file number CRM-200600214F.  Please refer to this number
in any future correspondence with this Unit.

     In response to your request, the Criminal Division has no
records reflecting warrantless physical searches in the United
States.  The Criminal Division does have copies of the Justice
Department report dated January 19, 2006, entitled "Legal
Authorities Supporting the Activities of the National Security
Agency Described by the President," which is publicly available,
as well as drafts of that report.  The drafts of the report we
maintain are identical to those being processed in response to
your request by the Office of Legal Counsel.

     To the extent the Criminal Division maintains any other
information related to any of the nine subparts of your request
such information would have been compiled solely in connection
with an investigation of the unauthorized disclosure of
classified information concerning the Terrorist Surveillance
Program (the "leak investigation") or in connection with other
pending criminal prosecutions or investigations. (This response
should not be interpreted as confirmation that any defendants who
have alleged that they were subject to the Terrorist Surveillance
Program were, in fact, the subject of such surveillance.)

**EXHIBIT 3**
McIntyre Declaration
EPIC v. DOJ, Civil Action No. 06-00096 (HHK)        *[signature] 5/10/06*
ACLU v. DOJ, Civil Action No. 06-00214 (HHK)

- 2 -

Inasmuch as all of this information pertains to pending law enforcement investigations and, in some instances, is subject to a court sealing order, any responsive information is being withheld in full under Exemption 7(A) of the FOIA, which permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

Please be further advised that additional, overlapping exemptions may apply to portions of this same material including, but not limited to the following FOIA exemptions set forth in 5 U.S.C. 552(b):

(1) which permits the withholding of information properly classified pursuant to Executive Order;

(5) which permits the withholding of inter-agency or intra-agency memorandums or letters which reflect the predecisional, deliberative processes of the Department, and/or which consist of attorney work product prepared in anticipation of litigation;

(6) which permits the withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) which permits the withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information...

(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy and

(D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished

- 3 -

information on a confidential
basis, and, in the case of a record
or information compiled by criminal
law enforcement authority in the
course of a criminal investigation
or by an agency conducting a lawful
national security intelligence
investigation, information
furnished by a confidential source.

Although I am aware that you have filed suit regarding this
request, I am required by statute and Department regulations to
advise you of your right to an administrative appeal.  Department
regulations provide that such appeals must be filed within sixty
days of your receipt of this letter.  28 C.F.R. 16.9.  Your
appeal should be addressed to:  Director, Office of Information
and Privacy, United States Department of Justice, 1425 New York
Ave., NW, Suite 11050, Washington, DC 20530-0001.  Both the
envelope and the letter should be clearly marked with the legend
"FOIA Appeal."  If you exercise this right and your appeal is
denied, you also have the right to seek judicial review of this
action in the federal judicial district (1) in which you reside,
(2) in which you have your principal place of business, (3) in
which the records denied are located, or (4) for the District of
Columbia.  If you elect to file an appeal, please include, in
your letter to the Office of Information and Privacy,  the
Criminal Division file number that appears above your name in
this letter.

Sincerely,


Thomas J. McIntyre, Chief
Freedom of Information/Privacy Act Unit
Criminal Division

ELECTRONIC PRIVACY INFORMATION CENTER

*701 200600238
AM
AG/06-R0238*



December 16, 2005

1718 Connecticut Ave NW

Suite 200

Washington DC 20009

USA

+1 202 483 1140 (tel)

+1 202 483 1248 (fax)

www.epic.org

VIA FACSIMILE — (202) 307-6777

Melanie Ann Pustay, Deputy Director
Office of Information and Privacy
Department of Justice
Suite 570, Flag Building
Washington, DC 20530-0001

RE:   Freedom of Information Act Request and Request for Expedited
Processing

Dear Ms. Pustay:

This letter constitutes an expedited request under the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice ("DOJ")
Office of the Attorney General on behalf of the Electronic Privacy Information Center
("EPIC").

We are seeking agency records (including but not limited to electronic records) from
September 11, 2001 to the present concerning a presidential order or directive
authorizing the National Security Agency ("NSA"), or any other component of the
intelligence community, to conduct domestic surveillance without the prior
authorization of the Foreign Intelligence Surveillance Court ("FISC").

