IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 06-00096 (HHK) |
| v. | ) ) | |
| DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) | |
| AMERICAN CIVIL LIBERTIES UNION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 06-00214 (HHK) |
| v. | ) ) | |
| DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) | |

## REDACTED DECLARATION OF J. PATRICK ROWAN

I, J. Patrick Rowan, declare as follows:

1.    **(U)**  I am an Associate Deputy Attorney General of the United States Department of Justice.  I have served in this position since November 2005, and am generally responsible for assisting the Deputy Attorney General in the management of the national security functions of the Department of Justice, including counterterrorism investigations.  Prior to assuming the position of Associate Deputy Attorney General in the Office of the Deputy Attorney General, I served in several different positions within the Department of Justice, including as a Senior Counsel to the Assistant Attorney General for the Criminal Division, and as an Assistant United States Attorney for the District of Columbia.

2.    **(U)**  I make the statements herein on the basis of personal knowledge, as well as on the basis of information acquired by me in the course of my official duties.

3.    **(U)**  In the course of those official duties, I have been advised of the December 20, 2005, request made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by the American Civil Liberties Union ("ACLU") seeking information relating to the Terrorist Surveillance Program.

4.    **(U)**  The Terrorist Surveillance Program ("TSP") was authorized by the President following the terrorist attacks of September 11, 2001, and has been publicly described by the President as involving the targeted interception by the National Security Agency ("NSA") of communications where there are reasonable grounds to believe that one party to the communication is outside the United States and that at least one party to the communication is a member or agent of al Qaeda or an al Qaeda-affiliated terrorist organization.

5.    **(U)**  Following the public disclosure of the TSP by The New York Times in December 2005, I became responsible for coordinating the United States Government's responses in those pending federal criminal prosecutions where criminal defendants requested information regarding the alleged use of warrantless surveillance by the NSA and/or have filed motions alleging that any NSA activities conducted with respect to their cases were either unconstitutional or not authorized by statute.  In this coordinating role, I work with the United States Attorney's Offices responsible for prosecuting these cases; with sections of the Criminal Division; with the NSA; and with the law enforcement agents who provide investigatory information relating to any particular case in order to draft necessary documents and make appropriate filings.

## (U) CLASSIFICATION OF DECLARATION

6.    **REDACTED**

7.    **REDACTED**

8.    **REDACTED**

9.    **REDACTED**

## (U) ADEQUACY OF SEARCH

10.    **(U)** As a result of my role in coordinating the responses in federal criminal prosecutions where information regarding the TSP is sought, I was asked by the Office of Information and Privacy ("OIP"), which ordinarily handles the processing of FOIA requests directed to ODAG, to search my files for documents responsive to the ACLU's December 20, 2005, FOIA request. All unclassified documents identified during that search – as well as other potentially responsive unclassified documents identified by ODAG – were provided to OIP for review and processing. The processing of those documents was described in letters sent to the ACLU on March 8, 2006, and July 21, 2006, attached hereto respectively as Exs. A and B, and I understand that the ACLU has indicated to the Department's counsel that it does not intend to assert any legal claims with respect to these documents.

11.    **(U)** I am responsible for maintaining the ODAG's classified files relating to the TSP, which also include documents responsive to the ACLU's FOIA request. As part of the process through which I was given a security clearance to have access to this extraordinarily sensitive material, I was informed of the exceptionally grave harms to national security that might result from disclosure of operational details regarding the TSP, and was advised that, pursuant to the criteria outlined in Executive Order 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003), information related to the TSP is classified TOP SECRET, and, further, is subject to the special access and handling requirements reserved for

"Sensitive Compartmented Information" ("SCI"), because it involves or derives from particularly sensitive intelligence sources and methods. All TSP-related material maintained by ODAG is maintained in accordance with the strict access and handling requirements necessary to prevent any unauthorized disclosure.

12.    **(U)** Due to the high level of classification of these documents, ODAG's TSP-related documents are maintained in a locked file cabinet in a segregated space approved for the storage of material that is classified TOP SECRET and/or SCI under Executive Order 12958, as amended. Documents in these cabinets were reviewed for purposes of locating documents responsive to plaintiffs' request, and ODAG does not maintain classified documents relating to the TSP in any other location.

13.    **(U)** With respect to the responsive classified documents located in ODAG's files, on July 21, 2006, OIP on behalf of ODAG responded to the ACLU's FOIA request and advised that 58 agency records or categories of records were located in these classified files, but that fifty-three of these records or categories of records were referred to other agencies or to other components of the Department of Justice for processing. Ex. B.[1] Thus, ODAG directly responded to the ACLU with respect to five records or categories of records and advised the ACLU that all of the responsive portions of these documents were being withheld under FOIA Exemptions One, 5 U.S.C. § 552(b)(1); Three, id. § 552(b)(3); Five, id. § 552 (b)(5); and Seven. Id. § 552(b)(7). These provisions set forth exemptions from disclosure which protect: records that are currently and properly classified, 5 U.S.C. § 552(b)(1) ("Exemption One"); records that are protected from disclosure by some other statute, id. § 552(b)(3) ("Exemption Three"); records that pertain to certain inter- and intra-agency communications protected by the deliberative process, attorney-client, attorney work product, or presidential communications

---

[1] **(U)** I understand that 39 of these documents are addressed in the Declaration of Steven G. Bradbury, that five are addressed in the Declaration of James A. Baker, and that the remainder are addressed in the declarations provided on behalf of the NSA and the Federal Bureau of Investigation.

privileges, id. § 552(b)(5) ("Exemption Five"); and records compiled for the purposes of law enforcement where disclosure of the records would interfere with an ongoing law enforcement proceeding. Id.§ 552(b)(7)(A) ("Exemption Seven").

