IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 06-0096 (HHK) |
| AMERICAN CIVIL LIBERTIES UNION, et al.,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 06-00214 (HHK)<br><br>**CONSOLIDATED CASES** |

**STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

As required by Local Rule 7.1(h), and in support of the Motion for Summary Judgment filed on behalf the Department of Justice ("DOJ" or "Department"), the Department hereby makes the following statement of material facts as to which there is no genuine issue.

**The Terrorist Surveillance Program**

1.    Following the devastating attacks of September 11, 2001, the President of the United States authorized the National Security Agency ("NSA") to intercept international communications into and out of the United States of persons linked to al Qaeda or related terrorist organizations (hereinafter, the "Terrorist Surveillance Program," or "TSP"). See Declaration of John D. Negroponte, Director of National Intelligence ("DNI Decl."), attached as

Ex. D to the Declaration of Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel ("OLC") ("Bradbury Decl."), ¶¶ 16-17; Bradbury Decl. ¶¶ 18-20.

2. In order to intercept a communication under the TSP, there must be a reasonable basis to conclude that one party to the communication is located outside the United States and that one party to the communication is a member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Qaeda. DNI Decl. ¶ 17.

3. The TSP is a targeted and focused program intended to help "connect the dots" between known and potential terrorists and their affiliates, id.; Bradbury Decl. ¶ 19, and serves as an early warning system established in order to detect and prevent another catastrophic attack on the United States. Bradbury Decl. ¶ 19.

4. The TSP is critical to the national security of the United States. DNI Decl. ¶ 16.

5. The President publicly acknowledged the existence of the TSP on December 17, 2005. Bradbury Decl. ¶ 20.

6. As the President has made clear, details about the TSP remain highly classified and subject to special access restrictions under the criteria set forth in Executive Order 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003). Bradbury Decl. ¶ 20.

7. Unauthorized disclosure of information regarding the TSP can reasonably be expected to cause exceptionally grave damage to the national security of the United States, see generally DNI Decl. ¶¶ 21-35, and, thus, pursuant to the criteria outlined in Executive Order 12958, as amended, information related to the TSP is classified TOP SECRET. Id. ¶ 20 (citing Executive Order 12958, as amended, §§ 1.4 (c), (d), (e), and (g)).

8. Moreover, because information related to the TSP involves or derives from

particularly sensitive intelligence sources and methods, it is subject to the special access and handling procedures reserved for Sensitive Compartmented Information ("SCI"), DNI Decl. ¶¶ 8, 20, and falls within the scope of information that the DNI is specifically authorized to protect. 50 U.S.C. § 403-1(i)(1).

9.  Loss of accurate intelligence information derived from the TSP could result in the catastrophic failure of the early warning system that the President has established to detect and prevent the next terrorist attack. DNI Decl. ¶¶ 21-35.

### Plaintiffs' FOIA Requests and DOJ's Responses

10.  ***EPIC's December 16, 2005, Request.***  By letters dated December 16, 2005, plaintiff EPIC requested under FOIA agency records "from September 11, 2001, to the present concerning a presidential order or directive authorizing the National Security Agency ('NSA'), or any other component of the intelligence community, to conduct domestic surveillance without the prior authorization of the Foreign Intelligence Surveillance Court ('FISC')." See, e.g., Bradbury Decl. Ex. A.

11.  EPIC stated that the records it sought included "but were not limited to" the following:

  a. an audit of NSA domestic surveillance activities;

  b. guidance or a "checklist" to help decide whether probable cause exists to monitor an individual's communications;

  c. communications concerning the use of information obtained through NSA domestic surveillance as the basis for DOJ surveillance applications to the FISC; and

  d. legal memoranda, opinions or statements concerning increased domestic surveillance, including one authored by John C. Yoo shortly after September 11, 2001 discussing the potential for warrantless use of enhanced electronic surveillance techniques.

See, e.g., Bradbury Decl. Ex. A.

12.  EPIC's FOIA requests were directed to four components of the Department of Justice – the Office of the Attorney General, See Pl's Mot. for Preliminary Injunction (Docket No. 3), Ex. 7; the Office of Intelligence Policy and Review ("OIPR"), see id., Ex. 8; the Office of Legal Counsel ("OLC"), see Bradbury Decl. Ex. A; and the Office of Legal Policy ("OLP"), Pl's Mot. for Preliminary Injunction, Ex. 10.

13.  In each component, EPIC sought expedited processing, invoking the Department's FOIA regulations, 28 C.F.R. §§ 16.5(d)(1)(ii) & (iv).  See, e.g., Bradbury Decl. Ex. A.

