**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC PRIVACY INFORMATION  )
CENTER,                          )
                                 )        Civil Action No. 06-0096 (HHK)
         Plaintiff,              )
                                 )
     v.                          )
                                 )
DEPARTMENT OF JUSTICE,           )
                                 )
         Defendant.              )
_____)
                                 )
AMERICAN CIVIL LIBERTIES UNION, et al.,  )
                                 )        Civil Action No. 06-00214 (HHK)
         Plaintiffs,             )
                                 )
     v.                          )
                                 )
DEPARTMENT OF JUSTICE,           )
                                 )        **CONSOLIDATED CASES**
         Defendant.              )
_____)

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS-MOTION
FOR <u>IN CAMERA</u> REVIEW AND REPLY IN SUPPORT OF
DOJ'S MOTION FOR SUMMARY JUDGMENT**

<u>**INTRODUCTION**</u>

On September 15, 2006, the Department of Justice ("DOJ" or "Department") made a comprehensive and detailed submission defending its determination that hundreds of records or categories of records responsive to plaintiffs' broad requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, relating to the highly classified Terrorist Surveillance Program ("TSP"), were properly withheld from disclosure under overlapping exemptions provided for by FOIA. Docket No. 29 ("Def't Mot."). In their opposition brief, Docket No. 33 ("Pl's Opp."), plaintiffs make no specific or substantive response to any claim by DOJ as to the applicability of any FOIA exemption to any specific record or category of records. Plaintiffs do not substantively challenge DOJ's determination that Exemption One precludes the release of hundreds of records that

are currently and properly classified because their disclosure would be reasonably expected to cause exceptionally grave harm to the national security, a determination supported by specific findings made by Director of National Intelligence ("DNI") John D. Negroponte.  <u>See</u> Def't's Mot. at 28-32; <u>see also</u> DNI Decl. ¶¶ 22-35.  Nor do they substantively challenge DOJ's determination that Exemption Three precludes the release of any record that would compromise intelligence sources or methods, or that contains information "with respect to the activities of" the National Security Agency ("NSA"), which operates the TSP, because disclosure of such information is specifically prohibited by federal statute.  <u>See</u> 50 U.S.C. § 403-1(i)(1); <u>id.</u> § 402 note; Def't's Mot. at 48-53.  Nor do plaintiffs make any specific substantive response – other than various concessions detailed below – to any of the other detailed explanations offered by DOJ as to why FOIA Exemptions Two, Five, Six and Seven preclude the release of other kinds of information determined to be responsive to plaintiffs' broad requests.  <u>See</u> Def't's Mot. at 41-45, 53-80.

Instead, plaintiffs' only response to DOJ's comprehensive showing is to ignore virtually every detail presented in the supporting materials and to object generically – and, as fully explained below, without foundation – that DOJ's submissions are insufficient to meet the standards set out in <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), and its progeny.  Although plaintiffs complain that some information contained in DOJ's submissions is redacted, thus precluding any response – not at all an unusual circumstance in a case that seeks the disclosure of detailed information relating to a highly classified program – plaintiffs make no substantive effort to respond to any of the public record information contained in declarations provided in support of DOJ's motion that provide substantial and adequate justification for the determination to withhold various categories of documents.  Nor do plaintiffs challenge DOJ's statement of the law governing the application of any FOIA exemption, or otherwise identify any inadequacies in any specific claim of exemption by DOJ as to any specific record or category of records.  Instead, supported by only a few hand-picked examples, plaintiffs plead confusion and vagueness, and purport to be unable to make any

substantive response to DOJ's submissions at all. This generic approach – which does not demonstrate even the slightest effort to respond in substance to the comprehensive submissions made by DOJ – is entirely insufficient to oppose a properly supported motion for summary judgment. See Spirko v. U.S. Postal Serv., 147 F.3d 992, 998 (D.C. Cir. 1998) (rejecting characterization of agency affidavits as "conclusory and vague" when plaintiff did "not indicate what more the [agency] could have stated without revealing the information it sought to protect." and finding that "clearly, 'there are occasions when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed'") (citation omitted).[1]

As fully explained below, DOJ's submissions provided in support of its summary judgment motion are more than sufficient to warrant the grant of its motion under the standards established by this Court and the Court of Appeals. As a preliminary matter, however, before turning to the errors of both law and fact in plaintiffs' generalized challenge to the sufficiency of DOJ's Vaughn submissions, it is important to note the numerous and significant concessions made by the plaintiffs in their opposition to DOJ's pending motion:

First, plaintiffs make no argument in opposition to the showing that each component of DOJ conducted an adequate search for records. See Deft's Mot. at 18-24. Accordingly, DOJ is entitled to summary judgment as to the adequacy of its records search.

Second, plaintiffs do not challenge the redaction of names and indentifying information

---

[1]  For similar reasons, plaintiffs' demand that DOJ be required to publicly disclose the number of pages withheld despite the DNI's determination that disclosure of even such seemingly innocuous information could result in compromising sensitive information regarding the operation of the TSP, see DNI Decl. ¶ 24; see also Bradbury Decl. ¶ 32 n.5, must be rejected. Plaintiffs offer no reason whatsoever why the public disclosure of this information – which was provided in camera to the Court – would be of assistance to them in challenging DOJ's claim to any applicable exemption, and the Court of Appeals has approved the rejection of demands for more particularity in similar circumstances. See Spirko, 147 F.3d at 998 (finding that where plaintiff "failed to indicate how additional information could have provided further support for his arguments . . . or altered his response to the agency's claimed exemptions," there was "no basis to conclude that Spirko's participation in the adversary process was compromised").

pursuant to Exemptions (b)(6) and (b)(7)(C), or the redaction of internal DOJ business telephone, fax and pager numbers pursuant to Exemption (b)(2). Pl's Opp. at 44 n. 25. Thus, each DOJ component that withheld this information, see Rowan Decl. ¶¶ 22-23; Baker Decl. ¶ 40; Bradbury Decl. ¶ 28; Hardy Decl. ¶¶ 58-59, 79, 81-95, 115-121, is entitled to summary judgment as to these determinations. See Deft's Mot. at 43-45, 62-67, 70-71, 73-74, 77-78.

Third, plaintiffs do not challenge the withholding of "draft documents and discussion about drafts and the drafting process (withheld under Exemption (b)(5))." Pl's Opp. at 44 n. 25. As the materials filed in support of DOJ's motion for summary judgment amply demonstrate, a large number of records or categories of records were withheld for this reason. As a result of plaintiffs' concession, and – although most of these documents are also withheld under other, overlapping, exemptions – given that the Court need only find that any particular document was properly withheld under any one exemption in order to uphold DOJ's claim to summary judgment, see Deft's Mot. at 27 n. 19 (citing Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F. 2d 856, 864 n. 19 (D.C. Cir. 1981), those documents are no longer at issue in this litigation.[2]

Fourth, plaintiffs do not challenge the withholding of records that are not agency records as defined by FOIA. Pl's Opp. at 44 n. 25. Thus, OLC and the FBI are entitled to summary judgment

