UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>    Plaintiff,<br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 06-00096 (HHK) |
| AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, THE NATIONAL SECURITY ARCHIVE FUND, INC.,<br><br>    Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No.06-00214 (HHK)<br><br><br>Judge Henry H. Kennedy<br>**CONSOLIDATED CASES** |

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR
*IN CAMERA* REVIEW**

Ann Beeson
Nasrina Bargzie
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2629

Meredith Fuchs (D.C. Bar No. 450325)
The National Security Archive Fund, Inc.
The George Washington University
Gelman Library, Suite 701

2130 H Street, N.W.
Washington, D.C. 20037

Marc Rotenberg (D.C. Bar No. 422825)
Electronic Privacy Information Center
1718 Connecticut Avenue, NW
Suite 200
Washington, DC 20009-1148
Phone: (202) 483-1209
Fax: (202) 483-1278

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
    of the National Capital Area
1400 20th Street, N.W. #119
Washington, D.C. 20036
Phone:  (202) 457-0800
Fax: (202) 452-1868

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

ARGUMENT …………………………………………………………………..…1

    I.    THE COURT SHOULD GRANT PLAINTIFFS' CROSS-MOTION FOR *IN CAMERA* REVIEW BECAUSE *IN CAMERA* REVIEW IS THE BEST SOLUTION FOR DEALING WITH THIS MATTER OF GREAT PUBLIC IMPORTANCE…………………………………………………1

    II.   THE COURT SHOULD GRANT PLAINTIFFS' CROSS-MOTION FOR *IN CAMERA* REVIEW WITHOUT FIRST REQUIRING A MORE DETAILED *VAUGHN* INDEX.…………………………………………..…4

    III.  THE COURT HAS THE AUTHORITY TO APPOINT A SPECIAL MASTER.…………………..……………………………………………...6

CONCLUSION……………………………………………………………...……12

**ARGUMENT**

I.     **THE COURT SHOULD GRANT PLAINTIFFS' CROSS-MOTION FOR**
       *IN CAMERA* **REVIEW BECAUSE** *IN CAMERA* **REVIEW IS THE**
       **BEST SOLUTION FOR DEALING WITH THIS MATTER OF GREAT**
       **PUBLIC IMPORTANCE.**

       The issue of whether the President may intercept the telephone and Internet

communications of American citizens within the United States without statutory

authorization or judicial oversight raises profound questions of constitutional powers and

public oversight.  It is a matter that calls out for public debate, congressional oversight,

and judicial engagement.  It is a matter that requires the informed decisionmaking that

democratic government and access to information laws make possible.  Instead, the

Administration has initiated a full-fledged public relations campaign seeking to convince

the American people of the necessity of the President's broad claims of inherent

authority.  *See* Plaintiffs Opposition ("Pl. Op.") 8-12.  Administration officials have given

radio addresses, speeches at universities, and have participated in web chats, all in an

attempt to turn the tide of the public outcry over the Administration's activities.  *Id.*  But

when plaintiffs seek access to the documents regarding the legal basis for the program

that could help the American people understand the propriety of the Administration's

actions, the Administration has responded with broad claims of secrecy and frustrated the

central goal of the Freedom of Information Act ("FOIA").

       In this case the government released to plaintiffs documents that were, for the

most part, already publicly available, made broad claims of secrecy for the remaining

documents, and then filed for summary judgment.  Not until the government's motion for

summary judgment were plaintiffs provided declarations and indices about the documents

in dispute.  Though these materials clearly lack the specificity required of the government

under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), they did begin to provide plaintiffs with some indication of the types of documents at issue.  As soon as plaintiffs were given a meaningful description of the documents, they readily narrowed the pool of disputed documents.

At this point in the proceeding, the Court should appoint a special master and perform an *in camera* review of a sample of the documents that remain in dispute.  The government's unbounded secrecy claims make the declarations and indices virtually useless in assessing the validity of the government's claims for withholding.  Thus, while the government claims that plaintiffs have not raised any substantive challenges, it fails to acknowledge that is has filed a grossly inadequate *Vaughn* index that effectively prevents any meaningful challenge.  *In camera* review would help to resolve this problem.

