# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, ) ) ) | Civil Action No. 06-0096 (HHK) |
| Plaintiff, ) ) | |
| v. ) ) | |
| DEPARTMENT OF JUSTICE, ) ) | |
| Defendant. ) ) | |
| AMERICAN CIVIL LIBERTIES UNION, et al., ) ) | Civil Action No. 06-00214 (HHK) |
| Plaintiff, ) ) | |
| v. ) ) | |
| DEPARTMENT OF JUSTICE, ) ) | **CONSOLIDATED CASES** |
| Defendant. ) ) | |

## SUPPLEMENTAL SUBMISSION OF THE FBI IN SUPPORT OF
## DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

In accordance with the Court's September 5, 2007, Memorandum Opinion and Order (Docket No. 48, hereinafter "Mem. Op."), on October 19, 2007, defendant the United States Department of Justice ("Department" or "DOJ"), filed a Renewed Motion for Summary Judgment (Docket No. 50), with regard to its determinations in response to Freedom of Information Act ("FOIA") requests made by the plaintiffs, the Electronic Privacy Information Center, the American Civil Liberties Union, and the National Security Archive Fund, seeking disclosure of information concerning the Terrorist Surveillance Program ("TSP"). The memorandum of points and authorities and declarations accompanying that renewed motion

explained why summary judgment should be granted to the Department's Office of the Deputy Attorney General ("ODAG"), the Office of Legal Counsel ("OLC"), and the Office of Intelligence Policy and Review ("OIPR"), as well as with respect to those documents referred by DOJ components to the National Security Agency ("NSA"). This supplemental submission is filed in support of the Department's October 19, 2007, Renewed Motion for Summary Judgment and demonstrates why judgment as a matter of law should also be entered in favor of the Federal Bureau of Investigation ("FBI") with respect to its determinations on plaintiffs' FOIA requests.

## ARGUMENT

**I.  SUMMARY JUDGMENT HAS ALREADY BEEN GRANTED TO THE FBI WITH RESPECT TO MANY DOCUMENTS.**

In its September 5, 2007, Order, the Court granted the FBI summary judgment with respect to those documents specifically identified in paragraphs 55-57, 111, and 148 of the original declaration filed on behalf of the FBI. Mem. Op. at 22 n.14; see Declaration of David M. Hardy ("Hardy Decl."), filed as Ex. J to Defendant's Motion for Summary Judgment (Docket No. 29, hereinafter "DOJ MSJ"). The documents that were specifically identified in these paragraphs of Mr. Hardy's original declaration are 1, 12, 15, 20-22, 25, 27-31, 34-37, 39, 40, 43-47, 49, 52-55, 61-89, 91, 94-113, 119-125, 130-133, 146, 151-158, 160-161, 163-165, 167, 169-170, 172, 174, 177, 179, 181-185, 187, 188, 190, 196-221, 224, 225-235, 237-238, 243, 248-256, 261-266, 268, 272, 273, 278-280, 300, 304, 305, 308, 1029-1030, 1032-1034, 1051, 1055, 1098, and 1102, as well as two investigative files, identified as FBI 1500 and FBI 2000, see Second In Camera, Ex Parte Declaration of David M. Hardy ("Second Hardy Decl."), attached hereto as Ex. A, ¶¶ 23-24(A) & n. 12 & 13.[1]

---

[1] The Second Hardy Declaration is classified in part under the provisions of Executive Order 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68

The Court has also granted summary judgment to other Department components with respect to certain documents where the FBI has duplicate or draft copies in its possession. See Second Hardy Decl. ¶¶ 24(B), (C) & Ex. A (identifying FBI 18 as a duplicate of OLC 117; FBI 19 as a draft of OLC 54; FBI 58 as a draft of OLC 54; FBI 14 as a duplicate of OIPR 133 or 134; and FBI 317 as a duplicate of OIPR 65). As to these documents, the OLC and OIPR withholding determinations have been upheld, see Mem. Op. at 5, 16, 18 (OLC), 21 (OIPR).

In addition, the Court has granted summary judgment with respect to documents referred to the NSA by the FBI. See Second Hardy Decl. ¶ 24(D) & Ex. A (identifying these documents as FBI 2, 6, 16, 24, 36-38, 48, 50, 103-109, 112, 122, 132, 154 & 1000-1105); Declaration of Lynne R., filed as Ex. C, to Defendant's Renewed Motion ¶¶ 4-5 (explaining that most of the NSA referrals consisted of documents falling within those categories the Court identified as appropriate for summary judgment, see Mem. Op. at 23; and identifying the few documents – none of which was referred by the FBI – among DOJ's NSA referrals which remain at issue).

