IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF JUSTICE, )<br>)<br>Defendant. )<br>———————————————————)<br>AMERICAN CIVIL LIBERTIES UNION, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF JUSTICE, )<br>)<br>Defendant. )<br>———————————————————) | Civ. A. No. 06-CV-00096 (HHK)<br><br><br><br><br>Civ. A. No. 06-CV-00214 (HHK)<br><br>**CONSOLIDATED** |

**(U)  SECOND DECLARATION OF DAVID M. HARDY[1]**

**(U)**  I, David M. Hardy, declare as follows:

1.      **(U)**  I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C.  I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law.  In that capacity, I had direct oversight of Freedom of

---

[1] **REDACTED**

Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the state of Texas since 1980.

2.    **(U)** In my official capacity as Section Chief of RIDS, I supervise approximately 214 employees who staff a total of ten (10) Units and a field operational service center whose collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.

3.    **(U)** My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 12958, as amended by Executive Order 13292 (March 25, 2003),[2] and the preparation of declarations in support of Exemption 1 claims asserted under the FOIA.[3] I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 12958, as amended, §§1.3 and 3.1.

4.    **(U)** The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

5.    **(U)** Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the

---

[2] **(U)** 60 Fed. Reg. 19825 (1995) and 68 Fed. Reg. 15315 (2003).

[3] **(U)** 5 U.S.C. § 552 (b)(1).

UNCLASSIFIED

provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically,

I am aware of the treatment which has been afforded the FOIA request of plaintiff, the American

Civil Liberties Union ("ACLU"), for access to FBIHQ records pertaining to the Terrorist

Surveillance Program ("TSP").[4] This declaration supplements and incorporates my previously

submitted declaration in this case, the In Camera, Ex Parte and Redacted Declaration of David M.

Hardy, executed on September 13, 2006 ("First Hardy Decl."). This declaration also supplements,

incorporates, and relies upon the In Camera, Ex Parte Declaration of Steven G. Bradbury, dated

September 15, 2006 ("Bradbury Decl."), and an exhibit to the Bradbury Decl., the In Camera, Ex

Parte Declaration of John D. Negroponte, the former Director of National Intelligence, dated

September 7, 2006 (cited herein as "DNI Decl.").[5] In reaching withholding determinations, the

FBI has consulted with other federal agencies and officials with regard to the harm to national

security that would result from disclosure of the documents identified in this declaration. I have

personally reviewed the DNI Decl., which was provided in support of withholdings in all

TSP-related FOIA matters, and have once again, as in my prior declaration, relied upon

Ambassador Negroponte's expert assessment of the harm to the national intelligence program that

would result from disclosure of documents related to the TSP. Finally, I have reviewed and am

familiar with the Second In Camera, Ex Parte Declaration of Steven G. Bradbury, dated October

18, 2007 ("Second Bradbury Decl."), which provides additional background information

regarding the TSP and other intelligence collection activities. See Second Bradbury Decl. ¶¶

17-24.

---

[4] **(U)** For a complete description of the administrative history of plaintiff ACLU's request, see First Hardy Decl. ¶¶ 20-25.

[5] **(U)** In February 2007, J. Michael McConnell replaced Ambassador Negroponte as the Director of National Intelligence.

UNCLASSIFIED

6.    **(U)**  I have reviewed the Memorandum Opinion and Order ("Order") entered by the Court on September 5, 2007, and understand that the Court has required the FBI to submit a more detailed <u>Vaughn</u> declaration and document index further stating its justifications for the withholding of the responsive documents in this case. I further understand that certain documents are no longer at issue because the Court's Order has eliminated them by virtue of the court's grant of summary judgment as to a certain universe of documents as described in the Court's Order. For the convenience of the Court, Exhibit A to this declaration is a detailed Index which lists each of the documents withheld by the FBI in this litigation. The Index identifies, as to each document, whether summary judgment has been granted by the Court's September 5, 2007 Order – either explicitly to the FBI, or implicitly by virtue of a ruling as to DOJ and NSA documents similar or identical to the FBI's document or whether the document is addressed in this declaration, along with an indication of the paragraph number(s) in this declaration where that document is discussed. Along with Exhibit A, the FBI hereby submits this second <u>Vaughn</u> declaration to provide a more detailed justification for the full and partial withholdings of the documents that remain at issue pursuant to the FOIA exemptions the FBI has asserted.

## **(U)**  CLASSIFICATION OF DECLARATION

7.    **REDACTED**

8.    **REDACTED**

9.    **REDACTED**

10.    **REDACTED**

## **(U)**  ACLU'S FOIA REQUEST AND THE TSP

11.    **(U)**  As I discussed in my prior declaration, ACLU's FOIA request to the FBI seeks access to information regarding the Terrorist Surveillance Program ("TSP"), a highly classified

signals intelligence activity authorized by the President after the terrorist attacks on the United States

of September 11, 2001. Under the TSP, the National Security Agency ("NSA") was authorized to

intercept the contents of international communications for which there were reasonable grounds to

believe that one party was located outside the United States and that at least one party to the

communication was a member or agent of al Qaeda or an affiliated terrorist organization. The

President publicly acknowledged the existence of the TSP on December 17, 2005. See First Hardy

Decl. ¶¶ 12, 14.

12.    **(U)** On January 17, 2007, following the original filings in this case, the Attorney

General announced that any electronic surveillance that had been occurring under the TSP would

subsequently be conducted subject to the approval of the Foreign Intelligence Surveillance Court

("FISC"). On August 5, 2007, Congress enacted the Protect America Act of 2007, Pub. L. No. 110-55,

which exempted the acquisition of certain foreign intelligence information from the definition of

"electronic surveillance" subject to the procedures of the Foreign Intelligence Surveillance Act

("FISA"). Under these circumstances, I am advised, the President has not renewed his authorization

of the TSP.

13.    **(U)** Although the existence of the TSP has now been publicly acknowledged, and

certain general facts about the TSP have been officially disclosed both by DOJ officials as well as by

FBI Director Robert S. Mueller, III,[6] the President and others have made clear that sensitive

information about the nature, scope, operation, and effectiveness of the TSP and other

communications intelligence activities remains classified and cannot be disclosed without causing

---

[6]    **(U)** Director Mueller publicly acknowledged the FBI's involvement in the TSP at a Senate Select Committee on Intelligence hearing on February 2, 2006, stating that the FBI "get[s] a number of leads from the NSA from a number of programs, including the program that's under discussion today. . . . And I can say that leads from that program have been valuable in identifying would-be terrorists in the United States, individuals who were providing material support to terrorists." Transcript at 51. See First Hardy Decl. ¶ 15.

exceptionally grave harm to U.S. national security.  See First Hardy Decl. ¶ 15.[7] The declaration of

the former Director of National Intelligence, provided in this litigation, sets forth the categories of

information related to the TSP that cannot be disclosed without causing such harms, and describes

these harms in detail, upon which I rely herein.  See DNI Decl. ¶¶ 22, 26-35.

    14.    **REDACTED**

    15.    **REDACTED**

    16.    **REDACTED**

    **(U) FBI's Efforts To Respond To The Court's September 5, 2007 Order**

    17.    (U)  In preparing this second declaration and accompanying Index, the FBI has

endeavored to address the Court's concerns with regard to the FBI's first set of submissions.  As a

result, the accompanying detailed Index lists all of the documents which the FBI identified as

responsive to plaintiff ACLU's request.  The In Camera, Ex Parte Index identifies as to each document:

(a) the FBI document number assigned to it; (b) the date of the document (if known); (c) a detailed

description of that document, and any attachment(s); (d) total number of pages; (e) applicable FOIA

exemption(s); (f) whether summary judgment has been granted by the Court's Order (either explicitly

to the FBI, or implicitly by virtue of a ruling as to DOJ and NSA documents similar or identical to the

FBI's documents) or whether the document is addressed in further detail in this second Vaughn

declaration, along with an indication of the paragraph number(s) in the second declaration where that

---

[7]  (U)  Due to its extraordinary sensitivity, information relating to the TSP is currently classified as TOP SECRET under the standards set forth in E.O. 12958, as amended.  In particular, information relating to the TSP concerns "intelligence activities (including special activities), intelligence sources or methods, or cryptology," E.O. 12958, as amended, § 1.4(c); "scientific, technological, or economic matters related to the national security, which includes defense against transnational terrorism," id., § 1.4(e); and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which includes defense against international terrorism," id., § 1.4(g), the disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security of the United States.  Id. § 1.2(a)(1).  See First Hardy Decl. ¶ 13.

document is discussed; and (g) which documents continue to be withheld in full, and which documents are now being released in part or in full.  The public version of the Index identifies: (a) the FBI document number assigned to it; (b) the date of the document, if known; (c) applicable FOIA exemption(s); (d) whether summary judgment has been granted by the Court's Order or whether the document is addressed in further detail in the second <u>Vaughn</u> declaration, along with an indication of the paragraph number(s) in the second declaration where that document is discussed; and (e) which documents continue to be withheld in full, and which documents are now being released in part or in full.[8]

18.    **(U)**  The FBI has been unable to locate one particular subset of documents (**FBI 12-FBI 45, FBI 125, and FBI 254-255**), which were available in 2006, and which I reviewed prior to executing my first declaration.  The Court has already granted summary judgment for 22 of these documents – **FBI 12, 14, 15, 16, 18, 19, 20, 24, 25, 27, 28, 29, 30, 35, 36, 40, 43, 44, 45, 125, 254 and 255**.  <u>See</u> Mem. Op. at 22.  We were able to locate copies of an additional nine of these documents (which may or may not be identical duplicates of) **FBI 21, 22, 23, 31, 34, 37, 38, 39, and 42** – in the files of other FBI employees; however, the Court has similarly granted summary judgment for these nine documents.  <u>See</u> Mem. Op at 22.  Thus, six documents remain for which the FBI would like to provide more detail in order to prevail on its renewed motion for summary judgment: **FBI 13, 17, 26, 32, 33, and 41**.  We were able to locate copies of two of these documents in other employees' files (which may or may not be identical duplicates of) **FBI 33 and 41**.  However, despite extensive search efforts,[9] **FBI 13, 17, 26, and 32** have not been located as of

---

[8]    **(U)**  All FBI documents for which we are providing a more detailed discussion herein, along with those exemptions which still remain in dispute, appear in **bold** in both versions (public and <u>in camera</u>, <u>ex parte</u>) of the Index.

