**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) |
| | ) |
| | )  Civil Action No. 06-0096 (HHK) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| AMERICAN CIVIL LIBERTIES UNION, et al., | ) |
| | )  Civil Action No. 06-00214 (HHK) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | )  **CONSOLIDATED CASES** |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION**
**FOR *IN CAMERA* REVIEW AND REPLY IN SUPPORT OF DEFENDANT'S**
**RENEWED MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

On October 18, 2007, defendant the United States Department of Justice ("Department"),

in conformity with the Court's order of September 5, 2007 (Docket No. 48, hereinafter, "Sept. 5

Op."), renewed its motion for summary judgment in this case arising under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, and set forth detailed justifications for the

withholding of the documents that remain at issue in this litigation by the Office of the Deputy

Attorney General ("ODAG"), the Office of Intelligence Policy and Review ("OIPR"), the Office

of Legal Counsel ("OLC"), and, as to documents referred by these Department components, by

the National Security Agency ("NSA").  Docket No. 50.  On November 20, 2007, defendant

made a supplemental submission in support of its renewed motion for summary judgment on

behalf of the Federal Bureau of Investigation ("FBI").  Docket No. 54.

In their opposition to defendant's renewed summary judgment motion and in support of

their own renewed motion for in camera review (Docket No. 57), plaintiffs identify specific

challenges to only a handful of the documents currently at issue in this litigation.  See Docket

No. 58, hereinafter "Pls' Opp.") at 8 & n.8 (identifying 18 specific documents withheld by OLC);

id. at 31 at n.28 (identifying 12 specific records withheld by the FBI).  Plaintiffs' arguments

ignore the classified nature of these documents, and brush aside the fact that their disclosure

would inevitably compromise intelligence sources and methods, rendering them exempt from

disclosure under FOIA's Exemptions One and Three, 5 U.S.C. § 552(b)(1), (b)(3).  As to these

documents, plaintiffs also misinterpret the law governing the various privileges encompassed

within FOIA's Exemption Five, 5 U.S.C. § 552(b)(5).  In addition, plaintiffs fail to satisfy the

standards required to present a viable case for in camera review of the 30 documents plaintiffs

specifically discuss, or to make any presentation whatsoever sufficient to call into question

defendant's entitlement to summary judgment as to any other document still at issue in the

litigation.  See Spirko v. U.S. Postal Serv., 147 F.3d 992, 998 (D.C. Cir. 1998).

In particular, plaintiffs make no mention whatsoever of the submissions and arguments

made on behalf of ODAG, OIPR, or the NSA.  See Def't's Renewed Mot. at 10-13 (ODAG), 18

(OIPR), & 19-21 (NSA).  As to the records or categories of records that remain in question from

these entities, therefore – specifically, ODAG 13, 36, 37, 59, and 64; OIPR 73; and OLC 7, 41,

43, 71, 77, 79, 94, 123 – defendant's request for summary judgment is entirely unopposed.  In

addition, plaintiffs explicitly concede the proper withholding of the following documents:  OLC

84, OLC 107, OLC 116, OLC 139, OLC 144, OLC 201, OLC 202, and OIPR 60.  Pls' Opp.

at 8 n.6.  Summary judgment as to these documents, accordingly, should be granted.

Thus, the only specifically challenged documents that remain at issue in this case are

certain documents withheld by OLC and the FBI.  As to these documents, for the reasons

explained herein and in defendant's prior submissions, defendant is entitled to summary

judgment.

## ARGUMENT

## I.    OLC IS ENTITLED TO SUMMARY JUDGMENT.

OLC originally withheld documents in six categories.  In this Court's Order of September

5, 2007, the Court granted the Department summary judgment with respect to all of the

documents withheld in categories B and D, as well as with respect to certain documents withheld

in the other four categories.[1]  Thus, only documents in categories A, C, E, and F remain at issue.

### A.    OLC Properly Withheld Records or Categories of Records Relating to Targets of the TSP (Category C) and Briefing Materials and Talking Points (Category F).

Plaintiffs make no substantive challenge to the withholding of documents in either

Category C or Category F, and defendant is entitled to summary judgment with respect to its

determinations to withhold the documents included in these categories.

*Category C.*  With respect to category C, i.e., documents relating to the targets of the

TSP, see Second Bradbury Decl. ¶¶ 57-76, this Court previously noted that documents of the type

contained in this category – documents related to the criteria used for targeting and the

appropriateness of targeting certain groups of individuals under the TSP, and documents

_____

[1]  Plaintiffs reiterate their request that defendants be ordered to reveal the title of category
B.  Pls' Opp. at 38 n.32.  As explained in Mr. Bradbury's Second Declaration, this cannot be
done without compromising classified information.  See Second Bradbury Decl. ¶¶ 54-55.

containing reporting with respect to the intelligence successes of the TSP – are "exempt under Exemption 1 and/or 3," Sept. 5 Op. at 15-16, and that "many, if not all, of the documents in this category may be protected by the deliberative process privilege." Id.   The Court's only expressed concern with respect to the withholding of these documents was that the Court was not satisfied with OLC's segregability determination as to these records and that the Court could not ascertain from the details provided in OLC's original supporting materials whether all of, or all portions of, the documents were subject to the deliberative process privilege. Id.

The second declaration of Mr. Bradbury addresses the Court's specific concerns. First, the declaration makes clear that these documents were generated or compiled in the course of making decisions concerning the approach to be taken in litigation before the Foreign Intelligence Surveillance Court ("FISC"), and thus are subject to the protection of the attorney work product doctrine. See Second Bradbury Decl. ¶¶ 59, 65, 74, 75. As the Court of Appeals has held, documents subject to the work product doctrine are not required to be reviewed for segregability purposes in a FOIA case. See Judicial Watch, Inc. v. Dept. of Justice, 432 F.3d 366, 369 (D.C. Cir. 2005) ("If a document is fully protected as work product, then segregability is not required"). Second, the descriptions of the documents provided in the declaration and the accompanying log, see Second Bradbury Decl., Ex. C, make clear that the documents withheld in this category fall squarely within the exemptions claimed; indeed, as Mr. Bradbury explains, targeting information under the TSP cannot be disclosed without compromising foreign intelligence gathering activities of the United States, thus, exempting the documents from disclosure under Exemptions 1 and 3.  Second Bradbury Decl. ¶¶ 61-62; see also DNI Decl. ¶ 35. In addition, as Mr. Bradbury also explains, deliberations within the Executive Branch concerning the "nature and scope of an application for a FISC order relating to the interception of the content

of one-end foreign communications were ongoing at the time the plaintiffs' FOIA requests were processed in the spring of 2006." Second Bradbury Decl. ¶ 65. The documents withheld under this category were critical to that deliberative process, and thus were all properly withheld.

