UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>    Plaintiff,<br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 06-00096 (HHK) |
| AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br>THE NATIONAL SECURITY ARCHIVE FUND, INC.,<br><br>    Plaintiffs,<br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 06-00214 (HHK)<br><br>**CONSOLIDATED CASES** |

**NOTICE OF FILING**

Plaintiffs file herewith a copy of an Office of Legal Counsel ("OLC") memorandum: Memorandum for William J. Haynes II, General Counsel for the Department of Defense, from John C. Yoo, Deputy Assistant Attorney General, *Re: Military Interrogations of Alien Unlawful Combatants Held Outside the United States* (Mar. 14, 2003) ("*Interrogation Memorandum*"). This document was released on April 1, 2008, in a Freedom of Information Act case in the Southern District of New York.

The *Interrogation Memorandum* refers to an OLC memorandum that remains at issue in this case:

> [O]ur office recently concluded that the Fourth Amendment had no application to *domestic* military operations. See Memorandum for Alberto R. Gonzales, Counsel to the President, and William J. Haynes, II, General Counsel, Department of Defense, from John C. Yoo, Deputy Assistant Attorney General and Robert J. Delahunty, Special Counsel, Re: *Authority for Use of Military Force to Combat Terrorist Activities Within the United States* at 25 (Oct. 23, 2001).

*Interrogation Memorandum* at 8 n.10. This appears to refer to a document identified in the Second Redacted Steven G. Bradbury Declaration as OLC 146. See Bradbury Second Decl. ¶ 83(i) ("OLC 146, which is a 37-page memorandum, dated October 23, 2001, from a Deputy Assistant Attorney General in OLC, and a Special Counsel, OLC, to the Counsel to the President, prepared in response to a request from the White House for OLC's views concerning the legality of potential responses to terrorist activity. OLC 146 is withheld under FOIA Exemption Five.").

If the Office of Legal Counsel did indeed conclude that the Fourth Amendment has no application to military operations inside the United States, the public has a right to see the underlying legal analysis. The proposition that the Fourth Amendment does not apply in this context is not only plainly wrong as a matter of constitutional law, *see, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) ("We have long since made clear that a state of war is not a blank check for the President when it comes to the rights of the nation's citizens.") (O'Connor, J., concurring), but also profoundly dangerous. Indeed, it is no exaggeration to say that the Founders of this country revolted against King George III in large part to free themselves from the kind of unchecked executive authority that the 2001 memorandum apparently asserted. *See* The Federalist No. 47 (J. Madison) ("The accumulation of powers, legislative, executive, and judiciary in the same hands . . . may justly be pronounced the very definition of tyranny."). The public is entitled to access to all portions of the memorandum cited in the *Interrogation Memorandum* and other records improperly withheld in this case.

Interviewed yesterday, J. William Leonard, the recently-retired director of the federal government's Information Security Oversight Office (the office that is responsible to the President for policy and oversight of the Government-wide security classification system), said that the *Interrogation Memorandum* had been withheld not for legitimate security reasons but for purely political ones:

> "The document in question is purely a legal analysis," [Leonard] said, and it contains "nothing which would justify classification."
>
> Beyond that crucial fact, the binding technical requirements of classification were ignored.
>
> Thus, he explained: There were no portion markings, identifying which paragraphs were classified at what level. The original classifier was not identified on the cover page by name or position. The duration of classification was not given. A concise basis for classification was not specified. Yet all of these are explicitly required by the President's executive order on classification.
>
> "It is not even apparent that [John] Yoo [who authored the memo] had original classification authority," Mr. Leonard said.
>
> "All too often, government officials simply assert classification. To enjoy the legal safeguards of the classification system, you need to do more than that. Those basic, elemental steps were not followed in this instance."

Secrecy News, http://www.fas.org/blog/secrecy/, *The OLC Torture Memo as a Failure of the Classification System* (Apr. 3, 2008); *see* Executive Order 12958, as amended by Executive Order 13292, 68 Fed. Reg. 15315 (March 28, 2003), §§ 1.1(a), 1.5, 1.6. There is every reason to believe that the 2001 memorandum is similarly being withheld for improper political reasons. Meanwhile the public and congressional debate concerning new surveillance legislation continues unabated. *See, e.g.*, *Bush Softens on Spy Bill*, Wall Street Journal, Apr. 1, 2008.

Additionally, other recently disclosed information about the NSA's domestic surveillance Program provides further support for *in camera* review (and eventual release) of the still-withheld records. In recent articles and a recently published book, Eric Lichtblau – one of the New York Times reporters who exposed the existence of the Program – reveals that "Deputy

Attorney General Larry Thompson refused to sign off on any of the secret wiretapping requests that grew out of the program because of the secrecy and legal uncertainties surrounding it"; that the FBI accidentally stumbled onto the Program; and that within the FBI "the secrecy and questions surrounding the program bred suspicion among officials." *See* Eric Lichtblau, *Debate and Protest at Spy Program's Inception*, N.Y. Times, Mar. 30, 2008 (copy attached); Eric Lichtblau, Bush's Law The Remaking of American Justice (Pantheon Books Apr. 1, 2008).

Respectfully submitted,
/s/
_____
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
   of the National Capital Area
1400 20th Street, N.W. #119
Washington, D.C. 20036
Phone: (202) 457-0800
Fax: (202) 452-1868

Nasrina Bargzie
Melissa Goodman
Jameel Jaffer
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
Phone: (212) 519-7814
Fax: (212) 549-2683

Meredith Fuchs (D.C. Bar No. 422825)
The National Security Archive Fund, Inc.
The George Washington University
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Marc Rotenberg (D.C. Bar No. 422825)
Electronic Privacy Information Center
1718 Connecticut Avenue, NW , Suite 200
Washington, DC 20009-1148
Phone: (202) 483-1209
Fax: (202) 483-1278

April 3, 2008                               *Counsel for Plaintiffs*