

**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General                    Washington, D.C. 20530

May 13, 2008

The Honorable Dianne Feinstein
The Honorable Sheldon Whitehouse
United States Senate
Washington, D.C. 20510

Dear Senator Feinstein and Senator Whitehouse:

    This responds to your letter, dated April 29, 2008, which asked about a particular statement contained in a classified November 2001 opinion of the Department's Office of Legal Counsel addressing the Foreign Intelligence Surveillance Act. The statement in question asserted that unless Congress had made clear in FISA that it sought to restrict presidential authority to conduct warrantless surveillance activities in the national security area, FISA must be construed to avoid such a reading. The statement also asserted the view in 2001 that Congress had not included such a clear statement in FISA. As you know, and as is set forth in the Department of Justice's January 2006 white paper concerning the legal basis for the Terrorist Surveillance Program, the Department's more recent analysis is different: Congress, through the Authorization for Use of Military Force of September 18, 2001, confirmed and supplemented the President's Article II authority to conduct warrantless surveillance to prevent catastrophic attacks on the United States, and such authority confirmed by the AUMF can and must be read consistently with FISA, which explicitly contemplates that Congress may authorize electronic surveillance by a statute other than FISA.

    We understand you have been advised by the Director of National Intelligence that the statement in question, standing alone, may appropriately be treated as unclassified. We also would like to address separately the substance of the statement and provide the Department's views concerning public discussion of the statement.

    The general proposition (of which the November 2001 statement is a particular example) that statutes will be interpreted whenever reasonably possible not to conflict with the President's constitutional authorities is unremarkable and fully consistent with the longstanding precedents of OLC, issued under Administrations of both parties. *See, e.g.*, Memorandum for Alan Kreczko, Legal Adviser to the National Security Council, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Applicability of 47 U.S.C. section 502 to Certain Broadcast Activities* at 3 (Oct. 15, 1993) ("The President's authority in these areas is very broad indeed, in accordance with his paramount constitutional responsibilities for foreign relations and national security. Nothing in the text or context of [the statute] suggests that it was Congress's

The Honorable Dianne Feinstein
The Honorable Sheldon Whitehouse
Page Two

intent to circumscribe this authority. In the absence of a clear statement of such intent, we do not believe that a statutory provision of this generality should be interpreted so to restrict the President constitutional powers."). The courts apply the same canon of statutory interpretation. *See, e.g., Department of Navy v. Egan*, 484 U.S. 518, 530 (1988) ("[U]nless Congress has specifically provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs.").

However, as you are aware from a review of the Department's relevant legal opinions concerning the NSA's warrantless surveillance activities, the 2001 statement addressing FISA does not reflect the current analysis of the Department. Rather, the Department's more recent analysis of the relation between FISA and the NSA's surveillance activities acknowledged by the President was summarized in the Department's January 19, 2006 white paper (published before those activities became the subject of FISA orders and before enactment of the Protect America Act of 2007). As that paper pointed out, "In the specific context of the current armed conflict with al Qaeda and related terrorist organizations, Congress by statute [in the AUMF] had confirmed and supplemented the President's recognized authority under Article II of the Constitution to conduct such surveillance to prevent further catastrophic attacks on the homeland." *Legal Authorities Supporting the Activities of the National Security Agency Described by the President* at 2 (Jan. 19, 2006). The Department's white paper further explained the particular relevance of the canon of constitutional avoidance to the NSA activities: "Even if there were ambiguity about whether FISA, read together with the AUMF, permits the President to authorize the NSA activities, the canon of constitutional avoidance requires reading these statutes to overcome any restrictions in FISA and Title III, at least as they might otherwise apply to the congressionally authorized armed conflict with al Qaeda." *Id.* at 3.

Accordingly, we respectfully request that if you wish to make use of the 2001 statement in public debate, you also point out that the Department's more recent analysis of the question is reflected in the passages quoted above from the 2006 white paper.

We hope that this information is helpful. If we can be of further assistance regarding this or any other matter, please do not hesitate to contact this office.

Sincerely,

Brian A. Benczkowski
Principal Deputy Assistant Attorney General