The existence of such an order and the DOJ's familiarity with it was reported in an
article entitled *Bush Lets U.S. Spy on Callers Without Courts* that appeared on the
front page of the New York Times this morning (see attached article). The records
requested by EPIC include (but are not limited to) the following items mentioned in
this article:

1.  an audit of NSA domestic surveillance activities;

2.  guidance or a "checklist" to help decide whether probable cause exists to
    monitor an individual's communications;

3.  communications concerning the use of information obtained through NSA
    domestic surveillance as the basis for DOJ surveillance applications to the
    FISC; and

**EXHIBIT 4**
McIntyre Declaration
EPIC v. DOJ, Civil Action No. 06-00096 (HHK)
ACLU v.  DOJ, Civil Action No. 06-00214 (HHK)

OFFICE OF INFORMATION
AND PRIVACY

DEC 2 1 2005

RECEIVED

4. legal memoranda, opinions or statements concerning increased domestic surveillance, including one authored by John C. Yoo shortly after September 11, 2001 discussing the potential for warrantless use of enhanced electronic surveillance techniques.

<u>Request for Expedited Processing</u>

This request clearly meets the standard for expedited processing under applicable Department of Justice regulations because it involves a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). In addition, this request pertains to a matter about which there is an "urgency to inform the public about an actual or alleged Federal government activity," and the request is made by "a person primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). A copy of this request has been provided to the Director of Public Affairs as required by 28 C.F.R. § 16.5(d)(2).

The government activity at issue here — President Bush's authorization of warrantless domestic surveillance, and the DOJ's knowledge of and relationship to such surveillance — raises serious legal questions about the government's intelligence activity and has received considerable media attention in the past few hours. The New York Times reported on its front page this morning:

> Months after the Sept. 11 attacks, President Bush secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying, according to government officials.

> Under a presidential order signed in 2002, the intelligence agency has monitored the international telephone calls and international e-mail messages of hundreds, perhaps thousands, of people inside the United States without warrants over the past three years in an effort to track possible "dirty numbers" linked to Al Qaeda, the officials said.

>                         *         *         *

> In mid-2004, concerns about the program expressed by national security officials, government lawyers and a judge prompted the Bush administration to suspend elements of the program and revamp it.

> For the first time, the Justice Department audited the N.S.A. program, several officials said. And to provide more guidance, the Justice Department and the agency expanded and refined a checklist to follow in deciding whether probable cause existed to start monitoring someone's communications, several officials said.

2

A complaint from Judge Colleen Kollar-Kotelly, the federal judge who oversees the Federal Intelligence Surveillance Court, helped spur the suspension, officials said. The judge questioned whether information obtained under the N.S.A. program was being improperly used as the basis for F.I.S.A. wiretap warrant requests from the Justice Department, according to senior government officials. While not knowing all the details of the exchange, several government lawyers said there appeared to be concerns that the Justice Department, by trying to shield the existence of the N.S.A. program, was in danger of misleading the court about the origins of the information cited to justify the warrants.

One official familiar with the episode said the judge insisted to Justice Department lawyers at one point that any material gathered under the special N.S.A. program not be used in seeking wiretap warrants from her court.

\*      \*      \*

[S]enior Justice Department officials worried what would happen if the N.S.A. picked up information that needed to be presented in court. The government would then either have to disclose the N.S.A. program or mislead a criminal court about how it had gotten the information.

\*      \*.      \*

The legal opinions that support the N.S.A. operation remain classified, but they appear to have followed private discussions among senior administration lawyers and other officials about the need to pursue aggressive strategies that once may have been seen as crossing a legal line, according to senior officials who participated in the discussions.

For example, just days after the Sept. 11, 2001, attacks on New York and the Pentagon, Mr. [John C.] Yoo, the Justice Department lawyer, wrote an internal memorandum that argued that the government might use "electronic surveillance techniques and equipment that are more powerful and sophisticated than those available to law enforcement agencies in order to intercept telephonic communications and observe the movement of persons but without obtaining warrants for such uses."

James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, NY Times, Dec. 15, 2005 at A1.

The matter has raised serious questions about the constitutionality of the NSA's domestic surveillance activities. According to the New York Times article, "some officials familiar with the continuing operation have questioned whether the surveillance has stretched, if not crossed, constitutional limits on legal searches." The article also states that "nearly a dozen current and former officials, who were granted anonymity because of the classified nature of the program, discussed it with reporters for The New York Times because of their concerns about the operation's legality and oversight. Furthermore, the Washington Post reported, "Congressional sources familiar with limited aspects of the

3

program would not discuss any classified details but made it clear there were serious questions about the legality of the NSA actions." Dan Eggen, *Bush Authorized Domestic Spying*, Washington Post, Dec. 16, 2005, at A01 (attached hereto).