14.    **(U)**  Responsive documents located within ODAG's classified files could not be provided to OIP for review and processing due to their high level of classification, and thus, I provide this declaration to set forth the justifications for the withholding of classified documents that were determined to be responsive to the ACLU's request.  Additionally, the Office of Intelligence and Policy Review referred five documents to this Office; these documents were determined to be not responsive to the ACLU's FOIA request.

15.    **(U)**  In preparing this declaration, I have reviewed the Declaration of John D. Negroponte, Director of National Intelligence ("DNI Decl."), provided in support of withholdings in all TSP-related FOIA matters, and have relied upon his expert assessment of the harm to the national intelligence program that would result from disclosure of documents related to the TSP.  I understand that a copy of DNI Negroponte's declaration is attached as an exhibit to the Declaration of Steven G. Bradbury filed in this case.

### (U)  JUSTIFICATION FOR WITHHOLDINGS

16.    **(U)**  Most of the records or categories of records identified as responsive by ODAG but withheld in response to the ACLU's FOIA request, specifically, ODAG 36, 59, and 64, consist of classified filings, drafts of filings, and internal deliberative exchanges and attorney notes concerning such filings made in various federal district courts in response to a request or a motion by a federal criminal defendant for information regarding NSA activities and/or the TSP.[2]

---

[2] (U) The criminal cases in which the responsive documents were filed, along with other cases that generated documents that fall outside the scope of ODAG's search related to the ACLU's FOIA request, are described in the attached letter from William E. Moschella, Assistant Attorney General, Office of Legislative Affairs, to the Honorable Patrick J. Leahy, Ranking Minority Member, Committee on the Judiciary, United States Senate. Ex. C.

17.    **(U)**  Each of the documents in these categories of records was created in response to a request from a particular defendant seeking information as to whether he was the subject of surveillance under the TSP.  Information about who might be the target of a sensitive foreign intelligence program or that would tend to reveal the scope of that program cannot be disclosed without causing exceptionally grave harm to the national security.  See DNI Decl. ¶ 35. Moreover, for all of the reasons set forth in the Declaration of DNI Negroponte, any responsive portions of these documents that discuss the operation of the TSP or its targets are classified. See id. ¶¶ 22-34.  Thus, each filing made in response to one of these requests was provided to the Court in which it was filed under the provisions of the Classified Information Procedures Act, 18 U.S.C. App. 3, and was not provided to the criminal defendant or to his counsel on the grounds that the information contained therein was classified.

18.    **(U)**  The public disclosure of any information that tends to confirm or deny whether an individual is a target of the TSP, or any other sensitive intelligence program, would necessarily expose the sources and methods used by the United States Intelligence Community. In particular, confirmation or denial would disclose specifically, and in a more general sense, who is and is not being targeted – thus compromising U.S. intelligence collection methods and revealing to our adversaries clues regarding those individuals who may or may not be secure sources for communication, or, more broadly, the methods being used to conduct surveillance. Moreover, confirming that someone is not being targeted becomes unworkable, and itself revealing, in cases where an individual may, indeed, be targeted.  A refusal to confirm or deny only in cases where surveillance is occurring, of course, would effectively disclose and compromise that surveillance.  Thus, the only true option to protect intelligence collection mechanisms is to neither confirm nor deny whether someone has been targeted or subject to intelligence collection, regardless of whether the individual has been targeted.  To say otherwise

when challenged in litigation would result in the frequent, routine exposure of intelligence information, sources, and methods and would severely undermine surveillance activities in general, causing grave harm to U.S. national security.  See DNI Decl. ¶ 35.

19.    **(U)**  For these reasons, because the documents filed in the various criminal cases were filed in response to inquiries concerning the identification of targets of the TSP, they cannot be disclosed regardless of whether the filings confirm or deny the allegation to which they responded.  This information, accordingly, is properly withheld under Exemptions One and Three of FOIA.

20.    **(U)**  Moreover, as of April 28, 2006, in every case in which a United States District Court Judge has ruled on a criminal defendant's request for information concerning alleged warrantless surveillance, an order has been issued denying the defendant's motion.  See Ex. C.  Each of the criminal cases in which the responsive documents were filed is still an ongoing criminal proceeding, either because the case is still in the pre-trial phase, because the defendant has pled or been found guilty but not yet sentenced, or because the case is on appeal. In such circumstances, to compel disclosure of these documents now – where the claims of allegedly illegal or unconstitutional surveillance raised by the criminal defendants have been rejected by the presiding judge without finding it necessary to provide the Government's filings to either the concerned criminal defendants or their counsel – would necessarily interfere with an ongoing law enforcement proceeding. Thus, these documents are properly withheld under FOIA Exemption Seven, see 5 U.S.C. § 552(b)(7)(A).