14.  ***Office of the Attorney General and OLP Response.***  On March 8, 2006, the Department's Office of Information and Privacy ("OIP") responded to EPIC's request on behalf of the Office of Attorney General and OLP.  Ex. D.  At that time, those offices released 15 responsive documents, totaling 85 pages, without excision; released two additional documents, totaling two pages, with excisions made pursuant to Exemption Six of FOIA, 5 U.S.C. § 552(b)(6); and withheld in full 46 documents, totaling 99 pages, pursuant to Exemption Five of FOIA, 5 U.S.C. § 552(b)(5).  OIP also advised EPIC that it had located a one-page email that originated with OIPR, which was also withheld in full pursuant to Exemption Five.  See Ex. D.

15.  Also on March 8, the Department's Criminal Division, which received a three-page document by referral from OIP on behalf of the Office of the Attorney General and/or OLP, advised EPIC by letter that the document was properly released with redactions pursuant to FOIA Exemptions Six and Seven, 5 U.S.C. §§ 552(b)(6) & (7)(C).  See Declaration of Thomas J. McIntyre, Chief, Freedom of Information Act/Privacy Act Unit, Criminal Division ("McIntyre Decl."), attached as Ex. E hereto, ¶ 10 & Ex. 8.

16.  On March 7, 2006, the Civil Division also responded to EPIC concerning a

document referred by OIP on behalf of the Office of the Attorney General and/or OLP, see Ex. F, and advised that the one-page document was withheld in full under Exemption Five of FOIA, 5 U.S.C. § 552(b)(5).

17.     **OIPR Response.**  On May 8, 2006, OIPR responded to EPIC's request, advising that it had identified 136 responsive records, that two documents, totaling 15 pages, were released in full, and that 15 documents were being withheld in full pursuant to FOIA Exemptions One, 5 U.S.C. § 552(b)(1), Three, id. § 552(b)(3), Five, id. § 552(b)(5); Six, id. § 552(b)(6), and Seven, id. §§ 552(b)(7)(A) & (7)(C).  See Declaration of James A. Baker, Counsel for Intelligence Policy, OIPR ("Baker Decl.") ¶ 11 & Ex. A.

18.     OIPR also advised that 24 documents required further consultations and that the remaining 95 documents had been referred to other agencies or components of the Department for processing.  Baker Decl. ¶ 12; but see id. n.1 & ¶ 17.

19.     OIPR ultimately consulted on 34 records or categories of records and referred 85. Baker Decl. ¶ 12 n.1.

20.     **OLC Response.**  OLC provided an interim response to EPIC's request on March 8, 2006.  See Bradbury Decl. ¶ 8 & Ex. E.  At that time, OLC advised that its search of its unclassified files had been completed, released five documents, totaling 63 pages, and withheld an additional 290 documents, totaling 4740 pages, in full pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5).

21.     On July 21, 2006, OLC further responded to EPIC's request, advising that it had identified 158 responsive records or categories of records in its classified files.  See Bradbury Decl. ¶ 11 & Ex. H.  Of those, OLC advised that 79 had been referred to other agencies or components of the Department for processing, and that, as to 62 of the referrals, OLC had been

asked to convey that these documents were properly withheld in full pursuant to FOIA Exemptions One, 5 U.S.C. § 552(b)(1), and Three, <u>id.</u> § 552(b)(3), and that certain of these documents also contained information subject to Exemptions Two, <u>id.</u> § 552(b)(2), Five, <u>id.</u> § 552(b)(5), and Seven, <u>id.</u> § 552(b)(7).  <u>Id.</u>

  22. Of the remaining 79 records or categories of records, OLC identified two additional copies of a document that previously had been released, and withheld the remainder of the documents in full under a combination of FOIA Exemptions One, Three, and Five.  Bradbury Decl. ¶ 11 & Ex. H; <u>but see id.</u> ¶ 11 n. 1 & ¶ 27.  OLC also advised that it had identified responsive records that were not considered "agency records" as defined by FOIA; these documents were not processed by OLC.  <u>Id.</u> Ex. H.

  23. With respect to EPIC's request, OLC ultimately identified 157 responsive records or categories of records, referred 66 of those records to other components of the Department or other federal agencies, and, after appropriate consulations, withheld 91 records or categories of records under the exemptions allowed by FOIA.  Bradbury Decl. ¶ 11 n.1; <u>see also id.</u> ¶ 27.