---

[2] Specifically, as identified in DOJ's supporting declarations, and as further described herein, the following records or categories of records have been properly withheld as "draft documents and discussion about drafts and the drafting process": OLC 34, 67, 74, 78, 93, 101; ODAG 10, 17, 18, 19, 48, 65; OIPR 141 (Bradbury Decl. ¶¶ 32, 36); OLC 1, 2, 3, 4, 5, 6, 11, 15, 22, 23, 68, 69, 72, 73, 92, 104, 109, 110, 111, 112, 122, 124, 136, 137; ODAG 26, 28, 30, 58 (Bradbury Decl. ¶¶ 56, 58); OLC 40, 41, 42, 53, 60, 83, 86, 87, 88, 89, 90, 108, 203, 204, 205; ODAG 8, 43, 44, 45, 49, 50, 51, 53; OIPR 1, 2, 32, 33, 34, 35, 82, 142; FBI 19, 58 (Bradbury Decl. ¶ 66); OLC 116, 20; OIPR 60 (Bradbury Decl. ¶ 74); OLC 84 (Bradbury Decl. ¶ 75); OLC 1, 2, 3, 92, 110; ODAG 28, 30 (Baker Decl. ¶¶ 22-23); OIPR 32, 34, 63, 72, 73; OLC 138 (Baker Decl. ¶ 34); and ODAG 39 (Rowan Decl. ¶ 24). The significant volume of these exclusions raises the question why EPIC and ACLU, both experienced FOIA requesters seeking expedited processing of their requests, did not simply eliminate "draft documents and discussion about drafts and the drafting process" from their FOIA requests in the first place, as did co-plaintiff NSAF, instead of putting DOJ to the trouble of placing other legitimate FOIA requests on hold to search for, review, process and defend the withholding of hundreds of pages of documents these requesters did not want.

as to their determinations as to these records.  <u>See</u> Def't's Mot. at 26 n. 18; Bradbury Decl. ¶77 (discussing OLC 56, 57, and 58); Hardy Decl. ¶ 143.

Fifth, plaintiffs also do not challenge "duplicates of records already released or duplicates of records being withheld by another office."  Pl's Opp. at 44 n. 25.  As to numbered records or categories of records that are not otherwise addressed in DOJ's materials, this concession eliminates OLC 105 & FBI 23 (copies of the already-released White Paper, <u>see</u> Bradbury Decl. ¶ 74; Hardy Decl. ¶ 143); and OIPR 56 (a collection of duplicate documents processed by other components or agencies, <u>see</u> Baker Decl. ¶ 42).

Finally, plaintiffs do not challenge the withholding of any records by the Criminal Division. Pl's Opp. at 44 n. 25.  That Division is entitled to summary judgment.

## ARGUMENT

### I.    DOJ'S VAUGHN SUBMISSIONS ARE MORE THAN ADEQUATE.

Under FOIA, a federal agency withholding documents is required to provide "a relatively detailed analysis" of the withheld material "in manageable segments," without resort to "conclusory and generalized allegations of exemption."  <u>Vaughn v. Rosen</u>, 484 F.2d 820, 824 (D.C. Cir. 1973). As courts have repeatedly noted, "it is the function, not the form, of the [submission] that is important." <u>Judicial Watch, Inc. v. Food & Drug Admin.</u>, 449 F.3d 141, 146 (D.C. Cir. 2006) (citing <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 349 (D.C. Cir. 1987)); <u>see also</u> <u>Gallant v. NLRB</u>, 26 F.3d 168, 173 (D.C. Cir. 1994) ("[t]he materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege").

The touchstone for the adequacy of submissions made in support of an agency's motion for summary judgment in a FOIA case is if the submissions are specific enough to demonstrate "that material withheld is logically within the domain of the exemption claimed."  <u>King v. U.S. Dept. of Justice</u>, 830 F.2d 210, 217 (D.C. Cir. 1987); <u>see also</u> <u>Oglesby v. U.S. Dept. of the Army</u>, 79 F.3d 1172, 1178 (D.C. Cir. 1996) ("If an affidavit submitted by an agency contains sufficient detail to

forge the 'logical connection between the information [withheld] and the claimed exemption,' . . . then the court will accord that affidavit substantial weight and consider the agency's "unique insights into what adverse effects might occur as a result of public disclosure") (citation omitted).

Whether any particular submission is sufficiently specific to demonstrate that material withheld is "logically within the domain of the exemption claimed," King, 830 F.2d at 217, will differ depending "upon the nature of the case, the documents at issue, and the exemption claimed" Ferranti v. Bureau of Alcohol, Tobacco, & Firearms, 177 F. Supp. 2d 41, 45-46 (D.D.C. 2001) (Lamberth, J.). Thus, as the Court of Appeals has recently held, "context dictates [the court's] approach to the particularity required of agencies." Judicial Watch, 449 F.3d at 147. Courts routinely recognize, for example, that "Vaughn declarations filed in FOIA cases involving classified documents inherently require a degree of generalization and such generalization does not violate the FOIA." Voinche v. Fed. Bureau of Investigation, 940 F. Supp. 323, 328 (D.D.C. 1996) (citing Maynard v. Central Intelligence Agency, 986 F.2d 547, 557 (1st Cir.1993)), aff'd 1997 WL 411685 (D.C. Cir. 1997); see also Campbell v. U.S. Dept. of Justice, 164 F.3d 20, 31 (D.C. Cir. 1998) (an adequate Exemption One declaration "need not exhaustively explain each redaction and withholding, but it must provide sufficient information to permit . . . the district court to understand the foundation for and necessity of the [agency's] classification decisions"). Similarly, where an agency claims the applicability of Exemption Three, review of the agency's claim "depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" Fitzgibbon v. Central Intelligence Agency, 911 F.2d 755, 761-62 (D.C. Cir. 1990) (citations omitted).

In recently addressing the sufficiency of an agency's showing in support of summary judgment in FOIA cases, the Court of Appeals has articulated the appropriate standards to apply:

> The agency must explain why the exemption applies to the document or type of document withheld and may not ignore the contents of the withheld documents. . . . On the other hand, abstraction can aid court review when drawing from specific

> examples. We have never required repetitive, detailed explanations for each piece of withheld information – that is, codes and categories may be sufficiently particularized to carry the agency's burden of proof. . . . Especially where the agency has disclosed and withheld a large number of documents, categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons. In such cases, particularity may actually impede court review and undermine the functions served by a Vaughn index.

Judicial Watch, 449 F.3d at 147; see also Pl's Opp. at 19 (FOIA defendant "may use categories," citing Maydak v. U.S. Dept. of Justice, 218 F.3d 760, 765-767 (D.C. Cir. 2000)). Both the Court of Appeals and the Supreme Court have "permit[ted] the satisfaction of the government's burden of proof under many . . . exemptions . . . through generic, categorical showings." Maydak, 218 F.3d at 766; see also Gallant, 26 F.3d at 173 (agency "need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document," so long as its definitions of categories are "sufficiently distinct to allow a court to determine . . . whether the specific claimed exemptions are properly applied"). Thus, where an agency "explain[s] itself though commonalities, not generalities," and "tie[s] each individual document to one or more exemptions" while also "link[ing] the substance of each exemption to the documents' common elements," it has met its Vaughn obligations. Judicial Watch, 449 F.3d at 147 (emphasis in original).