Far from arguing merely that "it can't hurt" for the Court to grant *in camera* review, Government's Response to Plaintiffs' Opposition ("Gov. Reply") 25, plaintiffs have asked the Court to grant *in camera* review because: (1) the documents at issue relate to an issue of extreme public importance, Pl. Op. 35-40; (2) other courts have rejected the government's blanket secrecy claims about the very program at issue in this case in parallel litigation, Pl. Op. 11-12;[1] (3) the government has inconsistently applied the most extensively used exemptions in this case on its own charts, which the government now

---

[1] The government points to *People for the American Way v. NSA*, Civ. No. 06-206 (D.D.C. Nov. 20, 2006), as support for its motion for summary judgment.  That case differs from this case in several important respects.  First, while PAWF sought release of disputed documents, *PAWF*, slip op. 1, plaintiffs seek *in camera* review of the documents.  The *in camera* review process will ensure that any legitimate concerns of the government are protected.  Second, unlike PAWF, each plaintiff here seeks documents relating to "'determinations about the legality of the'" Program.  Pl. Op. 4-5.  The *PAWF* court explicitly excluded this area from PAWF's FOIA request, and therefore from its decision.  *PAWF*, slip. op. 9 n.4.

appears to concede, Pl. Op. 22-23, Gov. Reply 24 n.13; and (4) the government's *Vaughn* index is insufficiently detailed, Pl. Op. 12-22.

Moreover, the government continues to ignore its responsibility to provide a segregability analysis. As plaintiffs noted in their opposition, the government's motion for summary judgment and the accompanying declarations and indices provide only a cursory analysis of segregability. *See* Pl. Op. 23-27. In its response to plaintiffs' opposition, the government continues to shirk its burden by mentioning segregability only in a single footnote, Gov. Reply 13 n.10, and there, only in reference to a different issue. Failure to provide this analysis alone is enough to preclude summary judgment in the government's favor. *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) ("A district court that 'simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof,' errs.," (quoting *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991))). The Court has an independent duty to ensure that the government has complied with its duty to segregate. *Ferranti v. Bureau of Alcohol Tobacco & Firearms*, 177 F. Supp. 2d 41, 46-47 (D.D.C. 2001) ("[T]his Court has an obligation to consider the segregability issue sua sponte."); *see* Pl. Op. 41-43. Granting plaintiffs' motion for *in camera* review will assist the Court in discharging this duty. *See id.*

The Court should also release to plaintiffs the total number of documents withheld and the total number of pages withheld. The government's allegation that plaintiffs have not provided a reason why that information should be released is both misleading and inaccurate. First, it is the government's burden to explain why information cannot be released, not the plaintiffs'. 5 U.S.C. § 552(a)(4)(B); *Judicial Watch v. Food & Drug*

*Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006).  Second, the number of documents, as well

information as to their distribution across the federal government, helps to reveal the

scope of the government's activities – the central aim of the FOIA – while raising no

cognizable national security issues that would require further litigation.  Pl. Op. 31-32.

FOIA exists to ensure that the American people have the opportunity to assess the

policies of their government.  The premise is openness and the presumption is disclosure.

The government should not be permitted to conceal so much information about such a

significant program without the opportunity for plaintiffs and the Court to determine the

validity of the government's position.

## II.    THE COURT SHOULD GRANT PLAINTIFFS' CROSS-MOTION FOR *IN CAMERA* REVIEW WITHOUT FIRST REQUIRING A MORE DETAILED *VAUGHN* INDEX.

Contrary to the government's contention, the "proper course" in this case is not to

generate more declarations that provide excuses for withholding the documents sought.

Gov. Reply 26 n.15.  Where a *Vaughn* index is inadequate the Court may grant *in camera*

review rather than require the government to submit a more detailed index.  *Krikorian*,

984 F.2d at 467 (in the context of a FOIA request implicating national security the D.C.

Circuit held "[w]e therefore leave it to the district court to determine on remand whether

more detailed affidavits are appropriate or whether an alternative such as *in camera*

review would better strike the balance between protecting sensitive foreign relations

information and disclosing non-exempt information as required by the FOIA"); *Spirko v.

U.S. Postal Ser'v*, 147 F.3d 992, 997-98, 998 n.5 (D.C. Cir. 1998) (similar).