Moreover, as to several documents withheld by FBI, the Court's September 5, 2006, Order recognized that plaintiffs had withdrawn or disclaimed objections. See Mem. Op. at 5. Thus, documents within the FBI's possession that constitute drafts of documents or discussions about the drafting process are appropriately withheld, see Second Hardy Decl. ¶ 24(E)(2) (identifying FBI 11, 56, 60, 92, 93, 140, 142, 149, 186, 191, 192, 223, 236, 246, 247, 257-259, 276, 292, 293, 319, & 322-340); as are records deemed to be nonagency records, see id. ¶ 24(E)(4) (FBI 23 & 298); and duplicates of other documents deemed responsive but either released or withheld by other components, see id. ¶ 24(E)(5) (FBI 23 & 56).

---

Fed. Reg. 15315 (Mar. 25, 2003), and is lodged with the Court for its in camera, ex parte review. See Defendant's Second Notice of Lodging of Classified Exhibit, filed contemporaneously herewith. A redacted version of the Second Hardy Declaration is attached hereto as Ex. A.

In the course of preparing this submission, the FBI also identified certain documents that are either identical to or excerpts of other FBI documents where the Court has already granted summary judgment. Thus, for example, FBI 117 is an identical duplicate of FBI 146, as to which summary judgment has already been granted. See Second Hardy Decl. ¶ 25. Similarly, FBI 60 is a part of the same email trail as FBI 61, as to which summary judgment has already been granted. Id.; see also id. (identifying these documents as FBI 60, 92, 116, 117, 118, 127, 147, 150, 159, 162, 180, 244, 245, 246, 247, 257, 258, 259, 260, 267, 277, 284, 285, 311, and 312). Because summary judgment has already been granted by the Court for the identical document, or a different version of the document, these documents were also considered by the FBI to be subject to the Court's September 5, 2007, grant of summary judgment.

Finally, also in the course of preparing this submission, the FBI has identified certain additional documents, or parts of documents, that are appropriate for release to the plaintiffs. Of these documents, FBI 9, 10, 78, 135, 281, 283, 296, 297, and 300, are released in part, and FBI 298 is released in full. See Second Hardy Decl. ¶ 19. These documents are attached as Exhibit B to Mr. Hardy's Second Declaration. The remaining redactions on seven of these documents – FBI 78, 135, 281, 283, 296, 297, and 300 – are redactions of names and identifying information pursuant to FOIA Exemptions 6 and 7(C), to which plaintiffs make no objection. See Second Hardy Decl. ¶ 24(E)(6); Mem. Op. at 5.

## II. THE FBI IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE DOCUMENTS THAT REMAIN AT ISSUE.

In the wake of these rulings by the Court and concessions by plaintiffs, the FBI seeks summary judgment with respect to its withholding determinations on the documents that remain at issue in this litigation. Exhibit A to Mr. Hardy's Second Declaration is an index that – in addition to identifying each of the documents discussed above, for which summary judgment has

already been granted – also identifies each of the documents that remain at issue by its FBI identifier, and indicates the paragraphs in Mr. Hardy's second declaration where the reasons for its withholding are explained. See Second Hardy Decl. ¶ 17 & Ex. A.[2] These documents fall into three general categories: (a) documents concerning the relationship between FBI and NSA, see generally Second Hardy Decl. ¶¶ 30-64; (b) briefing and background materials and talking points including information regarding intelligence information derived from the TSP and the use thereof, see generally Second Hardy Decl. ¶¶ 65-163; and (c) documents related to legal opinions and attorney-client and work product-privileged internal deliberations regarding the TSP. See generally Second Hardy Decl. ¶¶ 164-226.[3]

As to each of these categories, Mr. Hardy's Second Declaration and its accompanying exhibit identify the documents that fall within each category, and explain the reasons for their continued withholding. In large part, with respect to the claims of exemption under FOIA's Exemption One, 5 U.S.C. § 552(b)(1), and Exemption Three, 5 U.S.C. § 552(b)(3), these reasons reflect the justifications for withholding identified by the former Director of National Intelligence ("DNI"), Ambassador John D. Negroponte, whose September 6, 2007, declaration ("DNI Decl.") was filed as Exhibit D to the original Declaration of Steven G. Bradbury of OLC (Docket No. 29, Ex. A).[4] In that declaration, the former DNI, relying upon his expertise and exercising his responsibilities to the Intelligence Community, identified with particularity the exceptionally

---

[2] As described in defendant's Second Notice of Lodging of Classified Exhibit, a classified version of this exhibit is provided for the Court's in camera, ex parte review. An unclassified version is attached to the redacted declaration submitted as Exhibit A hereto.