[9]    **(U)**  These efforts have included: thorough searches of the classified safe in which this material has been maintained since 2006 – negative results; thorough searches of several other classified safes in the surrounding office area –

this date. As a result, I am able to provide only a brief summary of these four documents – all of

which appear to be drafts or similar to other non-serialized documents – based on an internal log

we created in 2006, and which formed the basis for the Index we are submitting today as Exhibit A.

19.    **(U)** In the course of preparing this second declaration, the FBI has: (a) re-reviewed

each available document to determine if all classified information continues to be properly

classified; and (b) re-reviewed each available document to determine if any of the information

could be segregated and released due to the passage of time and/or additional information having

been made publicly available.[10]  As a result of those efforts, the FBI is now releasing a total of ten

documents either in part (**FBI 9, 10, 78, 135, 281, 283, 296, 297 and 300**), or in full (**FBI 298**), for

a total of 67 pages, and are attached hereto as **Exhibit B**.  The current release supplements the

FBI's March 24, 2006 partial release of documents, which consisted of the following: (a) **FBI 320**:

two transcripts released in full from 2005 U.S. Senate Select Committee on Intelligence Hearings

on the USA Patriot Act (3 pages) and on the Worldwide Terror Threat (90 pages); and (b) **FBI 321**:

---

negative results; thorough searches of the classified safe in the GC's office – negative results; a request for any documents remaining in the possession of the Director's Special Assistant – negative results; an e-mail request from the GC to those OGC employees who have been read into the TSP to search their safes and report back either positive or negative findings (including OGC attorneys who are on extended details out of the office) – all negative results; a broader e-mail request from the GC to FBIHQ CTD employees who have been read into the TSP to search their safes and report back either positive or negative findings – as of this date, negative results; a request made directly to two FBI employees who have been associated with the program and who are recipients or senders of many of the documents as to leads in tracking down the documents in this missing range – negative results; a request for a thorough search of the Inspection Division unit who is responsible for collecting and providing documents to the DOJ Inspector General as it conducts an inquiry into the TSP – negative results; a direct request of IG personnel to conduct a search of the materials in their possession they have received from the FBI to see if these four documents could be located – negative results. The FBI will continue its search efforts, and will notify the Court in the event these four documents – **FBI 13, 17, 26, and 32** are located.

[10] **(U)** On July 26, 2007, Representative John Conyers, Jr. made a request to the FBI for access to copies of the FBI Director's notes "regarding conversations that [he] had with former Deputy Attorney General James Comey . . . and former Attorney General John Ashcroft . . . regarding a March 10, 2004, hospital visit involving former White House Counsel Alberto Gonzales and former Chief of Staff to the President Andrew Card." The FBI responded by letter dated August 14, 2007, and produced a redacted set of the Director's notes regarding events on March 10, 2004. That material has since been made accessible via the Internet. As a result, the FBI has processed the identical document consistent with the Conyers release, and has reviewed and released certain portions of other documents which are very similar in nature to that material released to Representative Conyers.

a one-page letter dated October 3, 2005, which originated with the DOJ Office of Legislative

Affairs ("OLA"); following discussion with OLA, the FBI was advised that it had been released to

plaintiff in full. See First Hardy Decl, ¶ 144.

20.    **(U)**  Also addressed in this declaration are **FBI 322-340**: 156 pages of draft FBI

responses to Congressional questions and internal e-mails related to the drafting process, withheld

in full pursuant to Exemption (b)(5) (DPP = deliberative process privilege) and identified in the

FBI's March 24, 2006 release. See First Hardy Decl. ¶ 6. These 156 pages consist of drafts and

e-mail trails discussing drafts, and although they will not be further addressed in this declaration

based on the Court's recognition that plaintiffs have "disclaimed or withdrawn objections

regarding . . . drafts of documents and discussions about drafts and the drafting process," see Mem.

Op. at 5, have been included in the attached Index, see Exhibit A.

21.    **(U)**  Moreover, this declaration and attached Index address 13 additional

documents: **FBI 3, 8, and 309-319**. These documents were not included in the First In Camera, Ex

Parte Hardy Declaration, but were identified more recently as the FBI re-reviewed the responsive

material and engaged in efforts to address the Court's concerns articulated in the September 5,

2007 Order.[11]  Some of these documents consist of e-mail trails which are excerpts of or part of

e-mail trails already identified (e.g., **FBI 311 and FBI 312** → similar to **FBI 161, FBI 163, FBI**

**200, FBI 211, FBI 214, FBI 220, FBI 254 and FBI 268**; and **FBI 318** → **similar to FBI 166**).

The other documents are drafts, deliberative documents and documents which contain operational

details and statistics, all of which fall within the date scope of the FBI's initial search.

---

[11]  **(U)** The FBI recognizes that plaintiffs have disclaimed or withdrawn objections regarding the adequacy of
searches for responsive records, see Mem. Op. at 5. Nevertheless, due to the interrelated nature of these documents,
the FBI identifies and address them in this declaration and accompanying Index.

22.    **(U)**   Thus, the total number of "non-serialized" FBI documents as reflected in the Index is 444.

23.    **(U)  FBI 1500**[12] and **FBI 2000**[13] -- two serialized files -- will not be addressed further herein since the Court granted summary judgment to the FBI and they are, therefore, no longer in dispute. See Mem. Op. at 22; and Exhibit A attached hereto.

24.    **(U)**   In re-examining the documents initially identified as responsive to prepare this second declaration, the FBI first eliminated those documents in its possession which are no longer at issue by virtue of the Court's September 5, 2007 Order. As a result, the document numbers listed below will not be further addressed in this declaration, for the following reasons:

(A)    **(U)**   Documents in the FBI's possession for which the Court has already granted summary judgment – to the FBI: **FBI 1, 12, 15, 20-22, 25, 27-31, 34-37, 39, 40, 43-47, 49, 52-55, 61-89, 91, 94-113, 119-125, 130-133, 146, 151-158, 160-161, 163-165, 167, 169-170, 172, 174, 177, 179, 181-185, 187, 188, 190, 196-221, 224, 225-235, 237-238, 243, 248-256, 261-266, 268, 272, 273, 278-280, 300, 304, 305, 308, 1029-1030, 1032-1034, 1051, 1055, 1098, 1102, 1500,** and **2000.** See Mem. Op. at 22; First Hardy Decl. ¶¶ 55-57, 11 and 148; and Exhibit A attached hereto.

(B)    **(U)**   Documents in the FBI's possession for which the Court has already granted summary judgment – to OLC/DOJ:  **FBI 18, 19** and **58.**   See Mem. Op. at 16-19; and Exhibit A attached hereto.

(C)    **(U)**   Documents in the FBI's possession for which the Court has already granted summary judgment – to OIPR/DOJ:  **FBI 14** and **317.**  See Mem. Op. at 21; and Exhibit A attached hereto.

(D)    **(U)**   Documents in the FBI's possession for which the Court has already granted summary judgment – to NSA:  **FBI 2, 6, 16, 24, 36-38, 48, 50, 103-109, 112, 122, 132, 154,** and **1000-1105.** See Mem. Op. at 22-23; and Exhibit A attached hereto.

(E)    **(U)**   Documents for which the Court has recognized plaintiffs have disclaimed or

---

[12]    **REDACTED**

[13]    **REDACTED**

withdrawn their objections:

> "(2) drafts of documents and discussions about drafts and the drafting process" – **FBI 11, 56, 60, 92, 93, 140, 142, 149, 186, 191, 192, 223, 236, 246, 247, 257,-259, 276, 292, 293, and 319, 322-340.** See Mem. Op. at 5; and Exhibit A attached hereto;

> "(4) records deemed to be nonagency records" – **FBI 23 and 298.** See Mem. Op. at 5; and Exhibit A attached hereto;

> "(5) duplicates of other documents deemed responsive and either released or withheld by other departments" – **FBI 23 and 56.** See Mem. Op. at 5; and Exhibit A attached hereto;

> "(6) redactions of names and identifying information pursuant to Exemptions 2, 6, and 7(C)" (if those are the only remaining redactions for that document) – **FBI 78, 135, 281, 283, 296, 297 and 300.** See Mem. Op. at 5; and Exhibit A attached hereto.

25.    **(U)**  In addition, the FBI has identified a subset of documents which are either

identical duplicates, or part of the same e-mail trail, of those documents for which the Court

has already granted summary judgment (see Mem. Op. at 22; and Exhibit A attached hereto):

- **FBI 117** (identical duplicate of FBI 146 → for which summary judgment was granted);

- **FBI 127** (identical duplicate of FBI 167 → for which summary judgment was granted);

- **FBI 246** (identical duplicate of FBI 61 → for which summary judgment was granted);

- **FBI 60** (part of same e-mail trail of FBI 61 → for which summary judgment was granted);

- **FBI 92** (draft of FBI 15 → for which summary judgment was granted);

- **FBI 116** (part of same e-mail trail as FBI 146 → for which summary judgment was granted);

- **FBI 118** and **FBI 150** (two identical duplicates) (part of same e-mail trail as FBI 119 and FBI 124 → for which summary judgment was granted);

- **FBI 147** (part of same e-mail trail as FBI 146 → for which summary judgment was granted);

- **FBI 159** (part of same e-mail trail as FBI 120 → for which summary judgment was granted);

- **FBI 162** (part of same e-mail trail as FBI 163 → for which summary judgment was granted);

- **FBI 180** (part of same e-mail trail as FBI 181 → for which summary judgment was granted);

- **FBI 244 and FBI 245** (part of same e-mail trail as FBI 243 → for which summary judgment was granted);

- **FBI 247** (part of same e-mail trail as FBI 248 → for which summary judgment was granted);

- **FBI 257, FBI 258, FBI 259, FBI 284, FBI 285, FBI 311** and **FBI 312** (part of same e-mail trail as FBI 256 → for which summary judgment was granted);

- **FBI 260** (part of same e-mail trail as FBI 261 → for which summary judgment was granted);

- **FBI 267** and **FBI 277** (part of same e-mail trail as FBI 264 → for which summary judgment was granted.

The foregoing documents, therefore, will not be addressed further in this declaration, although they are included in the Index. See Exhibit A.