Plaintiffs make only passing reference in a footnote to the documents withheld by OLC in Category C, and then only to acknowledge that if the documents in this category are properly withheld under the attorney work product doctrine, then they are not subject to segregability analysis. See Pls' Opp. at 29 n.25. Other than to explicitly concede that they do not challenge the withholding of a few documents in this category, specifically, OLC 107, OLC 139, and OLC 144, see Pl's Opp. at 8 n.6, plaintiffs do not address any of the remaining documents – specifically, OLC 76, OLC 145, OLC 200, ODAG 15, ODAG 16, ODAG 23, ODAG 24, and OIPR 9 – at all. Plaintiffs do not point to any deficiency in the descriptions of the documents provided by OLC either in the declaration of Mr. Bradbury or in the accompanying logs; they make no argument as to why the attorney work product doctrine might not protect the documents in light of Mr. Bradbury's explanation of the litigation context in which these documents were created or compiled; and they make no effort to explain why any of the other claimed exemptions might be inapplicable.[2] Plaintiffs, thus, offer absolutely no basis either for in camera review of these documents or for denial of defendants' motion for summary judgment as to these documents. Summary judgment as to all of the documents withheld in Category C, accordingly, should be granted.

---

[2] Indeed, given that plaintiffs now claim – despite the enormous breadth and scope of their original FOIA requests – that this case is "not about the disclosure of secret operational details of the Program" and that they "seek no such details," see Pls' Opp. at 10, plaintiffs have no basis whatsoever to pursue disclosure of the documents in Category C since information about who is to be targeted by a foreign intelligence collection program and the reasons for such targeting is plainly "operational" information.

_**Category F.**_  Plaintiffs make no reference at all to the documents withheld in Category F, i.e., Briefing Materials and Talking Points, except to explicitly concede that they do not challenge the proper withholding of several of the documents contained within that category, specifically, OLC 84, OLC 116, OLC 201, OLC 202, and OIPR 60.  See Pls' Opp. at 8 n.6.  As to these five records, summary judgment for defendant is clearly warranted.  In addition, for the reasons explained in Mr. Bradbury's Second Declaration and in defendant's Renewed Motion, defendant is entitled to summary judgment with respect to the withholding of the documents plaintiffs do not mention, specifically, OLC 7, OLC 46/ODAG 54, OLC 65/OIPR 137, OLC 80/ODAG 34, OLC 81, OLC 82, OLC 125/ODAG 41, OLC 126/OIPR 13, and OLC 134.  As Mr. Bradbury has explained in response to the Court's concern about the possibility that some of these documents represented publicly articulated views of the Department, see Sept. 5 Op. at 18, that, with four exceptions which were publicly released in their final form, the remainder of these documents were prepared solely for internal purposes and were not adopted or incorporated into any public statements about the TSP.  See Second Bradbury Decl. ¶ 110.  In addition, as Mr. Bradbury also explains, these documents contain classified information concerning the scope and operation of the TSP which cannot be disclosed without compromising the national security of the United States.  See Bradbury Decl. ¶¶ 112-13, 115-16, 119-22, 124-26, 130-33; 136-37; DNI Decl. ¶¶ 22-35.  Absent any specific challenge from the plaintiffs, and in light of the detailed justifications for the withholding of these documents provided in Mr. Bradbury's declarations, defendant is entitled to summary judgment with respect to the documents that remain at issue in Category F.

**B.    OLC Properly Withheld Documents Relating to the President's Authorization of the TSP (Category A) and Legal Opinions of OLC (Category E).**

Plaintiffs' challenge to OLC's withholdings in Categories A and E is specifically focused on 18 documents: OLC 51, OLC 63/FBI 4, OLC 114, OLC 115/ODAG 3, OIPR 139, OIPR 140, and FBI 7 in Category A, and OLC 16/ODAG 38, OLC 54/ODAG 1/OIPR 28, OLC 59/OIPR 29, OLC 62/ODAG 52, OLC 85, OLC 129/ODAG 6, OLC 131/ODAG 2/OIPR 37/FBI 51, OLC 132/ODAG 5, OLC 146, OLC 113/FBI 42, and ODAG 42.  See Pls' Opp. at 8 n. 7.[3]  With respect to these documents, plaintiffs argue that defendant has failed to provide an adequate basis for withholding these documents under Exemptions One and Three, that defendant has failed to demonstrate the proper withholding of these documents under Exemption Five, and that defendant has failed to make a proper segregability determination.  Plaintiffs are wrong as to each of these arguments.

    1.    OLC Properly Withheld Documents under Exemptions One and Three.

Plaintiffs' arguments concerning the purported deficiency of defendant's submissions relating to the applicability of Exemptions One and Three are entirely without merit.[4]  Defendant

---

[3]  Although plaintiffs identify 18 specific documents, they make no reference to a few of the other documents withheld in Categories A and E.  As to these documents – specifically OLC 64 and ODAG 40 in Category A and OLC 133 in Category E – defendant's motion for summary judgment is uncontested.

[4]  Indeed, a  United States District Court has already determined that eight of the 18 documents plaintiffs specifically identify were properly withheld under Exemptions One and Three.  See The New York Times Co. v. Dept. of Defense, 499 F. Supp.2d 501 (S.D.N.Y. 2007) (upholding DOJ's withholding of, inter alia, OLC 16/ODAG 38; OLC 54/ODAG 1/OIPR 28; OLC 59/OIPR 29; OLC 62/ODAG 52; OLC 115/ODAG 3; OLC 129/ODAG 6; OLC 131/ODAG 2/OIPR 37/FBI 51; OLC 132/ODAG 5).  The remaining documents plaintiffs identify here were not at issue in The New York Times case.  Plaintiffs' plea that the Court ignore the persuasive value of The New York Times decision with respect to classified documents because in subsequent opinions the Court required in camera review and release of certain documents, see Pls' Opp. at 8 n.5, is entirely unavailing.  That Court's subsequent orders, including the order reported at The New York Times Co. v. Dept. of Defense, 2007 WL 2609572 (S.D.N.Y. Aug.

has extensively, in Mr. Bradbury's Second Declaration, in the Declaration filed by the former

Director of National Intelligence ("DNI"), John D. Negroponte, and in defendant's earlier

submissions, explained the classified nature of the program about which the plaintiffs seek

information; identified the statutes that preclude disclosure of information concerning this

program; described the harms to the United States' intelligence collection activities that would

result from the disclosure of detailed information concerning the program; and, with respect to

every document that remains at issue in this litigation, individually described the document in a

way that demonstrates why it cannot be disclosed without compromising the United States'

foreign intelligence collection activities.