In addition, this subject has unquestionably been the subject of widespread and exceptional media interest. In addition to the New York Times and Washington Post, hundreds of local and national media organizations reported on this matter throughout the United States this morning. In fact, a Google News search identified approximately 316 news stories on the NSA's domestic surveillance (Google News results attached hereto).

Furthermore, at least one congressional committee will be investigating the NSA's domestic surveillance activities in the coming days. Senator Arlen Specter, Chairman of the Senate Judiciary Committee, said that the surveillance at issue is "wrong, clearly and categorically wrong . . . This will be a matter for oversight by the Judiciary committee as soon as we can get to it in the new year — a very, very high priority item.'" *Specter Says Senate to Probe Report U.S. Broke Law on Spying*, Bloomberg.com, Dec. 16, 2005 (attached hereto). It is critical for Congress and the public to have as much information as possible about the DOJ's role in this surveillance to fully consider and determine its propriety.

The purpose of EPIC's request is to obtain information directly relevant to the DOJ's knowledge of and relationship to the NSA's domestic intelligence activities. The records requested therefore clearly meet both standards for expedited processing.

Further, as I explain below in support of our request for "news media" treatment, EPIC is "primarily engaged in disseminating information.".

Request for "News Media" Fee Status

EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public. This is accomplished through several means. First, EPIC maintains a heavily visited Web site (www.epic.org) that highlights the "latest news" concerning privacy and civil liberties issues. The site also features scanned images of documents EPIC obtains under the FOIA. Second, EPIC publishes a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets. The newsletter reports on relevant policy developments of a timely nature (hence the bi-weekly publication schedule). It has been published continuously since 1996, and an archive of past issues is available at our Web site. Finally, EPIC publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues. A list of EPIC publications is available at our Web site.

For the foregoing reasons, EPIC clearly fits the definition of "representative of the news media" contained in the FOIA. Indeed, the U.S. District Court for the District of Columbia has specifically held that EPIC is "primarily engaged in disseminating information" for the purposes of expedited processing, *American Civil Liberties*

*Union v. Department of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004), and is a "representative of the news media" for fee waiver purposes, *Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003). Based on our status as a "news media" requester, we are entitled to receive the requested records with only duplication fees assessed. Further, because disclosure of this information will "contribute significantly to public understanding of the operations or activities of the government," as described above, any duplication fees should be waived.

Thank you for your consideration of this request. As the FOIA provides, I will anticipate your determination on our request for expedited processing within ten (10) calendar days. Should you have any questions about this request, please feel free to call me at (202) 483-1140 ext. 112.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Sincerely,

Marcia Hofmann
Director, Open Government Project

Enclosures

5

*401 20060240*

# The National Security Archive

The George Washington University
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Phone: 202/994-7000
Fax: 202/994-7005
nsarchiv@gwu.edu
www.nsarchive.org

December 22, 2005

Melanie Ann Pustay, Deputy Director
Office of Information and Privacy
Department of Justice
Suite 570, Flag Building
Washington, DC 20530-0001

Office of Information and Privacy
Received
December 23, 2005

RE: Request under the FOIA, in reply refer to Archive # 20051742DOJ026

Dear Ms. Pustay:

Pursuant to the Freedom of Information Act (FOIA), I hereby request copies of the following:

> *All memoranda, legal opinions, directives or instructions from the Attorney General, Assistant Attorney General, or the Office of Legal Counsel (OLC), issued between September 11, 2001 and December 21, 2005, regarding the government's legal authority for surveillance activity, wiretapping, eavesdropping, and other signals intelligence operations directed at communications to or from U.S. citizens. Please include all documents discussing the President's surveillance authority under the September 2001 congressional use of force resolution as well as the President's independent ability to authorize signals intelligence activities.*

The description of the requested legal opinions in a recent *New York Times* article (David Johnston and Linda Greenhouse, "'01 Resolution is Central to '05 Controversy," *New York Times*, Dec. 20, 2005) suggests that OLC has conducted an analysis as to the proper interpretation of constitutional presidential powers of surveillance. Although some portions of the opinions that specifically identify surveillance measures and technology may be properly classified, at least some portions of these records—namely those reflecting OLC's conclusive opinion as to the legal question at issue—are neither deliberative and predecisional nor inseparable as objective legal determinations that do not reveal particular facts about intelligence sources and methods. Rather, such legal opinions serve to inform the President, and thus are the administration's settled interpretation of a point of law.