21.    **(U)**  Additionally, to the extent these documents are drafts or inter- or intra-agency deliberative exchanges relating to their preparation, these documents cannot be disclosed without interfering with the need for full and frank exchanges of suggestions and ideas amongst interested government agencies free from public scrutiny or without compromising the necessity

7

for attorneys to be able to develop and prepare court filings in litigation or in anticipation of litigation in confidence. These documents are thus protected by the deliberative process privilege and the attorney work product doctrine, and, as such, are properly withheld under Exemption Five.

22.    **(U)**  In addition to the exemptions described above, many of the responsive documents contain information that must be withheld to prevent an unwarranted invasion of personal privacy. This information includes personal information relating to third-party non-government employees, the names of ODAG, U.S Attorney's Office, and other federal agency staff, telephone numbers, and other personal information (such as addresses (including email addresses), home telephone numbers or cellular phone numbers) that occasionally appear in the documents. There is no legitimate public interest in the release of this information, as its disclosure would shed no light on the activities of the Department of Justice but could subject these individuals to unwanted public attention, harassment, or embarrassment. Thus, information of this type that appears in these documents is withheld by ODAG under FOIA Exemption Six, 5 U.S.C. § 552(b)(6).

23.    **(U)**  To the extent the documents identify particular law enforcement agents or others specifically assigned to investigating or providing support on terrorism matter, disclosure of such information could reasonably be expected to subject these individuals to harassment or reprisals as well as increase the difficulties of duties which require a low profile. These concerns have only been heightened in the aftermath of the terrorist attacks of September 11, 2001, on the United States. Accordingly, to the extent that information of this type appears in the responsive documents it is also withheld under FOIA Exemption Seven, which protects privacy interests in records compiled for law enforcement purposes. See 5 U.S.C. § 552(b)(7)(C).

24.    **REDACTED**

25.    **REDACTED**

26.     **(U)**   For the reasons stated in paragraphs 24 and 25 above, the two additional records or categories of records withheld by ODAG were properly withheld under Exemptions One, Three, and Five of FOIA.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____7/14/2006_____

_____
J. PATRICK ROWAN
Associate Deputy Attorney General



**U.S. Department of Justice**

Office of Information and Privacy

EXHIBIT A
Rowan Decl.

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

MAR - 8 2006

Ms. Ann Beeson
Associate Legal Director
American Civil Liberties Union
125 Broad Street, 18th Floor          Re:    AG/06-R0250
New York, NY 10004                            MAP:KDC:APM

Dear Ms. Beeson:

    This is an interim response to your Freedom of Information Act (FOIA) request dated
December 20, 2005 for records dated from September 11, 2001 to the present relating to the
National Security Agency (NSA) surveillance program. This response is made on behalf of the
Office of the Attorney General. It also includes records that were referred to this Office by the
Office of Legal Counsel (OLC), as well as certain records from the Office of Legal Policy, which
are not responsive to your request, but which concern NSA surveillance. This additional material
is being provided because your request has been processed concurrently with that of the
Electronic Privacy Information Center (EPIC).

    We have completed our records searches for the Office of the Attorney General. I have
determined that fifteen documents, totaling eighty-five pages, are appropriate for release without
excision and copies are enclosed. Additionally, two documents, totaling two pages, are
appropriate for release with excisions made pursuant to Exemption 6 of the FOIA, 5 U.S.C.
§ 552(b)(6). Forty-six documents, totaling ninety-nine pages, are being withheld in full pursuant
to Exemption 5. Finally, we located a one-page electronic mail (e-mail) that originated with the
Office of Intelligence Policy and Review (OIPR) and we are withholding it in full on behalf of
OIPR pursuant to Exemption 5. For your information, e-mail messages are counted and
processed as individual documents. Exemption 5 pertains to certain inter- and intra-agency
communications protected by the deliberative process, attorney-client, attorney work-product,
and presidential communications privileges. Exemption 6 pertains to information the release of
which would constitute a clearly unwarranted invasion of the personal privacy of a third party.
None of the withheld information is appropriate for discretionary release.

    We also located the December 22, 2005 letter from Mr. William Moschella that is
attached as an exhibit to the complaint filed by your co-plaintiff, EPIC. As such, it is not
included in this release package.

    Please be advised that we have referred certain documents to the Office of Legal Counsel
as well as to the Criminal and Civil Divisions for processing and direct response to you.

-2-

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that you have the right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay
Deputy Director



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*

*Washington, D.C. 20530*

JUL 2 1 2006

EXHIBIT B
Rowan Decl.

Ms. Ann Beeson
Associate Legal Director
American Civil Liberties Union        Re:    AG/06-R0250
125 Broad Street, 18th Floor                  DAG/06-R0251
New York, NY 10004                            MAP:TSW:APM

Dear Ms. Beeson:

This is our final response to your Freedom of Information Act (FOIA) request dated December 20, 2005 for records dating from September 11, 2001 to the present relating to the Terrorist Surveillance Program, as described by the President of the United States in his December 17, 2005, radio address. This response is made on behalf of the Offices of the Attorney General and Deputy Attorney General. It also includes records that were referred to this Office by the Civil Division and Federal Bureau of Investigation.

We have now completed our records searches for documents that are responsive to your request and have located both classified and unclassified records. With respect to the unclassified records, I have determined that the responsive portions of 129 pages are appropriate for release without excision and copies are enclosed. Additionally, eighteen pages are being withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552 (b)(5), which pertains to certain inter- and intra-agency communications protected by the deliberative process, attorney-client, and attorney work-product privileges.