  24. ***ACLU's December 20, 2005, Request.***  The ACLU's December 20, 2005, request sought the disclosure of "any presidential order(s) authorizing the NSA to engage in warrantless electronic surveillance and/or warrantless physical searches in the United States, created from September 11, 2001, to the present," as well as documents in multiple additional categories, including "any record(s), document(s), file(s), communication, memorandum(a), agreement(s), and/or instruction(s), created from September 11, 2001 to the present about . . . any presidential order(s) authorizing the NSA to engage in warrantless electronic surveillance and/or warrantless physical searches in the United States"; "the policies, procedures and/or practices of the NSA" in thirteen identified categories relating to "warrantless electronic surveillance"; "the

constitutionality, legality, and/or propriety of warrantless electronic surveillance and/or warrantless physical searches in the United States"; "any Justice Department legal reviews of the program and its legal rationale"; and the number and types of communications and individuals subject to surveillance. Bradbury Decl. Ex. B.

25.     Like EPIC, ACLU also sought expedited processing. Bradbury Decl. Ex. B.

26.     ACLU's request was addressed to DOJ's Justice Management Division's FOIA/PA Referral Unit ("JMD"), which is authorized by regulation to receive requests where a requester "cannot determine where within the Department to send [a] request," and to "forward [the] request to the component(s) it believes most likely to have the records [sought]." 28 C.F.R. § 16.3(a).

27.     ACLU's request was forwarded by JMD to seven components: the Office of the Attorney General, the Office of the Deputy Attorney General ("ODAG"), the Civil Division, the Civil Rights Division, the Criminal Division, the Federal Bureau of Investigation ("FBI"), OLC, and the Executive Office of United States Attorneys ("EOUSA").

28.     ***Office of the Attorney General and ODAG Response.*** On March 8, 2006, the OIP made an interim response to the ACLU's request on behalf of the Office of Attorney General and ODAG. Declaration of J. Patrick Rowan, Deputy Associate Attorney General, ODAG ("Rowan Decl."), ¶ 10 & Ex. A. At that time, those offices released 15 responsive documents, totaling 85 pages, without excision; released two additional documents, totaling two pages, with excisions made pursuant to Exemption Six of FOIA, 5 U.S.C. § 522(b)(6); and withheld in full 46 documents, totaling 99 pages, pursuant to Exemption Five of FOIA, 5 U.S.C. § 552(b)(5). Id. Ex. A. OIP also advised ACLU that it had located a one-page email that originated in OIPR, which was also withheld in full pursuant to Exemption Five. Id.

29.     Also on March 8, the Department's Criminal Division, which received a three-page document by referral from OIP on behalf of the Office of the Attorney General and/or ODAG, advised ACLU by letter that the document was properly released with redactions pursuant to FOIA Exemptions Six and Seven, 5 U.S.C. §§ 552(b)(6) & (7)(C).  See McIntyre Decl. ¶ 10 n.3 & Ex. 11.

30.     On March 7, 2006, the Civil Division also responded to ACLU concerning a document referred by OIP on behalf of the Office of the Attorney General and/or ODAG, see Ex. H, and advised that the one-page document was withheld in full under Exemption Five of FOIA, 5 U.S.C. § 552(b)(5).

31.     On July 21, 2006, OIP further responded to ACLU's request on behalf of the Office of the Attorney General and ODAG.  See Rowan Decl. ¶ 10 & Ex. B.  OIP released an additional 129 pages in full and withheld 18 pages under FOIA Exemption Five, 5 U.S.C. § 552(b)(5).  OIP also identified an additional record uncovered in its search that was a congressional document and not an "agency record," as defined by FOIA, and thus was not processed in response to the ACLU's request.  Id. Ex. B.

32.     At the same time, OIP, on behalf of ODAG, also indicated that it had identified 58 responsive agency records or categories of records in ODAG's classified files.  Rowan Decl. ¶ 13 & Ex. B.  OIP advised that 53 of these records had been referred to other agencies or Department components for processing, and that the remaining five records were withheld under a combination of Exemptions One, 5 U.S.C. § 552(b)(1), Three, id. § 552(b)(3), Five, id. § 552(b)(5), and Seven, id. § 552(b)(7)(A).  Id.