DOJ unquestionably has met this obligation. Each component of DOJ that withheld documents that remain subject to challenge in these consolidated cases has identified the records withheld by assigning each record or category of records a distinct numerical identifier, has grouped those separately identified records into categories according to their content, and then has explained the justifications for withholding those categories of records using the numerical identifiers as reference points. The two declarants addressing the largest volume of documents, Mr. Bradbury of OLC, and Mr. Baker of OIPR, have also provided charts which identify each separately numbered record or category of records, list each exemption claimed for the records, and identify those paragraphs of the supporting declarations that provide the justification for withholding the record.

Plaintiffs complain that these submissions are "confusing" and that they are left without any

clear notion as to what is being withheld.[3]  This complaint is belied by the detailed information

provided in DOJ's submissions, which plaintiffs make no substantive effort to analyze.  As described

below, each declarant has carefully described exactly which records are being addressed by the

declaration, has identified those documents by categories based on their content, and has explained,

using the commonalities among the documents, why their withholding is justified under the terms

of FOIA.  As also demonstrated below, other than to generically complain about the insufficiency

of DOJ's showing and their own asserted "confusion," plaintiffs make no substantive effort to

challenge any claim to any exemption by any component.[4]

In particular – and particularly fatal to their efforts to challenge DOJ's withholdings under

the two Exemptions applicable to the vast majority of the remaining documents at issue in this

litigation, Exemptions One and Three – plaintiffs make no effort whatsoever to challenge – or even

discuss – the DNI's reasoned determinations that certain specifically identified categories of

information cannot be disclosed without either causing exceptionally grave harm to the national

security, or without compromising intelligence information that is specifically protected from

disclosure by federal statues.  See Deft's Mot. at 27-38, 45-52; DNI Decl. ¶¶ 22-35; see also Exec.

Order No. 12958, § 1.4, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Exec. Order No. 13292,

---

[3]  The only example plaintiffs provide of their "confusion" is a curious one.  See Pl's Opp. at 16 (discussing OLC 1).  As plaintiffs themselves acknowledge, OLC 1 is a draft document, see Baker Decl. ¶¶ 22-23, Bradbury Decl. ¶ 56; and plaintiffs do not challenge the withholding of draft documents under Exemption Five of FOIA, see Pl's Opp. at 44 n. 25, and thus, the withholding of the document plaintiffs choose as their example is no longer at issue in this litigation. In any event, although the justifications for withholding OLC 1 cannot be publicly aired without compromising classified information, DOJ's submissions demonstrate that it is also properly withheld under Exemptions One and Three.  See Bradbury Decl. ¶¶ 54-58; Baker Decl. ¶¶ 19-22.

[4]  Plaintiffs are apparently confused by the number of components that responded to their requests.  See Pl's Opp. at 14 (complaining that "each agency has taken its own distinct approach to producing declarations and indices").  Yet, it is plaintiffs that chose to send broad, unbounded FOIA requests to multiple components within DOJ, and DOJ regulations require each component of the Department to independently process FOIA requests. 28 C.F.R. § 16.4.  It is hardly surprising then that each component responded separately to plaintiffs' requests and that each has defended the withholding of records that each independently determined to withhold.

68 Fed. Reg. 15315 (Mar. 25, 2003) (discussing the various categories of information that may be classified in the interests of national security).[5]  Nor do plaintiffs identify – or even discuss – any reason why the DNI's determinations as to the harms arising from the disclosure of classified information should not be given the "substantial weight" the Court of Appeals has required. See Deft's Mot. at 27-28 (citing, inter alia, Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984); Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)).[6]  Plaintiffs also do not discuss

_____

[5] Plaintiffs urge the Court to "consider that three federal courts have recently ruled in parallel litigation about the Program that the government has overstated its invocations of the statue secrets privilege." Pl's Opp. at 12.  Defendant disputes this characterization of the recent rulings in the cases identified by plaintiffs; plaintiffs themselves acknowledge that the cases are "not controlling," id.; and all three rulings are the subject of pending appeals or petitions for interlocutory review.

[6] Plaintiffs' only response to the DNI's substantive showing that seven specific categories of information concerning the TSP cannot be disclosed without both compromising intelligence sources and methods, which are specifically protected from disclosure by statute, and causing exceptionally grave harm to the national security, is to point the court to the "substantial amount of information," Pl's Opp. at 8, that the Government has revealed about the TSP, and to spend pages cataloguing these public disclosures. See Pl's Opp. at 8-11.  This catalogue is entirely irrelevant for two reasons.  First, as the Supreme Court has acknowledged, "[t]he national interest sometimes makes it advisable, or even imperative, to disclose [] information. . . . [I]t is the responsibility of the [Executive Branch], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process."  Central Intelligence Agency v. Sims, 471 U.S. 159, 180 (1985).  Second, as Executive Branch officials that have spoken publicly about the TSP have made abundantly clear, details about the program remain highly classified.  See, e.g., Prepared Remarks for Attorney General Alberto R. Gonzales at the Georgetown University Law Center, Jan. 24, 2006, available at http://www.usdoj.gov/ag/speeches/2006/ag_speech_0601241.html ("This remains a highly classified program.  So my remarks today speak only to those activities publicly confirmed by the President"); Remarks by Gen. Michael V. Hayden, Jan. 23, 2006, National Press Club, available at http://fas.org/irp/news/2006/01/hayden012306.html (explaining the "challeng[es]" of discussing the TSP while at the same time "protecting our country's intelligence sources and methods"); see also Bradbury Decl. ¶ 20; Baker Decl. ¶ 14.  The government's willingness to discuss the limited information that can be discussed on the public record regarding a highly classified program – particularly where such discussions were prompted only by what appears to be the unauthorized disclosure of classified information to the media – cannot be used to undermine the government's determination, grounded in its "unique insights and special expertise concerning the kinds of disclosures that may be harmful," Krikorian v. Dept. of State, 984 F.2d 461, 464 (D.C. Cir. 1993), that certain other information concerning the TSP must remain classified in the interests of national security.  See Afshar v. Dept. of State, 702 F.2d 1125, 1130-31 (rejecting plaintiffs' claims that prior disclosures required rejection of government's withholding determinations in part because court should "avoid discouraging the agency from disclosing such information about its intelligence function as it feels it can without endangering its performance of that function") (citing Salisbury

– much less offer any reason to doubt – either the "reasonableness," the "good faith," or the "plausibility" of the DNI's specific determinations regarding the kinds of information that cannot be disclosed.  See Gardels. v. Central Intelligence Agency, 689 F.2d 1100, 1105 (D.C. Cir. 1982) (when evaluating the withholding of classified information, the issue for the Court is whether "on the whole record, the Agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in the field of foreign intelligence in which [the agency] is expert and has been given by Congress a special role").  In the absence of any effort by plaintiffs to contest the DNI's determinations as to the substantial harms that would be caused to national security by disclosure of the categories of information he identifies, and because "the executive branch departments responsible for national security and national defense have unique insights and special expertise concerning the kind of disclosures that may be harmful," Am. Civil Liberties Union v. U.S. Dept. of Justice, 265 F. Supp. 2d 20, 28 (D.D.C. 2003) (Huvelle, J.), the DNI's determinations should be fully accepted by this Court.  For identical reasons, the determinations regarding harm to national security described in the declarations provided on behalf of the NSA, Defts' Mot. Exs. M & N, see Deft's Mot. at 38-41, 52-53 – which are not even mentioned in passing in plaintiffs' papers – should be accepted in full.