The particular circumstances of this case support conducting *in camera* review

rather than requiring a more detailed *Vaughn* index.  *See Quinon v. Fed. Bureau of*

*Investigation*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (stating that *in camera* review is

"particularly appropriate" where the "agency affidavits are insufficiently detailed");

*Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987) (stating that it

"may be necessary" to engage in *in camera* review if "the documents and justifications

for withholding are not described in sufficient detail"), *Tax Analysts v. Internal Revenue

Ser'v*, 414 F. Supp. 2d 1, 1-2 (D.D.C. 2006) (district court denied motion for more

detailed *Vaughn* index and ordered *in camera* review instead); *but see Church of

Scientology of Cal. v. Internal Revenue Ser'v*, 792 F.2d 146, 153 (D.C. Cir. 1986) (as

amended) (remanding for production of a detailed declaration where no declaration had

been previously provided); *Campbell v. U.S. Dep't v. Justice*, 164 F.3d 20, 31 (D.C. Cir.

1999) (as amended).

The government's own argument — that it cannot provide more detailed indices

or declarations because to do so would release that which it seeks to protect —

demonstrates the need for *in camera* review in this case. In *Quinon*, the government

argued that it could not be more specific in its description because to do so would reveal

the very confidential sources the government sought to protect. 86 F.3d at 1229. The

D.C. Circuit responded that

> In [the] unusual circumstance, where the agency cannot describe the document
> fully enough to show that it is exempt from disclosure without in the course of
> doing so disclosing the very information that warrants exemption, the solution is
> for the court to review the document in camera.

*Id.* at 1230 (quoting *Simon v. Dep't of Justice*, 980 F.2d 782, 784 (D.C. Cir. 1992)). As

in *Quinon*, the government insists that it cannot provide more detailed descriptions

because of the secrecy of the Program. Thus, in this case, the best solution is the one set

out by the D.C. Circuit in *Quinon – in camera* review.

For the government to assert that it *cannot* provide a more detailed index and then suggest that the Court should *order it* to provide a more detailed index mocks judicial review and should be rejected by this Court.

### III.     THE COURT HAS AUTHORITY TO APPOINT A SPECIAL MASTER.

The Court should appoint a special master to develop a representative sample of the records in dispute for *in camera* review and to summarize the competing arguments about the continued withholding of the disputed records.  *See* Pl. Op. 44-47.  The government rejects established procedures for the use of special masters to aid courts, claiming that appointment of a special master will create "serious separation of powers questions."  Gov. Reply 26.  The government's attempt to drive a wedge between the Court's authority to review classified materials and a duly appointed officer that the Court may select to facilitate its own review of the withheld records demonstrates that the government mischaracterizes the role of a special master.   In fact, as discussed below, a special master allows for the Court to efficiently exercise its authority to determine whether information is properly classified.

Although the government acknowledges that the Court has authority pursuant to Article III of the Constitution to review the propriety of classification, *see* Gov. Reply 26 ("an Article III judge may be provided with classified information in order to facilitate review of FOIA exemption claims"), it inconsistently contends that the Executive Branch has sole authority over the classification of government information.  *See* Gov. Reply 25 ("the decision to grant or deny access to classified information lies squarely within the discretion of the Executive").  Notably, the government does not cite any constitutional provision for its remarkable argument.  Nor could it, because the Constitution does not

speak directly to any branch's authority regarding classified information.[2]  The Executive's power to keep information secret is not mentioned in the Constitution but, instead, is derived from the Article II powers vested in the President as commander-in-chief and as maker of treaties (with the advice and consent of the Senate).  These powers are balanced by Article I congressional powers that similarly provide authority relating to secrecy — or release — of government information.[3]  The federal courts derive their role with respect to classified information from their Article III power to resolve cases and controversies.  This judicial authority to adjudicate claims regarding the secrecy of information is well established.  To accept the contention that all authority over secrecy in the national security realm emanates from the Executive Branch's own powers would be to cede the entire system of checks and balances as established by the Constitution.