[3] These categories had been previously described in Mr. Hardy's original declaration as categories (a), (f) and (g). See Second Hardy Decl. ¶ 29. The remaining categories of documents described in Mr. Hardy's original declaration are no longer at issue. See id.

[4] In February 2007, Michael J. McConnell replaced Ambassador Negroponte as the Director of National Intelligence.

grave harms to national security that are reasonably expected to occur if information regarding the TSP is compelled to be disclosed. See generally DNI Decl. ¶¶ 22-35. In particular, the former DNI identified seven categories of information that cannot be disclosed without causing grave harms to national security, including "(1) any classified intelligence information concerning the continuing threat to the United States posed by al Qaeda and its affiliates that forms the basis for the President's authorization and reauthorization of the TSP"; DNI Decl. ¶ 22; see also id. ¶ 26; "(2) any operational details concerning the technical methods by which the NSA intercepts communications under the TSP"; id. ¶ 22; see also id. ¶¶ 27-28; and "(7) any information that would reveal or tend to reveal whether someone is a target of surveillance under the TSP." Id. ¶ 22; see also id. ¶ 35. In the classified portions of his declaration, DNI Negroponte also discussed certain additional categories of information relating to the TSP that cannot be disclosed without exceptionally grave consequences for national security. See DNI Decl. ¶¶ 22-23, 29-34. For each of these categories of information, the former DNI explained "from the perspective of the Intelligence Community, the significant harms that would be done to United States intelligence gathering in the war against terror" if documents that contain information falling within these categories are compelled to be disclosed. Id. ¶ 4.

As the former DNI attested, information in the seven categories he identified is specifically authorized to be classified by the express terms of Executive Order 12958, as amended, see DNI Decl. ¶ 20, and is also specifically authorized to be withheld under the statutory authority granted to the DNI to protect intelligence sources and methods. See DNI Decl. ¶ 14; see also 50 U.S.C. § 403-1(i)(1). As Mr. Hardy, an original classification authority for the FBI, see Second Hardy Decl. ¶ 3, confirms, "sensitive information about the nature, scope, and operation of the TSP and communications intelligence activities remains classified

and cannot be disclosed without causing exceptionally grave harm to U.S. national security." Id. ¶ 13 & n.7. The vast majority of the documents that continue to be withheld by the FBI falls within the justifications proffered by these declarants for their proper exemption under FOIA's Exemptions One and Three.[5]

For the reasons set forth in these declarations, the FBI properly withheld documents in the three categories it now identifies. *First*, the FBI properly withheld documents relating to the relationship between the FBI and the NSA. In this category, see generally Second Hardy Decl. ¶¶ 30-64, the FBI withheld documents relating to:

- statistical and investigative information regarding the TSP and its use in FBI counterterrorism investigations, see Hardy Decl. ¶¶ 31-40 (discussing FBI 313, 314, and 316);

- documents relating to the FBI's procedures for the use of TSP-related information in counterterrorism investigations, see Hardy Decl. ¶¶ 41-48 (discussing FBI 166 & 318); and

- documents relating to the involvement of FBI personnel in the TSP. See Hardy Decl. ¶¶ 49-58 (discussing FBI 114, 134, 171 & 239).

All of these documents are properly withheld under Exemptions One and Three for the reasons discussed in Mr. Hardy's declaration, as well as in the declaration of the former DNI. See DNI Decl. ¶ 31; see also Second In Camera, Ex Parte Declaration of Steven G. Bradbury, filed as Ex. A to Defendant's Renewed Motion (Docket No. 50 ), ¶ 52.