### (U)  Documents Containing Discussions Of Operational Details And Statistics Related To The Use Of and Reliance On, The TSP

26.     **(U)**   The Court granted summary judgment to the National Security Agency ("NSA") for those documents which contain "information concerning operational details of TSP, and NSA TSP-related policies, procedures, checklists, and audits . . . ." See Mem. Op. at 23.  The FBI has similarly identified a subset of documents whose substance consists predominantly of discussions of operational details and statistics related to the use of, and reliance on, the TSP by the FBI:  **FBI 8, 33, 41, 90, 115, 126, 128-129, 137, 139, 141, 143-145, 148-149, 166, 168, 171, 173, 175-176, 178, 189, 193-195, 239-240, 241, 242, 269-271, 274-275, 286-287, 299, 301-303, 306,**

**310, 313-316 and 318**. See Mem. Op. at 23; and Exhibit A attached hereto. As a result, summary judgment should also be granted to the FBI for these documents. Nevertheless, the FBI will provide more detail regarding these documents and the claimed exemptions below – specifically, Exemptions (b)(1), (b)(3) and (b)(5).

**(U) Documents Containing Information Withheld
Pursuant To Exemption (b)(7)(A)**

27.    **(U)** In addition, the FBI has asserted Exemption (b)(7)(A) for documents numbered **FBI 129, 145, 166, 168, 171, 176, 178, 189, 195, and 242**, and for which the Court did not grant the FBI summary judgment. See Exhibit A attached hereto. These documents contain information the release of which "could reasonably be expected to interfere with enforcement proceedings." Consistent with the Court's grant of summary judgment for those documents listed in ¶ 111 of the First Hardy Decl. (see Mem. Op. at 22), [which discussed numerous non-serialized documents concerning ongoing, active law enforcement investigations], summary judgment should also be granted for all of these documents, which similarly contain information withheld pursuant to Exemption (b)(7)(A). Nevertheless, the FBI will address these documents to the extent that exemptions other than Exemption (b)(7)(A) remain at issue in more detail below.

28.    **(U)** As a result of the foregoing process, the FBI has been able to narrow the set of documents which require a detailed justification as to the exemptions asserted, as well as the exemptions which remain to be addressed. Thus, below we will address those documents which have been withheld in full or in part, and provide detailed justifications for the information which has been withheld in these records pursuant to Exemptions 1, 3, 5 and 7(D).[14]

---

[14]    (U) For Exemption 5, the following acronyms will be used throughout: DPP = "deliberative process privilege;" ACC = "attorney-client communications privilege;" and AWP = "attorney-work product privilege." Exemptions (b)(2) (Low), (b)(6) and (b)(7)(C) will not be further addressed herein since plaintiffs do not challenge the withholding of names and/or identifying information pursuant to these exemptions. See Mem. Op. at 5.

### (U) <u>CATEGORIES OF RECORDS RESPONSIVE<br>TO PLAINTIFF'S REQUEST</u>

29.     **REDACTED**

### (U) <u>Documents Concerning Relationship Between FBI and NSA</u>

30.     **REDACTED**

### (U) <u>FBI 313, FBI 314, and FBI 316</u>
(U) FBI Interactions With NSA And Requests For Information And Statistics

31.     (U) **FBI 313** is an undated Power Point presentation by CTD consisting of statistical information regarding the TSP. **FBI 313** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

32.     **REDACTED**

33.     (U) **FBI 314** is an undated Power Point presentation by CTD consisting of statistical and investigative information regarding the TSP and its use in several FBI counterterrorism investigations and the staffing of FBI personnel who are responsible for the administration of the TSP. **FBI 314** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

34.     **REDACTED**

35.     (U) **FBI 316** consists of an undated overview, with an undated chart, consisting of statistical and investigative information regarding the TSP and its use in several FBI counterterrorism investigations. **FBI 316** is withheld in its entirety under FOIA Exemptions 1 and 3.

36.     **REDACTED**

(U) *Applicability of Exemptions 1 and 3*

37.     **REDACTED**

- 14 -

UNCLASSIFIED

38.     **(U)** Thus, **FBI 313, FBI 314 and FBI 316** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 5*

39.     **REDACTED**

40.     **(U)** Disclosure of these communications would breach the confidential relationship between the individual FBI employees who compiled these Power Point presentations and repress and stifle such critical communications in the future. These documents reflect the thinking of individuals, rather than adopted policy of the FBI. Such internal presentations and discussions serve as a way for individual FBI employees to communicate with each other about current matters, and are part of the critical exchange of ideas and suggestions that accompanies all decision making and typically reflect very preliminary assessments by FBI personnel about issues on which they may be asked to make recommendations. The fact that these discussions are reflected in Power Point presentations should not obscure the fact that that they represent simply internal dialogue among and between FBI personnel as the situation requires. These discussions are part of the core give and take of agency deliberations. If these kinds of documents are routinely released to the public, FBI employees will be much more circumspect in their internal discussions with each other. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm. These protected deliberations form an integral part

UNCLASSIFIED

UNCLASSIFIED

of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change over time. These deliberations and dialogue continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the withheld information is likely to chill full, frank, and open internal discussions -- a chilling effect which is all the more dangerous given the important national security interests at stake. I have determined that the withheld material in **FBI 313 and FBI 314** consists of material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

(U) <u>**FBI 166 and FBI 318**</u>
Redacted.

41.    (U) **FBI 166** is an e-mail trail dated January 23, 2006, among CTD employees concerning a query and proposed informational response regarding the TSP and its use in FBI counterterrorism investigations. **FBI 314** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

42.    **REDACTED**

43.    (U) **FBI 318** is an e-mail trail dated January 23, 2006, among CTD employees concerning certain procedures in the use of the TSP in FBI counterterrorism investigations. **FBI 318** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

44.    **REDACTED**

(U) *Applicability of Exemptions 1 and 3*

45.    **REDACTED**

46.    (U) Thus, **FBI 166 and FBI 318** are exempt from disclosure in their entireties

UNCLASSIFIED

UNCLASSIFIED

pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 5*

47.    **REDACTED**

48.    **(U)**  Disclosure of these communications would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future. They reflect the thinking of individuals, rather than adopted policy of the FBI. Such e-mail communications serve as a way for individual FBI employees to communicate with each other about current matters without having to leave their offices. These "discussions," which are memorialized electronically, are part of the critical exchange of ideas and suggestions that accompanies all decision making and typically reflect very preliminary assessments by FBI personnel about issues on which they may be asked to make recommendations. Before the advent of computers, these discussions probably would have occurred only orally, with no record of their existence being maintained. The fact that these discussions are now recorded should not obscure the fact that that they are simply conversations among and between FBI personnel as the situation requires. These discussions are part of the core give and take of agency deliberations. If these kinds of documents are routinely released to the public, FBI employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm.

- 17 -

These protected deliberations form an integral part of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change over time. These deliberations and dialogue continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the withheld information is likely to chill full, frank, and open internal discussions -- a chilling effect which is all the more dangerous given the important national security interests at stake. I have determined that the withheld material in **FBI 166 and FBI 318** consists of material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

(U) <u>**FBI 114, FBI 134, FBI 171 and FBI 239**</u><br>**REDACTED**

49.    (U) **FBI 114** is an e-mail dated December 12, 2005 among CTD employees concerning an attached Position Description for the FBI personnel who are involved with the TSP. The attached Position Description provides both general and specific descriptions of the duties and responsibilities of the personnel assigned to handle the TSP. **FBI 114** is withheld in its entirety under FOIA Exemptions 1 and 3.

50.    **REDACTED**

51.    (U) **FBI 134** is an e-mail trail dated October 17 and 18, 2005, between CTD employees concerning proposals regarding the staffing of FBI personnel who are involved with the TSP. **FBI 134** is withheld in its entirety under FOIA Exemptions 1 and 5 (DPP).

52.    **REDACTED**

53.    (U) **FBI 171** is an e-mail trail dated February 13, 2006, among CTD employees

- 18 -

UNCLASSIFIED

containing a discussion of certain issues regarding the FBI's participation in the TSP. **FBI 171** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

54.    **REDACTED**

55.    **(U)** **FBI 239** is an e-mail dated December 16, 2005, from a CTD employee to the GC of the FBI regarding the staffing of FBI personnel who are involved with the TSP. **FBI 239** is withheld in its entirety under FOIA Exemptions 1, 3, and 5 (DPP and ACC).

56.    **REDACTED**

 **(U)** *Applicability of Exemptions 1 and 3*

57.    **REDACTED**

58.    **(U)** Thus, **FBI 114, FBI 134, FBI 171 and FBI 239** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

 **(U)** *Applicability of Exemption 5*

59.    **(U)** **FBI 239** represents an internal candid communication from a CTD employee responsible for administration of the TSP to the GC of the FBI regarding important information for possible transmittal to the Director concerning the involvement of FBI personnel to analyze TSP-derived information for use in FBI counterterrorism investigations.  The substance of this communication is protected under the attorney-client privilege of Exemption 5 inasmuch as it represents the collection of information in preparation for a future briefing by the GC of her client, the Director of the FBI, concerning the FBI's role and responsibilities within the TSP.

60.    **(U)** The attorney-client communications privilege is appropriately asserted when legal advice of any kind is sought, from a professional legal adviser in his or her capacity as such; the communications relating to that purpose are made in confidence by the client; and are, at the client's instance, permanently protected from disclosure by the client or by the legal adviser unless

- 19 -

UNCLASSIFIED

UNCLASSIFIED

the attorney-client protection is waived.  This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function.  In addition, the attorney-client privilege covers the two-way communications between a client and an attorney, which relate to legal advice.

61.    **REDACTED**

62.    **(U)**  Disclosure of this communication would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future.  For these reasons the FBI has asserted Exemption 5, the attorney-client privilege, to protect this confidential communication.