 In particular, the former DNI has extensively discussed seven categories of information

that cannot be disclosed without causing harm to national security or without running afoul of the

statutory obligation to protect intelligence sources and methods.  See DNI Decl. ¶¶ 22-35.

Plaintiffs have never taken issue with that detailed presentation, and, in any event, as the Court of

Appeals requires, the determinations of the former DNI that certain information cannot be

disclosed without causing harm to national security are to be given "substantial weight."

See Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984); Military Audit Project v. Casey, 656

F.2d 724, 738 (D.C. Cir. 1981); accord Am. Civil Liberties Union v. U.S. Dept. of Justice, 265 F.

Supp. 2d 20, 28 (D.D.C. 2003) (Huvelle, J.) ("the executive branch departments responsible for

national security and national defense have unique insights and special expertise concerning the

kinds of disclosures that may be harmful").

 The detailed submissions made by defendant in this case belie plaintiffs' repeated

_____

28, 2007), were limited to unclassified documents withheld by DOJ.  Plaintiffs here do not
challenge the withholding of any unclassified document, and thus, the activity in that phase of
The New York Times case has no bearing here.

hyperbolic arguments that defendant has done no more than offer "conclusory assertions," Pls'

Opp. at 9, "bald assertions," id., "bare bones justifications," Pls' Opp. at 14, or only "passing

references to various exemptions." Pls' Opp. at 4. Moreover, while defendant acknowledges

that certain portions of its withholding justification must be presented to the Court in camera due

to the extraordinary national security sensitivity of the information at issue in this case, see, e.g.,

Second Bradbury Decl. ¶¶ 13-24, it has long been recognized that in camera presentations are not

at all unusual in cases implicating national security:

> We recognize that a fuller public record could enhance the adversary process; but
> it could also reveal sensitive information. This would violate Exemption 1, for its
> basic purpose is to ensure that the FOIA will not require disclosure of any such
> sensitive material unless judicial scrutiny finds it warranted. The proper procedure
> for a district court, then, is to accept sensitive affidavits in camera, as was done
> here. . . . In a limited range of security cases, it is simply not possible to provide
> for orderly and responsible decisionmaking about what is to be disclosed, without
> some sacrifice to the pure adversary process.

Hayden v. National Security Agency, 608 F.2d 1381, 1385 (D.C. Cir. 1979) (footnotes omitted);

see also Spirko, 147 F.3d at 998 ("clearly, 'there are occasions when extensive public

justification would threaten to reveal the very information for which a FOIA exemption is

claimed'") (citation omitted). Indeed, the Court of Appeals in Hayden specifically noted that,

even more so than in the usual national security FOIA case, cases involving the signals

intelligence mission of the NSA – and the TSP was a signals intelligence program – are "unique"

and that a "court cannot demand as complete a public record as in many other contexts[,] even

other intelligence contexts[,] without imperiling legitimate secrecy interests." Id.

　　　　In addition, this Circuit has long recognized that it is proper for the Court's review to be

limited to the declarations filed in support of summary judgment, and that in camera review of

the documents themselves is unnecessary except in extraordinary circumstances. See Hayden,

608 F.2d at 1387 (reliance on agency submissions in lieu of in camera review "is in accordance

with congressional intent that courts give agency affidavits 'substantial weight' in recognition of

the agency's expertise.  In this scheme, <u>in camera</u> review is a "last resort"); <u>see also</u> <u>Armstrong v.</u>

<u>Exec. Ofc. of the President</u>, 97 F.3d 575, 580 (D.C. Cir. 1996) ("In national security cases, a

district court exercises a wise discretion when it limits the number of documents it reviews <u>in</u>

<u>camera</u>").

Moreover, courts in this district have recognized repeatedly that the specificity necessary

to support a withholding determination will differ depending "upon the nature of the case, the

documents at issue, and the exemption claimed."  <u>Ferrranti v. Bureau of Alcohol, Tobacco, &</u>

<u>Firearms</u>, 177 F. Supp. 2d 41, 45-46 (D.D.C. 2001) (Lamberth, J.).  Thus, as the Court of

Appeals has recently held, "context dictates [the court's] approach to the particularity required of

agencies." <u>Judicial Watch</u>, 449 F.3d at 147.  With respect to defendant's reliance on Exemptions

One and Three in particular, courts routinely recognize that "Vaughn declarations filed in FOIA

cases involving classified documents inherently require a degree of generalization and such

generalization does not violate the FOIA." <u>Voinche v. Fed. Bureau of Investigation</u>, 940 F. Supp.

323, 328 (D.D.C. 1996) (citing <u>Maynard v. Central Intelligence Agency</u>, 986 F.2d 547, 557 (1st

Cir.1993)), <u>aff'd</u> 1997 WL 411685 (D.C. Cir. 1997); <u>see also</u> <u>Campbell v. U.S. Dept. of Justice</u>,

164 F.3d 20, 31 (D.C. Cir. 1998) (an adequate Exemption One declaration "need not

exhaustively explain each redaction and withholding, but it must provide sufficient information

to permit . . . the district court to understand the foundation for and necessity of the [agency's]

classification decisions"). Similarly, where an agency claims the applicability of Exemption

Three, review of the agency's claim "depends less on the detailed factual contents of specific

documents; the sole issue for decision is the existence of a relevant statute and the inclusion of

withheld material within the statute's coverage.'" <u>Fitzgibbon v. Central Intelligence Agency</u>, 911

F.2d 755, 761-62 (D.C. Cir. 1990) (citations omitted).

The declarations of Mr. Bradbury, and former DNI Negroponte are more than specific enough to demonstrate "that material withheld is logically within the domain of the exemption claimed." King v. U.S. Dept. of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987). The documents that remain at issue in Categories A and E implicate specific highly classified information that is described in detail by Mr. Bradbury, see Second Bradbury Decl. ¶¶ 13-24, related to the United States' foreign intelligence collection activities. As both Mr. Bradbury and the former DNI describe, the information contained in these documents cannot be disclosed without compromising those activities. Review of these declarations – including, in particular, their classified sections – demonstrates quite plainly that disclosure of the records that remain at issue in this litigation would cause substantial harm to the national security of the United States and would impermissibly compromise sources and methods of foreign intelligence. Such withheld material is more than "logically within the domain" of Exemptions One and Three.

Moreover, to the extent that plaintiffs seek the Department's legal justification for the TSP, see Pls' Opp. at 8, a 42-page White Paper setting forth that analysis was made publicly available more than two years ago. See www.usdoj.gov/ag/readingroom/surveillance.htm. As Mr. Bradbury explains, the Department's January 19, 2006, White Paper sets forth "the official view of the Department with respect to the legality of the TSP from which classified and privileged information has already been removed for public disclosure." Second Bradbury Decl. ¶ 89.