Further, it is true that executive branch agencies are entitled to protection of the attorney-client privilege and so under FOIA Exemption 5 are not required to disclose confidential communications that would not be discoverable in ordinary civil litigation. *EPA v. Mink*, 410 U.S. 73, 85 (1973). Courts have held, however, that where the client agency is seeking legal guidance and the responsive communications "do not contain any confidential information *concerning the Agency*," they must be disclosed under FOIA. *Schlefer v. United States*, 702 F.2d 233, 245 (D.C.Cir. 1983). For example, Field Service Advice Memoranda (FSAs)—legal opinions issued at the request of IRS field offices by the IRS Office of Chief Counsel—were ordered disclosed because they did not involve confidential information concerning the IRS but rather answered a legal question in general or objective terms. *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997).

Moreover, non-disclosure of the OLC opinion does not serve the purposes Congress intended for FOIA Exemption 5: "The disclosure of documents that authoritatively state an agency's position will neither inhibit the free exchange of views within the agency nor confuse the public, because the agency's own purpose in preparing such

An independent non-governmental research institute and library located at the George Washington University, the Archive collects and publishes declassified documents obtained through the Freedom of Information Act. Publication royalties and tax deductible contributions through The National Security Archive Fund, Inc. underwrite the Archive's Budget.

## EXHIBIT 5

McIntyre Declaration
EPIC v. DOJ, Civil Action No. 06-00096 (HHK)
ACLU v. DOJ, Civil Action No. 06-00214 (HHK)

...ments is to obviate the need for further intra-agency deliberation on the matters addressed." *Schlefer*, 702 F.2d at ... The OLC is not a policy-making body, nor does it, in the context of issuing legal opinions, form part of a ...deliberative inter-agency process for setting policy; rather, OLC responds to "requests typically deal[ing] with legal issues ...of particular complexity and importance or about which two or more agencies are in disagreement," conclusively ...resolving questions or disputes within the executive branch as to a particular legal matter. About OLC, http://www.usdoj.gov/olc/index.html (last visited July 27, 2005).

Disclosure of those portions of the OLC memorandum that contain unclassified, non-confidential factual information or final legal opinions regarding surveillance programs conducted at the direction of the President by the National Security Agency implicate an important public interest and fulfill an underlying purpose of the FOIA. The FOIA "was designed to expose operations of federal agencies to public scrutiny without endangering efficient administration, as means of deterring development and application of a body of secret law." *Providence Journal Co. v. United States Dep't of the Army*, 981 F.2d 552, 556 (1st Cir. 1992). I ask that you provide any releasable materials related to the Department's legal opinions on surveillance of individuals, including U.S. citizens, within the United States. It is critical, at this time in our history, for the American public to know and understand the motives and actions of the Government in the conduct of counter-terrorism operations, and particularly where such operations may infringe on the settled civil liberties guaranteed by the Constitution.

If you regard any of these documents as potentially exempt from the FOIA's disclosure requirements, I request that you nonetheless exercise your discretion to disclose them. As the FOIA requires, please release all reasonably segregable non-exempt portions of documents. To permit me to reach an intelligent and informed decision as to whether or not to file an administrative appeal of any denied material, please describe any withheld records (or portions thereof) and explain the basis for your exemption claims.

As you know, the National Security Archive qualifies for a waiver of search and review fees as a representative of the news media. This request is made as part of a scholarly and news research project and not for commercial use. For details on the Archive's research and publication activities, please see our Web site at the address above. Please notify me before incurring any photocopying costs over $100.

To expedite the release of the requested documents, please disclose them on an interim basis as they become available to you, without waiting until all the documents have been processed. If you have any questions regarding the identity of the records, their location, the scope of the request or any other matters, please call me at (202) 994-7219 or email at adairk@gwu.edu. I look forward to receiving your response within the twenty day statutory time period.

Sincerely yours,

Kristin Adair

An independent non-governmental research institute and library located at the George Washington University, the Archive collects and publishes declassified documents obtained through the Freedom of Information Act. Publication royalties and tax deductible contributions through The National Security Archive Fund, Inc. underwrite the Archive's Budget.