Additionally, 58 agency records or categories of records were located in the classified files of the Office of the Deputy Attorney General ("ODAG"). Fifty-three of these records or categories of records have been referred to other agencies or to other components of the Department of Justice for processing. As to eleven of these referred records or categories of records, we have been asked to advise you that the agencies to which they were referred have determined that they are being withheld in full because they are classified, and thus exempt under Exemption 1 of FOIA, 5 U.S.C. § 552(b)(1), and/or because they contain information of the type described in Section 6 of the National Security Act of 1959, Pub. L. No. 86-36, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note, and/or in Section 102A(i)(l) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-l(i)(l), and are thus exempt under Exemption 3 of the FOIA. 5 U.S.C. § 552(b)(3). Additionally, certain of these eleven records or categories of records are subject to the deliberative process and attorney-client privileges, or to the attorney work product doctrine, and thus are also withheld under Exemption 5, 5 U.S.C. § 552(b)(5). Our consultations with respect to the remaining referred records or categories of records are ongoing and you will be advised when determinations are made.

-2-

As to the five records or categories of records located in ODAG classified files for which ODAG is making a direct response, please be advised that they were compiled in connection with pending criminal prosecutions or investigations, and, in some instances, are subject to court sealing orders. Thus, any responsive information contained in these records or categories of records is being withheld in full pursuant to Exemption 7(A) of the FOIA, which permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (A) could reasonably be expected to interfere with law enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Additionally, overlapping exemptions may apply to portions of this same material, including but not limited to, Exemption 1, 5 U.S.C. § 552(b)(1), which pertains to information that is properly classified in the interests of national security pursuant to Executive Order 12958, as amended; Exemption 3, 5 U.S.C. § 552(b)(3), which pertains to information exempted from release by statute; and Exemption 5, 5 U.S.C. § 552(b)(5), described above.

Finally, please be advised that we have also identified another document that is responsive to your request. We are not providing that document, however, because it is a Congressional document that is not an "agency record" subject to the FOIA. The Office of Legal Counsel has asked us to inform you that a duplicate copy of this document was located in that Office.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that you have the right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay
Deputy Director

Enclosures



**U.S. Department of Justice**

Office of Legislative Affairs

EXHIBIT C
Rowan Decl.

Office of the Assistant Attorney General      *Washington, D.C. 20530*

May 8, 2006

The Honorable Patrick J. Leahy
Ranking Minority Member
Committee on the Judiciary
United States Senate
Washington, D.C. 20510

Dear Senator Leahy:

This is in response to your letter, dated March 17, 2006, to Attorney General Alberto Gonzales concerning the Terrorist Surveillance Program. The Terrorist Surveillance Program (TSP) is the presidentially authorized surveillance program that the President has publicly described, which involves the targeted interception by the National Security Agency (NSA) of communications in which one party is outside the United States where there are reasonable grounds to believe that at least one party to the communication is a member or agent of al Qaeda or an al Qaeda affiliated terrorist organization. We are sending a separate letter to Senator Edward M. Kennedy, who joined in your letter to us.

In your letter of March 17, 2006, you requested information about criminal cases in which a defendant "is alleging that evidence was illegally obtained through this program or any other program involving the foreign intelligence surveillance outside of the Foreign Intelligence Surveillance Act." There are a number of pending criminal cases in federal district courts across the country in which a defendant has requested information regarding the alleged use of warrantless electronic surveillance by the NSA and/or has filed motions or legal challenges alleging that any NSA activities conducted are either unconstitutional or not authorized by statute. Because these requests and motions have been made both formally and informally to federal prosecutors handling these cases, and in some instances, the allegations have been made by defense counsel to the press with no request or motion for information being made or filed thereafter, it would be difficult to provide a complete and detailed list of all cases in which the defendant has alleged that evidence was illegally obtained through the TSP.

We have, however, compiled for your information a chart listing indicted cases in which a defendant has formally requested, via a letter or motion, that the district court order disclosure of information regarding the TSP. The chart also contains a summary of the charges brought in each case and the current status of the case as of April 28, 2006. Although you have requested a brief description of the legal claims raised by each defendant, we have enclosed the motions or letters received in these cases as we believe it is more appropriate to let these documents speak for themselves.

The Honorable Patrick J. Leahy
Page Two

     As indicated on the chart, the Government has responded to a number of these defense motions pursuant to the Classified Information Procedures Act. As of April 28, 2006, in every case in which a United States District Court Judge has ruled on a defense request for information, an order has been issued denying the defendant's motion. We have enclosed copies of unclassified court orders reflecting those decisions.

     Finally, you specifically noted in your letter that the sentencing of Ahmed Omar Abu Ali, a Virginia man convicted of conspiring to assassinate the President, had been postponed as a result of the defendant's request regarding alleged use of NSA surveillance in his case. Those issues have been resolved, and, on March 29, 2006, Ahmed Omar Abu Ali was sentenced to 30 years in prison followed by 30 years of supervised release.

     We hope this information is helpful, and we appreciate your interest in this matter. If we can be of further assistance regarding this or any other matter, please do not hesitate to contact this office.