33.     ***Civil Division Response.***  On April 13, 2006, the Civil Division responded to the ACLU, advising that it had identified ten documents responsive to ACLU's request.  Ex. I.  Nine

of these documents were referred by the Civil Division to three other components of the Department of Justice: three to OIP on behalf of the Office of the Attorney General and the Office of Public Affairs, all public documents which previously had been released; five to OLC, including the previously released White Paper and four other documents that were duplicates of documents identified on OLC's March 20, 2006, preliminary index as withheld in full under Exemption Five, 5 U.S.C. § 552(b)(5); and one to OIPR, which was a duplicate of the document previously identified on OIP's March 20, 2006, preliminary index as withheld in full under Exemption Five, id., on OIPR's behalf. See Ex. D. The remaining document was identical to the document referred by OIP that was identified in the Civil Division's letter of March 7, 2006, see Ex. H, as withheld under Exemption Five, 5 U.S.C. § 552(b)(5).

34.   ***Criminal Division Response.***  On May 10, 2006, the Criminal Division made a further response to the ACLU advising that it had located certain responsive documents. In particular, the Criminal Division advised that it had copies of the White Paper, which previously had been released, as well as drafts of that document identical to those processed by OLC in response to the ACLU's request. See McIntyre Decl. ¶ 4 & Ex. 3. The Criminal Division did not further process these documents.

35.   The Criminal Division also advised that "[t]o the extent that the Criminal Division maintains any other information related to . . . your request such information would have been compiled solely in connection with an investigation of the unauthorized disclosure of classified information concerning the Terrorist Surveillance Program (the "leak investigation") or in connection with other pending criminal prosecutions or investigations." McIntyre Decl. ¶ 5 & Ex. 3. Any such responsive information was withheld by the Criminal Division under FOIA Exemption Seven, 5 U.S.C. § 552(b)(7)(A). Id.

36.  The Criminal Division also noted that additional, overlapping exemptions may apply to portions of the same information including but not limited to FOIA Exemptions One, id. § 552(b)(1); Three, id. § 552(b)(3); Five, id. § 552(b)(5); Six, id. § 552(b)(6); and other subparagraphs of Seven, id. §§ 552(b)(7)(C) & (7)(D).  McIntyre Decl. Ex. 3.

37.  ***Civil Rights Division Response.***  The Civil Rights Division, upon receipt of the ACLU's FOIA request from JMD re-routed that request to JMD on the grounds of error, as it had no responsive documents.

38.  ***FBI Response***.  On March 24, 2006, the FBI made an interim response to the ACLU's request.  See Declaration of David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI ("Hardy Decl."), ¶ 23 & Ex. B.  At that time, FBI identified 257 pages of responsive records, released 100 pages with no redactions, and withheld the remaining 157 pages pursuant to Exemption Five of FOIA, 5 U.S.C. § 552(b)(5).  Hardy Decl. Ex. B.

39.  On July 21, 2006, the FBI further responded to ACLU's request advising that it had identified additional responsive records, but that all such records were being withheld in full pursuant to FOIA Exemptions One, 5 U.S.C. § 552(b)(1), Two, id. § 552(b)(2), Three, id. § 552(b)(3), Five, id. § 552(b)(5), Six, id. § 552(b)(5), and Seven, id. §§ 552(b)(7)(A), (7)(C), (7)(D), 7(E), and (7)(F).  See Hardy Decl. ¶ 25 & Ex. C.

40.  ***OLC Response.***  OLC provided an interim response to ACLU's request on March 8, 2006.  See Bradbury Decl. ¶ 8 & Ex. F.  At that time, OLC advised that its search of its unclassified files had been completed, released five documents, totaling 63 pages, and withheld an additional 290 documents, totaling 4740 pages, in full pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5).

41.     On July 21, 2006, OLC further responded to ACLU's request, advising that it had identified 158 responsive records or categories of records in its classified files. See Bradbury Decl. ¶ 11 & Ex. I. Of those, OLC advised that 79 had been referred to other agencies or components of the Department for processing, and that, as to 62 of the referrals, OLC had been asked to convey that these documents were properly withheld in full pursuant to FOIA Exemptions One, 5 U.S.C. § 552(b)(1), and Three, id. § 552(b)(3), and that certain of these documents also contained information subject to Exemptions Two, id. § 552(b)(2), Five, id. § 552(b)(5), and Seven, id. § 552(b)(7). Id. Of the remaining 79 records or categories of records, OLC identified two additional copies of the White Paper, which previously had been released, and withheld the remainder of the documents in full under a combination of FOIA Exemptions One, Three, and Five. Bradbury Decl. ¶ 11 & Ex. I; but see id. ¶ 11 n. 1 & ¶ 27.

42.     With respect to ACLU's request, OLC ultimately identified 157 responsive records or categories of records, referred 66 of those records to other components of the Department or other federal agencies, and, after appropriate consulations, withheld 91 records or categories of records under the exemptions allowed by FOIA. Bradbury Decl. ¶ 11 n.1; see also id. ¶ 27.