In light of the unchallenged determinations made by the DNI and the NSA concerning the need for withholding certain kinds of information, as described herein, each of the declarations provided on behalf of the DOJ components that made withholding determinations is more than sufficient to demonstrate DOJ's entitlement to summary judgment under prevailing law.

**A.    ODAG Is Entitled to Summary Judgment.**

The Office of the Deputy Attorney General ("ODAG"), as described in the Declaration of J. Patrick Rowan ("Rowan Decl.," Deft's Mot., Ex. G), withheld five records or categories of records

_____

v. United States, 690 F.2d 966, 971 (D.C. Cir. 1982)).

in response to the request of the ACLU.  See Rowan Decl. ¶ 13.  Three of these categories of records, ODAG 36, 59, and 64, are described in full on the public record: these records consist of "classified filings, drafts of filings, and internal deliberative exchanges and attorney notes concerning such filings made in various federal district courts in response to a request or a motion by a federal criminal defendant for information regarding NSA activities and/or the TSP."  Id. ¶ 16.[7]  As Mr. Rowan explains, these documents are withheld under FOIA Exemptions 1, 3, and 7(A).[8] Specifically, Mr. Rowan notes that the records are classified and were filed with the federal district courts under the provisions of the Classified Information Procedures Act, 18 U.S.C. App. 3, see Rowan Decl. ¶ 17; that they contain information concerning the operation and targeting of the TSP which cannot be disclosed without causing exceptional harm to the national security, see Rowan Decl. ¶ 18; DNI Decl. ¶ 35; and, moreover, that they contain details of an intelligence gathering method, the TSP, which is information protected from disclosure by federal statute, see Rowan Decl. ¶ 17-18; DNI Decl. ¶ 22-34; 50 U.S.C. § 403-1(i)(1).  This information adequately describes why these documents fall within the domain of Exemptions One and Three.  See Def't's Mot. at 27-34. Moreover, Mr. Rowan explains that ODAG 36, 59, and 64 relate to ongoing law enforcement proceedings, and describes how those proceedings would be compromised by the public disclosure of filings that the presiding district courts have accepted ex parte and/or under seal.  Rowan Decl. ¶ 20.  Records compiled for purposes of law enforcement where disclosure would disrupt ongoing

---

[7]  Plaintiffs' generalized complaint that the level of redacted material in DOJ's submissions prevents them from making any substantive response, see Pl's Opp. at 15-17, is belied by the fact that plaintiffs make no substantive response to DOJ's justification for withholding even those records, such as ODAG 36, 59, and 64, which are described entirely on the public record.  As is well established in this district, plaintiffs' failure to respond in substance to defendant's claims of exemption may be construed as waiver.  See Tribune Co. v. FCC, 133 F.3d 61, 69 n. 8 (D.C. Cir. 1998) (noting "requirement that . . . parties' arguments be sufficiently developed lest waived").

[8]  As Mr. Rowan also describes, certain of these records are drafts and were withheld under Exemption 5, see Rowan Decl. ¶ 21, and contain personally identifying information that was withheld to protect personal privacy and the identities of law enforcement agents under Exemptions 6 and 7(C).  Id. ¶¶ 22-23.  Plaintiffs do not challenge these withholdings.  See Pl's Opp. at 44 n. 25.

criminal proceedings are categorically exempt under Exemption 7(A) of FOIA. See Deft's Mot. at 68-70, 73. Thus, the descriptions of ODAG 36, 59, and 64 and the explanations for their proper withholding under FOIA, see Rowan Decl. ¶¶ 16-23, are more than adequate to demonstrate that these records fall "logically within the domain of the exemption claimed." King, 830 F.2d at 217.

Plaintiffs, however, make no effort to contest DOJ's claim to the applicability of the identified exemptions to these documents on the basis of this public record justification. Absent any such challenge, and in the face of clear descriptions of the nature of these records and the reasons for their withholding, ODAG is entitled to the entry of summary judgment as to its withholding of these three categories of records.

The remaining records withheld by ODAG are similarly described with sufficient particularity, albeit in a classified manner, to warrant the grant of summary judgment. Of these, ODAG 39 consists of draft documents, see Rowan Decl. ¶ 24; see also Deft's Mot. at 58-59; plaintiffs do not challenge the withholding of documents of this type, see Pl's Opp. at 44 n.25, and so, ODAG 39 is no longer at issue. As to the remaining record, ODAG 37, a memorandum, the Court is respectfully referred to the classified portions of Mr. Rowan's declaration, ¶¶ 24-26, for a description of the document and the justification for its withholding. See also Deft's Mot. at 34. As Mr. Rowan explains, this document contains classified information regarding the operation of the TSP, see id., which the Director of National Intelligence has identified as information that cannot be disclosed without substantially compromising the national security of the United States, or without compromising, in derogation of federal statute, information relating to intelligence sources and methods. See DNI Decl. ¶¶ 27; 50 U.S.C. § 403-1(i)(1). As with the other records identified by ODAG, the classified portions of Mr. Rowan's declaration plainly demonstrate that ODAG 37 falls "logically within the domain of the exemption[s] claimed." King, 830 F.2d at 217.

### B.    OLC Is Entitled to Summary Judgment.

The Office of Legal Counsel ("OLC"), as described in the Declaration of Steven G. Bradbury

("Bradbury Decl.," Deft's Mot., Ex. A), withheld 91 records or categories of records that were located in OLC, as well as eight records or categories of records referred by the FBI, 30 records or categories of records referred by ODAG, and 24 records or categories of records referred by OIPR. Bradbury Decl. ¶ 27; see also id. Ex. K.

Mr. Bradbury's declaration groups these records into "manageable segments," Vaughn, 484 F.2d at 826, by dividing the records into six categories based on their content for purposes of explaining the justifications for their withholdings. As described above, this approach is fully consistent with the standards laid out by the Court of Appeals. See generally Judicial Watch, 449 F.3d at 147; Gallant, 26 F.3d at 173. Two of these categories of records, Category B, i.e., OLC 35, 36, 37, 75, and 207, and ODAG 12, see Bradbury Decl. ¶¶ 42-47, and Category D, i.e. OLC 1, 2, 3, 4, 5, 6, 10, 11, 15, 18, 19, 22, 23, 66, 68, 69, 72, 73, 92, 100, 104, 109, 110, 111, 112, 122, 124, 136 and 137; ODAG 26, 28, 30, 33 and 58, and OIPR 25, 27, 71 and 94, see Bradbury Decl. ¶¶ 54-58 & Ex. K, cannot be further described without compromising classified information.[9] Thus, the Court is respectfully referred to the classified portions of Mr. Bradbury's declaration for descriptions of these records and the justifications for their withholding.[10] The remaining categories of records,

---

[9]   As Mr. Bradbury's declaration and its accompanying Exhibit K makes clear, within Category D, OLC 1, 2, 3, 4, 5, 6, 11, 15, 22, 23, 68, 69, 72, 73, 92, 104, 109, 110, 111, 112, 122, 124, 136 and 137; and ODAG 26, 28, 30 and 58 are drafts or discussions about drafts. See Bradbury Decl. ¶¶ 56, 58 & Ex. K. Plaintiffs do not challenge the withholding of documents of this nature, see Pl's Opp. at 44 n. 25; these documents, accordingly, are thus properly withheld under Exemption Five, and are no longer at issue.