Moreover, the government has not asserted that the FOIA is unconstitutional and Congress, in the FOIA, issued a specific mandate to the courts to conduct *de novo* review, including *in camera* review, of agency withholdings of records based on national security classifications.  FOIA specifically empowers courts to undertake *in camera* review of secret materials at their discretion in order to release records improperly withheld.  *See* 5

---

[2] The Constitution contains only one reference to secrecy.  Article I, Section 5, states that the House "shall keep a Journal of its Proceedings, and from time to time publish the same, excepting such Parts as may in their Judgment require Secrecy . . . ."  There is no comparable provision for the activities of the Executive Branch.

[3] Congress has constitutional power to "provide for the common Defense," *id*. art. I, § 8, cl. 1; "declare War . . . and make Rules concerning Captures on Land and Water," *id*. cl. 11; "make Rules for the Government and Regulation of the land and naval Forces," *id*. cl. 14; advise in and consent to the making of treaties, *id*. art. II, § 2, cl. 2;  and to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers and all other Powers vested by th[e] Constitution in the Government of the United States," *id*. art. I, § 8, cl. 18.

U.S.C. § 552(a)(4)(B) ("In such a case the court shall determine the matter *de novo*, and

may examine the contents of such agency records in camera to determine whether such

records or any part thereof shall be withheld under any [exemption] . . . and the burden is

on the agency to sustain its action.").  The D.C. Circuit has made clear that in the context

of *de novo* review of government exemption claims under the FOIA, "[w]hether and how

to conduct an In camera [*sic*] examination of the documents rests in the sound discretion

of the court, in national security cases as in all others."  *Ray v. Turner*, 587 F.2d 1187,

1194 (D.C. Cir. 1978) ( "Congress has left the matter of In camera [*sic*] inspection to the

discretion of the district court, without any indication of the extent of its proper use").

Thus, it is up to the Court, and not the Executive, to decide the nature and scope of the

Court's inquiry into the government's exemption claims.

   It is equally clear that the Court has discretion to appoint a special master

pursuant to Federal Rule of Civil Procedure 53 to assist its determination of whether the

records are properly classified.  The appointing court may establish the duties of a master

and limit the scope of his or her mandate.  Fed. R. Civ. Pro. 53(b).  Because decision-

making authority rests with the Court at all times, there is no improper delegation of

authority.  Further, in addition to the express authority of Rule 53, the Supreme Court has

long recognized that Article III judicial power includes the inherent authority to appoint

masters "to aid judges in the performance of specific judicial duties."  *Ex parte Peterson*,

253 U.S. 300, 312 (1920) (Brandeis, J.).  Special masters appointed under Rule 53 are

"agents" and "subordinate judicial officers" of the court.  *In re Brooks*, 383 F.3d 1036,

1043 (D.C. Cir. 2004); *see also Jenkins v. Sterlacci*, 849 F.2d 627, 630-31 (D.C. Cir.

1988) (observing that the Code of Judicial Conduct for federal judges deems special

masters court "officers" subject to the same ethical standards as judges); *Blackman v. Dist. of Columbia*, 328 F. Supp. 2d 36, 43 (D.D.C. 2004) (describing a special master as an "agent of the Court").

On multiple occasions the D.C. Circuit has held that use of special masters fits within the range of available options for courts hearing FOIA cases. *See, e.g., Vaughn*, 484 F.2d at 828 ("it is within the discretion of a trial court to designate a special master to examine documents and evaluate an agency's contention of exemption"); *Meeropol v. Meese*, 790 F.2d 942, 961 (D.C. Cir. 1986) (in a FOIA case seeking national security information, the court held that "[t]he decision whether to appoint a master lies within the discretion of the trial court"). Moreover, the D.C. Circuit has upheld the appointment of a special master to perform exactly the same limited duties of cataloguing and summarizing that plaintiffs now propose. In *In re U.S. Dep't of Defense*, 848 F.2d 232 (D.C. Cir. 1988), the court of appeals affirmed the appointment of a special master to create a sample of withheld intelligence records and to summarize the parties' arguments. In that case, despite the government's claim that 14,000 pages of records concerning the Iran hostage rescue mission were classified, the special master procedure resulted in production of "several key documents" and the government agreed to re-examine the previously withheld documents. *Wash. Post v. U.S. Dep't of Defense*, 789 F. Supp. 423, 425 (D.D.C. 1992); *see also* Pl. Op. 45 n.29 and accompanying text (listing other courts supporting special masters in national security context).