As Mr. Hardy also describes, these documents are also properly withheld under Exemption Five as they are all internal documents, specifically presentation materials and email

---

[5] Of the documents now withheld by FBI, only FBI 295, 309, and 322-340, are withheld under Exemption Five only because they are not classified. The plaintiffs, in the negotiations that preceded the filing of defendant's earlier motion, had disclaimed any objection to the withholding of any unclassified document. In addition, as Mr. Hardy describes, all of these documents are drafts or discussions about drafts, see Second Hardy Decl. ¶¶ 20, 216, 219-226, and thus plaintiffs have disclaimed any objections to their withholding. See Mem. Op. at 5.

messages, prepared as part of ongoing intra- and inter-agency deliberations concerning the FBI's relationship with the NSA with respect to the TSP. See Second Hardy Decl. ¶¶ 39, 40; 47-48; 59-64. These sorts of documents "serve as a way for individual FBI employees to communicate with each other about current matters, and are part of the critical exchange of ideas and suggestions that accompanies all decision making." Second Hardy Decl. ¶ 40. Disclosure of these sorts of internal communications between employees, which do not reflect the views of the agency as a whole, would stifle internal discussions among FBI employees and "impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision making." Id. Thus, the documents identified in this section are properly withheld under FOIA's Exemption Five as well.

*Second*, the FBI properly withheld documents that contain information concerning intelligence information derived from the TSP and the use thereof. In particular, as Mr. Hardy describes, these documents contain information regarding "specific examples of how TSP-derived information has helped in the FBI's terrorist investigations." Second Hardy Decl. ¶ 65.

In this category, see generally Second Hardy Decl. ¶¶ 65-163, the FBI withheld:

- internal memoranda from the Assistant Director of the Counterterrorism Division to the FBI Director, Second Hardy Decl. ¶¶ 66-74 (discussing FBI 301, 302, & 303);

- background materials regarding the TSP used by the FBI General Counsel, Second Hardy Decl. ¶¶ 75-80 (discussing FBI 41);

- memoranda concerning the use of the TSP in counterterrorism investigations, see Second Hardy Decl. ¶¶ 81-108 (discussing FBI 8, 173, 175, 176, 178, 193, 194, 195, 299, & 310);[6]

---

[6] Of these, as Mr. Hardy explains, FBI 8 is also subject to withholding under FOIA Exemption 7(E), see Second Hardy Decl. ¶ 109, which protects records compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for

- statistics relating to the TSP, see Second Hardy Decl. ¶¶ 111-121 (discussing FBI 128, 139, 145 & 189);

- documents discussing the value of the TSP and leads obtained from the TSP, see Second Hardy Decl. ¶¶ 123-145 (discussing FBI 126, 129, 168, 240, 242, 269, 270, 271, 274, 275, 286, & 289);

- intelligence reports, see Second Hardy Decl. ¶¶ 146-151 (discussing FBI 306 & 315); and

- email messages regarding the drafting of talking points for the FBI Director, see Second Hardy Decl. ¶¶ 152-163 (discussing FBI 141, 143, 144, & 148).

All of these documents are properly withheld under Exemptions One and Three. The former DNI specifically identified this sort of information as material that fell within his statutory authority to protect from disclosure, see DNI Decl. ¶¶ 29, 35, and described in detail why any information – such as information relating to how the FBI uses TSP-derived information in counterterrorism investigations or successes that might have been achieved in such investigation – that disclosed or tended to disclose who was targeted under the TSP could not be revealed without causing exceptionally grave harm to national security. As the former DNI explained,

> To confirm or deny whether any individual has been the target of communications surveillance under the TSP would disclose specifically, and in a more general sense, who is and is not being targeted – thus compromising that collection and providing our adversaries clues regarding those individuals who may or may not be available as a secure means of communication. Confirmation of a target's identity would immediately disrupt the flow of accurate intelligence as the target takes steps to evade detection or to manipulate the information received. Denying

---

law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); see DOJ MSJ at 72 (discussing legal principles applicable to Exemption 7(E)). And, FBI 195 is also withheld under FOIA Exemption 7(D), see Second Hardy Decl. ¶ 110, which protects law enforcement records the release of which "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source," including a foreign government. 5 U.S.C. § 552(b)(7)(D); see DOJ MSJ at 71-72 (discussing legal principles applicable to Exemption 7(D)).

> that any particular individual is targeted is itself unworkable, and itself revealing, in cases where an individual may, indeed, be targeted. A refusal to confirm or deny only in cases where surveillance is occurring, of course, would effectively disclose and compromise that surveillance, and thus the accumulation of these responses would reveal, more broadly the method by which surveillance under the TSP is conducted.

DNI Decl. ¶ 35.