63.    **REDACTED**

64.    **(U)**  Disclosure of these communications would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future.  They reflect the thinking of individuals, rather than adopted policy of the FBI.  Such e-mail communications serve as a way for individual FBI employees to communicate with each other about current matters without having to leave their offices.  These "discussions," which are memorialized electronically, are part of the critical exchange of ideas and suggestions that accompanies all decision making and typically reflect very preliminary assessments by FBI personnel about issues on which they may be asked to make recommendations.  Before the advent of computers, these discussions probably would have occurred only orally, with no record of their existence being maintained.  The fact that these discussions are now recorded should not obscure the fact that that they are simply conversations among and between FBI personnel as the situation requires.  These discussions are part of the core give and take of agency deliberations.  If these

- 20 -

UNCLASSIFIED

kinds of documents are routinely released to the public, FBI employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm. These protected deliberations form an integral part of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change over time. These deliberations and dialogue continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the withheld information is likely to chill full, frank, and open internal discussions – a chilling effect which is all the more dangerous given the important national security interests at stake. I have determined that the withheld material in **FBI 134, FBI 171 and FBI 239** consists of material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

**(U) Briefing And Background Materials And Talking Points
Including Information Regarding Successes of the TSP**

65.    **(U)  Information Regarding Successes of the TSP**: This category encompasses documents which provide specific examples of how TSP-derived information has helped in the FBI's terrorist investigations. See DNI Decl. ¶¶ 29, 35. These documents include briefing and

- 21 -

background materials, internal e-mail discussions regarding talking points, Qs & As, the

Director's congressional testimony, as well as leads and statistics per year requested for talking

points and background purposes. The briefing materials and talking points, and e-mail trails

associated therewith, were prepared for internal use only in the course of briefings by CTD

employees for higher level FBI executives, the GC and her staff, or for use in meetings or

discussions with officials from elsewhere in the Government. None of these materials was

prepared for public briefing or discussion, and none was adopted as official positions in

subsequent public discussion of the TSP. Accordingly, as explained in my previous declaration,

these briefing materials and talking points are by their very nature deliberative, as they reflect an

attempt by the drafters succinctly to summarize particular issues and provide key background

information in an effort to anticipate questions or issues that may be raised at a briefing or other

situation in which such documents are used. These materials provide concise summaries of

information necessary for informed discussion of particular issues and attempt to anticipate and

respond to questions that might be raised in any particular setting. Thus, these materials reflect the

exchange of ideas and suggestions that accompanies all decision-making, and in many cases they

also reflect assessments by attorneys and other staff about issues on which they have been asked to

make recommendations or provide advice.

### (U)  FBI 301, FBI 302, and FBI 303
(U)  Internal Memoranda from CTD Assistant Director to FBI Director

66.     (U)  **FBI 301** is an internal memorandum, dated November 19, 2002, from the CTD

Assistant Director to the FBI Director concerning certain issues and proposals regarding the TSP

as well as a summary of information concerning the FBI's participation in the TSP. **FBI 301** is

withheld in its entirety under FOIA Exemptions 1, 3, and 5 (DPP).

- 22 -

67.    **REDACTED**

68.    **(U)** **FBI 302** is an internal memorandum, dated January 23, 2003, from the CTD Assistant Director to the FBI Director concerning certain issues and proposals regarding the FBI's participation in the TSP and the staffing of FBI personnel who are involved with the TSP. Attached to this document are two Routing Slips containing the names of several FBI employees and a copy of **FBI 301**. **FBI 302** is withheld in its entirety under FOIA Exemptions 1, 3, and 5 (DPP).

69.    **REDACTED**

70.    **(U)** **FBI 303** is an internal memorandum, dated February 20, 2003, from the AD for CTD to the Director concerning the staffing of FBI personnel who are involved with the TSP as well as a background and summary of investigative information concerning the use of the TSP in a specific FBI counterterrorism investigation. **FBI 303** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

71.    **REDACTED**.

**(U)** *Applicability of Exemptions 1 and 3*

72.    **REDACTED**

73.    **(U)** Thus, **FBI 301, FBI 302 and FBI 303** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 5*

74.    **(U)** The substance of the communications in **FBI 301, FBI 302 and FBI 303** is also protected under the deliberative process privilege of Exemption 5 inasmuch as they represent an internal briefing by an employee to his supervisor. Disclosure of this communication would breach the confidential relationship between these individuals and repress and stifle such critical

communications in the future. These documents reflect the thinking of individuals, rather than adopted policy of the FBI. Such internal communications serve as a way for FBI employees to communicate with the Director in an effective manner. These briefings or internal memoranda, are part of the critical exchange of ideas and suggestions that accompanies all decision making and typically reflect very preliminary assessments by FBI personnel about issues on which they may be asked to make recommendations. These discussions are part of the core give and take of agency deliberations. If these kinds of documents are routinely released to the public, FBI employees will be much more circumspect in their written work product. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm. These protected deliberations form an integral part of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change over time. `The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the withheld information is likely to chill full, frank, and open internal discussions -- a chilling effect which is all the more dangerous given the important national security interests at stake. I have determined that the withheld material in **FBI 301, FBI 302 and FBI 303**, consists of material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

## (U)  FBI 41
### (U)  Background Materials Regarding TSP Used By GC

75.      (U)  **FBI 41** is a package of four documents concerning the TSP and participation in

the TSP and other issues regarding FBI counterterrorism investigations, dated March 9, 2004,

which were obtained from the working files of the GC.  **FBI 41** is withheld in its entirety under

FOIA Exemptions 1, 3 and 5 (DPP).

76.      **REDACTED**

(U)  *Applicability of Exemption 1 and 3*

77.      **REDACTED**

78.      (U)  Thus, **FBI 41** is exempt from disclosure in its entirety pursuant to Exemptions

1 and 3.

(U)  *Applicability of Exemption 5*

79.      (U)  The substance of **FBI 41** is also protected under the deliberative process

privilege of Exemption 5 inasmuch as it represents an internal background discussion of  the

importance and value of the TSP in relation to the successful outcomes of certain FBI

counterterrorism investigations.

80.      (U) Disclosure of this collection of documents would repress and stifle such critical

communications in the future.  The background material reflects the thinking of individuals, rather

than adopted policy of the FBI.  Exempting such a collection of documents from disclosure also

protects against public confusion that might result from disclosure of preliminary information and

opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ.  The

deliberative process privilege is designed to protect not only documents and information but also

the integrity of the deliberative process itself where exposure of the process would result in harm.

- 25 -

UNCLASSIFIED

These protected deliberations form an integral part of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change over time. These deliberations and dialogue continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the withheld information is likely to chill full, frank, and open internal discussions – a chilling effect which is all the more dangerous given the important national security interests at stake. I have determined that the withheld material in **FBI 41** consists of material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

**(U) <u>FBI 8, FBI 173, FBI 175, FBI 176, FBI 178, FBI 193,</u>**
**<u>FBI 194, FBI 195, FBI 299 and FBI 310</u>**
**(U)** Memos Concerning Use Of TSP In Counterterrorism Investigations

81.     **(U) FBI 8** consists of an internal FBI Routing Slip dated December 16, 2005, from the GC to the FBI Director, forwarding an undated internal memorandum which contains a discussion of operational details and statistics related to the use and reliance on the TSP by the FBI. **FBI 8** is withheld in its entirety under FOIA Exemptions 1, 3, 5 (DPP and ACC), and 7(E).

82.     **REDACTED**

83.     **(U) FBI 173** is an internal memorandum, dated April 2005, concerning certain statistical and investigative information regarding the TSP. **FBI 173** is withheld in its entirety under FOIA Exemptions 1 and 3.

84.     **REDACTED**

85.     **(U) FBI 175** is an undated internal memorandum concerning certain aspects and procedures of the FBI's participation in the TSP and the use of TSP information in FBI counterterrorism investigations. **FBI 175** is withheld in its entirety under FOIA Exemptions 1

- 26 -

UNCLASSIFIED

and 3.

86.   **REDACTED**

87.   **(U)  FBI 176** is an undated internal memorandum concerning the use of TSP information in certain FBI counterterrorism investigations.  **FBI 176** is withheld in its entirety under FOIA Exemptions 1 and 3.

88.   **REDACTED**

89.   **(U)  FBI 178** is an undated internal memorandum concerning certain aspects and procedures of the FBI's participation in the TSP and the use of TSP information in certain FBI counterterrorism investigations. **FBI 178** is withheld in its entirety under FOIA Exemptions 1 and 3.

90.   **REDACTED**

91.   **(U)  FBI 193** is an undated internal memorandum prepared by a CTD employee concerning an overview of the FBI Unit in CTD that is responsible for the administration of the TSP, including personnel staffing levels, duties, responsibilities and goals.  **FBI 193** is withheld in its entirety under FOIA Exemptions 1 and 3.

92.   **REDACTED**

93.   **(U)  FBI 194** is an undated internal memorandum prepared by a CTD employee concerning details, goals, objectives, and results of the work completed in 2005 within the FBI Unit in CTD that is responsible for the administration of the TSP.  **FBI 194** is withheld in its entirety under FOIA Exemptions 1 and 3.

94.   **REDACTED**

95.   **(U)  FBI 195** is an undated internal memorandum provided by the FBI Unit in CTD that is responsible for the administration of the TSP concerning the use of TSP information in

certain counterterrorism investigations. This memorandum also discusses in detail the operational aspects and detailed leads and actions taken in specific FBI counterterrorism investigations. **FBI 195** is withheld in its entirety under FOIA Exemptions 1, 3 and 7(D).

96.    **REDACTED**

97.    **(U) FBI 299** is a timeline and summary of investigative information concerning the use of the TSP in certain FBI counterterrorism investigations. This timeline includes important dates and other significant investigative information concerning the FBI's use of information collected through the TSP in these successful counterterrorism investigations. **FBI 299** is withheld in its entirety under FOIA Exemptions 1 and 3.

98.    **REDACTED**

99.    **(U) FBI 310** is an internal memorandum, dated November 23, 2004, concerning investigative leads generated by TSP information and acted on by the FBI in certain FBI counterterrorism investigations. This memorandum delineates the actions and tasks performed by the FBI Unit in CTD that is responsible for the administration of the TSP pursuant to these investigative leads. **FBI 310** is withheld in its entirety under FOIA Exemptions 1 and 3.

100.    **REDACTED**

**(U)** *Applicability of Exemptions 1 and 3*

101.    **REDACTED**

102.    **(U)** Thus, **FBI 8, FBI 173, FBI 175, FBI 176, FBI 178, FBI 193, FBI 194, FBI 195, FBI 299 and FBI 310** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 5*

103.    **(U)** The substance of **FBI 8** is protected under the attorney-client

- 28 -

UNCLASSIFIED

privilege of Exemption 5 inasmuch as it represents the GC's collection of information and briefing

of her client, the FBI Director, concerning the FBI's role and responsibilities within the TSP.

104.    (U)  The attorney-client communications privilege is appropriately asserted when

legal advice of any kind is sought, from a professional legal adviser in his or her capacity as such;

the communications relating to that purpose are made in confidence by the client; and are, at the

client's instance, permanently protected from disclosure by the client or by the legal adviser unless

the attorney-client protection is waived.  This privilege encompasses confidential communications

made to the attorney not only by decision-making personnel but also by lower-echelon employees

who possess information relevant to an attorney's advice-rendering function.  In addition, the

attorney-client privilege covers the two-way communications between a client and an attorney,

which relate to legal advice.