Plaintiffs' only response to defendant's demonstration that Exemptions One and Three precludes the release of the documents remaining at issue in these categories is to ask for the Court's skepticism because certain, limited, public information about the TSP has been

"selectively" disclosed by federal government officials.  See, e.g., Pls' Opp. at 2.[5]  As we have

previously explained, however, this argument is fundamentally flawed and has been repeatedly

rejected by the Court of Appeals.  First, as the Supreme Court has acknowledged, "[t]he national

interest sometimes makes it advisable, or even imperative, to disclose information that may lead

to the identity of intelligence sources.  And it is the responsibility of the [Executive Branch], not

that of the judiciary, to weigh the variety of complex and subtle factors in determining whether

disclosure of information may lead to an unacceptable risk of compromising the Agency's

---

[5]  Plaintiffs also point to a few court decisions in non-FOIA litigation in other circuits concerning the TSP that they claim should give rise to similar skepticism.  First, plaintiffs reiterate their claim that the TSP is "illegal," but cite for that proposition only a dissenting appellate court judge, and a district court judge whose opinion was vacated on appeal on other grounds.  See Pls' Opp. at 11 (citing Am. Civil Liberties Union v. Nat'l Security Agency, 493 F.3d 644 (6th Cir. 2007) (Gilman, J., dissenting); Am. Civil Liberties Union v. Nat'l Security Agency, 438 F.Supp.2d 754 (E.D. Mich., Aug. 17. 2006), vacated on other grounds, 493 F.3d 644 (6th Cir. 2007)).  In any event, this Court, in an opinion by Judge Huvelle, has already rejected the argument that the alleged illegality of the TSP should have any bearing on the withholding of documents concerning the TSP, particularly where disclosure would compromise intelligence sources and methods.  See People for the Am. Way v. Nat'l Security Agency, 462 F. Supp. 2d 21, 33 (D.D.C. 2007) ("Even if the TSP were ultimately determined to be illegal, it does not follow that the NSA's decision regarding the classification of materials relating to the TSP was made 'in order to . . . conceal violations of law.'  Because of the deference due to the NSA in matters of national security, and in the absence of any evidence to the contrary, the Court must accept defendant's reasonable explanation that the materials were classified in order to prevent damage to the national security").  Second, plaintiffs cite the decisions in Hepting v. AT&T, 439 F. Supp. 2d 974, 986-89 (N.D. Cal. 2006) (appeal pending), and Al-Haramain Islamic Found., Inc. v. Bush, 507 F.3d 1190 (9th Cir. 2007), which held that "the very subject matter" of those cases challenging the legality of the TSP on the merits were not state secrets.  The cases do not invoke the standards applicable under FOIA and have little bearing on this litigation.  In any event, plaintiffs fail to note that appeal in the Hepting case is still pending and that the Government prevailed on other grounds in Al-Haramain, where the Court specifically denied access to and reliance on a classified document even where it previously had been inadvertently disclosed.  507 F.3d at 1202-04.  Indeed, it is important to recognize that not a single court anywhere − whether in the multitude of cases challenging the TSP on its merits or in the several cases challenging the Government's determination to withhold TSP-related documents under FOIA − has ordered the disclosure of even a single classified document related to the TSP.  See, e.g., People for the Am. Way supra, New York Times Company v. Dept. of Defense, et al., 499 F. Supp. 2d 501 (S.D.N.Y. 2007) (both declining to order disclosure of classified TSP-related documents under FOIA).

intelligence-gathering process." Central Intelligence Agency v. Sims, 471 U.S. 159, 180 (1985).

Thus, what plaintiffs fail to recognize is that it is "responsibility" of the Executive Branch to be

"selective" about disclosures when the Program being discussed is classified and disclosure of

certain details could compromise the Nation's security.  As the Supreme Court recognizes,

neither plaintiffs nor this Court are in a position to evaluate the risks to national security that

would be posed by more detailed or specific disclosures of information by the federal officials

who have made limited public statements, and any such statements are carefully vetted to ensure

that classified information is not disclosed.

Second, the government's willingness to discuss the limited information that can be

discussed on the public record regarding a highly classified program cannot be used to undermine

the government's determination, grounded in its "unique insights and special expertise

concerning the kinds of disclosures that may be harmful," Krikorian v. Dept. of State, 984 F.2d

461, 464 (D.C. Cir. 1993), that certain other information concerning the TSP must remain

classified in the interests of national security.  See Fitzgibbon, 911 F.2d at 766 ("the fact that

information resides in the public domain does not eliminate the possibility that further

disclosures can cause harm to intelligence sources, methods, and operations").  It has long been

the rule in this Circuit that prior disclosures do not require the rejection of the Government's

withholding determinations in a FOIA case so as to "avoid discouraging the agency from

disclosing such information about its intelligence function as it feels it can without endangering

its performance of that function."  See Afshar v. Dept. of State, 702 F.2d 1125, 1130-31 (D.C.

Cir. 1983) (citing Salisbury v. United States, 690 F.2d 966, 971 (D.C. Cir. 1982)).

For the reasons detailed by Mr. Bradbury and the former DNI, and particularly for the

reasons given in the classified portions of Mr. Bradbury's Second Declaration, it is plain that

disclosure of the documents withheld in Categories A and E that remain at issue in this case would cause harm to the national security of the United States.  FOIA clearly contemplates the possibility of such harm to be a sufficient basis for withholding responsive documents under FOIA's Exemptions One and Three, and, accordingly, OLC's withholding of these documents should be upheld.

> ## 2.    OLC Properly Withheld Documents Under Exemption Five.

In the alternative, all but two of the OLC documents that remain at issue in this litigation are also properly withheld under FOIA's Exemption Five, and specifically, under the deliberative process and the attorney-client privilege.[6]  In addition, certain documents are also properly withheld under the presidential communications privilege.

The crux of plaintiffs' challenges to defendant's assertion of Exemption Five on grounds of the **deliberative process privilege** is their contention that recommendations and advice provided by OLC in the course of decisions to be made by others lose their deliberative and predecisional character simply because they are reduced to writing in a form that is no longer a draft.  This approach to the deliberative process privilege is fundamentally flawed in several ways.