*FOI 200600238*



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*

*Washington, D.C. 20530*

MAR - 2 2006

<u>MEMORANDUM</u>

TO:        Thomas J. McIntyre
           Chief, FOIA/PA Unit                    MAR   2 2006
           Criminal Division

FROM:      Melanie Ann Pustay
           Deputy Director              *Closed March 8, 2006*

SUBJECT:   Freedom of Information Act Requests of Marcia Hofmann (Electronic Privacy
           Information Center [EPIC]), Ann Beeson (American Civil Liberties Union), and
           Kristin Adair (National Security Archive) Regarding the National Security
           Agency Surveillance Program;
           <u>OIP Nos. AG/06-R0238, AG/06-R0250, and AG/06-R0265</u>

        This concerns the above-referenced FOIA requests which were received by this Office.
**Please note that these requests have been granted expedited processing and are the subject
of litigation. Further, pursuant to a February 16, 2006 court order, we are required to
complete the processing of EPIC's request by March 8, 2006.**

        Attached are three pages which are of primary interest to your Office. The documents
being referred to your Office for direct response to the requester consist of an electronic mail
(e-mail) and one of its attachments. In an effort to lend context to the referred documents, we
have included five additional pages in their entirety and a partial page, which contain information
that is crossed out with a handwritten explanation. The material does not need to be processed
and is included for your information only. While we defer to the judgment of your Office
regarding disclosure of the referred material we note that it appears to be protected pursuant to
Exemption 5 (deliberative process).

        Please be advised that the page numbers in the lower right-hand corner of each e-mail or
attachment are for administrative purposes only and were not on the original documents.

        Finally, please note that because these documents are the subject of litigation, you will be
responsible for justifying in a declaration the withholding of any information which originated
with your Office.

        A copy of the three requesters' initial letters are attached for your information. If you
have any questions regarding this matter, please call Amy McNulty of this Office at
(202) 616-5484. Please coordinate your response with and direct questions concerning litigation
to the Civil Division attorney handling the case, Rupa Bhattacharyya, at (202) 514-3146.

Attachments        **EXHIBIT 6**
                   McIntyre Declaration
                   EPIC v. DOJ, Civil Action No. 06-00096 (HHK)
                   ACLU v.  DOJ, Civil Action No. 06-00214 (HHK)



*7b1 2006002340*

**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

MAR - 2 2006

<u>MEMORANDUM</u>



MAR   2 2006

TO:         Thomas J. McIntyre
            Chief, FOIA/PA Unit
            Criminal Division

FROM:       Melanie Ann Pustay
            Deputy Director

SUBJECT:    Freedom of Information Act Requests of Marcia Hofmann (Electronic Privacy
            Information Center [EPIC]), Ann Beeson (American Civil Liberties Union), and
            Kristin Adair (National Security Archive) Regarding the National Security
            Agency Surveillance Program;
            <u>OIP Nos. AG/06-R0238, AG/06-R0250, and AG/06-R0265</u>

        This concerns the above-referenced FOIA requests which were received by this Office.
**Please note that these requests have been granted expedited processing and are the subject
of litigation. Further, pursuant to a February 16, 2006 court order, we are required to
complete the processing of EPIC's request by March 8, 2006.**

        Attached are three pages which are of primary interest to your Office. The documents
being referred to your Office for direct response to the requester consist of an electronic mail
(e-mail) and one of its attachments. In an effort to lend context to the referred documents, we
have included five additional pages in their entirety and a partial page, which contain information
that is crossed out with a handwritten explanation. The material does not need to be processed
and is included for your information only. While we defer to the judgment of your Office
regarding disclosure of the referred material we note that it appears to be protected pursuant to
Exemption 5 (deliberative process).

        Please be advised that the page numbers in the lower right-hand corner of each e-mail or
attachment are for administrative purposes only and were not on the original documents.

        Finally, please note that because these documents are the subject of litigation, you will be
responsible for justifying in a declaration the withholding of any information which originated
with your Office.

        A copy of the three requesters' initial letters are attached for your information. If you
have any questions regarding this matter, please call Amy McNulty of this Office at
(202) 616-5484. Please coordinate your response with and direct questions concerning litigation
to the Civil Division attorney handling the case, Rupa Bhattacharyya, at (202) 514-3146.