Sincerely,

Will Moschella
Assistant Attorney General

Enclosures

cc:    The Honorable Arlen Specter
       Chairman

| | | Matters in Which Defense Counsel Has Requested Information Regarding NSA (As of 5/1/06) | |
|---|---|---|---|
| # | CASE | DISTRICT | SUMMARY OF CHARGES AND STATUS OF CASE |
| 1 | United States v. Mohamad Albanna | W.D. New York | In January of 2004, Mohamed Albanna, along with three other defendants, was charged with operating an unlicenced, unregistered, money-transferring business that sent more than $3.5 million to Yemen. The government also seeks the forfeiture of $3.5 million. One of the defendant's lives in Yemen and is not in custody. Trial is scheduled to begin on July 5, 2006. |
| 2 | U.S. v. Sami Amin Al-Arian; Hatem Naji Fariz | M.D. Florida | In April of 2006, Sami Al-Arian pleaded guilty to conspiring to provide services to the Palestinian Islamic Jihad (PIJ), in violation of 18 U.S.C. § 371. On May 1, 2006, Al-Arian was sentenced to 57 months and three years of supervised release. The Court also entered a stipulated order of removal, whereby Al-Arian will be deported from the United States upon conclusion of service of his term of imprisonment. Al-Arian, Hatem Naji Fariz, and others were charged with conspiring to violate the Racketeer Influenced and Corrupt Organizations (RICO) statute (18 U.S.C. §§1962(d)); conspiring to murder, maim or injure persons outside the U.S. (18 U.S.C. § 956(a)(1)); conspiring to provide material support to a foreign terrorist organization (18 U.S.C. § 2339B); conspiring to make and receive contributions of funds, goods or services to or for the benefit of specially designated terrorists (18 U.S.C. § 371); interstate travel/use of mail or facility in interstate commerce (18 U.S.C. § 1952(a)(2) and (3)); attempting to procure citizenship unlawfully (18 U.S.C. § 1425(b)); making a false statement in an immigration application (18 U.S.C. § 1546(a)); obstructing justice (18 U.S.C. § 1505); perjury (18 U.S.C. § 1621); international money laundering (18 U.S.C. § 1956(a)(2)(A)); and providing material support to a foreign terrorist organization (18 U.S.C. § 2339B). The Fariz case is currently pending. |
| 3 | United States v. Ahmed Omar Abu Ali | E.D. Virginia | In September of 2005, Abu Ali was charged with conspiracy to assassinate the President (18 U.S.C. § 1751); conspiracy to hijack aircraft (49 U.S.C. § 46502); conspiracy to destroy aircraft (18 U.S.C. § 32); providing and conspiring to provide material support to Al-Qa'ida (18 U.S.C. § 2339B); providing and conspiring to provide material support for terrorism (18 U.S.C. § 2339A); and two counts of violating the International Emergency Economic Powers Act (IEEPA) by providing and receiving goods and services from Al-Qa'ida (50 U.S.C. § 1705). In November of 2005, Abu Ali was convicted of all charges. On 3/29/06, Abu Ali was sentenced to 30 years in prison followed by 30 years of supervised release. |

| | | Matters in Which Defense Counsel Has Requested Information Regarding NSA (As of 5/1/06) | |
|---|---|---|---|
| # | CASE | DISTRICT | SUMMARY OF CHARGES AND STATUS OF CASE |
| 4 | U.S. v. Ali Al-Timimi | E.D. Virginia | In April of 2005, Al-Timimi was convicted of aiding, abetting, inducing, and counseling others to conspire to carry firearms in furtherance of crimes of violence (18 USC § 2 and 18 USC § 924(n)); soliciting others to levy war against the United States (18 USC § 373); aiding, abetting, inducing, and counselling others to conspire to levy war against the United States (18 USC § 2 and 18 USC § 2384); aiding, abetting, inducing, and counselling others to attempt to aid the Taliban (18 USC § 2 and 50 USC § 1705); aiding, abetting, inducing, and counselling others to conspire to violate the Neutrality Act (18 USC § 2 and 18 USC § 960); aiding and abetting the use of firearms in connection with a crime of violence (18 U.S.C. § 924), and aiding and abetting the carrying of explosives during the commission of a felony (18 U.S.C. § 844). He was sentenced in July of 2005 to life in prison. The case was appealed to the 4th Circuit. On 4/26/06, the Fourth Circuit, pursuant to agreement of both parties, vacated the appeal and remanded the case to the district court for further proceedings. |
| 5 | United States v. Mohammad Zaki Amawi | N.D. Ohio | In February of 2006, defendant Mohammad Zaki Amawi and others were charged with conspiracy to kill or maim persons outside of the United States, in violation of 18 U.S.C. § 956(a)(1), and conspiracy to provide and conceal material support to terrorists, in violation of 18 U.S.C. § 2339A. The case is pending. |
| 6 | U.S. v. Yassin Muhiddin Aref and Mohammed Mosharref Hossain | N.D. New York | In August of 2004, Aref and Hossain were charged with one count of conspiracy to launder money under 18 U.S.C. § 1956(h); multiple counts of substantive money laundering under 18 U.S.C. §§ 1956 (a)(3)(B) and 2; one count of conspiracy to violate the material support statute's concealment provision under 18 U.S.C. § 2339A; and multiple counts of substantive violations of the concealment provision of 18 U.S.C. §§ 2339A and 2. No trial date has yet been scheduled. |
| 7 | U.S. v. Abdelhaleem Hasan Abdelraziq Ashqar; Mahammad Hamid Khalil Salah | N.D. Illinois | In August of 2004, the defendants were charged with participating in a 15-year racketeering conspiracy in the United States and abroad to illegally finance Hamas' terrorist activities in Israel, the West Bank and Gaza Strip, including providing money for the purchase of weapons. The indictment alleges that the enterprise committed multiple acts of conspiracy to commit and solicitation of first degree murder; conspiracy to kill; kidnap; maim or injure persons in a foreign country; money laundering and attempt and conspiracy to do so; obstruction of justice; providing material support or resources to designated foreign terrorist organizations; hostage taking; forgery or false use of a passport; structuring financial transactions and travel in aid of racketeering. Defendant Salah was also charged with providing material support to Hamas, and providing false and misleading answers to interrogatories in the Boim v. Quranic Literacy Institute civil litigation. Defendant Ashqar was also charged with contempt and obstruction of justice stemming from his refusal to testify before the grand jury despite a grant of immunity under 18 U.S.C. §§ 401(3) and 1503. Trial is scheduled to begin October 16, 2006. |