43.     Also on July 21, OLC responded to the ACLU with respect to 30 documents referred to it by ODAG. See Bradbury Decl. ¶ 12 & Ex. I. As to these documents, OLC explained that 21 were duplicative of documents processed by OLC and were withheld for the same reasons. The remaining nine documents were withheld in full under FOIA Exemptions One and Five. OLC also advised that it had identified responsive records that were not considered "agency records" as defined by FOIA; these documents were not processed by OLC. Id.

44.     ***EOUSA Response.*** On March 16, 2006, EOUSA responded to the ACLU's

-11-

request by advising that, consistent with Department regulations, 28 C.F.R. § 16.3(b), EOUSA required clarification of the request before it could proceed further.  Ex. K.  More specifically, EOUSA advised that Department regulations required a FOIA requester to "reasonably describe" the records sought, 28 C.F.R. § 16.3(b); accord 5 U.S.C. § 552(a)(3)(A), and that, "since EOUSA and [United States Attorneys' Office] files are located in more than 100 separate offices throughout the country," EOUSA could not conduct an appropriate search without a more focused request, including identification of which offices the ACLU wished to have searched.  Id.  As required by DOJ regulations, see 28 C.F.R. § 16.3(b), EOUSA advised ACLU that "[a]bsent such clarification, your request cannot be considered properly received . . . and no further action will be taken on it.  Once you have corrected the above deficiencies, you may submit a new request for the records you seek."  Id.  Thus, on March 16, 2006, EOUSA's file on ACLU's December 20, 2005, request was closed.  Id.

      45.     ***NSAF's December 21/22, 2005, Request.***  By letters dated December 21, 2005, to OLC and December 22, 2005, to OIP on behalf of the Office of the Attorney General, plaintiff NSAF sought copies of "[a]ll memoranda, legal opinions, directives or instructions from the Attorney General, Assistant Attorney General, or the Office of Legal Counsel (OLC), issued between September 11, 2001, and December 21, 2005, regarding the government's legal authority for surveillance activity, wiretapping, eavesdropping, and other signals intelligence operations directed at communications from or to U.S. citizens," including "all documents discussing the President's surveillance authority under the September 2001 congressional use of force resolution as well as the President's independent ability to authorize signals intelligence activities."  See, e.g., Bradbury Ex. C.

      46.     Like EPIC and ACLU, NSAF, by a follow-up letter dated January 9, 2006,

requested expedited processing.  See, e.g., Bradbury Ex. C.

47.     *Office of the Attorney General Response.*  On March 8, 2006, OIP, on behalf of the Office of the Attorney General responded to NSAF's request.  See Ex. L.  OIP advised NSAF that 15 documents, totaling 85 pages, had been identified as responsive and were being released in full.  OIP also advised NSAF that "because [its] request was processed concurrently with the request from . . . [EPIC] and . . . [the ACLU]," its response included "records that are not responsive to your request."  Id.

48.     This response constituted a full grant of NSAF's request by the Office of the Attorney General.  Ex. L.

49.     *OLC Response.*  On March 8, 2006, OLC advised NSAF that a search of its unclassified files had identified no responsive documents.  Bradbury Decl. ¶ 9 & Ex. G.  On July 21, 2006, OLC further responded to NSAF and advised that a small number of responsive documents have been identified in OLC's classified files, but that these documents were withheld under FOIA Exemptions One, 5 U.S.C. § 552(b)(1), Three, id. § 553(b)(3), and Five, id. § 552(b)(5).  Bradbury Decl. ¶ 13 & Ex. J.  OLC also advised that it had identified responsive records that were not considered "agency records" as defined by FOIA; these documents were not processed by OLC.  Id.

                                        Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General, Civil Division

                                        KENNETH J. WAINSTEIN
                                        United States Attorney

                                        JOSEPH H. HUNT
                                        Director, Federal Programs Branch

                ELIZABETH J. SHAPIRO
                Assistant Director, Federal Programs Branch

                ____*/s/ Rupa Bhattacharyya*_____
                RUPA BHATTACHARYYA (VA# 38877)
                Senior Trial Counsel
                Federal Programs Branch, Civil Division
                United States Department of Justice
                P.O. Box 883, 20 Massachusetts Ave., N.W.
                Washington, D.C.  20044
                Tel: (202) 514-3146
                Fax: (202) 318-7593
                Email: rupa.bhattacharyya@usdoj.gov

Dated:   September 15, 2006.