[10]   Contrary to plaintiffs' belief, see Pl's Opp. at 23-27; 44, a review of the classified portions of Mr. Bradbury's declaration, see ¶¶ 22 & n. 2; see also DNI Decl. ¶¶ 18, 30, also makes clear that OLC has met its obligation to consider the segregability of the responsive documents. In light of this information, and the extraordinary care that has been exercised by government officials when discussing the TSP to avoid the disclosure of classified information, see, e.g., note 6, supra, Bradbury Decl. ¶¶ 5-6; Baker Decl. ¶ 15, it is plain that plaintiffs' speculation that "it is likely that a side-by-side comparison of the withheld records with the publicly available information would demonstrate that much of the information in the withheld records has already been publicly aired by the government in officially authorized testimony, speeches, publications and other forums," Pl's Opp. at 41, is entirely baseless.

however, are described in full with only minimal information redacted. Yet, plaintiffs profess that they cannot make – and indeed, do not make – any substantive response.

First, Mr. Bradbury explains that OLC withheld certain records associated with the process by which the TSP is periodically reauthorized by the President ("Category A"). See Bradbury Decl. ¶¶ 30-38 (discussing OLC 34, 67, 74, 78, 93; and 101; ODAG 10, 17, 18, 19, 48, and 65; OIPR 141; and FBI 7). With the exception of FBI 7, all of these records are "drafts provided to OLC or other Department components for inter-agency review and comment, or related notes of OLC staff." Id. ¶ 36. Plaintiffs do not challenge the proper withholding of documents of this nature, see Pl's Opp. at 44 n. 25; these documents, thus, are no longer at issue in this litigation.

FBI 7, which is not a draft, is withheld for the specific reasons stated by Mr. Bradbury: the document "contains classified information regarding the terms of the President's authorization of the TSP, which if disclosed would compromise the effectiveness of the Program to the detriment of national security" for the reasons given in the detailed declaration of the DNI. See Bradbury Decl. ¶ 32 (citing DNI Decl. ¶ 26). As noted above, plaintiffs make no substantive response to the DNI's determination that information of this type must be protected from disclosure under FOIA Exemptions One and Three, and that determination is entitled to "substantial weight." Miller, 730 F.2d at 776; Military Audit Project, 656 F.2d at 738. Similarly, Mr. Bradbury's informed withholding decision, see Bradbury Decl. ¶¶ 4-6 (describing the basis for his understanding of the harms that are likely to result if information concerning the TSP is improperly disclosed); see also id. ¶¶ 18-24 (describing the exceptionally grave harms to the national security resulting from the unauthorized disclosure of classified information relating to the TSP), is also entitled to "substantial weight." Miller, 730 F.2d at 776; Military Audit Project, 656 F.2d at 738. Plaintiffs offer no reason to depart from this required deference, and the withholding of FBI 7 must be upheld.

The remaining documents discussed in Mr. Bradbury's declaration as concerning the President's periodic reauthorization of the TSP, see Bradbury Decl. ¶¶ 39-41 (discussing OLC 51,

63, 63, 114, and 115; ODAG 3 and 40, OIPR 138, 139, and 140; and FBI 4 and 5), are further described in the classified portions of Mr. Bradbury's declarations. Because those descriptions are sufficient to demonstrate that the withheld material "logically" falls within the claimed exemptions, OLC's withholding determinations as to the records contained in Category A must be upheld.

Category C contains records or categories of records described by Mr. Bradbury as relating generally to the targets of the TSP. See Bradbury Decl. ¶¶ 48-53. More specifically, Mr. Bradbury explains that certain of these records, OLC 76, 107, 139, 144, and 200; ODAG 23 and 24; and OIPR 9, contain information relating to "the criteria used for targeting and the appropriateness of targeting certain groups or individuals under the TSP," id. ¶ 48, and that the remaining records, OLC 78 and 145; ODAG 10, 15, 16, 17, 18, and 19, "contain reporting with respect to the intelligence successes achieved through the use of the TSP." Id. ¶ 49. As to all of these documents, Mr. Bradbury comprehensively explains, relying on the determinations of the DNI, that disclosure would both cause substantial harm to the national security of the United States, and compromise the effectiveness of the intelligence gathering conducted through the method of the TSP, in violation of federal statutory protections. See Bradbury Decl. ¶¶ 50-52.

Specifically, although some of this justification must be classified, Mr. Bradbury describes with particularity, and on the public record, that:

> as a matter of course, the United States does not publicly confirm or deny whether any individual is subject to [covert] surveillance activities . . . because to do so would tend to identify actual targets. . . . The harm of revealing targets of foreign intelligence surveillance is obvious. If an individual learns or suspects that his communications are or may be targeted for surveillance, he can take steps to evade detection, to manipulate the information received, or to implement other countermeasures aimed at undermining U.S. intelligence operations. The resulting loss of accurate intelligence from such a source deprives U.S. policymakers of information critical to U.S. interests, and in the case of the TSP, could result in the catastrophic failure of the early warning system that the President has established to detect and prevent the next terrorist attack.

Id. ¶ 50 (citing DNI Decl. ¶ 35). Because the disclosure of either records containing "the criteria used for targeting and the appropriateness of targeting certain groups or individuals under the TSP,"

Bradbury Decl. ¶ 48, or "reporting with respect to the intelligence successes achieved through the use of the TSP," id. ¶ 49, would tend to reveal targets of the TSP, and thus cause the very harms that Mr. Bradbury and the DNI describe, and would, furthermore, identify sources of foreign intelligence information, a disclosure specifically prohibited by federal statute, 50 U.S.C. § 403-1(i)(1), these documents are properly withheld under Exemptions One and Three.  See Def't's Mot. at 35, 49-52.

As before, plaintiffs make no substantive response whatsoever to this detailed description of the nature of the documents withheld, the reasons for their withholding, and the claim that these documents not only fall "logically within the domain of the claimed exemptions," King, 830 F.2d at 217, but are unquestionably exactly the sort of information intended to be protected by FOIA Exemptions One and Three.  See, e.g., Def't's Mot. at 33-34.  OLC, thus, is entitled to summary judgment as to the withholding of these records.

Category E of Mr. Bradbury's declarations concerns several sets of materials related to legal opinions of OLC.  See Bradbury Decl. ¶¶ 60-71.  The first set of these documents, OLC 16, 54, 59, 62, 85,113, 129, 131, 132, 133, and 146; ODAG 1, 2, 5, 6, 38, [4]2, and 52; OIPR 28, 29, and 37; and FBI 41 and 51, are final memoranda prepared by OLC in its "purely advisory role, providing legal advice and assistance," for purposes of "assisting the Attorney General in the discharge of his responsibility as legal adviser to the President and heads of Executive Branch departments and agencies," id. ¶ 62.  As Mr Bradbury explains, "[a]ll of these memoranda  were prepared with the expectation that they would be held in confidence, and to the best of my knowledge, they have been held in confidence."  Id.  Mr. Bradbury further explains that "[c]ompelled disclosure of these advisory and pre-decisional documents would cause substantial harm to the deliberative process of the Department of Justice and the Executive Branch and would disrupt the attorney-client relationship between the Department and the President and other officers in the Executive Branch," id. ¶ 63, for a variety of reasons, and thus are properly withheld under Exemption Five.  See id.; see also Def't's Mot. at 61-62 (citing cases upholding the withholding of internal agency memoranda

prepared for purposes of providing legal advice).  Again, plaintiffs make no substantive response.