The cases cited by the government to support its claim that only the Executive Branch may grant access to classified information actually have nothing to do with the appointment of *special masters*. Those cases denied access to classified information *to*

*plaintiffs' counsel* on the grounds that access to sensitive information by private attorneys was neither appropriate nor necessary to adjudicate those cases. *Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978) (denying plaintiffs' counsel access to withheld classified information); *Colby v. Halperin*, 656 F.2d 70 (4th Cir. 1981) (same); *Stillman v. Cent. Intelligence Agency*, 319 F.3d 546 (D.C. Cir. 2003) (same). The government's attempt to equate a court-appointed special master with plaintiffs' own counsel is a thinly veiled effort to wrest from the Court its own power and discretion to conduct a searching review of the withheld records in this case.

Furthermore, the lone authority cited by the government to suggest that the Court should not follow the *In re Department of Defense* holding actually bolsters the Court's authority for appointing a special master here. In *Stillman v. Central Intelligence Agency*, the D.C. Circuit reversed, as premature, an order granting *plaintiff's counsel* access to his client's classified manuscript, finding that the lower court had improperly decided the case on constitutional grounds instead of resolving the preliminary question of whether the documents had been properly classified. 319 F.3d at 548. In remanding, the D.C. Circuit made clear the trial court's authority to use any means at its disposal to resolve the classification issue first, observing that "[p]recisely because it is often difficult for a court to review the classification of national security information, we anticipate that in camera review of affidavits, *followed if necessary by further judicial inquiry*, will be the norm." *Id.* (emphasis added and internal citation omitted). Appointing a special master would help the Court fulfill its obligation to review the classification dispute in this case.

Not only has the D.C. Circuit affirmed the courts' authority to appoint special masters to review classified material, but Congress also explicitly endorsed special

masters as an appropriate technique.  The Senate Judiciary Committee's Report on the 1974 FOIA Amendments reaffirmed congressional support for the D.C. Circuit's holding in *Vaughn*, declaring that "[t]he committee supports this [*Vaughn*] approach, which, *with the use of a special master where voluminous material is involved*," 484 F.2d at 828, would aid courts in compelling maximum government openness.  S. REP. No. 93-854, at 167 (1974) (emphasis added).  Congress also provided the straightforward answer to the government's argument that the use of a special master in a national security case would be improper.  In the 1974 FOIA amendments, Congress noted that "a special master . . . may be required *by the court* to obtain such security clearance as had been previously required for access to the contested documents," S. REP. No. 93-854 at 168 (emphasis added), and the Executive Branch should "expedite any background investigation necessary to the award of such clearances."  *Id*.  That simple procedure may be used here, as it has been used in other cases.  With its use, the government's separation of powers argument evaporates.

Both Congress and the courts have affirmed the authority of judges to appoint special masters and to control the nature of their duties in FOIA cases and have explicitly upheld the use of special master to review and sample classified records withheld by the Executive Branch.  Indeed, any other resolution of this issue would make it impossible for courts to engage in rigorous, *de novo* review of government secrecy and, thus, eliminate the court's role in ensuring that the government has made proper classification decisions.

## CONCLUSION

For the foregoing reasons, and those stated in plaintiffs' opposition, the Court

should deny defendant's motion for summary judgment and grant plaintiffs' cross-motion

for *in camera* review.  To facilitate *in camera* review the Court should appoint a special

master.  If documents have been withheld to an unjustified extent the Court should order

release of the appropriate documents or portions thereof.  The Court should also order

defendant to release the total number of documents and the total number of pages

withheld.



Respectfully submitted,

/s/ *Arthur B. Spitzer*
_____
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
    of the National Capital Area
1400  20th Street, N.W. #119
Washington, D.C. 20036
Phone:  (202) 457-0800
Fax: (202) 452-1868

Ann Beeson
Nasrina Bargzie
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2629

Meredith Fuchs (D.C. Bar No. 450325)
The National Security Archive Fund, Inc.
The George Washington University
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Marc Rotenberg (D.C. Bar No. 422825)
Electronic Privacy Information Center
1718 Connecticut Avenue, NW, Suite 200
Washington, DC 20009-1148
Phone: (202) 483-1209
Fax: (202) 483-1278

*Counsel for Plaintiffs*

November 27, 2006