Similarly, this Court has previously held that information that reveals the frequency with which surveillance tools are used "may undoubtedly prove useful to those who are the actual or potential target of such surveillance, and may thereby undermine the efficiency and effectiveness of such surveillance. That the public has a significant and entirely legitimate desire for this information, does not, in an Exemption 1 case, alter the analysis." American Civil Liberties Union v. U.S. Dept. of Justice, 265 F. Supp. 2d 20, 31 (D.D.C. 2003) (Huvelle, J.); see also People for the American Way v. National Security Agency, 462 F. Supp. 2d 21, 31 n. 8 (D.D.C. 2006) (Huvelle, J.) ("the Court is persuaded by defendant's commonsense position that the targets of the TSP are 'sources' of intelligence and the TSP is a 'method' of intelligence gathering. . . . It would therefore appear that information regarding particular potential targets . . . and statistics regarding the number of TSP targets and the frequency of TSP surveillance . . . are also protected from disclosure by the plain language of 50 U.S.C. § 403-1(i)(1). . . .").

In addition, as Mr. Hardy explains, many of these documents are also properly withheld under Exemption Five because they are, in large part, materials compiled or created for internal use in order to brief higher level officials about classified information. See Hardy Decl. ¶ 65. Briefing materials are "by their very nature deliberative, as they reflect an attempt by the drafter to succinctly summarize particular issues and provide key background information in an effort to anticipate questions or issues that may be raised at a briefing or other situation in which such documents are used." Id. As Mr. Hardy explains, many of the materials withheld in this

category fall within FOIA's Exemption Five.  See Second Hardy Decl. ¶¶ 65, 74, 79-80, 103-108, 121-122, 140-145.

For the reasons given by Mr. Hardy and the former DNI, the FBI's determination to withhold the specific information concerning the use of TSP-derived information in counterterrorism investigations and successes of the TSP described in this section should be upheld.

*Third*, the FBI properly withheld documents relating to legal opinions, attorney-client and work product-privileged and internal deliberations regarding the TSP.  See generally Second Hardy Decl. ¶¶ 164-226.  In this category, the FBI withheld:

- handwritten notes, see Second Hardy Decl. ¶¶ 165-182 (discussing FBI 3, 9, 10, 13, 17, 26, & 57);[7]

- documents containing requests for legal guidance concerning the use of TSP-derived information, see Second Hardy Decl. ¶¶ 183-198 (discussing FBI 32, 33, 115, 137, 138, & 241);

- email messages regarding the TSP and ongoing criminal litigation, see Second Hardy Decl. ¶¶ 201-213 (discussing FBI 90 & FBI 136); and

- email messages between the General Counsel and the FBI Director's Special Assistant discussing anticipated questions and proposed answers about the TSP in the context of responding to public and congressional inquiries, see Second Hardy Decl. ¶¶ 214-226 (discussing FBI 282, 288, 289, 290, 291, 294 & 295).

These documents are all properly withheld under Exemption Five.  Handwritten notes of agency employees must be upheld in order to protect agency deliberative processes.  See Second Hardy Decl. ¶¶ 179-182.  "Note-taking and drafting is core element of the give and take of agency deliberations. . . . A chill on note-taking [resulting from routine disclosure of these sorts of materials] results in serious impairment of the FBI's [deliberative process]."  Id. ¶ 80; see

---

[7] Of these, as discussed above, FBI 9 and FBI 10 are being released in part.

also Judicial Watch of Florida, Inc. v. Dept. of Justice, 102 F. Supp. 2d 6, 12-15 & n.7 (D.D.C. 2000) (handwritten notes appropriately withheld because notes are related to decisionmaking process) (citing cases); Conoco, Inc. v. Dept. of Justice, 687 F.2d 724, 727-28 (3d Cir. 1982) (handwritten notes constitute intra-agency memoranda for purposes of Exemption Five). Similarly, disclosure of memoranda and other legal advice prepared in the context of ongoing litigation, such as FBI 90 and 136, or internally for FBI use, such as FBI 32, 33, 115, 137, 138, & 241, are also subject to protection because these documents constitute or reflect confidential attorney-client communications as well as the deliberative process of the agency.  See Second Hardy Decl. ¶¶ 181-182, 197-200, 207-213; see also Southam News v. U.S. INS, 674 F.Supp. 881, 886 (D.D.C.1987) (opinion letter on legal questions regarding the criteria used to evaluate certain applicants for visas was protected because it was generated in the course of a deliberative process); Morrison v. U.S. Dept. of Justice, Civ. A. No. 87-3394, 1988 WL 47662, at *1 (D.D.C. April 29, 1988) (undisputed that OLC opinions regarding constitutionality of new legislation were within the scope of the deliberative process privilege).[8]  Talking points, plans, proposals and briefing papers, and discussions thereof, such as the email messages identified as FBI 282, 288, 289, 290, 291, 294 and 295, also generally constitute privileged deliberative material, and, in this case, constitute protected attorney-client communications.  Such papers are typically