105.    (U)  This internal memorandum was created in a secure internal computer system

of the FBI, regarding various aspects of the TSP.  **FBI 8** taken as a whole represents an internal

candid communication between the GC and her primary client, the FBI Director.

106.    (U)  Disclosure of this communication would breach the confidential relationship

between these individuals and repress and stifle such critical communications in the future.  For

these reasons the FBI has asserted Exemption 5, the attorney-client privilege, to protect this

confidential communication.

107.    (U)  The substance of **FBI 8** is also protected under the deliberative process

privilege of Exemption 5 inasmuch as it represents the internal candid communication from the

GC to the Director regarding the history of the TSP.

108.    (U)  Disclosure of this communication would breach the confidential relationship

between these individuals and repress and stifle such critical communications in the future.  It

UNCLASSIFIED

reflects the thinking of individuals, rather than adopted policy of the FBI. Such internal

memoranda are part of the critical exchange of ideas and suggestions that accompanies all

decision-making and typically reflect very preliminary assessments by FBI personnel about issues

on which they may be asked to make recommendations. These discussions are part of the core

give and take of agency deliberations. If these kinds of documents are routinely released to the

public, FBI employees will be much more circumspect in their discussions. This lack of candor

will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for

efficient and proper decision-making. Furthermore, exempting such documents and information

from disclosure also protects against public confusion that might result from disclosure of

preliminary information and opinions that do not, in fact, reflect the final views or policies of the

FBI, and of DOJ. The deliberative process privilege is designed to protect not only documents and

information but also the integrity of the deliberative process itself where exposure of the process

would result in harm. These protected deliberations form an integral part of the decision-making

process regarding the development of operational procedures and policy, a dialogue regarding

procedures and policies, which, as the documents reflect, continue to change over time. These

deliberations and dialogue continue to the present day. The FBI has appropriately asserted

Exemption 5, the deliberative process privilege, to protect these candid internal discussions

concerning these evolving policies and procedures. The release of the withheld information is

likely to chill full, frank, and open internal discussions -- a chilling effect which is all the more

dangerous given the important national security interests at stake. I have determined that the

withheld material in **FBI 8** consists of material which is deliberative and has been withheld

appropriately pursuant to Exemption 5.

    **(U)** *Applicability of Exemption 7(E)*

UNCLASSIFIED

109.  **REDACTED**

(U)  *Applicability of Exemption (7)(D)*

110.  (U)  Exemption (7)(D) has been asserted to withhold the names, identifying data and information provided to the FBI by foreign law enforcement agencies under an "express" assurance of confidentiality for **FBI 195**.  The FBI has many agreements with foreign governments under which national security and/or criminal law enforcement information is exchanged.  The agreements specify the extent of confidentiality requested by the respective foreign authority.  Where one agency could request confidentiality for its identity and information provided, another agency could request classification for both its identity and information provided, yet another agency may request that its information be protected while it does not object their relationship with the FBI being disclosed.  In this case, the FBI has an agreement with foreign law enforcement agencies which expressly forbids dissemination of information it provides to the FBI.  If the FBI were to disclose the information these foreign law enforcement agencies provided to the FBI under an express assurance of confidentiality, the disclosure would have a chilling effect on the FBI's relationship with these agencies.  Furthermore, disclosure of the information these agencies provided would have a chilling effect on the FBI's relationship with other foreign law enforcement agencies which have entered into similar agreements with the FBI.  Accordingly, the FBI properly withheld information contained in **FBI 195** and which was provided by foreign law enforcement agencies under an express assurance of confidentiality.

(U)  **FBI 128, FBI 139, FBI 145 and FBI 189**
(U)  Statistics related to TSP

111.  (U)  **FBI 128** is an e-mail dated January 25, 2006, among CTD employees regarding specific statistical and investigative information concerning the FBI's participation

- 31 -

UNCLASSIFIED

UNCLASSIFIED

within the TSP, in response to a request by the CTD AD in prior telephone conversations.  **FBI 128 is** withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

112.  **REDACTED**

113.  **(U)  FBI 139** is an e-mail trail dated January 9, 2006, with an attached chart, among CTD employees regarding the collection of certain statistical and investigative information concerning the TSP.  This information is being collected by the CTD employees responsible for the administration of the TSP in response to current and anticipated requests for such information from the Director's Office.  The attached chart is a blank template for use in the collection of this statistical and investigative information for the years of 2002 through 2005.  **FBI 139** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

114.  **REDACTED**

115.  **(U)  FBI 145** is an e-mail trail dated January 12, 2006, among CTD employees, with attached spreadsheets, concerning certain statistical and investigative information regarding the use of TSP information by the FBI in 2005.  **FBI 145** is withheld in its entirety under FOIA Exemptions 1 and 3.

116.  **REDACTED**

117.  **(U)  FBI 189** is an undated internal memorandum containing investigative information compiled by the FBI Unit in CTD that is responsible for the administration of the TSP concerning the use of TSP information in several FBI counterterrorism investigations.  This memorandum also contains specific questions regarding these investigations from the CTD AD and the answers supplied to him by CTD personnel.  **FBI 189** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

118.  **REDACTED**

- 32 -

UNCLASSIFIED

UNCLASSIFIED

**(U)** *Applicability of Exemptions 1 and 3*

119.    **REDACTED**

120.    **(U)** Thus, **FBI 128, FBI 139, FBI 145 and FBI 189** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 5*

121.    **REDACTED**

122.    **(U)** Disclosure of these communications would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future. It reflects the thinking of individuals, rather than adopted policy of the FBI. Such e-mail communications serve as a way for individual FBI employees to communicate with each other about current matters without having to leave their offices. These "discussions," which are memorialized electronically, are part of the critical exchange of ideas and suggestions that accompanies all decision making and typically reflect very preliminary assessments by FBI personnel about issues on which they may be asked to make recommendations. Before the advent of computers, these discussions probably would have occurred only orally, with no record of their existence being maintained. The fact that these discussions are now recorded should not obscure the fact that that they are simply conversations among and between FBI personnel as the situation requires. These discussions are part of the core give and take of agency deliberations. If these kinds of documents are routinely released to the public, FBI employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary information and

- 33 -

UNCLASSIFIED

opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ. The

deliberative process privilege is designed to protect not only documents and information but also

the integrity of the deliberative process itself where exposure of the process would result in harm.

These protected deliberations form an integral part of the decision-making process regarding the

development of operational procedures and policy, a dialogue regarding procedures and policies,

which, as the documents reflect, continue to change over time. These deliberations and dialogue

continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative

process privilege, to protect these candid internal discussions concerning these evolving policies

and procedures. The release of the withheld information is likely to chill full, frank, and open

internal discussions -- a chilling effect which is all the more dangerous given the important

national security interests at stake. I have determined that the withheld material in **FBI 128, FBI**

**139, FBI 145 and FBI 189** consists of material which is deliberative and has been withheld

appropriately pursuant to Exemption 5.

### (U)  FBI 126, FBI 129, FBI 168, FBI 240, FBI 242, FBI 269, FBI 270, FBI 271, FBI 274, FBI 275, FBI 286 and FBI 287
#### (U)  Value of TSP And Leads Obtained From TSP

123.    (U)  This group of e-mails trails, which I will describe in more detail below, all

reflect efforts by the GC to collect information regarding the program in order to brief the Director

on the "success stories" of the FBI's use of the TSP in counterterrorism investigations and the

FBI's role and responsibilities within the TSP. See DNI Decl. ¶ 29.

124.    (U)    **FBI 126** is an e-mail trail dated January 19, 2006, among CTD employees,

the Director's Special Assistant, the GC and the Deputy General Counsel ("DGC"), concerning the

collection and transmittal of certain TSP statistical information for the years 2001 through 2005 in

response to the GC's specific request.  **FBI 126** is withheld in its entirety under Exemptions 1, 3

and 5 (DPP and ACC).

125.    **REDACTED**

126.    **(U)  FBI 129 and FBI 168** are related e-mail trails, both dated January 27, 2006, among the GC and CTD employees regarding investigative information generated by the TSP in certain FBI counterterrorism investigations.  The e-mail trail in **FBI 168** is included in the e-mail trail in **FBI 129**.  **FBI 129** and **FBI 168** are withheld in their entireties under Exemptions 1, 3, and 5 (DPP and ACC).

127.    **REDACTED**

128.    **(U)  FBI 240** is an e-mail, dated December 20, 2005, among a CTD employee and the GC concerning certain TSP statistical information which was compiled in response to the GC's query.  **FBI 240** is withheld in its entirety under Exemptions 1, 3 and 5 (DPP and ACC).

129.    **REDACTED**

130.    **(U)  FBI 242** is an e-mail dated January 6, 2006, from a CTD employee to the GC providing a EC regarding a FBI counterterrorism investigation and suggesting that two specific FBI Sections in CTD are the primary beneficiaries of TSP information and would thus be in best position to give a more accurate assessment to the GC of its usefulness.  **FBI 242** is withheld in its entirety under Exemptions 1, 3, and 5 (DPP and ACC).

131.    **REDACTED**

132.    **(U)  FBI 269, FBI 270 and FBI 271** are three related e-mails, all dated January 20, 2006, among the GC, FBI executives and CTD employees, which discuss the factual underpinnings of certain FBI counterterrorism investigations in which TSP information was a valuable factor in the success of these investigations.  **FBI 269, FBI 270 and FBI 271** are withheld in their entireties under Exemptions 1, 3 and 5 (DPP and ACC).

133.   **REDACTED**

134.   **(U)** **FBI 274 and FBI 275** are related e-mails, both dated January 27, 2006, among the GC, DGC, the AD of the FBI's Directorate of Intelligence, the CTD AD and DAD, and CTD employees concerning certain statistical investigative information regarding the FBI's use of TSP information in counterterrorism investigations.  **FBI 274 and FBI 275** are withheld in their entireties under Exemptions 1, 3 and 5 (DPP and ACC).

135.   **REDACTED**

136.   **(U)** **FBI 286 and FBI 287** are two related e-mails, both dated February 1, 2006, among the GC, an FBI executive and the FBI Director's Special Assistant, and containing a discussion regarding whether General Hayden of the NSA has publicly confirmed a certain statistic concerning the TSP.  **FBI 286 and FBI 287** are withheld in their entireties under Exemptions 1, 3 and 5 (DPP and ACC).