First, plaintiffs are mistaken in their characterization of OLC's role in the decision making processes described in Mr. Bradbury's declaration.  Plaintiffs' argument is premised on their assumption that all legal opinions prepared by OLC constitute final opinions of the Department of Justice and that such opinions are neither predecisional or deliberative.  This assumption, which plaintiffs attempt to support by pointing to a variety of law review articles and

---

[6]  FBI 7 and OLC 113/FBI 42 are withheld only under Exemptions One and Three for reasons fully explained in the declaration of Mr. Bradbury.  See Second Bradbury Decl. ¶¶ 51-52; 90-91.

other hearsay sources, is directly contradicted by Mr. Bradbury's sworn declaration.  As Mr. Bradbury describes, "OLC's work can be divided into two categories.  First, OLC renders opinions that resolve disputes within the Executive Branch on legal questions.  Second, OLC performs a purely advisory role as legal counsel to the Attorney General, providing confidential legal advice to the Attorney General, and through him or on his behalf, to the White House and other components of the Executive Branch."  Second Bradbury Decl. ¶ 80.  Mr. Bradbury further explains that "[a]lthough OLC's legal advice and analysis may inform decisionmaking on policy matters, the legal advice is not itself dispositive as to any policy adopted by the Executive Branch."  Second Bradbury Decl. ¶ 81.[7]

Each of the 18 memoranda that plaintiffs identify were produced by OLC in its second, advisory, role.  See Second Bradbury Decl. ¶ 82.  Moreover, as Mr. Bradbury also explains, all of these documents were prepared in the context of providing advice and recommendations in the course of assisting with decisions to be made by others, either by the Attorney General (or his designee), by the head of some other Executive Branch agency, or by the President.  See Second Bradbury Decl. ¶¶ 76-89; 98-101.  In particular, the documents withheld in Category A were part of an "ongoing decision making process" and contain "advice and recommendations . . . provided by OLC and the Department in the course of decisions by the President concerning the continued authorization of particular foreign intelligence activities."  Second Bradbury Decl. ¶ 39; see also id. ¶¶ 13-24.  Similarly, the documents withheld in Category E were "prepared in response to requests for OLC advice either from within the Department or from elsewhere in the Executive Branch in the context of decisions being made regarding the legal parameters of foreign intelligence collection activities in the years and months following the terrorist attacks of

---

[7]  Plaintiffs' bald assertion – offered without citation – that "OLC does not serve a policy or recommendatory function," Pls' Opp. at 18, is thus flatly incorrect.

September 11, 2001."  Second Bradbury Decl. ¶ 82; see also ¶¶ 13-24.

As discussed below, it is inappropriate to characterize OLC advice memoranda of this type as embodying the "'effective law and policy of the Department of Justice."  Pls' Opp. at 19. To the contrary, as Mr. Bradbury describes, OLC opinions offered in the context Mr. Bradbury describes are clearly both deliberative and predecisional and are properly withheld under the deliberative process privilege component of FOIA's Exemption 5.  See, e.g., Nat'l Council of La Raza v. U.S. Dept. of Justice, 339 F. Supp. 2d 572, 581-82 (S.D.N.Y. 2004) (holding that nonpublic OLC advice memorandum is deliberative); Bronx Defenders v. U.S. Dept. of Homeland Security, 2005 WL 3462725 (S.D.N.Y. 2005) (finding that OLC memorandum prepared to provide the FBI with analysis concerning the legal implications of an FBI policy was "both predecisional and deliberative")[8]; Morrison v. U.S. Dept. of Justice, 1988 WL 47662 (D.D.C. 1998) (finding that OLC did not waive the deliberative process privilege applicable to OLC final opinion on the constitutionality of a statutory amendment); Southam News v. INS, 674 F. Supp. 881, 886 (D.D.C. 1987) (holding OLC opinion letter "discuss[ing] legal questions regarding the criteria used to evaluate visa applications by a certain class of individuals" was protected by the deliberative process privilege).

Second, the fact that memoranda conveying advice and recommendations have been finalized by the person or entity providing them, in the sense that they are no longer drafts but instead represent final decisions by that person or the entity to convey the advice and recommendations, does not make them any less predecisional or any less deliberative.  To the

_____

[8]  Both the Court in LaRaza and the Court in Bronx Defender ultimately ordered disclosure of the OLC memorandum at issue in that case on the grounds that it had been adopted or incorporated by the FBI.  See, e.g.,Nat'l Council of La Raza v. Dept. of Justice, 411 F.3d 350, 359 (2d Cir. 2005); Bronx Defender, 2005 WL 34262725, at *3-7.  As discussed infra, that doctrine does not apply to destroy the basis for asserting Exemption Five on deliberative process grounds as to the documents at issue here.

contrary, such disclosure inhibits the provision of exactly sort of frank and candid advice that the

deliberative process was intended to protect. OLC's opinions rendered in the context described

by Mr. Bradbury are no less advisory than any other final advice made by a subordinate official

or agency to an ultimate decisionmaker. As Mr. Bradbury describes,

> [a]lthough OLC's legal advice and analysis may inform decisionmaking on policy
> matters, the legal advice itself is not dispositive as to any policy adopted by the
> Executive Branch. OLC does not purport, and in fact lacks authority, to make any
> policy decisions. OLC's role is to advise, not to mandate that its advice be
> implemented into agency policy.

Second Bradbury Decl. ¶ 81. Disclosure of documents that fall within the terms of this

description – as all 18 of the documents identified by plaintiffs do – plainly would infringe on the

ability of non-decisionmakers to provide frank and candid advice to those who are charged with

making certain decisions, and the threat of such public disclosure has the potential to alter the

advice provided in such a way as to substantially reduce its usefulness to decisionmakers.

See Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 617 (D.C. Cir. 1997) (FOIA's

inclusion of the deliberative process privilege among its exemptions "reflect[s] the legislative

judgment that the quality of administrative decision-making would be seriously undermined if

agencies were foreign to 'operate in a fishbowl' because the full and frank exchange of ideas on

legal and policy matters would be impossible"). The fact that the advice is reduced to writing in

a form that is not a draft by the person or entity that offers it certainly does not alter these

conclusions.

Third, plaintiffs misconstrue the cases that discuss the disclosure under FOIA of

documents otherwise protected as deliberative and predecisional where the contents of such

documents are "adopted or incorporated" by government decisionmakers. See Pls' Opp. at 24-26

(ciiting Nat'l Council of La Raza v. Dept. of Justice, 411 F.3d 350, 360 (2d Cir. 2005)).

Plaintiffs argue that the eight of the 18 documents that were prepared to provide advice and legal

counsel to the Attorney General or the Deputy Attorney General – specifically, OLC 51,  OLC

54/ODAG 1/OPIR 28,  OLC 85, OLC 114, OLC 115/ODAG 3, OLC 129/ODAG 6, OLC

131/ODAG 2/OIPR 37/FBI 51 and OIPR 139 – "may well have been adopted – indeed it is likely

that they were adopted – by the Attorney General or incorporated into official DOJ policy or

transmitted to the White House," and that, as a result, they lose their deliberative character.  Pls'

Opp. at 24.  In the first instance, this argument fails because it is based on mere speculation;

plaintiffs provide no "evidence that an agency <u>actually</u> adopted or incorporated by reference the

document[s] at issue."  <u>La Raza</u>, 411 F.3d at 359 (emphasis in original).