Attachments
```
EXHIBIT 7
McIntyre Declaration
EPIC v. DOJ, Civil Action No. 06-00096 (HHK)
ACLU v. DOJ, Civil Action No. 06-00214 (HHK)
```



**U.S. Department of Justice**

Criminal Division

_____
                                    _Washington, D.C. 20530_

CRM-200600238-F
                              MAR  8 2006

Ms. Marcia Hofmann
Director, Open Government Project
1718 Connecticut Avenue, N.W., Suite 200
EPIC.ORG
Washington, D.C.  20009

Dear Ms. Hofmann:

        In processing your December 16, 2005, Freedom of Information Act request, the Office of
Information and Privacy located one record, consisting of three pages, which is of primary
interest to the Criminal Division of the Department of Justice, and referred this document to us
for our review and direct response to you.

        We have processed this record and have determined to release this document in part.  We
are withholding the portions indicated of the item pursuant to one or more of the following FOIA
exemptions set forth in 5 U.S.C. 552(b):

        (6)     which permits the withholding of personnel and medical files and
                similar files the disclosure of which would constitute a clearly
                unwarranted invasion of personal privacy; and,

        (7)     which permits the withholding of records or information compiled
                for law enforcement purposes, but only to the extent that the
                production of such law enforcement records or information...

                (C)     could reasonably be expected to constitute an
                        unwarranted invasion of personal privacy.

A copy of this item is enclosed.

        Although I am aware that you have filed a complaint with the United States District Court
regarding this request,  I am required to inform you of your right to an administrative appeal of
this partial denial of your request.  Department regulations provide that such appeals must be
filed within sixty days of your receipt of this letter.  28 C.F.R. 16.9.  Your appeal should be
addressed to: The Office of Information and Privacy, United States Department of Justice, 1425
New York Ave., NW, Suite 11050, Washington, DC 20530-0001.    Both the envelope and the
letter should be clearly marked with the legend "FOIA Appeal."  If you exercise this right and
your appeal is denied, you also have the right to seek judicial review of this action in the federal

3/8/06

EXHIBIT 8
McIntyre Declaration
EPIC v. DOJ, Civil Action No. 06-00096 (HHK)
ACLU v. DOJ, Civil Action No. 06-00214 (HHK)

judicial district (1) in which you reside, (2) in which you have your principal place of business, (3) in which the records denied are located, or (4) for the District of Columbia. If you elect to file an appeal, please include, in your letter to the Office of Information and Privacy, the Criminal Division file number that appears above your name in this letter.

Sincerely,

Thomas J. McIntyre, Chief
Freedom of Information/Privacy Act Unit
Office of Enforcement Operations
Criminal Division

2



**U.S. Department of Justice**

Criminal Division

_Washington, D.C. 20530_

CRM-200600240-F

MAR  8 2006

Ms. Kristin Adair
The National Security Archive
The George Washington University
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C.  20037

Dear Ms. Adair:

In processing your December 22, 2005, Freedom of Information Act request, the Office of Information and Privacy located one record, consisting of three pages, which is of primary interest to the Criminal Division of the Department of Justice, and referred this document to us for our review and direct response to you.

We have processed this record and have determined to release this document in part. We are withholding the portions indicated of the item pursuant to one or more of the following FOIA exemptions set forth in 5 U.S.C. 552(b):

(6)   which permits the withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; and,

(7)   which permits the withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information...

(C)   could reasonably be expected to constitute an unwarranted invasion of personal privacy.

A copy of this item is enclosed.

Although I am aware that you have filed a complaint with the United States District Court regarding this request, I am required to inform you of your right to an administrative appeal of this partial denial of your request. Department regulations provide that such appeals must be filed within sixty days of your receipt of this letter. 28 C.F.R. 16.9. Your appeal should be addressed to: The Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, DC 20530-0001.  Both the envelope and the letter should be clearly marked with the legend "FOIA Appeal." If you exercise this right and

**FILE**

**EXHIBIT 9**

McIntyre Declaration
EPIC v. DOJ, Civil Action No. 06-00096 (HHK)
ACLU v. DOJ, Civil Action No. 06-00214 (HHK)

your appeal is denied, you also have the right to seek judicial review of this action in the federal judicial district (1) in which you reside, (2) in which you have your principal place of business, (3) in which the records denied are located, or (4) for the District of Columbia. If you elect to file an appeal, please include, in your letter to the Office of Information and Privacy, the Criminal Division file number that appears above your name in this letter.