| | | Matters in Which Defense Counsel Has Requested Information Regarding NSA (As of 5/1/06) |
|---|---|---|
| | **CASE** **DISTRICT** | **SUMMARY OF CHARGES AND STATUS OF CASE** |
| 8 | U.S. v. Ali Asad Chandia / E.D. Virginia | In September of 2005, Chandia and another defendant were charged with one count of conspiracy to provide material support to a designated terrorist organization (18 U.S.C. § 2339B); seven counts of attempting to violate § 2339B; one count of providing false statements on an INS Form I-485 (18 U.S.C. § 1546); and two additional counts of making false statements (18 U.S.C. § 1001). These charges were in addition to earlier charges against both defendants that included conspiracy to provide material support to terrorists (Lashkar-e-Taiba) (18 USC § 2339A); material support to terrorists (Lashkar-e-Taiba) (18 USC § 2339A); conspiracy to provide material support to a designated foreign terrorist organization (Lashkar-e-Taiba) (18 USC § 2339B); and with providing material support to a designated foreign terrorist organization (Lashkar-e-Taiba) (18 USC § 2339B). Trial is scheduled for May 22, 2006. Only Chandia will be tried at that time as the other defendant is in custody in England on terrorism charges. |
| 9 | United States v. Nagappan Mylappan Chettiar / D. Minnesota | In January of 2006, Chettiar was charged with aiding and abetting the bringing of aliens to the United States for commercial advantage or private financial gain (8 U.S.C. § 1324(a)(1)(A)(iv); 1324(a)(1)(A)(v)(II), and 1324(a)(1)(B)(I)); harboring and concealing aliens for commercial advantage or private financial gain (8 U.S.C. § 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(I)); and transporting aliens for commercial advantage or private financial gain (8 U.S.C. § 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(I)). On March 21, 2006, the defendant pleaded guilty, and will be sentenced in the next three months. |
| 10 | United States v. Khaled Dumeisi / N.D. Illinois | In January 2004, Dumeisi was convicted of acting in the United States as an agent of a foreign government without prior notification to the Attorney General (18 U.S.C. § 951(a)); conspiracy to do so (18 U.S.C. § 371); perjury in an immigration proceeding (18 U.S.C. § 1621); and perjury before a federal grand jury (18 U.S.C. § 1623). He was sentenced to 46 months' imprisonment. The case was affirmed on appeal in the Seventh Circuit on September 15, 2005. |

| | | Matters in Which Defense Counsel Has Requested Information Regarding NSA (As of 5/1/06) | |
|---|---|---|---|
| **#** | **CASE** | **DISTRICT** | **SUMMARY OF CHARGES AND STATUS OF CASE** |
| 11 | United States v. Wadih El Hage | S.D.N.Y. | In June of 1998, Defendant Wadih El Hage and 21 other al Qaeda members (including Usama Bin Laden) were charged with conspiracy to kill United States nationals (18 U.S.C. § 2332(b)); conspiracy to murder, kidnap and maim at places outside the United States (18 U.S.C. § 956(a)(1) and (a)(2)(A); conspiracy to murder (18 U.S.C. § 1114, 1116, 1117); conspiracy to use weapons of mass destruction against nationals of the United States (18 U.S.C. § 2332a(a)(1) and 2); conspiracy to destroy buildings and property of the United States (18 U.S.C. § 844(n)); conspiracy to attack national defense utilities (18 U.S.C. § 2155(a) and (b)); bombing of the United States Embassy in Nairobi, Kenya, and Dar es Salaam, Tanzania, resulting in more than 211 deaths (18 U.S.C. § 844(f)(1), (f)(3) and 2); use and attempted use of weapons of mass destruction against nationals of the United States in Nairobi, Kenya, and Dar es Salaam, Tanzania (18 U.S.C. § 2332a(a)(1), (a)(3) and 2; murders in Nairobi, Kenya, and Dar es Salaam, Tanzania (18 U.S.C. § 930(c), 1111 and 2); murder and attempted murder of employees of the United States in Nairobi, Kenya, and Dar es Salaam, Tanzania (18 U.S.C. § 1111, 1114 and 2); murder and attempted murder of internationally protected persons in Nairobi, Kenya (18 U.S.C. § 1111, 1116 and 2); attempted murder of internationally protected persons in Dar es Salaam, Tanzania (18 U.S.C. § 1111, 1116, and 2); and other charges. El Hage, Mohammed Odeh, Mohamed Al-Owhali, and Khalfan Khamis Mohammed were convicted and sentenced to life in prison. The remaining defendants are either deceased, awaiting extradition, or are fugitives. |
| 12 | United States v. Mohamad Kamal El-Zahabi | D. Minnesota | In December of 2005, El-Zahabi was charged with three counts of knowing possession and use of a fraudulently-obtained immigration document in violation of 18 U.S.C. § 1546(a). This was in addition to two previous charges in July of 2004 for making false statements to the FBI in violation of 18 U.S.C. § 1001. The indictment alleges that El-Zahabi made false statements to the FBI in April and May 2004 concerning (1) his involvement in the reshipment of packages sent to him in New York for an individual named Abdullah Al-Malki, who had a business in Ottawa, Canada, and (2) his involvement in assisting Raed Hijazi in obtaining a Massachusetts driver's license and allowing Hijazi to use his (Elzahabi's) residence as the license address. The case is pending. |
| 13 | United States v. Ali Farhat | Eastern District of Michigan | In April of 2004, Farhat was charged with fraud-related offenses in a twenty-one count indictment. The case is pending. |
| 14 | U.S. v. Iyman Faris | E.D. Virginia | In May of 2003, Faris pleaded guilty to providing material support to al Qaeda (18 U.S.C. § 2339B); and conspiring to provide material support to al Qaeda (18 U.S.C. §§ 2339B & 371). On October 28, 2003, Faris was sentenced to the statutory maximum of 20 years in prison. |