Mr. Bradbury also provides additional, classified, information to justify the withholding of these

records (with the exception of OLC 146, which is not classified, see Deft's Mot. at 35 n.21) under

Exemptions One and Three, see Bradbury Decl. ¶ 65.[11]

Mr. Bradbury also describes the withholding of OLC 40, 41, 42, 53, 60, 83, 86, 87, 88, 89,

90, 108, 203, 204, and 205; ODAG 8, 43, 44, 45, 49, 50, 51, and 53; OIPR 1, 2, 32, 33, 34, 35, 82,

and 142, and FBI 19, 58, which are "draft, notes, and attorney comments relating to the preparation

of [OLC] memoranda or to the preparation or development of other legal advice offered by OLC,"

and explains that these documents are properly withheld, inter alia, under Exemption Five.  Bradbury

Decl. ¶ 66; see also Deft's Mot. at 54-55, 58-59; cf. Bradbury Decl. ¶¶ 65-66 (describing the

applicability of other, overlapping, exemptions).  Plaintiffs do not challenge the withholding of

documents of this nature, see Pl's Opp. at 44 n.25, and thus OLC is entitled to summary judgment

as to the withholding of the documents identified in paragraph 66 of Mr. Bradbury's declaration.

Under Category E, Mr. Bradbury also describes the withholding of OLC 8, 9, 26, 27, 28, 29,

32, 43, 61, 71, 77, 79, 94, 102, 103, 106, 118, 119, 120, 121, 123, 140, 141, 142, 143, 206, and 208;

ODAG 21 and 22; and OIPR 75, and 129, which constitute "informal communications (facsimile

transmissions and electronic mail messages) to and from OLC and other federal government agencies

containing attorney-client communications regarding very specific questions about the TSP and

corresponding attorney advice, or notes relating to such communications." Bradbury Decl. ¶ 69.  Mr.

Bradbury provides two examples of the sorts of material protected under this section, see id. ¶ 70,

which prompts plaintiffs' objection that "the government has shown itself entirely capable of

providing individually detailed Vaughn index entries, but has chosen to do so only with respect to

a few documents sprinkled throughout the declarations."  Pl's Opp. at 20.

---

[11] Plaintiffs are thus incorrect in their assertion that the documents described in this portion
of Mr. Bradbury's declaration are withheld "solely under Exemption (b)(5)."  See Pl's Opp. at 32.

This objection is specious.  The Court of Appeals has conclusively held that "[w]e have never required repetitive, detailed explanations for each piece of withheld information – that is, codes and categories may be sufficiently particularized to carry the agency's burden of proof," 449 F.3d at 147, and plaintiffs do not – indeed, could not – challenge DOJ's claim that "informal communications (facsimile transmissions and electronic mail messages) to and from OLC and other federal government agencies containing attorney-client communications regarding very specific questions about the TSP and corresponding attorney advice, or notes relating to such communications" Bradbury Decl. ¶ 69, fall squarely within the protection of the attorney-client privilege.  See Def't's Mot. at 55, 59-60.  These documents fall "logically" within the material subject to the protection of Exemption Five, and OLC's determination to withhold them must be upheld.  Moreover, as Mr. Bradbury explains, these informal communications concerning the highly classified TSP "implicate[] the same concerns regarding the release of classified information and the potential harms to intelligence sources and methods identified in the Declaration of DNI Negroponte."  Bradbury Decl. ¶ 71 (citing DNI Decl. ¶¶ 22-35).  As noted above, the DNI's determinations are unchallenged.

OLC also withheld documents contained in Category F, "various briefing materials and talking points that were created within the Department to assist senior Administration officials in addressing various points about the TSP," specifically OLC 7, 46, 65, 80, 81, 82, 84, 116, 125, 126, 134, and 202; ODAG 34, 41, and 54; and OIPR 13 and 137, Bradbury Decl. ¶ 72, under Exemptions Five, see id. ¶ 73, as well as (with the exception of OLC 84, an unclassified draft of material previously released to plaintiffs, see id. ¶ 75; Def't's Mot. at 35 n. 21) under Exemptions One and Three, see id. ¶ 75.  Plaintiffs' only response to these claims of exemption is to complain that "it is unclear for whom these materials were prepared, whether they were prepared for public disclosure or internal debate, or even if they included materials that were already public, such as new stories that are often included in 'briefing materials.'"  Pl's Opp. at 20-21.  These speculative concerns are directly rebutted by the plain attestation made by Mr. Bradbury that the documents identified in this

category "were underlined created within the Department to assist underlined senior Administration officials."  Bradbury ¶ 72 (emphases added); "may not be used . . . or may be modified by the speakers in any particular setting," id. ¶ 73; "are deliberative by their very nature," id.; "reflect the exchange of ideas and suggestions that accompanies all decision making," id.; and "in many cases . . . reflect assessments by attorneys and other staff about issues on which they have been asked to make recommendations or provide advice." Id.  Moreover, that talking points or briefing materials may have been prepared to aid public comment is irrelevant to the proper assertion of the deliberative process privilege.  To the extent that DOJ officials ultimately relied on any of the draft talking points in any public statements, those statements are, by definition, public.  The agency's decision to rely on a particular point in defense of its position is therefore reflected in the public record, and plaintiffs do not need access to the draft talking points to know what that position is:

> If the segment appeared in the final version, it is already on the public record and need not be disclosed. If the segment did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so . . . . [S]uch disclosure of the internal workings of the agency is exactly what the law forbids.

Lead Indus. Ass'n, Inc. v. OSHA, 610 F.2d 70, 86 (2d Cir. 1979).

The one sentence in which plaintiffs articulate their concerns regarding the withholding of these documents, accordingly, does not undermine DOJ's claim that the information contained in this Category is properly withheld under Exemption 5, and plaintiffs make no other substantive response to DOJ's claims of exemption as to these documents.  Their withholding is fully justified. See Def't's Mot. at 60 (citing cases upholding the withholding of similar materials).

Finally, as Mr. Bradbury's declaration explains, OLC withheld drafts of the White Paper, OLC 116 and 201, and OIPR 60, under Exemption Five, Bradbury Decl. ¶ 74, a determination not challenged by plaintiffs,  see Pl's Opp. at 44 n.25, as well as copies of a letter from Senator J.D. Rockefeller, which sought classified information relating to the TSP, Bradbury Decl. ¶ 76 (discussing OLC 117 & FBI 18), under Exemptions One and Three, to which plaintiffs make no

specific objection.  In all, given the specificity of the information provided by Mr. Bradbury's declaration, coupled with plaintiff's utter failure to mount any substantive objection to any specific claim of exemption, OLC's withholding determinations must be upheld.

### C.    OIPR Is Entitled to Summary Judgment

The Office of Intelligence Policy and Review ("OIPR"), through the Declaration of James A. Baker ("Baker Decl.," Deft's Mot., Ex. C), also has provided a more than adequate explanation for its decisions to withhold 37 documents identified in OIPR's search, as well as 14 documents referred to OIPR by OLC, five documents referred to OIPR by ODAG, and one document referred to OIPR by the FBI.  See Baker Decl. ¶ 17.  OIPR "provides legal advice to the Attorney General and the United States intelligence agencies, regarding questions of law and procedure that relate to United States intelligence activities," Baker Decl. ¶ 3, and is responsible for the preparation and presentation of applications for, inter alia, electronic surveillance to the Foreign Intelligence Surveillance Court ("FISC"), id., which conducts its proceedings under strict security measures. See id. ¶ 21.  Given the nature of this work, it is hardly surprising that much of OIPR's description of the responsive documents and the reasons for their withholding was required to be done only in a classified manner.  See id. ¶¶ 20, 22, 24-31.  While the Court is respectfully referred to the classified filings to conduct its review of OIPR's withholdings, it is noteworthy that, once again, plaintiffs have failed to make any substantive response to OIPR's claims of withholding even as to those documents described on the public record.