---

[8] See also Int'l Paper Co. v. Fed. Power Comm'n, 438 F.2d 1349, 1358-59 & n. 3 (2d Cir.1971) (memoranda from the Federal Power Commission's general counsel containing "legal analysis and recommendations, legal conclusions, and policy recommendations" were protected from disclosure under Exemption 5 because these items were part of the agency's deliberative process and not final orders); Brinton v. Dept. of State, 636 F.2d 600, 604-05 (D.C. Cir.1980) (legal opinions prepared by the State Department's Office of the Legal Adviser were not "final opinions" and therefore were protected by the deliberative process privilege: "There can be no doubt that such legal advice, given in the form of intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale for Exemption 5").

prepared to assist decisionmakers in making decisions or in communicating those decisions to the public and the press, see Second Hardy Decl. ¶ 225-226, and, when, as here, are prepared by attorneys in an effort to assist a client, are also protected attorney client communications. Id. ¶¶ 221-224.  Disclosure of such documents would "stifle the candor necessary in an agency's policy making process."  Hornbostel v. U.S. Dept. of the Interior, 305 F. Supp. 2d 21, 31 (D.D.C. 2003); see also Thompson v. Dept. of the Navy, 1995 WL 527344, at *4 (D.D.C. 1997); see also Hunt v. U.S. Marine Corps, 935 F. Supp. 46, 52 (D.D.C. 1996) ("point papers" prepared in the "midst of [agency's] deliberative process to assist officers in their formulation of a final decision" exempt from disclosure); Klunzinger v. IRS, 27 F. Supp. 2d 1015, 1026-27 (W.D. Mich. 1998) (briefing paper for Commissioner exempt).  The FBI's Exemption Five claims as to the documents in this category, accordingly, should be upheld.

In addition, as Mr. Hardy also explains, many of the documents identified in this category are also properly withheld under Exemptions One and Three because they contain classified information relating to the TSP.  See generally Second Hardy Decl. ¶¶ 164-226. Thus, the FBI's withholding of the documents contained in this category should be upheld under these exemptions as well.

*Finally*, apart from the documents identified in the three categories described above, Mr. Hardy also describes the status of referrals both to and from the FBI, and explains the status of the documents that remain at issue with respect to those referrals.  See Second Hardy Decl. ¶¶ 227-233.  Virtually all of these documents are documents as to which summary judgment has already been granted, are documents that have either been determined to nonresponsive to plaintiffs' requests or released, or are addressed in one of the other declarations filed in support of defendant's renewed motion for summary judgment.  Id.

In sum, as Mr. Hardy's Second Declaration comprehensively explains, the FBI's determinations to withhold the documents that remain at issue in this case, in full or in part, are entirely proper under FOIA, and should be upheld.

## CONCLUSION

For the reasons stated herein and in the supporting declaration, as in well as in the Department's previously filed briefs and declarations in support of both Defendant's Motion for Summary Judgment and Defendant's Renewed Motion for Summary Judgment, DOJ has acted properly in responding to the FOIA requests submitted by each of the plaintiffs in this case. As a result, the Department is entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56.

> Respectfully submitted,
>
> PETER D. KEISLER
> Assistant Attorney General, Civil Division
>
> JEFFREY A. TAYLOR
> United States Attorney
>
> JOSEPH H. HUNT
> Director, Federal Programs Branch
>
> ____/s/ Rupa Bhattacharyya_____
> RUPA BHATTACHARYYA (VA# 38877)
> Senior Trial Counsel
> Federal Programs Branch, Civil Division
> United States Department of Justice
> P.O. Box 883, 20 Massachusetts Ave., N.W.
> Washington, D.C.  20044
> Tel: (202) 514-3146
> Fax: (202) 318-7593
> Email: rupa.bhattacharyya@usdoj.gov

Dated: November 20, 2007.