137.   **REDACTED**

   **(U)** *Applicability of Exemptions 1 and 3*

138.   **REDACTED**

139.   **(U)** Thus, **FBI 126, FBI 129, FBI 168, FBI 240, FBI 242, FBI 269, FBI 270, FBI 271, FBI 274, FBI 275, FBI 286 and FBI 287** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

   **(U)** *Applicability of Exemption 5*

140.   **(U)** The substance of the communications in **FBI 126, FBI 129, FBI 168, FBI 240, FBI 242, FBI 269, FBI 270, FBI 271, FBI 274, FBI 275, FBI 286 and FBI 287** is protected pursuant to the attorney-client privilege of Exemption 5 inasmuch as it represents the collection of information in preparation for a future briefing by the GC of her client, the Director of the FBI,

concerning the importance and value of the TSP in relation to the successful outcomes of certain FBI counterterrorism investigations.

141.    **(U)**  The attorney-client communications privilege is appropriately asserted when legal advice of any kind is sought, from a professional legal adviser in his or her capacity as such; the communications relating to that purpose are made in confidence by the client; and are, at the client's instance, permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived.  This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function.  In addition, the attorney-client privilege covers the two-way communications between a client and an attorney, which relate to legal advice.

142.    **(U)**  This communication was generated in a secure internal e-mail/computer system of the FBI, based on client-supplied information regarding various aspects of the TSP.  The withheld material taken as a whole reflects a candid internal discussions between and among the GC of the FBI, the FBI's Special Assistant, various CTD employees, and the AD of the FBI's Directorate of Intelligence, all in furtherance of the GC's efforts to collect information regarding the program in order to brief the Director on the "success stories" of the FBI's use of the TSP in counterterrorism investigations and the FBI's role and responsibilities within the TSP.

143.    **(U)**  Disclosure of these communications would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future.  For these reasons the FBI has asserted Exemption 5, the attorney-client privilege, to protect the confidential communications contained in these documents.

144.    **(U)**  The substance of the communications in **FBI 126, FBI 129, FBI 168, FBI 240,**

UNCLASSIFIED

**FBI 242, FBI 269, FBI 270, FBI 271, FBI 274, FBI 275, FBI 286 and FBI 287** is also protected under the deliberative process privilege of Exemption 5 inasmuch as they reflect candid internal discussions between and among the GC of the FBI, the FBI's Special Assistant, various CTD employees, and the AD of the FBI's Directorate of Intelligence, all in furtherance of the GC's efforts to collect information regarding the program in order to brief the Director on the "success stories" of the FBI's use of the TSP in counterterrorism investigations and the FBI's role and responsibilities within the TSP.

145.    **(U)**  Disclosure of these communications would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future.  It reflects the thinking of individuals, rather than adopted policy of the FBI.  Such e-mail communications serve as a way for individual FBI employees to communicate with each other about current matters without having to leave their offices.  These "discussions," which are memorialized electronically, are part of the critical exchange of ideas and suggestions that accompanies all decision making and typically reflect very preliminary assessments by FBI personnel about issues on which they may be asked to make recommendations.  Before the advent of computers, these discussions probably would have occurred only orally, with no record of their existence being maintained.  The fact that these discussions are now recorded should not obscure the fact that that they are simply conversations among and between FBI personnel as the situation requires.  These discussions are part of the core give and take of agency deliberations.  If these kinds of documents are routinely released to the public, FBI employees will be much more circumspect in their online discussions with each other.  This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making.  Furthermore, exempting such documents and information from disclosure also

UNCLASSIFIED

UNCLASSIFIED

protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ.  The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm.  These protected deliberations form an integral part of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change over time.  These deliberations and dialogue continue to the present day.  The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures.  The release of the withheld information is likely to chill full, frank, and open internal discussions -- a chilling effect which is all the more dangerous given the important national security interests at stake.  I have determined that the withheld material in **FBI 126, FBI 129, FBI 168, FBI 240, FBI 242, FBI 269, FBI 270, FBI 271, FBI 274, FBI 275, FBI 286 and FBI 287** consists of material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

### (U)  FBI 306 and FBI 315
#### (U)  Intelligence Reports

146.    **(U)  FBI 306** is an Intelligence Report, dated October 6, 2004, compiled by CTD concerning the importance and value of information collected by the TSP and acted on by the FBI in several FBI counterterrorism investigations.  This Intelligence Report consists of backgrounds and summaries of these investigations with specific investigative information as to the use and value of TSP information in the successful accomplishments within these investigations.  **FBI 306** is withheld in its entirety under FOIA Exemptions 1 and 3.

UNCLASSIFIED

UNCLASSIFIED

147.    **REDACTED**

148.    **(U)** **FBI 315** is an undated summary of investigative information concerning the use of TSP information in certain FBI counterterrorism investigations. **FBI 315** is withheld in its entirety under FOIA Exemptions 1 and 3.

149.    **REDACTED**

**(U)** *Applicability of Exemptions 1 and 3*

150.    **REDACTED**

151.    **(U)** Thus, **FBI 306 and FBI 315** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

### **(U)** <u>FBI 141, FBI 143, FBI 144 and FBI 148</u>
**(U)** E-mails Regarding Drafting Of Talking Points For FBI Director

152.    **(U)** **FBI 141, FBI 143 and FBI 144** are interrelated mail trails, dated January 10, 2006, among the GC and CTD executives and CTD employees regarding a proposed briefing of key members of Congress concerning past and current operations and investigations in which TSP information was utilized and a discussion regarding the review of the proposed briefing to ensure that no information is imparted to the key members of Congress which could conceivably have a negative impact on current and future FBI counterterrorism investigations which would utilize TSP information. **FBI 141, FBI 143 and FBI 144** are withheld in their entireties under FOIA Exemptions 1, 3 and 5 (DPP and ACC).

153.    **(U)** More specifically, **FBI 141, FBI 143 and FBI 144** are interrelated three-page e-mail trails, dated January 10, 2006, among the GC and CTD executives and employees regarding a proposed briefing of key members of Congress by General Hayden of NSA concerning past and current operations and investigations in which TSP information was utilized. General Hayden has

UNCLASSIFIED

requested that the FBI review his proposed briefing regarding the TSP to ensure that no information is imparted to the key members of Congress which could conceivably have a negative impact on current and future FBI counterterrorism investigations which would utilize TSP information.

154.    **(U)  FBI 148 and FBI 149** is an e-mail trail dated January 12, 2006, among CTD employees regarding the collection of certain statistical and investigative information concerning the TSP for possible inclusion in the Director's talking points regarding the TSP in anticipation of his testimony before Congress.  **FBI 148** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP).

155.    **REDACTED**

**(U)** *Applicability of Exemptions 1 and 3*

156.    **REDACTED**

157.    **(U)**  Thus, **FBI 141, FBI 143, FBI 144, FBI 148, and FBI 149** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 5*

158.    **(U)**  The substance of the communications in **FBI 141, FBI 143 and FBI 144** is protected under the attorney-client privilege of Exemption 5 inasmuch as it represents the collection of information in preparation for a future briefing by the GC of her client, the FBI Director, concerning a proposed briefing of key members of Congress by General Hayden of NSA regarding past and current operations and investigations in which TSP information was utilized.

159.    **(U)**  The attorney-client communications privilege is appropriately asserted when legal advice of any kind is sought, from a professional legal adviser in his or her capacity as such; the communications relating to that purpose are made in confidence by the client; and are, at the

UNCLASSIFIED

client's instance, permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived. This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function. In addition, the attorney-client privilege covers the two-way communications between a client and an attorney, which relate to legal advice.

160.    **REDACTED**

161.    **(U)** Disclosure of this communication would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future. For these reasons the FBI has asserted Exemption 5, the attorney-client privilege, to protect this confidential communication.

162.    **REDACTED**

163.    **(U)** Disclosure of these communications would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future. They reflect the thinking of individuals, rather than adopted policy of the FBI. Such e-mail communications serve as a way for individual FBI employees to communicate with each other about current matters without having to leave their offices. These "discussions," which are memorialized electronically, are part of the critical exchange of ideas and suggestions that accompanies all decision making and typically reflect very preliminary assessments by FBI personnel about issues on which they may be asked to make recommendations. Before the advent of computers, these discussions probably would have occurred only orally, with no record of their existence being maintained. The fact that these discussions are now recorded should not obscure the fact that that they are simply conversations among and between FBI personnel as the situation

- 42 -

UNCLASSIFIED

UNCLASSIFIED

requires. These discussions are part of the core give and take of agency deliberations. If these kinds of documents are routinely released to the public, FBI employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm. These protected deliberations form an integral part of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change over time. These deliberations and dialogue continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the withheld information is likely to chill full, frank, and open internal discussions – a chilling effect which is all the more dangerous given the important national security interests at stake. I have determined that the withheld material in **FBI 141, FBI 143, FBI 144 and FBI 148** consists of material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

### (U) Documents Related To Legal Opinions, Attorney-Client/Work Product Privileged And Internal Deliberations Regarding The TSP

164.    **REDACTED**

### (U) FBI 3, FBI 9, FBI 10, FBI 13, FBI 17, FBI 26 and FBI 57
(U) Handwritten notes of FBI Director, GC and FBI Director's Special Assistant

- 43 -

UNCLASSIFIED

165.    **(U)  FBI 3** is a collection of handwritten notes by the GC, taken on various dates, concerning the TSP.  **FBI 3** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP and ACC).

166.    **REDACTED**

167.    **(U)  FBI 9** is a five-page document entitled "RSM Program Log" which consists of consisting of chronological entries of personal notes made by the FBI Director from March 1, 2004 through March 23, 2004, regarding conversations and meetings with the Attorney General, the President, and their close aides, as well as conversations and meetings with FBI personnel regarding the legality of the TSP.  This document was released in part by the FBI's Office of Congressional Affairs ("OCA") on 08/14/2007 to Rep. John Conyers, and we are now releasing a part of **FBI 9** consistent with that prior release.  The remaining information is being withheld under FOIA Exemptions 1 and 5 (DPP).

168.    **(U)  FBI 10** is a collection of the FBI Director's handwritten notes, consisting of eight pages, covering the time frame of March 1, 2004 to March 12, 2004, and eight pages from the FBI's Director's personal calendar, also covering the time frame of March 1, 2004, to March 12, 2004.  The notes and calendar pages contain both non-responsive and out of scope material.  This document was released in part by the FBI's Office of Congressional Affairs ("OCA") on 08/14/2007 to Rep. John Conyers, and we are now releasing a part of **FBI 10** consistent with that prior release.  The remaining information is withheld under FOIA Exemptions 1, 3 and 5 (DPP).