     Moreover, even a showing (which plaintiffs do not make) that a decisionmaker agrees

with a conclusion contained in an OLC memorandum is plainly insufficient to constitute

adoption of that document:

> To be sure, had the Department simply adopted only the conclusions of the OLC
> Memorandum, the district court could not have required that the Memorandum be
> disclosed.  Mere reliance on a document's conclusions does not necessarily
> involve reliance on a document's analysis; both will ordinarily be needed before a
> court may properly find adoption or incorporation by reference. . . . [T]here must
> be evidence that an agency <u>actually</u> adopted or incorporated by reference the
> document at issue; speculation will not suffice.

<u>Nat'l Council of La Raza</u>, 411 F.3d at 358-59 (emphasis in original); <u>see</u> <u>also</u> <u>id</u>. at 359 ("where

an agency, having reviewed a subordinate's non-binding recommendation, makes a 'yes or no'

determination without providing any reasoning at all, a court may not infer that the agency is

relying on the reasoning contained in the subordinate's report") (citing <u>Casad v. U.S. Dept. of

Health & Human Servs</u>., 301 F.3d 1247, 1252-53 (10th Cir. 2002) (holding that mere adoption of

a report's recommendations is not sufficient to establish express adoption or incorporation by

reference)); <u>accord</u> <u>Wood v. Fed. Bureau of Investigation</u>, 432 F.3d 78, 84 (2d Cir. 2005).

As the decisional law establishes, plaintiffs' speculation does not eviscerate the deliberative and predecisional nature of the documents withheld by OLC under any articulation of the applicable law. Because the final, nonpublic, advisory memoranda withheld by OLC here fall squarely within the confines of the deliberative process privilege for the reasons explained by Mr. Bradbury, the determination to withhold them should be upheld.

Just as plaintiffs are mistaken in their argument concerning the applicability of the deliberative process privilege, so too do plaintiffs misapply the law relevant to the applicability of the **attorney-client privilege**. As plaintiffs themselves recognize, the attorney-client privilege is applicable to situations in which "an attorney's counsel is sought on a legal matter." Coastal States Gas Corp. v. Dept. of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980). See Pts' Opp. at 27. The privilege protects "those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." Id. (citing Fisher v. United States, 425 U.S. 391, 401 (1976)). Plaintiffs claim, however, that OLC has not shown that the documents withheld here contain "confidential information provided by a client in the course of seeking legal advice." Pls' Opp. at 28.

This is untrue. Mr. Bradbury has exhaustively demonstrated that each of the documents in question is classified because it is inextricably intertwined with classified information relating to the hypothetical, past, or current use of certain foreign intelligence methods, see Second Bradbury Decl. ¶¶ 13-24; 25-52; 84, 91, 99-100, and has further explained that each of the documents in question was prepared in response to a request for the Department's legal advice concerning various decisions to be made relating to classified foreign intelligence collection activities. See id. ¶¶ 26-42; 44-48; 80-91, 98-101. Such activities are generally not conducted by the Department of Justice and thus any and all of the classified information contained in these

documents, or which the disclosure of these documents would have the tendency to reveal, was provided by a client in the course of seeking legal advice. Indeed, as the former DNI notes, any classified information relating to the TSP, in particular, or to foreign intelligence collection sources and methods more generally, is information which the Intelligence Community, and specifically the DNI, is entrusted to protect. As Mr. Bradbury further explains, the advice prepared by OLC, which relates to and relies on classified information concerning foreign intelligence activities, was prepared with the expectation that such advice would be held in confidence, and protecting the confidentiality of such documents is "essential in order to ensure both that creative and even controversial legal arguments and theories may be explored candidly, effectively, and in writing, and to ensure that Executive Branch officials will continue to request legal advice from OLC on such sensitive matters." Second Bradbury Decl. ¶ 86. The withholding these documents under the attorney-client privilege component of FOIA's Exemption Five, accordingly, should be upheld.[9]

Finally, plaintiffs challenge defendant's assertion of the **presidential communication privilege** with respect to those OLC documents that contained advice and recommendations directed to the President or to other high level White House officials to aid in decisionmaking by the President himself concerning the continued authority and contours of foreign intelligence collection activities.[10] This challenge is also without merit for a variety of reasons.

---

[9] Plaintiffs' discussion of the attorney work product doctrine focuses not on the documents for which that doctrine was invoked, specifically for the documents contained in Category C, discussed supra, but rather with respect to "legal memoranda and authorizations" for which it was not invoked. See Pls' Opp. at 29; but see id. at 29 n.25. Attorney work product is not a basis for withholding the documents contained within Categories A and E, and thus, plaintiffs' discussion of the attorney work product doctrine in the context of the documents withheld in these categories is irrelevant.

[10] As Mr. Bradbury explains, OLC 63, OLC 132, OLC 146 and OIPR 140, are the documents containing OLC's advice provided directly to the President or his immediate advisors

First, plaintiffs' contention that the presidential communications privilege may only be invoked by or at the direction of the President himself in a case arising under FOIA is incorrect. Formal invocation of a privilege is never a prerequisite to the proper application of a FOIA exemption because, in the FOIA context, an agency is not resisting disclosure of information in a judicial proceeding by invoking a privilege. Instead, as Judge Bates of this Court has recognized, an agency withholding documents under FOIA "simply makes the determination that a statutory provision protects the documents from disclosure." Lardner v. U.S. Dept. of Justice, 2005 WL 758267, *8. (D.D.C. 2005) (Bates, J.). Thus, "[e]ven assuming that the President must personally invoke the presidential communications privilege in civil discovery, this rule should not be imported into the far different context of FOIA."[11] Id. at *6; accord Berman v. CIA, 378 F. Supp. 2d 1209, 1220 (E.D. Cal. 2005). Indeed, for the reasons comprehensively explained by Judge Bates in his opinion in Lardner, "there is simply no basis in law or practice for believing that the personal invocation of a privilege is a prerequisite to withholding under FOIA." Lardner, 2005 WL 758267, at *8; accord Berman, 378 F. Supp. 2d at 1220.

Second, plaintiffs argue, without any evidence, that the records withheld by OLC under the presidential communications privilege component of Exemption Five were not generated in order to "preserve the President's access to candid advice." Pls' Opp. at 31 (citing In re Sealed Case, 121 F.3d 729, 745 (D.C. Cir. 1997) (emphasis added by Plaintiffs). This argument is nonsensical in light of the sworn statements contained in Mr. Bradbury's declaration. Mr.