Sincerely,


Thomas J. McIntyre, Chief
Freedom of Information/Privacy Act Unit
Office of Enforcement Operations
Criminal Division

2



*44 200600239*

**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*

*Washington, D.C. 20530*

MAR - 2 2006

<u>MEMORANDUM</u>

RECEIVED
MAR   2 2006

TO:        Thomas J. McIntyre
           Chief, FOIA/PA Unit
           Criminal Division

FROM:      Melanie Ann Pustay
           Deputy Director

SUBJECT:   Freedom of Information Act Requests of Marcia Hofmann (Electronic Privacy
           Information Center [EPIC]), Ann Beeson (American Civil Liberties Union), and
           Kristin Adair (National Security Archive) Regarding the National Security
           Agency Surveillance Program;
           <u>OIP Nos. AG/06-R0238, AG/06-R0250, and AG/06-R0265</u>

This concerns the above-referenced FOIA requests which were received by this Office.
**Please note that these requests have been granted expedited processing and are the subject
of litigation. Further, pursuant to a February 16, 2006 court order, we are required to
complete the processing of EPIC's request by March 8, 2006.**

Attached are three pages which are of primary interest to your Office. The documents
being referred to your Office for direct response to the requester consist of an electronic mail
(e-mail) and one of its attachments. In an effort to lend context to the referred documents, we
have included five additional pages in their entirety and a partial page, which contain information
that is crossed out with a handwritten explanation. The material does not need to be processed
and is included for your information only. While we defer to the judgment of your Office
regarding disclosure of the referred material we note that it appears to be protected pursuant to
Exemption 5 (deliberative process).

Please be advised that the page numbers in the lower right-hand corner of each e-mail or
attachment are for administrative purposes only and were not on the original documents.

Finally, please note that because these documents are the subject of litigation, you will be
responsible for justifying in a declaration the withholding of any information which originated
with your Office.

A copy of the three requesters' initial letters are attached for your information. If you
have any questions regarding this matter, please call Amy McNulty of this Office at
(202) 616-5484. Please coordinate your response with and direct questions concerning litigation
to the Civil Division attorney handling the case, Rupa Bhattacharyya, at (202) 514-3146.

Attachments



**EXHIBIT 10**
McIntyre Declaration
EPIC v. DOJ, Civil Action No. 06-00096 (HHK)
ACLU v. DOJ, Civil Action No. 06-00214 (HHK)



**U.S. Department of Justice**

Criminal Division

_Washington, D.C. 20530_

CRM-200600239-F

MAR  8 2006

Ms. Ann Beeson
Associate Legal Director
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY  10004-2400

Dear Ms. Beeson:

    In processing your December 20, 2005, Freedom of Information Act request, the Office of Information and Privacy located one record, consisting of three pages, which is of primary interest to the Criminal Division of the Department of Justice, and referred this document to us for our review and direct response to you.

    We have processed this record and have determined to release this document in part.  We are withholding the portions indicated of the item pursuant to one or more of the following FOIA exemptions set forth in 5 U.S.C. 552(b):

    (6)    which permits the withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; and,

    (7)    which permits the withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information...

        (C)    could reasonably be expected to constitute an unwarranted invasion of personal privacy.

A copy of this item is enclosed.

    Although I am aware that you have filed a complaint with the United States District Court regarding this request,  I am required to inform you of your right to an administrative appeal of this partial denial of your request.  Department regulations provide that such appeals must be filed within sixty days of your receipt of this letter.  28 C.F.R. 16.9.  Your appeal should be addressed to: The Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, DC 20530-0001.    Both the envelope and the letter should be clearly marked with the legend "FOIA Appeal."  If you exercise this right and your appeal is denied, you also have the right to seek judicial review of this action in the federal



**FILE**  _9/m  3/6/06_

**EXHIBIT 11**
McIntyre Declaration
EPIC v. DOJ, Civil Action No. 06-00096 (HHK)
ACLU v.  DOJ, Civil Action No. 06-00214 (HHK)

judicial district (1) in which you reside, (2) in which you have your principal place of business, (3) in which the records denied are located, or (4) for the District of Columbia. If you elect to file an appeal, please include, in your letter to the Office of Information and Privacy, the Criminal Division file number that appears above your name in this letter.

Sincerely,


Thomas J. McIntyre, Chief
Freedom of Information/Privacy Act Unit
Office of Enforcement Operations
Criminal Division

2