| | Matters in Which Defense Counsel Has Requested Information Regarding NSA (As of 5/1/06) | | |
|---|---|---|---|
| | CASE | DISTRICT | SUMMARY OF CHARGES AND STATUS OF CASE |
| 15 | U.S. v. Adham Hassoun | S.D. Florida | In November of 2005, Adham Hassoun, Mohamad Youssef, Kifah Jayyousi, Kassem Daher and Jose Padilla were charged with conspiring to murder or maim individuals in a foreign country (18 U.S.C. § 956(a)(1); conspiring to provide and providing material support to terrorists (18 USC § 2339A); unlawful possession of a firearm (Hassoun only) (922(g)(5)(b); false statements (Hassoun only)(18 USC § 1001); perjury (Hassoun only) (18 USC § 1621(1)); and obstruction of justice (Hassoun only)(18 USC § 1505). Trial is scheduled for September 5, 2006. |
| 16 | United States v. Ahmed Harara | N.D. Georgia | In July of 2005, Ahmed Harara and another defendant were charged with conspiring to structure currency transactions and causing financial institutions to fail to file currency transaction reports (18 U.S.C. § 371, and 31 U.S.C. §§ 5324(a)(1) &(a)(3)). Trial is currently scheduled for May 15, 2006. |
| 17 | United States v. Maher Mofeid Hawash | Oregon | In August of 2003, defendant Maher Mofeid Hawash was convicted of conspiracy to supply services to the Taliban in violation of the International Emergency Economic Powers Act (50 U.S.C. § 1705(b)). Hawash, along with six other defendants, who are members of the Portland Jihad cell, conspired to enter into Afghanistan in the immediate aftermath of 9-11 to help the Taliban fight U.S. and coalition forces. In February of 2004, Hawash was sentenced to seven years in prison. |
| 18 | U.S. v. Hamid and Umer Hayat | E.D. California | In April of 2006, Hamid Hayat was convicted on one count of providing material support in violation of 18 U.S.C. § 2339A, and three counts of making false statements in violation of 18 U.S.C. § 1001. Sentencing is set for July 14, 2006. Hayat faces a maximum of 39 years' imprisonment. In the Umer Hayat case, the jury declared that it was deadlocked. A status conference has been set for May 5, 2006 to discuss whether the government will retry Umer Hayat. In January of 2006, Hamid Hayat was charged with providing material support to terrorism (18 U.S.C. § 2339A) in the form of personnel, (i.e. himself), and that he concealed this material support, knowing and intending that the material support and resources would be used in preparation for and in carrying out acts of terrorism transcending national boundaries (18 U.S.C. 2332b). The indictment further charged Hamid Hayat with three counts of lying to the FBI (18 U.S.C. § 1001). The indictment also charged Umer Hayat, Hamid's father, with two counts of making false statements (18 U.S.C. § 1001). |
| 19 | U.S. v. Holy Land Foundation for Relief and Development (Basman Elashi) | N.D. Texas | In July of 2004, the defendants were charged with forty-two counts, including conspiracy and substantive counts of the following: IEEPA violations for dealing in the property of a Specially Designated Terrorist (Hamas) (50 U.S.C. § 1701); providing material support to a Foreign Terrorist Organization (Hamas) (18 U.S.C. § 2339B); money laundering (18 U.S.C. § 1956); and filing false tax returns (26 U.S.C. § 7201). Trial is currently scheduled to begin on February 5, 2007. |