First, as noted in Mr. Baker's declaration, all of the documents identified in paragraph 22, i.e., OLC 1, 2, 3, 92, 110; ODAG 28, 30, are drafts, see Baker Decl. ¶ 23, and are withheld, among other reasons, under Exemption 5.  Plaintiffs do not challenge the withholding of these documents, Pl's Opp. at 44 n. 25, and as a result, these documents are no longer at issue in this litigation. Similarly, all of the documents identified in paragraph 34, i.e., OIPR 32, 34, 63, 72, and 73, and OLC 138, are also "draft documents that were provided to OIPR for review and comment and that reflect

OIPR's suggestions and edits, as well as information provided to OIPR that informs its comments and edits." Baker Decl. ¶ 34. The withholding of these "draft documents and discussions about drafts and the drafting process" is not challenged by plaintiffs. See Pl's Opp. at 44 n.25. Plaintiffs also are not challenging the withholding of the category of documents identified by OIPR as OIPR 56, which are duplicates of documents already identified and processed by other components or agencies. See Baker Decl. ¶ 42; Pl's Opp. at 44 n.25; nor do plaintiffs provide any basis from which to discern any substantive objection to the redaction of information from OIPR 66 and 67 pursuant to Exemptions 5, 6, and 7. See Baker Decl. ¶ 41.

As to the remainder of the documents discussed on the public record in Mr. Baker's declaration, plaintiffs apparently concede that OIPR has provided a sufficiently detailed description of OIPR 12 and OLC 128, copies of "a four-page memorandum," authored by Mr. Baker that "seeks legal advice from others at the Department," Baker Decl. ¶32; see Pl's Opp. at 20 & n. 15 (identifying the discussion of these documents as an example of an "individually detailed Vaugnn index entr[y]"). Plaintiffs offer no other substantive challenge to OIPR's explanation that these documents are properly withheld under Exemption 5 because the "memorandum cannot be disclosed without compromising [Mr Baker's] expectation of confidentiality in communications with attorneys who provide advice to [him] and to OIPR, and without compromising the full and frank exchange of information that is necessary to both the attorney-client relationship and the Government's deliberative process." See Baker Decl. ¶ 32. As Mr. Baker also explains, the documents are also properly withheld under Exemptions One and Three. Id. ¶ 33. Absent any substantive opposition from plaintiffs, and in light of the more than adequate explanation that demonstrates that a classified memorandum authored for the purposes of seeking legal advice falls squarely within the terms of these exemptions, the withholding of OIPR 12 and OLC 128 must be upheld.

### D.    The FBI Is Entitled to Summary Judgment.

Plaintiffs challenge the FBI's submission as particularly "vague and unhelpful."  Pl's Opp. at 21.  Plaintiffs fail, however, to recognize the significant and legitimate concerns, fully articulated by the FBI in its classified submission, which prevent further public disclosure of the nature of the responsive documents identified by the FBI.  See, e.g., Hardy Decl. ¶ 33 (describing categories of records withheld), ¶¶ 41-53 (identifying the harms that would result from disclosure of information in each category).   The FBI's comprehensive in camera declaration, to which the Court is respectfully referred, provides a more than adequate basis for sustaining the FBI's multiple, and overlapping, exemption claims.  See also Deft's Mot. at 37-38 (Exemption One); 42-45 (Exemption Two); 50-52 (Exemption Three); 57-62 (Exemption Five); and 67-72, 77-79 (Exemption Seven).[12]

As with every other component, moreover, plaintiffs offer no substantive objection to even that information provided by the FBI that is of public record.  For example, although plaintiffs do not challenge the documents withheld by the Criminal Division, see Pl's Opp. at 44 n.25, they make no substantive response to nearly identical documents withheld by the FBI.  The Criminal Division's documents concern the "on-going investigation into the unauthorized disclosure, or 'leak' of classified information concerning the [TSP]," and were withheld on the grounds, inter alia, that disclosure of this information would compromise the on-going criminal investigation.  Deft's Mot., Ex. E, McIntyre Decl. ¶ 12 (discussing FOIA Exemption 7(A)); see generally id. ¶¶ 13-19.  The FBI also withheld information relating to the ongoing leak investigation on virtually identical grounds. See Hardy Decl. ¶¶ 99-111; Deft's Mot. at 77.  Nonetheless, plaintiffs do not articulate whether – or on what grounds – they continue to challenge the FBI's withholding of this information.

Given plaintiffs' failure to specifically articulate any basis to doubt the FBI's determinations, and in light of the detailed explanations offered by the FBI for the withholding of its responsive

---

[12]  Plaintiffs do not challenge the propriety of the FBI's withholdings under Exemption Six, as well as certain of its withholdings under Exemptions Two, Five, and 7(C).  Pl's Opp. at 44 n.25.

materials in its classified declarations, the FBI is entitled to summary judgment.

### E.    DOJ Is Entitled to Summary Judgment as to Referrals Made to the NSA

Plaintiffs' opposition to DOJ's motion for summary judgment is devoid of any specific reference whatsoever to the submission made by the NSA in support of its determination that the documents referred to it for processing by various DOJ components could not be disclosed without both causing harm to the national security, thus justifying withholding under Exemption One, or without disclosing information concerning the "activities of the NSA," a category of information specifically protected from disclosure by federal statute, see 50 U.S.C. § 402 note, thus justifying withholding under Exemption Three.  See Deft's Mot., Ex. M (Declaration of Louis F. Giles, Director of Policy, NSA) & Ex. N (Declaration of Joseph B., Deputy Chief of Staff for Operations and Support, Signals Intelligence Directorate, NSA).

Absent any specific challenge to the NSA's detailed justifications for withholding, those explanations are more than adequate to support NSA's withholding determinations for all of the reasons set forth in DOJ's opening papers, see Deft's Mot. at 38-41, 52-53, 57-58.  DOJ is entitled to summary judgment as to these referred documents.

## II.    GIVEN THE SUFFICIENCY OF DOJ'S SUBMISSIONS, IN CAMERA REVIEW IS NEITHER NECESSARY NOR APPROPRIATE.

As fully described above, plaintiffs, in their opposition to DOJ's Motion for Summary Judgment, do not substantively oppose any of DOJ's arguments as to the applicability of the relevant FOIA exemptions.  Rather, plaintiffs simply ask this Court to conduct wide-ranging in camera review of the documents at issue.  As explained supra, summary judgment for DOJ is entirely appropriate on the basis of its submissions to date, and plaintiffs make little substantive argument to contrary.  Thus, plaintiffs' request that the Court conduct in camera review of the documents at issue runs contrary to judicial efficiency and the law of this Circuit, and should be rejected.

Whether to conduct in camera review is left to "the broad discretion of the trial judge."