169.    **(U)  FBI 13** is a document obtained from the FBI GC's files, dated November 23, 2004, containing questions and answers regarding certain statistical and investigative information regarding

the TSP with handwritten comments and marginalia. **FBI 13** is withheld in its entirety under FOIA Exemptions 1 and 5 (DPP).

170.    **REDACTED**

171.    **(U) FBI 17** is an undated document entitled "Chronology" which details events regarding the TSP from 9/14/01 to 9/14/04. There is a strong likelihood that this document is a draft, similar in nature to FBI 56, which is a draft. See Exhibit A. **FBI 17** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (ACC).

172.    **(U)** More specifically, **FBI 17** is an undated five-page document entitled "Chronology" which details events regarding the TSP from 9/14/01 to 9/14/04.

173.    **(U) FBI 26** is a collection of the GC's handwritten notes regarding detailed descriptions of TSP and printed pages of materials from the CTD Briefing Book [**FBI 1**] regarding procedures and policies concerning the use of TSP information by the FBI in counterterrorism investigations. **FBI 26** is withheld in its entirety under FOIA Exemptions 1 and 5 (DPP).

174.    **REDACTED**

175.    **(U) FBI 57** is a collection of handwritten notes of the FBI Director's Special Assistant regarding the pre-March 2004 chronology of events surrounding the TSP. **FBI 57** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP and ACC).

176.    **REDACTED**

**(U)** *Applicability of Exemptions 1 and 3*

177.    **REDACTED**

178.    **(U)** Thus, **FBI 3, FBI 9, FBI 10, FBI 13, FBI 17, FBI 26 and FBI 57** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3, as well as certain portions of **FBI 9** and **FBI 10**.

**(U)**  *Applicability of Exemption 5*

179.    **(U)**  The substance of this group of notes, calendar entries, excerpts and chronologies are protected under the deliberative process privilege of Exemption 5 inasmuch as they represent the collection of information by the FBI Director and his attorneys (the GC and his Special Counsel) concerning the importance and value of the TSP in relation to the successful outcome of certain FBI counterterrorism investigations and the program itself.

180.    **(U)**  Disclosure of these communications would repress and stifle such critical self-analysis in the future.  Furthermore, the Director himself has testified that his ability to give and receive advice would be harmed if he were required to disclose contents of confidential communications with the Attorney General, President or their close aides.  Moreover, the documents reflect the thinking and observations of individuals, rather than adopted policy of the FBI.  Note-taking and drafting is a core element of the give and take of agency deliberations.  If these kinds of documents are routinely released to the public, FBI employees will be much more circumspect in their note-taking in the future.  A chill on note-taking at the risk of disclosure results in serious impairment of the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making.  Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ.  The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm.  These protected deliberations form an integral part of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change

over time. These deliberations and dialogue continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the withheld information is likely to chill full, frank, and open internal discussions -- a chilling effect which is all the more dangerous given the important national security interests at stake. I have, therefore, determined that **FBI 3, FBI 9, FBI 10, FBI 13, FBI 17, FBI 26 and FBI 57** contain material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

181.   **(U)** The substance of **FBI 3, FBI 17,** and **FBI 57** is protected under the attorney-client privilege of Exemption 5 inasmuch as it represents the collection of information by the GC and Special Counsel in preparation for future briefings of their clients – the FBI Director and other FBI executives – concerning the importance and value of the TSP in relation to the successful outcomes of certain FBI counterterrorism investigations.

182.   **(U)** The attorney-client communications privilege is appropriately asserted when legal advice of any kind is sought, from a professional legal adviser in his or her capacity as such; the communications relating to that purpose are made in confidence by the client; and are, at the client's instance, permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived. This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function. In addition, the attorney-client privilege covers the two-way communications between a client and an attorney, which relate to legal advice. Disclosure of these notes would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future. For these reasons the FBI has asserted Exemption 5, the attorney-client privilege, to protect **FBI 3, 17**

and **57**.

(U)  <u>**FBI 32, FBI 33, FBI 115, FBI 137, FBI 138 and FBI 241**</u>
(U)  Client Seeking Guidance As To How To Proceed With TSP

183.    **(U)  FBI 32** is an e-mail, dated March 13, 2004, among a FBI executive, the GC,

and the DGC regarding a certain administrative process used by the FBI in connection with the

TSP and seeks guidance regarding the FBI's use of TSP information.  **FBI 32** is withheld in its

entirety under FOIA Exemptions 1 and 5 (ACC).

184.    **REDACTED**

185.    **(U)  FBI 33** is an e-mail among FBI executives and the GC regarding a certain

aspect of the FBI's use of TSP information.  **FBI 33** is withheld in its entirety under FOIA

Exemptions 1, 3 and 5 (ACC).

186.    **REDACTED**

187.    **(U)  FBI 115** is an e-mail trail dated January 4, 2006, among CTD employees, the

GC and DGC seeking legal guidance as to the FBI's use of TSP information in light of the media

reports concerning the TSP.  Within this e-mail trail, CTD provides OGC with an example of the

work product generated by the FBI in its use of TSP information.  **FBI 115** is withheld in its

entirety under FOIA Exemptions 1, 3 and 5 (DPP and ACC).

188.    **REDACTED**

189.    **(U)  FBI 137**, a continuation of the e-mail trail in **FBI 115**, is an e-mail trail, also

dated January 4, 2006, among CTD employees, the GC and DGC regarding legal guidance as to as

to the FBI's use of TSP information in light of the media reports concerning the TSP.  **FBI 137** is

withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP and ACC).

190.    **REDACTED**

- 48 -

UNCLASSIFIED

191.    **(U)  FBI 138** is an e-mail, dated January 5, 2006, from a CTD Assistant Section Chief to CTD employees concerning the potential impact of the recent public disclosures of the TSP on certain counterterrorism cases.  **FBI 138** is withheld in its entirety under FOIA Exemptions 1 and 5 (DPP).

192.    **REDACTED**

193.    **(U)  FBI 241** is an e-mail trail, similar to the e-mails in **FBI 115** and **FBI 137**, also dated January 4, 2006, among the GC, DGC and CTD employees seeking legal guidance as to the FBI's use of TSP information in light of the media reports concerning the TSP.  **FBI 241** is withheld in its entirety under FOIA Exemptions 1, 3 and 5 (DPP and ACC).

194.    **REDACTED**

**(U)** *Applicability of Exemptions 1 and 3*

195.    **REDACTED**

196.    **(U)** Thus, **FBI 32, FBI 33, FBI 115, FBI 137, FBI 138 and FBI 241** are exempt from disclosure in their entireties pursuant to Exemptions 1 and 3.

**(U)** *Applicability of Exemption 5*

197.    **(U)** The substance of **FBI 115, FBI 137, FBI 138 and FBI 241** is protected under the deliberative process privilege of Exemption 5 inasmuch as it represents a candid, internal discussion among CTD employees regarding the potential impact of public disclosure of the TSP at that time on certain pending counterterrorism cases.

198.    **(U)** Disclosure of these types of communications would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future.  It reflects the thinking of individuals, rather than adopted policy of the FBI.  These e-mail communications serve as a way for individual FBI employees to communicate with each other

- 49 -

about current matters without having to leave their offices. These "discussions," which are memorialized electronically, are part of the critical exchange of ideas and suggestions that accompanies all decision making and typically reflect very preliminary assessments by FBI personnel about issues on which they may be asked to make recommendations. Before the advent of computers, these discussions probably would have occurred only orally, with no record of their existence being maintained. The fact that these discussions are now recorded should not obscure the fact that that they are simply conversations among and between FBI personnel as the situation requires. These discussions are part of the core give and take of agency deliberations. If these kinds of documents are routinely released to the public, FBI employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm. These protected deliberations form an integral part of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change over time. These deliberations and dialogue continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the withheld information is likely to chill full, frank, and open internal discussions – a chilling effect which is all the more dangerous given the important national

security interests at stake.  I have determined that the withheld material in **FBI 138** consists of material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

199.    **REDACTED**

200.    **(U)**  The attorney-client communications privilege is appropriately asserted when legal advice of any kind is sought, as is the case here, from a professional legal adviser in his or her capacity as such; the communications relating to that purpose are made in confidence by the client; and are, at the client's instance, permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived.  This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function.  In addition, the attorney-client privilege covers the two-way communications between a client and an attorney, which relate to legal advice.  Disclosure of this communication would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future.  For these reasons the FBI has asserted Exemption 5, the attorney-client privilege, to protect **FBI 32 and FBI 33** from disclosure.

**(U)  <u>FBI 90 and FBI 136</u>**
**(U)**  E-Mails Regarding TSP And Criminal Litigation

201.    **(U)**  FBI 90 is an e-mail trail dated September 6, 2005, among OGC attorneys discussing the use of TSP information in a specific FBI counterterrorism investigation.  **FBI 90** is withheld in its entirety under Exemptions 1, 3, and 5 (DPP and ACC).

202.    **REDACTED**

203.    **(U)**    **FBI 136** is an e-mail trail dated December 28, 2005, among OGC attorneys and CTD employees concerning a litigation question regarding the possible use of TSP

information in certain court cases. **FBI 136** is withheld in its entirety under Exemptions 1 and 5 (DPP and ACC).

204.    **REDACTED**

(U) *Applicability of Exemptions 1 and 3*

205.    **REDACTED**

206.    **(U)** Thus, **FBI 90** is exempt from disclosure in its entirety pursuant to Exemptions 1 and 3, and **FBI 136** is exempt from disclosure in its entirety pursuant to Exemption 1.

(U) *Applicability of Exemption 5*

207.    **REDACTED**

208.    **REDACTED**

209.    **(U)** The attorney-client communications privilege is appropriately asserted when legal advice of any kind is sought, from a professional legal adviser in his or her capacity as such; the communications relating to that purpose are made in confidence by the client; and are, at the client's instance, permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived. This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function. In addition, the attorney-client privilege covers the two-way communications between a client and an attorney, which relate to legal advice.

210.    **(U)** This communication was generated in a secure internal e-mail/computer system of the FBI, based on client-supplied information regarding various aspects of the TSP. The withheld material taken as a whole reflects an internal candid discussion between OGC attorneys and CTD employees concerning a litigation question regarding the "scrubbing" of TSP

- 52 -

information for possible use in Court cases in which the defendants allege that their

communications may have monitored by the TSP.

211.    **(U)** Disclosure of this communication would breach the confidential relationship

between these individuals and repress and stifle such critical communications in the future.  For

these reasons the FBI has asserted Exemption 5, the attorney-client privilege, to protect this

confidential communication.