---

in the course of the President's decisionmaking with respect to these issues. See Second Bradbury Decl. ¶¶ 29, 33, 83(h), 83(i).

[11] But see Lardner, 2005 WL 758267, *6 n.10 (noting that the Court of Appeals in Judicial Watch, Inc. v. Dept. of Justice, 365 F.3d 1108, 1114 (D.C. Cir. 2004), specifically stated that "the issue of whether the President must personally invoke the privilege [in the context of civil discovery] remains an open question.").

Bradbury specifically attests that each of these documents was provided to the President or other high-level White House officials, most predominantly the Counsel to the President, in response to requests for advice concerning ongoing decisions related to the authorization or parameters of foreign intelligence collection programs as to which the President was the ultimate decisionmaker.  See Second Bradbury Decl. ¶¶ 29, 33, 83(h), 83(i); see also Second Bradbury Decl. ¶¶ 10, 13-24, 39.  As explained in defendant's opening brief, the advice of Department attorneys as part of the President's decisionmaking process cannot be disclosed without imperiling the "candor of presidential advisers" and the "freedom to explore alternatives in the process of shaping policies and making decisions . . . in a way many would be unwilling to express except privately." In re Sealed Case, 121 F.3d 729, 743 (D.C. Cir. 1997); see Def.'s Renewed Mot. at 8. In such circumstances, OLC's determination that the documents provided "to inform a decision to be made by the President are . . . subject to the presidential communications privilege" Second Bradbury Decl. ¶ 87, is valid.  Such documents are properly withheld under FOIA's Exemption Five.

           3.      OLC Has Demonstrated that No Segregable Portion of the Withheld Documents Can be Released.

       Plaintiffs' complaint that OLC has failed to demonstrate that it properly considered whether any portion of the withheld documents could be segregated for public release, see Pls' Opp. at 33-35, is belied by the explicit discussion of this issue contained in Mr. Bradbury's declaration.  First, Mr. Bradbury attests that he personally reviewed documents that remain at issue and determined that no segregable portion could be released in light of the documents' high level of classification and their privileged character.  See Second Bradbury Decl. ¶ 88.  Second, Mr. Bradbury provides an exhaustive description of the nature of the classified information that is contained within the documents that remain at issue in this litigation and the reasons why no

part of these documents can be disclosed without compromising that classified information.
See Second Bradbury Decl. ¶¶ 13-24.  The Court is respectfully referred to that discussion, and to
the classified paragraphs that describe the reasons for withholding the remaining documents, see
Second Bradbury Decl. ¶¶ 27, 34-35, 41, 52, 84, for a detailed explanation of why no part of the
remaining classified documents can be disclosed.

## II.    THE FBI IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiffs' discussion of the FBI's supplemental submission suffers from many of the
same flaws that infected its opposition to defendant's original motion for summary judgment.
Other than identifying a handful of documents that plaintiffs specifically challenge, plaintiffs
make no detailed response to the FBI's extensive submission at all but instead ask for wide-
ranging in camera review of the documents withheld.  Such a cursory response to a fully
supported summary judgment is entirely insufficient either to support in camera review or to
warrant denial of defendant's motion.   See Spirko v. U.S. Postal Serv., 147 F.3d 992, 998 (D.C.
Cir. 1998) (rejecting characterization of agency affidavits as "conclusory and vague" when
plaintiff did "not indicate what more the [agency] could have stated without revealing the
information it sought to protect"and finding that where plaintiff "failed to indicate how
additional information could have provided further support for his arguments . . . or altered his
response to the agency's claimed exemptions," there was "no basis to conclude that [plaintiffs']
participation in the adversary process was compromised").

While, once again, defendant acknowledges that the highly classified, extraordinarily
sensitive law enforcement, deliberative, and otherwise privileged nature of the withheld
documents constrained the FBI's ability to assemble a detailed public submission, much of the
information that plaintiffs argue is lacking in the FBI's declarations is in fact present in the

classified sections submitted for the Court's in camera review.  As discussed above, in cases that implicate national security, such measures cannot be avoided.  See, supra, at 9-10 (discussing, inter alia, Hayden, 608 F.2d at 1385.  As the decisional law in this Circuit establishes, in the first instance the Court should review the complete in camera, ex parte submissions made by the FBI, and it only after such review, if the Court continues to have concerns about the applicability of the FBI's claimed exemptions, and if additional submissions would be insufficient to address such concerns, should the Court turn to the "last resort" that is in camera review.  Hayden, 608 F.2d at 1387; see also Quinon v. Fed. Bureau of Investigation, 86 F.3d 1222, 1227-28 (D.C. Cir. 1996) (in camera review should not be "resorted to as a matter of course, simply on the theory that 'it can't hurt'").

Turning to the twelve documents specifically identified by plaintiffs – FBI 8, FBI 173, FBI 175, FBI 176, FBI 178, FBI 193, FBI 194, FBI 299, FBI 301, FBI 302, FBI 303, and FBI 310 – plaintiffs have simply identified no reason to question the FBI's assertion of exemptions for these documents.  All of these documents fall within the broad category of information described in Mr. Hardy's Second Declaration as  "Briefing Materials and Talking Points Including Information Regarding Successes of the TSP."[12]  See generally Second Hardy Decl. ¶¶ 65-163. More specifically, these twelve documents – which consist of briefing and background materials, internal e-mail discussions regarding talking points, Qs & As, and proposed Congressional testimony for the Director – are documents which "provide specific examples how TSP-derived information has helped in FBI's terrorist investigations," Second Hardy Decl. ¶ 65 (emphasis added), that were "prepared for internal use only in the course of briefing by [Counterterrorism

---

[12]    Despite the fact that the FBI has grouped these documents and addressed them in ¶¶ 81-110 of the Second Hardy Decl., one document in this grouping – FBI 299 – has not been singled out by plaintiffs.  As to this document, defendants' request for summary judgment, accordingly, is uncontested.

Division] employees for higher level FBI executives, the [General Counsel] and her staff, or for

use in meetings or discussions with officials from elsewhere in the Government."  In fact "none

of these materials was prepared for public briefing or discussion, and none was adopted as

official positions in subsequent public discussion of the TSP."  <u>See</u> Second Hardy Decl. ¶ 65.  As

Mr. Hardy explains, these sorts of materials are both classified, <u>see</u> Second Hardy Decl. ¶¶ 101-

02, and "by their very nature" deliberative, <u>id.</u> ¶ 65, and are properly withheld for the reasons

explained in both Mr. Hardy's declaration, <u>see</u> Second Hardy Decl. ¶¶ 101-10, and in defendant's

Supplemental Submission, Docket No. 54 at 8-11.