| | | Matters in Which Defense Counsel Has Requested Information Regarding NSA (As of 5/1/06) |
|---|---|---|
| # | **CASE** | **DISTRICT** | **SUMMARY OF CHARGES AND STATUS OF CASE** |
| 20 | **United States v. Infocom Corporation (Bayan Elashi, Basman Elashi, Hazim Elashi, Ihsan Elashyi, Ghassan Elashi, Mousa Abu Marzook, Nadia Elashi)** | N.D. Texas | Defendants Hazim Elashi and Ihsan Elashyi, along with their three brothers, Basman Elashi, Bayan Elashi, and Ghassan Elashi, were convicted in July of 2004 of conspiracy and substantive IEEPA violations for illicit computer shipments they made to Libya and Syria through their company Infocom. They were also convicted of money laundering (18 U.S.C. § 1957), and filing false export documents (18 U.S.C. § 1001, at the same trial (Infocom I). In January of 2005, Defendants Hazim Elashi and Ihsan Elashyi, were sentenced. Hazim Elashi was sentenced to 66 months incarceration; Ihsan Elashyi received a 72 month sentence, which is to run consecutively with the 48 month sentence he received in October 2002, for a separate conviction. In February of 2006, the Judge reduced Hazim Elashi's sentence by 6 months to a total of 60 months. Marzook, one of the leaders of HAMAS, and his wife Nadia Elashi, remain fugitives in the Infocom II indictment. |
| 21 | **United States v. Musa Karim and Ann Njeri Karim** | D.Mass | Musa Karim and Ann Njeri Karim were charged with fraud and misuse of visas, permits, and other documents (8 U.S.C. § 1546(b)(3)); possession of a false identification document (18 U.S.C. 1028(a)(4)); false representation as a United States citizen (18 U.S.C. § 911); and conspiracy to commit marriage fraud (18 U.S.C. § 371). The case is pending. |
| 22 | **United States v. Golam Razaul Karim, and Naureen Moin.** | D.C. | Defendants Golam Razacul Karim and Naureen Moin who are married are charged in a several count indictment with conspiracy and substantive counts of labor certification/immigration fraud. Karim is also charged with one count of money laundering. The case is pending. |
| 23 | **U.S. v. Masaud Khan, Seifullah Chapman, and Hammad Abdur-Raheem** | E.D. Virginia | In July of 2005, these three defendants were sentenced as part of one portion of the Virginia Jihad case. Masoud Khan was sentenced to120 months (plus an earlier imposed mandatory life sentence for firearms charges). Seifullah Chapman was sentenced to 120 months (plus an earlier imposed mandatory 660 month sentence for firearms charges). Hammad Abdur-Raheem was sentenced to 52 months. The defendants were convicted of conspiracy (18 U.S.C. § 371); conspiracy to levy war (18 U.S.C. § 2384); conspiracy to contribute services to the Taliban (50 U.S.C. § 1705); conspiracy to contribute material support to Lashkar-E-Taiba (LET) (18 U.S.C. § 2339A); and use of and conspiracy to use a firearm in connection with a crime of violence (18 U.S.C. § 924). |
| 24 | **U.S. v. Sami Khoshaba Latchin** | N.D. Illinois | Latchin was charged in a three-count indictment with acting as an agent of a foreign government (18 U.S.C. § 951(a); unlawful procurement of citizenship or naturalization(18 U.S.C. § 1425(a)); and conspiracy (18 U.S.C. 371). Trial is scheduled for October 2, 2006. |

| | | Matters in Which Defense Counsel Has Requested Information Regarding NSA (As of 5/1/06) |
|---|---|---|
| # | CASE | DISTRICT | SUMMARY OF CHARGES AND STATUS OF CASE |
| 25 | U.S. v. Lynne Stewart, Mohammed Yousry, Ahmed Abdel Sattar and Yassir al-Sirri | S.D. New York | In February of 2005, the defendants were convicted on all charges; one count against Sattar for conspiring to kill persons in a foreign country (18 U.S.C. § 956(a)); two counts (substantive and conspiracy) against Stewart and Yousry for providing, and concealing the provision of, material support or resources ("personnel") knowing that such support was to be used in carrying out the § 956 offense, in violation of 18 U.S.C. § 2339A; one count against Sattar for conspiring to communicate threats against the U.S. to obtain release of a prisoner (18 U.S.C. §§ 371, 875c); and one count against Stewart for making false statements (18 U.S.C. § 1001). Stewart is scheduled to be sentenced in September of 2006. |
| 26 | U.S. v. Mohammed Warsame | Minnesota | In June of 2005, Warsame was charged with one count of providing material support to al Qaeda and three counts of making false statements to the FBI. These charges were in addition to earlier charges against Warsame for conspiracy to provide material support to al Qaeda (18 U.S.C. § 2339B). No trial date has been set. |
| 27 | United States v. Oscar Wyatt | S.D.N.Y. | In January of 2006, Oscar Wyatt and co-defendants were charged with conspiracy to commit wire fraud and to engage in prohibited financial transactions with Iraq (18 U.S.C. § 371 and 1349); wire fraud (18 U.S.C. § 1343, 1349 and 2); prohibited financial transactions with Iraq (18 U.S.C. § 2332d and 2); violation of the International Emergency Economic Powers Act (50 U.S.C. § 1701); conspiracy to act as an unregistered agent of a foreign country, to violate the Foreign Agents Registration Act, and to launder money (18 U.S.C. § 371). The case is pending. |