Center for Auto Safety v. EPA, 731 F.2d 16, 20 (D.C. Cir. 1984). "The ultimate criterion is . . . [w]hether the district judge believes that in camera inspection is needed in order to make a responsible de novo determination on the claims of exemption." Id. Thus, in camera review may be "particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of the exemption claims or there is evidence of bad faith on the part of the agency." Quinon v. Fed. Bureau of Investigation, 86 F.3d 1222, 1227-28 (D.C. Cir. 1996). In camera review may also be appropriate "when the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents." Id. at 1228.

In any other circumstance, however, a district court's review of a FOIA case should be limited to the agency's submissions and in camera review of withheld documents is "generally disfavored." See PHE, Inc. v. Dept. of Justice, 983 F.2d 248, 253 (D.C. Cir. 1993). This is particularly so in cases involving national security. See Armstrong v. Exec. Ofc. of the President, 97 F.3d 575, 580 (D.C. Cir. 1996) ("In national security cases, a district court exercises a wise discretion when it limits the number of documents it reviews in camera. This has two clear benefits. First, it makes it less likely that sensitive information will be disclosed. Second, if there is an unauthorized disclosure, having reduced the number of people with access to the information makes it easier to pinpoint the source of the leak").

Here, where the agency has met its burden with sufficiently detailed submissions, see supra, where plaintiffs make no specific allegation of bad faith,[13] and where plaintiffs have made no claim

---

[13]    At best, plaintiffs point to three alleged discrepancies in DOJ's submissions that they claim amount to "a pattern of inconsistent application of the FOIA exemptions" that should cause the Court "uneasiness." See Pl's Opp. at 22-23. None of these allegations requires any such concern. OLC 116 and OIPR 60 are drafts of the White Paper, which has been released to plaintiffs in its final form. OLC 116 and OIPR 60, as DOJ's submissions make clear, however, are different drafts. Thus, OIPR 60 is not classified, see Deft's Mot. at 35 n. 21, and is withheld only under Exemption Five, whereas OLC 116 is an "early draft[]" of this document which contains classified information, and is thus withheld under Exemptions One, Three and Five. Bradbury Decl. ¶ 74. There is nothing inconsistent about this application of the exemptions, and in any event, plaintiffs do not challenge the withholding of drafts, see Pl's Opp. at 44 n.25, and, thus, neither OLC 116 nor

and presented no evidence that would give rise to a credible dispute over the contents of the documents, "in camera review is neither necessary nor appropriate." Hayden v. Nat'l Security Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Indeed, in camera review should not be "resorted to as a matter of course, simply on the theory that 'it can't hurt'." Quinon, 86 F.3d at 1228; see also Hayden, 608 F.2d at 1387 (reliance on agency submissions in lieu of in camera review "is in accordance with congressional intent that courts give agency affidavits 'substantial weight,' in recognition of the agency's expertise. In this scheme, in camera review is a "last resort. . .").

Finally, plaintiffs' suggestion that a special master be appointed for purposes of conducting or assisting any in camera review must be rejected out of hand. It is well established that, under the separation of powers established by the Constitution, the Executive Branch is responsible for the protection and control of national security information. See Dept. of the Navy v . Egan, 484 U.S. 518, 527 (1988). By Executive Order, therefore, the President has instructed federal agencies to strictly control classified information in their possession and to ensure that such information is disclosed to only a person in whose favor a determination of eligibility for access has been made; where the person has signed an approved nondisclosure agreement; and where the person has a "need-to-know." Exec. Order No. 12958, § 4.1, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003). Thus, the decision to grant or deny access to classified information lies squarely within the discretion of the Executive. See Egan, 484 U.S. at 529; Dorfmont v. Brown, 913 F.2d 1399, 1401 (9th Cir. 1990) ("The decision to grant or revoke a security clearance is committed to the discretion of the President by law.").

---

OIPR 60 remain at issue in this litigation. The other two examples provided by plaintiffs – alleged discrepancies in the index entries for ODAG 7/OLC 130, and for ODAG 16/OLC 145 – are easily answered by reference to the sworn declaration of Mr. Bradbury. As Mr. Bradbury's declaration explains, ODAG 7/OLC 130 were withheld only under Exemptions One and Three, see Bradbury Decl. ¶ 59, whereas ODAG 16/OLC 145, were withheld under Exemptions One, Three and Five, see id. ¶¶ 49-53. Any discrepancy in the chart provided to aid the Court is a minor error, and while regrettable, crtainly does not demonstrate a pattern of inconsistent application of FOIA exemptions.

Accordingly, while, as here, an Article III judge may be provided with classified information in order to facilitate review of FOIA exemption claims, any order of the Court that purports to grant access to classified information to a special master, or that directs the United States to do so, would raise serious separation of powers questions,[14] and would unnecessarily risk the compromise of classified information vital to the national security.  See Halkin v. Helms, 598 F.2d 1, 7 (D.C. Cir. 1978) ("It is not to slight lawyers, judges or anyone else to suggest that any [] disclosure [of classified information] carries with it the serious risk that highly sensitive information may be compromised.") (emphasis added); Colby v. Halperin, 656 F.2d 70, 72 (4th Cir. 1981) (finding that "[d]isclosure to one person . . . may seem of no great moment, but information may be compromised inadvertently as well as deliberatively," and, thus, "no one should be given access to such information who does not have a strong, demonstrated need for it") (emphasis added).  Granting plaintiffs' request for appointment of a special master, accordingly, is manifestly inappropriate.[15]

---

[14]  In the case on which plaintiffs rely, In re U.S. Dept. of Defense, 848 F.2d 232 (D.C. Cir. 1988), see Pl's Opp. at 45-47, the United States did not raise a separation of powers objection and hence the constitutional implications of the matter were not addressed.  As the Court of Appeals recognized in Stillman v. Central Intelligence Agency, 319 F.3d 546 (D.C. Cir. 2003), a court confronted with a request to provide classified materials to third parties must "determine whether it can, . . . with the appropriate degree of deference owed to the Executive Branch concerning classification decisions, resolve the classification issue without the assistance of plaintiff's counsel [or other third party].  If not, then the court should consider whether its need for such assistance outweighs the concomitant intrusion upon the Government's interest in national security."  Only after making such determinations may a Court even consider entering an order allowing a third party access to classified materials, and even then "the Government may appeal and we will have to resolve [any] constitutional question."  Id. at 548-49.

[15]  If the Court were to find DOJ's submissions inadequate to permit de novo review as to the determination to withhold any particular records or categories of records, the proper recourse is to remand to the agency and order submission of a more detailed index as to any documents that remain of concern.  See, e.g., Campbell, 164 F.3d at 31 ("On remand, the district court can either review the documents in camera or require the [agency] to provide a new declaration. . . . The latter course is favored where agency affidavits are facially inadequate[.]") (citation omitted).  Plaintiffs' broad request for in camera review fails to specifically identify any such documents.

**CONCLUSION**

For the reasons stated herein, and in DOJ's opening brief, the Department of Justice is entitled to summary judgment with respect to its processing of the FOIA requests filed by EPIC, ACLU and the NSAF seeking information regarding the Terrorist Surveillance Program.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

JEFFREY A. TAYLOR
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch

_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Attorneys, Federal Programs Branch
Civil Division, U. S. Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 514-3146
Fax: (202) 318-7593
Email: rupa.bhattacharyya@usdoj.govDated:
November 9, 2006.