212.    **REDACTED**

213.    **(U)** Disclosure of these communications would breach the confidential

relationship between these individuals and repress and stifle such critical communications in the

future.  It reflects the thinking of individuals, rather than adopted policy of the FBI.  Such e-mail

communications serve as a way for individual FBI employees to communicate with each other

about current matters without having to leave their offices.  These "discussions," which are

memorialized electronically, are part of the critical exchange of ideas and suggestions that

accompanies all decision making and typically reflect very preliminary assessments by FBI

personnel about issues on which they may be asked to make recommendations.  Before the advent

of computers, these discussions probably would have occurred only orally, with no record of their

existence being maintained.  The fact that these discussions are now recorded should not obscure

the fact that that they are simply conversations among and between FBI personnel as the situation

requires.  These discussions are part of the core give and take of agency deliberations.  If these

kinds of documents are routinely released to the public, FBI employees will be much more

circumspect in their online discussions with each other.  This lack of candor will seriously impair

the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper

decision-making.  Furthermore, exempting such documents and information from disclosure also

protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm. These protected deliberations form an integral part of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change over time. These deliberations and dialogue continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the withheld information is likely to chill full, frank, and open internal discussions – a chilling effect which is all the more dangerous given the important national security interests at stake. I have determined that **FBI 90 and FBI 136** contain material which is deliberative and has been withheld appropriately pursuant to Exemption 5.

### (U)  FBI 282, FBI 288, FBI 289, FBI 290, FBI 291, FBI 294 and FBI 295
**(U)**  E-mails Between GC And FBI Director's Special Assistant

214.    **(U)  FBI 282** is an e-mail dated January 31, 2006, from the Director's Special Assistant to the GC regarding certain additional questions concerning the TSP and a proposal concerning the content of the answers to these questions. **FBI 282** is withheld in its entirety under Exemption 5 (DPP).

215.    **REDACTED**

216.    **(U)  FBI 288, FBI 289, FBI 290, FBI 291 and FBI 294** are all part of an e-mail trail dated February 1, 2006, among the GC, an FBI executive and the Director's Special Assistant concerning guidance from the DNI as to the difference between what information concerning the

UNCLASSIFIED

TSP can be provided in a classified setting, such as in an executive session of a committee of the U.S. Congress, as opposed to an unclassified setting, such as a press conference. This e-mail trail also contains a discussion of what information concerning the TSP can be provided in an executive session of a committee of the U.S. Congress if all of the committee members have not been granted authorized access to information concerning the TSP. **FBI 288, FBI 289, FBI 290, FBI 291 and FBI 294** are withheld under Exemptions 1 and 5 (DPP and ACC).

217.    **(U)  FBI 295** is an e-mail dated February 2, 2006, from the GC to the Director's Special Assistant regarding a White Paper concerning the legality of the TSP. The GC is asking whether the Special Assistant has read the White Paper and requests her opinion regarding the legal justifications for the TSP contained in this document. **FBI 295** is withheld in its entirety under Exemption 5 (DPP and ACC).

218.    **REDACTED**

**(U)** *Applicability of Exemption 1*

219.    **REDACTED**

220.    **(U)**  Thus, **FBI 288, FBI 289, FBI 290, FBI 291 and FBI 294** are exempt from disclosure in their entireties pursuant to Exemption 1.

**(U)** *Applicability of Exemption 5*

221.    **(U)**  The substance of the communications in **FBI 288, FBI 289, FBI 290, FBI 291, FBI 294 and FBI 295** is protected under the attorney-client privilege of Exemption 5 inasmuch as it represents efforts to collect information in preparation for a future briefing by the GC of her client, the Director of the FBI, concerning the importance and value of the TSP in relation to the successful outcomes of certain FBI counterterrorism investigations, as well as to help prepare the Director for future Congressional testimony and media inquiries.

UNCLASSIFIED

222.    **(U)** The attorney-client communications privilege is appropriately asserted when legal advice of any kind is sought, from a professional legal adviser in his or her capacity as such; the communications relating to that purpose are made in confidence by the client; and are, at the client's instance, permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived.  In this instance, the Director's Special Assistant, who, while an attorney, may nevertheless be viewed as a client seeking advice from the GC on behalf of the Director.  This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function.  In addition, the attorney-client privilege covers the two-way communications between a client and an attorney, which relate to legal advice.

223.    **(U)** This communication was generated in a secure internal e-mail/computer system of the FBI, based on client-supplied information regarding various aspects of the TSP.  The withheld material taken as a whole reflects a candid internal discussion between the GC of the FBI and a senior attorney in the Director's Office concerning guidance from the DNI as to the difference between what information concerning the TSP can be provided in a classified setting, such as in an executive session of a committee of the U. S. Congress, as opposed to an unclassified setting, such as a press conference, and what information concerning the TSP can be provided in an executive session of a committee of the U. S. Congress if all of the committee members have not been granted authorized access to information concerning the TSP.

224.    **(U)** Disclosure of this communication would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future.  For these reasons the FBI has asserted Exemption 5, the attorney-client privilege, to protect these confidential communications in **FBI 288, FBI 289, FBI 290, FBI 291, FBI 294 and FBI 295**.

- 56 -

225.    **(U)**  The substance of the communications in **FBI 282, FBI 288, FBI 289, FBI 290,**

**FBI 291, FBI 294 and** FBI 295 is also protected under the deliberative process privilege of

Exemption 5 inasmuch as it reflects a candid internal discussion between the GC of the FBI and a

senior attorney in the Director's Office concerning guidance from the DNI as to the difference

between what information concerning the TSP can be provided in a classified setting, such as in an

executive session of a committee of the U. S. Congress, as opposed to an unclassified setting, such

as a press conference, and what information concerning the TSP can be provided in an executive

session of a committee of the U. S. Congress if all of the committee members have not been

granted authorized access to information concerning the TSP.

226.    **(U)**  Disclosure of this communication would breach the confidential relationship

between these individuals and repress and stifle such critical communications in the future.  It

reflects the thinking of individuals, rather than adopted policy of the FBI.  Such e-mail

communications serve as a way for individual FBI employees to communicate with each other

about current matters without having to leave their offices.  These "discussions," which are

memorialized electronically, are part of the critical exchange of ideas and suggestions that

accompanies all decision making and typically reflect very preliminary assessments by FBI

personnel about issues on which they may be asked to make recommendations.  Before the advent

of computers, these discussions probably would have occurred only orally, with no record of their

existence being maintained.  The fact that these discussions are now recorded should not obscure

the fact that that they are simply conversations among and between FBI personnel as the situation

requires.  These discussions are part of the core give and take of agency deliberations.  If these

kinds of documents are routinely released to the public, FBI employees will be much more

circumspect in their online discussions with each other.  This lack of candor will seriously impair

the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary information and opinions that do not, in fact, reflect the final views or policies of the FBI, and of DOJ. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where exposure of the process would result in harm. These protected deliberations form an integral part of the decision-making process regarding the development of operational procedures and policy, a dialogue regarding procedures and policies, which, as the documents reflect, continue to change over time. These deliberations and dialogue continue to the present day. The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the withheld information is likely to chill full, frank, and open internal discussions -- a chilling effect which is all the more dangerous given the important national security interests at stake. I have determined that the withheld material in **FBI 282, FBI 288, FBI 289, FBI 290, FBI 291, FBI 294 and FBI 295** is deliberative in nature and has been withheld appropriately pursuant to Exemption 5.

## (U)  REFERRALS

227.    **(U)**  An additional approximately 127 non-serialized documents were identified by the FBI as containing equities of other DOJ components and/or other federal government agencies and were therefore referred appropriately, see First Hardy Decl. ¶¶ 140-148, for a more detailed discussion of these referrals. By virtue of the Court's Order, however, some of these referrals (either incoming or outgoing) have been resolved. See Exhibit A. Below is a brief synopsis of the treatment received by each referral as of this date:

UNCLASSIFIED

## (U)  OUTGOING REFERRALS

228.   **(U)**  The FBI identified one document which originated with the Office of Intelligence Policy and Review ("OIPR") at DOJ – **FBI 14**.  The FBI referred this document to OIPR for direct response, and it was addressed in a separate declaration supplied by OIPR.  See Baker Decl.  In addition, the Court granted OIPR summary judgment on **FBI 14**.  See Mem. Op. at 21.

229.   **(U)**  The FBI identified eight documents and/or portions of documents which originated with the Office of Legal Counsel ("OLC") at DOJ – **FBI 4, 5, 7, 18, 19, 42, 51 and 58**. The FBI referred these documents to OLC for direct response, and these documents have been addressed in a separate declaration supplied by DOJ OLC.  See Bradbury Decl.  The Court granted OLC summary judgment on document **FBI 18**.  See Mem. Op. at 18.  In addition, the Court granted OLC summary judgment on documents **FBI 19 and FBI 58**.  See Mem. Op. at 16.  **FBI 4, 5, 7, 42 and 51** have been more recently addressed in the Second Bradbury Decl.

230.   **(U)**  In addition, the FBI identified among documents contained in the files of OGC personnel two copies of one DOJ-originated document, dated January 19, 2006, entitled "Legal Authorities Supporting the Activities of the National Security Agency Described by the President," the so-called "White Paper" – **FBI 23**.  The FBI referred this document to OLC for direct response.  Having been advised that this document had been provided previously to plaintiff, the FBI did not produce another copy.  The Court has concluded that plaintiff's objections with regard to **FBI 23** have been disclaimed or withdrawn.  See Mem. Op. at 5.

## (U)  INCOMING REFERRALS

231.   **REDACTED**

232.   **REDACTED**

UNCLASSIFIED

233.    **(U)**  OLC identified and referred one document which originated with -- and/or contains equities of -- the FBI: *OLC 127*.  *OLC 127*, which is the same document as **FBI 39**, was granted summary judgment by the Court.  See Mem. Op. at 22.

## **(U)  CONCLUSION**

234.    **(U)**  The FBI has now provided all releasable records responsive to its FOIA request to the FBIHQ.  As demonstrated above, the information which the FBI has withheld consists of information the disclosure of which would: (a) reveal material which is classified; (b) reveal the internal personnel rules and practices and internal operations of the TSP; (c) reveal information protected by statute; and (d) reveal material protected by the deliberative process, attorney/client and attorney work product privileges.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that **Exhibits A and B** attached hereto are true and correct copies.

Executed this 20th day of November, 2007.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.