Plaintiffs' only response to these detailed justifications for withholding is to speculate,

without any foundation whatsoever, that "it is likely that these records contain final policies and

discussions of the legal framework governing the FBI's involvement in the program" and that

they "may well contain formal policies and legal positions with respect to the FBI's use of

evidence derived through the program."  Pls' Opp. at 32.  In making these entirely unsupported

assumptions, plaintiffs ignore the descriptions of the documents actually provided by Mr. Hardy,

which make it clear that the documents withheld in this category are operational in nature,

contain specific information concerning investigative activities and efforts, and contain

information regarding "<u>specific examples</u> of how TSP-derived information has helped in the

FBI's terrorist investigations."  Second Hardy Decl. ¶ 65 (emphasis added).  This sort of

speculation is an entirely insufficient basis on which to oppose a properly supported motion for

summary judgment.  <u>See</u> <u>Steinberg v. U.S. Dept. of Justice</u>, 179 F.R.D. 357, 360 (D.D.C. 1998)

(Oberdorfer, J.) (plaintiff "cannot defeat the Justice Department's renewed motion for summary

judgment . . . with pure conjecture about the possible content of withheld information, raising

'some metaphysical doubt as to the material facts.'")) (citing <u>Matsushita Elec. Indus. Co. v.</u>

Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Apart from their specific identification of twelve documents contained within this Category, plaintiffs make no reference to the other documents identified as withheld within this category, see Second Hardy Decl. ¶¶ 81-163; Def't's Supp. Br. at 8-10 (both discussing FBI 41, 126, 128, 129, 139, 141, 143, 144, 145, 148, 168, 189, 195, 240, 242, 269, 270, 271, 274, 275, 286, 287, 306 and 315); or to the documents withheld in other two general categories identified by the FBI, specifically, documents concerning the relationship between FBI and NSA, see generally Second Hardy Decl. ¶¶ 30-64; Def't's Supp. Br. at 7-8 (both discussing FBI 114, 134, 166, 171, 239, 313, 314, 316, and 318); and documents related to legal opinions and attorney-client and work product-privileged internal deliberations regarding the TSP. See generally Second Hardy Decl. ¶¶ 164-226; Def't's Supp. Br. at 11-13 (both discussing FBI 3, 9, 10, 13, 17, 26, 32, 33, 57, 90, 115, 136, 137, 138, 241, 282, 288, 289, 290, 291, 294, and 295). Absent any specific challenge from plaintiffs, these documents are properly withheld for the reasons discussed in defendant's supplemental submission and in Mr. Hardy's Second Declaration.

Finally, in light of plaintiffs' failure to fulfill their obligations to properly respond to a fully supported summary judgment motion, the Court should deny plaintiffs' wide-ranging request for in camera review of "all of the remaining records for which the Court has not granted summary judgment." See Pls' Opp. at 36. This is so for several reasons. First, plaintiffs have no basis for seeking such relief where they have abdicated their obligation to challenge the withholding of these documents on the specific bases set forth by defendants, choosing instead to focus their challenge on only the 30 documents discussed specifically above. Moreover, the classified declarations provided by defendants, as described above, provide adequate justification to support defendant's determinations to withhold these documents. And, finally, plaintiffs'

claims that review of the defendant's submissions in support of their renewed motion should leave the Court in a "state of unease," see Pls' Opp. at 36, are entirely exaggerated for many of the reasons already discussed. In addition, and in particular, plaintiffs accuse the FBI of "sloppiness," based largely on the fact that the FBI revised certain of its exemption claims, and because it candidly acknowledged that certain copies of documents originally accounted for in response to plaintiffs' FOIA requests could not be located. These accusations are specious.

First, as to the revised exemption claims, plaintiffs fail to credit the diligence and care with which the FBI undertook to respond to the Court's request for a renewed examination of the documents withheld by that component. That diligence resulted in the withdrawal of certain claims of exemption found to be no longer applicable,[13] in the segregation and release of an additional 67 pages of documents (which plaintiffs nowhere acknowledge), and in the revision of certain other exemption claims in order to ensure consistency in the FBI's presentation.[14] These actions on the part of the FBI in response to the Court's earlier order point to diligence, not "sloppiness."

Similarly, although the FBI candidly acknowledged that certain documents previously identified as responsive to plaintiffs' FOIA requests cannot currently be located, the FBI explains these circumstance in substantial detail, see Second Hardy Decl. ¶ 18, and explains that the vast

---

[13] See, e.g., FBI 127, 201-203, 205-209, 214, 216-218, 22-228, 238, 282, 295, 299, and 301.

[14] For example, the FBI sought to ensure consistency in the exemptions asserted as to similar (and sometimes duplicate) documents, see, e.g., FBI 15 and 92. In other instances, the FBI asserted Exemption Three in conjunction with Exemption One after a second review enabled the FBI to determine that certain documents, e.g., FBI 3, 8, 17, 33, 41, 57, 90, 93, 114-118, 126, 128-129, 139-141, 143-145, 147-150, 159, 162, 166, 168, 171, 173, 176, 178, 180, 186, 189, 191-195, 236, 239-242, 244-247, 257-260, 267, 269-271, 274-275, 277, 284-285, 287, 303, and 306, contain discussions of operational details and statistics related to the use of and reliance on the TSP by the FBI. The rationale for protecting these sorts of materials under both Exemption One and Exemption Three is further discussed in the FBI's in camera, ex parte submissions.

majority of these are documents which the Court has already determined are properly withheld, that copies of two additional documents were located in other files, and thus, that only four documents, which had been previously reviewed by Mr. Hardy, are currently unaccounted for. The FBI continues its extensive efforts to locate these four documents, see Second Hardy Decl. ¶ 18 n.9, and will notify the Court in the event that these four documents – or for that matter, the entire group of documents – are located.  Given the FBI's detailed description of these circumstances, its inability to locate four specific documents among all of those remain at issue in this litigation hardly gives rise to the sort of unease that would require the Court to undertake the wide-ranging in camera review plaintiffs demand.

**CONCLUSION**

For the reasons stated herein, and in the memoranda in support of defendant's Renewed Motion for Summary Judgment, defendant is entitled to summary judgment under Federal Rule of Civil Procedure 56.

Respectfully submitted,

JEFFREY D. BUCHOLTZ
Acting Assistant Attorney General
Civil Division

JEFFREY A. TAYLOR
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

ELIZABETH J. SHAPIRO
Assistant Director
Federal Programs Branch

_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Tel: (202) 514-3146
Fax: (202) 318-7593
Email: rupa.bhattacharyya@usdoj.gov

Dated: January 30, 2008.